# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Commission alleges the Defendants violated the securities laws in three ways: *First*, Defendants made four false factual statements about the viability of Ligand's flagship drug, the nature of Ligand's relationship with Viking Therapeutics, Inc., and Ligand's financial condition. *Second*, through these false statements and other conduct, Defendants engaged in a fraudulent "short and distort" scheme to profit from Defendants' short position by manipulating the market price of Ligand shares. *Third*, Defendants deceived investors and prospective investors by making and disseminating false statements about The Amvona Fund's Ligand investment and by failing to disclose that the fund's positive returns from that position resulted from Defendants' stock price manipulation  The first two of these comprise the Commission's First Claim, violations of Exchange Act Section 10(b) and Rule 10b-5. The third is the Commission's Second Claim, violation of Advisers Act Section 206(4) and Rule 206(4)-8.

1

Defendants raise four grounds for dismissal: (1) that three of four challenged false statements of material fact were actually true; (2) that certain of Defendants' statements included in the Complaint, most of which the Commission does not allege are independently actionable, are statements of "opinion"; (3) that the challenged false statements of material fact are not material; and (4) that the Commission's claim under Rule 206(4)-8 of the Investment Advisers Act fails. Each of these arguments prematurely raises factual disputes that are not grounds for dismissal or otherwise lack merit, and Defendants' motion should be denied.

**ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court takes the allegations in the complaint as true, making all reasonable inferences in favor of the plaintiff. *Hill v. Gozani*, 638 F.3d 40, 55 (1st Cir. 2011). Dismissal for failure to state a claim is only appropriate when the pleadings fail to set forth factual allegations respecting each element necessary to sustain recovery under a legal theory. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

**A.  The Commission Has Alleged Actionable Misstatements of Material Fact.**

The Commission alleges that Defendants made four specific material misrepresentations in the course of their campaign to drive down Ligand's share price and profit from their short position. To state a claim under Exchange Act Section 10(b) and Rule 10b-5(b), the Commission must allege that each of the four challenged statements of fact was false or misleading, material, and made with scienter. 15 U.S.C. § 78j(b); 17 CFR § 240.10b–5(b); *see SEC. v. Ficken*, 546 F.3d 45, 47 (1st Cir. 2008). The Commission has done so here:[1]

---

[1] Defendants' objection that this case is "different" from prior short-and-distort cases (Dkt. No. 11 ("Br.") at 1) is no

*False Statement No. 1 – Promacta.* In a June 19, 2014 interview, Lemelson falsely stated: "I had discussions with [Ligand] management just yesterday – excuse me, their [Ligand's] IR [investor relations] firm. And they basically agreed. They said, 'Look, we understand Promacta's going away.'" (Compl. ¶ 37.) This statement was false – Ligand's IR representative never said any such thing – and material, as it concerned Ligand's main source of revenue. (Compl. ¶¶ 38-39, 43.)

*False Statements Nos. 2 & 3 – Viking.* In a July 3, 2014 report, Defendants falsely stated that Viking had "yet to consult with [its auditors] on any material issues" and that the "financial statements provided in the S1 accordingly are unaudited." (Compl. ¶ 46.) In the same report, Defendants falsely stated that "Viking does not intend to conduct any preclinical studies or trials." (Compl. ¶ 46.) These statements were false – Viking's public filings plainly contradict each statement – and material, as each concerned a significant financial transaction and sought both to cast doubt on the stated benefits of the transaction and to allege misconduct by Ligand management. (Compl. ¶¶ 47-50.)

*False Statement No. 4 – Ligand's Financial Condition.* In an August 22, 2014 report, Defendants misleadingly stated that Ligand "issued 245 million in new debt, against tangible equity of just $21,000, giving rise to a debt to tangible equity ratio of 11,667 to 1 (that is $11,667 dollars [sic] in debt for every $1 in tangible common shareholder equity)" and that "shareholders have only the protection of $21,000 in tangible equity to shield them from $245 million in debt." (Compl. ¶ 51.) In making this statement, Defendants omitted any reference to, and failed to account for, the proceeds of the loan, which makes the statement misleading. (Compl. ¶ 52.)

---

ground for dismissal when, as here, the Commission has sufficiently alleged actionable misstatements that were part of a scheme to manipulate Ligand's stock price.

And, the statement was material, as it went to the heart of Ligand's overall financial viability and supported Defendants' argument that Ligand's stock was worthless. (Compl. ¶¶ 52-53.)

The Commission does not allege that Defendants' other statements in the Complaint (which include *all* the statements described at pages 12-14 of Defendants' brief) are independently actionable as material misrepresentations.[2] Rather, these statements form the backdrop for Defendants' false statements, evidence Defendants' scheme and scienter, and demonstrate that Defendants' misrepresentations were intended to support arguments Defendants made in their reports and other public statements.

**B.  Defendants Arguments That Their False Statements Were In Fact True Are Not Grounds For Dismissal.**

Defendants first argue that three of the four false statements the Commission challenges were actually true. (Br. at 5-11.) They are wrong, but the merits of the Commission's allegations cannot be resolved on a motion to dismiss. *Ocasio-Hernandez v. Fortuno-Burset*, 604 F.3d 1, 12 (1st Cir. 2011) (stating "court may not disregard properly pled factual allegations" even when judge thinks proof of these facts is improbable). As set forth above, the Complaint alleges in detail that each of the challenged statements is false or misleading and precisely how it is false or misleading. For the purposes of a motion to dismiss, that is the end of the story. Defendants' disagreement with the Commission's allegations raises, at best, factual disputes that must be resolved at a later stage of this proceeding. *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012) (on motion to dismiss, court must accept truth of all well-pleaded facts and

---

[2] The Commission reserves the right to amend its Complaint to add additional claims stemming from Defendants' other statements, many of which Defendants say are not actionable as "opinions." (*E.g.*, Br. at 12-14.) The Supreme Court's *Omnicare* decision (which Defendants do not mention but is discussed in Part C.3 below) addressed liability for statements of opinion under the federal securities laws. Under *Omnicare*, even Defendants' purported opinions may give rise to liability if the evidence shows that Defendants (i) did not believe the opinion statement when it was made or (ii) misrepresented or omitted material facts that would make the opinion statement misleading.

4

draw all reasonable inferences for plaintiff).  Defendants' attacks on the truth of the Complaint's allegations are premature and do not constitute grounds for dismissal.  What is more, Defendants' claims about the Commission's allegations fall flat.

1. ***Defendants first quarrel with the Commission's quotes and paraphrases.***

In the spirit of "the best defense is a good offense," Defendants attack supposed "erroneous factual assertions" and "inflammatory language" in the Complaint.  (Br. at 5-6.)  For example, Defendants claim that the Commission misquoted Lemelson.  (Br. at 6.)  Not so.  The purported "misquote," in Complaint Paragraph 28, alleges that Lemelson said that Ligand's "common shareholders could be wiped out almost entirely without notice."  Defendants deny that Lemelson said this and denounce the Commission for "mak[ing] a mockery of Fed. R. Civ. P. 9(b)'s particularity requirement" by "*invent[ing]* Lemelson's words to boost its case, rather than simply rely[ing] on what he *actually* said."  (Br. at 6 (emphasis in original).)  In fact, the Commission did quote Lemelson's exact words – the August 22, 2014 report includes the very language quoted in Paragraph 28 of the Complaint.[3]  (*See* Declaration of Alfred A. Day ("Day Decl.") Ex. 1 (August 22, 2014 report) at 5) ("If the call feature above is exercised *common shareholders could be wiped out almost entirely without notice*." (emphasis added)).)  In any event, the Commission does not allege that this statement is independently actionable as a misrepresentation of material fact.  Defendants' accusation is thus beside-the-point.

Defendants also take issue with the Commission's paraphrasing of Defendants' reports.  (Br. at 5.)  None of the snippets Defendants complain about purport to be direct quotes; they are instead fair summaries of portions of Defendants' reports.  For example, Defendants

---

[3] Defendants attached what appears to be a different version of this report to their motion (*see* Brooks Decl. Ex. 5), and contains slightly different language ("common shareholders would be wiped out immediately").  The version attached hereto, which the Commission quoted in its Complaint, was marked as Exhibit 21 during Lemelson's testimony before the staff of the Commission.

characterized the Ligand-Viking transaction as "a common game of 3-card Monte, played on any street corner – shills included" (Brooks Decl. Ex. 2 at 9), which the Commission distilled down to, simply, a "sham" (*e.g.*, Compl. ¶ 5). In any event, the Commission does not allege that the paraphrased portions of Defendants' reports are themselves actionable misstatements of material fact. Again, Defendants' accusations have no bearing on the legal sufficiency of the Complaint.

### 2. *Statements about Promacta.*

Defendants also falsely stated that a Ligand representative said Ligand's flagship drug, Promacta, was "going away." (Compl. ¶¶ 36-39, 43.) While Defendants spend a significant amount of their brief focused on Defendants' other misrepresentations, they do not argue that this alleged misrepresentation was true.

They do argue about the other misleading statements Defendants made in support of their argument that Promacta was "going away": (i) a reference to conversations with two doctors (without disclosing that one was actually Ligand's largest investor) about Promacta, and (ii) the citation of two medical journal articles that do not discuss Promacta. (Br. at 8-10 & n.10 (citing Compl. ¶¶ 40-41).) Despite what they wrote in their June 16, 2014 report ("The purpose and applicability of Promacta was discussed with" the two doctors (Brooks Decl. Ex. 1 at 6)), Defendants now claim that the sources they referenced do not even concern Promacta. (Br. at 9 (doctors referenced in June 16 report made "no comment on Promacta").) Similarly, about the two medical studies cited in that report, Defendants now maintain that "Lemelson never claimed the articles discussed Promacta or its prospects" (Br. at 9 n.10), even though Lemelson's report states: "Further reference on the *obsolete nature of* supportive care treatments *such as Promacta* … are also available in the following publications[.]" (Brooks Decl. Ex. 1 at 7 (emphasis added).) Regardless, even if Defendants arguments raise a genuine factual dispute

6

about these allegations, it could not be resolved at this stage of the litigation.

### 3. Statements about Viking.

In the July 3, 2014 report, Defendants wrote that "Viking does not intend to conduct any preclinical studies or trials[.]" (Compl. ¶ 46; Brooks Decl. Ex. 2 at 7.) They defend this statement by noting that Viking expected to contract with third parties to perform certain tasks related to future preclinical studies and clinical trials. (Br. at 7 (citing Brooks Decl. Ex. 6 at 17).)[4] But Viking also disclosed that, notwithstanding contractual arrangements with "[Contract Research Organizations], medical institutions, clinical investigators and contract laboratories," it would "maintain responsibility" for their activities. (Brooks Decl. Ex. 6 at 21.)[5] In any event, Defendants merely raise a factual dispute that cannot be resolved on a motion to dismiss.

In a similar vein, Defendants argue that their statement that the financial statements referenced in Viking's Form S-1 were audited was true, on the ground that *some* of Viking's financial statements were unaudited. (Br. at 10-11.) This argument defies common sense – Defendants said that Viking had never been audited, when it in fact had.[6] The statement was false, as the Commission alleges, and Defendants' premature factual argument should be rejected.

### 4. Misleading statements about Ligand's financial condition.

Defendants stated that Ligand had a debt-to-tangible equity ratio of "11,667 to 1" and

---

[4] Defendants cite to page 17 of Viking's Form S-1 refers to the page number in the original document, which appears at page 21 of the PDF.

[5] This reference is to page 21 of the PDF, which is page 17 of Viking's Form S-1.

[6] Defendants' position is contrary to Lemelson's admission, during sworn testimony, that his statement about the Viking financial statements was contradicted by the public filing, and that he would not have included the statement in his report if he had read the auditor's letter attached to Viking's Form S-1. (Day Decl. Ex. 2 (excerpts of Lemelson testimony) at 728:20 – 729:16.)

7

that Ligand's shareholders had "only $21,000 in tangible equity to shield them from $245 million in debt." (Compl. ¶ 51.) The Commission alleges that this statement was misleading because Defendants failed to account for the proceeds of a $245 million loan in their analysis.[7] (Compl. ¶ 52.) Defendants disagree, and contend that the Commission's allegation is somehow contrary to basic accounting principles. Defendants are mistaken, as the Commission will prove at the appropriate stage of this litigation.

For now, suffice it to say that (1) the way Defendants' presented their "debt-to-tangible equity ratio" and discussed the supposedly exposed position of Ligand's shareholders was misleading, (2) Defendants' reliance on *SEC's Beginners Guide to Financial Statements* is misplaced as that source contains no guidance on how to calculate the debt and equity parts of a debt-to-equity ratio, nor does it contemplate the debt-to-*tangible* equity ratio Defendants presented, and (3) in contending that their statement was not misleading, they ignore the elephant in the room (or perhaps at the bank) – the hundreds of millions of dollars of loan proceeds.

Indeed, on this last point, Defendants "calculated" an eye-popping debt-to-equity figure that they claimed put Ligand "deep within the context of insolvency" and left Ligand shareholders with only $21,000 as a "shield" from $245 million in debt. (Day Decl. Ex. 1 at 5.) Yet they ignored that Ligand now had $245 million to spend.[8] The shareholders thus had vastly more than $21,000 as a "shield" against debt, and it was misleading to suggest otherwise, much less to suggest that the company was "deep in the context of insolvency."

In any event, the parties' dispute over whether Defendants' statements about Ligand's

---

[7] Defendants' position is contrary to prior correspondence with Commission staff, in which Defendants characterized their failure to account for the loan proceeds as an "obvious error." (Day Decl. Ex. 2 (excerpt of June 30, 2017 Wells submission) at 26.)

[8] Defendants "debt-to-tangible equity" ratio also excluded Ligand's intellectual property and other intangible assets, such as goodwill.

8

financial condition were misleading is yet another factual dispute that cannot be resolved on a motion to dismiss.

## C. The False Statements Alleged by the Commission Are Not Opinions.

Defendants next argue that certain of Defendants' statements included in the Complaint expressed opinions, not facts, and that the SEC's claims fail because the Commission does not allege that Defendants' subjectively disbelieved the opinions. (Br. at 12.) This argument misses the mark for two reasons: first, Defendants attack statements that the Commission *does not* allege are independently actionable and, second, Defendants misstate the law regarding when statements of opinion may give rise to liability under the federal securities laws.

### 1. *The false statements alleged by the Commission are statements of fact.*

A fact is "a thing done or existing" or "[a]n actual happening." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1325 (2015) (quoting Webster's New International Dictionary 782 (1927)). If a statement is obviously one of fact, a court may so rule as a matter of law. *Flotech, Inc. v. E. I. Du Pont de Nemours & Co.*, 814 F.2d 775, 778 (1st Cir. 1987). If, on the other hand, reasonable minds could differ about whether a statement constitutes a fact or opinion, it is a question for the jury. *Id.*

The false statements alleged here are plainly statements of fact, as each concerns an objectively verifiable and existing happening or thing:

- Lemelson's statement that "I had discussions with [Ligand] management just yesterday – excuse me, their [Ligand's] IR [investor relations] firm. And they basically agreed. They said, 'Look, we understand Promacta's going away'" concerns the substance of a past conversation with a Ligand representative. (Compl. ¶ 37.) This conversation either unfolded as Lemelson says, or it did not, as the Commission alleges.

9

- In a July 3, 2014 report, Defendants stated that Viking had "yet to consult with [its auditors] on any material issues" and that the "financial statements provided in the S1 accordingly are unaudited." (Compl. ¶ 46.) Again, these statements concerned objectively verifiable and existing facts: Viking either had either consulted with its auditors, or it had not, and its financial statements were either audited, or they were not.

- In the same July 3 report, Defendants falsely stated that "Viking does not intend to conduct any preclinical studies or trials." (Compl. ¶ 46.) Again, this is presented as a statement of existing fact regarding Viking's intent: It either intended to conduct clinical trials or it did not.

- In an August 22, 2014 report, Defendants misleadingly stated that Ligand "issued 245 million in new debt, against tangible equity of just $21,000, giving rise to a debt to tangible equity ratio of 11,667 to 1 (that is $11,667 dollars [sic] in debt for every $1 in tangible common shareholder equity)" and that "shareholders have only the protection of $21,000 in tangible equity to shield them from $245 million in debt." (Compl. ¶ 51.) As discussed above, this statement ignores the proceeds of the loan, and misrepresents Ligand's financial condition at the time – *i.e.*, either Ligand shareholders had *only* the $21,000 in tangible equity, or, as the Commission alleges, they had tens of millions of dollars in the bank to protect them as well.

Each of these statements is alleged in the Complaint to be a false statement of fact. And, even if reasonable minds could disagree about whether these are statements of fact or opinion, that would be a matter for the jury, and not a basis for dismissal at the pleading stage.

Rather than grappling with the false statements for which the Commission seeks to hold them liable, Defendants focus on various statements that the Commission *does not* allege are independently actionable. For example, the Commission is not suing Lemelson for saying that Ligand was creating "a veritable pyramid scheme of shell companies." (Br. at 13-14.) The Complaint is clear that the challenged false statements of fact about Viking – that it had not consulted auditors, had no audited financial statements, and did not intend to conduct clinical trials – were made to provide a (false) factual underpinning for Defendants' argument that Ligand was a "pyramid scheme of shell companies." (Compl. ¶ 46.)

The other statements Defendants characterize as opinion are similarly included in the Complaint for context, to evidence Defendants' scheme and scienter, and to demonstrate that Defendants' misrepresentations were intended to support Defendants' reports and other public statements. (Br. at 12 (citing Compl. ¶¶ 36, 44, 46).) The Commission does not allege that any of these statements by Defendants are independently actionable. Rather, each recounts a portion of the reports that Defendants' sought to prop up with the challenged false statements of fact.

### 3. *Defendants misstate the law regarding liability for opinions.*

For a statement of fact, the plaintiff need only plead that the statement itself is untrue or lacked a reasonable basis (*i.e.*, objective falsity), which the Commission has done here. *Miller Inv. Trust v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 429 (D. Mass. 2018) (citing *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011)). For opinions, on the other hand, a plaintiff must plead one of three things: (1) that the statement falsely represented the speaker's belief at the time it was made (subjective falsity) and that it was untrue (objective falsity); (2) that a statement of fact embedded within the opinion is untrue; or (3) that the speaker omitted material facts that would make the statement not misleading to a reasonable investor. *Id*.

11

(citing *Omnicare*, 135 S. Ct. at 1325-27, 1329-30); *see Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775 (1st Cir. 2011).

Defendants contend that the statements they characterize as opinions are not actionable because "the [Commission] *never* alleges that Lemelson did not believe these opinions." (Br. at 12 (emphasis in original).) As an initial matter, the Commission has not alleged that the statements in question *are* actionable. Defendants' entire line of argument is thus a red herring. But it is also wrong on the law. Pleading subjective falsity is *only* required in the absence of allegations that a statement of opinion was rendered misleading because an embedded statement of fact was untrue or there was a material omission. *Miller Inv. Trust*, 308 F. Supp. 3d at 429 (citing *Omnicare*, 135 S. Ct. at 1326 & n.2). Here, the Commission has alleged *factual* misstatements. (*See* Part C.1, *supra*.) But even if any of the challenged factual misstatements were considered a statement of opinion, or part of a statement of opinion, the Commission's allegations would be sufficient under *Omnicare* because each would constitute either (i) a false statement of fact embedded within the opinion or (ii) a material omission that would make the opinion misleading.

**D.    Defendants' false statements were material.**

A misstatement is material if "a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988). As Defendants acknowledge (Br. at 16), the First Circuit has held that "[i]n most circumstances, disputes over the materiality of allegedly false or misleading statements must be reserved for the trier of fact." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996) (citing *Basic*, 485 U.S. at 236); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 238 (D. Mass. 2004) (materiality is "a fact-specific

question that is rarely an appropriate basis for dismissal"). At the motion to dismiss stage, a court's inquiry is limited to "whether the complaint presents a 'plausible jury question of materiality.'" *In re Vertex Pharm. Inc., Sec. Litig.*, 357 F. Supp. 2d 343, 351 (D. Mass. 2005) (Saris, J.) (quoting *Baron v. Smith*, 380 F.3d 49, 53 (1st Cir. 2004)).

The Commission has more than adequately pled a "plausible jury question" of materiality for each of the challenged false statements, as set forth in Part A, *supra*. To briefly recap:

- Defendants' false statement about Promacta's prospects was material because it concerned Ligand's main source of revenue. (Compl. ¶¶ 39, 43.) What reasonable investor would consider it unimportant that Ligand acknowledged that its main revenue source was about to dry up?

- Defendants' false statements about Viking were material because they sought to cast doubt on the benefits of the Ligand-Viking transaction and to allege misconduct by Ligand management. (Compl. ¶¶ 47-50.) A reasonable investor plainly would consider it important that Ligand's management was inappropriately expending significant resources to go into business with a "shell company" that had never been audited and did not intend to conduct clinical trials.

- Defendants' misleading statement about Ligand's financial condition was material because it went to the heart of Ligand's viability as a going concern. (Compl. ¶ 53.) Indeed, a reasonable investor would unquestionably find it important to know that a company had run up so much debt that it made itself insolvent.

13

While these allegations are sufficient, there are more. The Commission alleges that Ligand's share price dropped 34% during the period Defendants were disseminating their false statements. (Compl. ¶ 8.) One financial news organization reported that Ligand's stock price "fell more than 7 percent" after Defendants spread their falsehood about Promacta. (Compl. ¶ 31.) And, Lemelson himself boasted that Ligand's stock price fell 2% during the June 19, 2014 interview in which he falsely stated that a Ligand representative agreed that "Promacta's going away." (Compl. ¶ 31.) Indeed, Defendants choice to include these statements in their reports about the value of Ligand's stock demonstrates that they considered the subject matter of their false statements important to investors.

Defendants' materiality arguments are largely aimed at statements the Commission has not alleged are actionable misrepresentations. For example, Defendants' statement that "Ligand is worth $0/share" (Br. at 17) is not among the false statements at issue in this case. Defendants' arguments about "puffery" and "exaggeration" (Br. at 16-17) are therefore irrelevant.

Defendants mention in passing only two of the false statements that the Commission alleges are actionable. They first contend that because some of Viking's financial statements were unaudited (Br. at 18), their demonstrably false statements about Viking were unimportant.[9] Obviously, it is very different to say that a company has *never* consulted an auditor and has *no* audited financial statements for a given period, than to say the company *has* consulted an auditor but *some* of its financial statements remain unaudited. In any event, Defendants put the merits cart before the pleadings horse, and their argument should be rejected.

---

[9] Defendants based this argument on *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539 (8th Cir. 1997). *Parnes* is inapposite, as it involved an alleged earnings overstatement of only 2%, which the court found too small to be material in the context of a high-risk, high-growth company. *Contrast Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1217 (1996). Here, in contrast, Defendants were not claiming some inconsequential variance in reported revenue – they were, in effect, saying that an entire company was a sham.

Defendants next invoke the "bespeaks caution doctrine" for their false statement that a Ligand representative agreed that "Promacta's going away." (Br. at 18 (citing *Parnes*, 122 F.3d at 548-49 (discussing "bespeaks caution" doctrine).) But the bespeaks caution doctrine only applies to certain forward-looking statements, such as forecasts, estimates, opinions, or projections, when accompanied by cautionary disclosures that adequately warn of the possibility that actual results or events may turn out differently. *Battle Constr. Co., Inc. v. InVivo Therapeutics Holdings Corp.*, 101 F. Supp. 3d 135, 139 (D. Mass. 2015) (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996)). When, as here, a false statement concerns an existing fact (*i.e.,* what a Ligand representative said about Promacta), the doctrine has no application. *In re No. Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 19 (D. Mass. 1999) (citing *Shaw*, 82 F.3d at 1213).

E. **That the Commission's Advisers Act Claim Strikes the Defendants as Novel Is No Ground for Dismissal.**

The Commission has alleged that Defendants deceived investors and prospective investors by making and disseminating false statements about Ligand as part of their efforts to obtain and retain Amvona Fund investors, and by failing to disclose that The Amvona Fund's positive returns from its short position in Ligand were based on Defendants' stock price manipulation. (Compl. ¶ 7.) These misrepresentations caused Defendants' disclosures about both The Amvona Fund's investment strategy and about Lemelson's abilities as a financial adviser to be materially misleading. (Compl. ¶ 54.) The Commission alleges the specific reports, interviews, emails, and client communications where these misrepresentations and omissions were made. (Compl. ¶ 55.)

Defendants claim that Rule 206(4)-8 does not apply to statements like those Defendants made, but only applies to statements about "the fund or the manager himself." (Br. at 19-20.)

They cite five (non-exclusive) examples of statements the Commission described in the Rule Release for Rule 206(4)-8: (1) "the experience and credentials of the adviser (or its associated persons)"; (2) "the risks associated with an investment in the pool"; (3) "the performance of the pool or other funds advised by the adviser"; (4) "the valuation of the pool or investor accounts in it"; and (5) "practices the adviser follows in the operation of its advisory business such as how the adviser allocates investment opportunities." 72 Fed. Reg. 44756, 44757 (Aug. 9, 2007).

They ignore that the Commission *has* alleged that Defendants' misrepresentations and fraudulent omissions relate to both the fund and the manager. Defendants' misrepresentations about Ligand fit squarely into the "risks associated with an investment" and "performance of the pool" examples Defendants cite from the Rule Release, as they are statements about The Amvona Fund and its $5 million short position in Ligand which was part of the pooled investment. Similarly, statements and omissions concerning how The Amvona Fund actually made its money (through fraud) are, by definition, statements about the fund (fitting the "performance of the pool" example). Statements and omissions about Lemelson's abilities as a financial adviser (including his ability to pick stocks that will decline in price) are statements about the manager (fitting the "experience and credentials" and "practices the adviser follows in the operation of its advisory business" examples). In other words, the Commission alleges the very types of misrepresentations and omissions the Defendants say Rule 206(4)-8 was intended to cover.

But even if Defendants were correct that this case presented a new or unanticipated application of Rule 206(4)-8, they do not explain why that would be legal grounds to dismiss the claim (or even why it would be a problem at all). In citing the Rule Release, Defendants skip over the Commission's expressed intent at the beginning of the Release: "our intent is to

prohibit *all fraud* on investors in pools managed by investment advisers." 72 Fed. Reg. 44756, 44757 (Aug. 9, 2007) (emphasis added). The Commission also made clear that it intended the Rule to extend to the limits of their Congressional authority: "In adopting rule 206(4)-8, we intend to employ all of the broad authority that Congress provided us in section 206(4) and direct it at adviser conduct affecting an investor or potential investor in a pooled investment vehicle." *Id*. The Commission explained that the Rule was a "general antifraud rule[] capable of flexibility." *Id.* The Rule Release thus explicitly rejects the argument that the scope is limited in the way Defendants claim.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## CONCLUSION

Defendants do not raise any adequate grounds to dismiss this action. For the reasons stated above, Defendants' motion should be denied.

Dated: November 8, 2018

Respectfully submitted,

*/s/ Alfred A. Day*
Alfred A. Day (BBO #654436)
Marc J. Jones (BBO #645910)
Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
617-573-4537 (Day)
617-573-8947 (Jones)
DayA@sec.gov
JonesMarc@sec.gov
Attorneys for Plaintiff

Virginia M. Rosado Desilets
Sonia G. Torrico
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on November 8, 2018.

*/s/ Alfred A. Day*