## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GREGORY LEMELSON and LEMELSON CAPITAL | ) |
| MANAGEMENT, LLC, | )   Civil Action No. 1:18-cv-11926-PBS |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| THE AMVONA FUND, LP, | ) |
| | ) |
| Relief Defendant | ) |
| | ) |

_____

## ANSWER OF DEFENDANTS TO AMENDED COMPLAINT

Defendants Gregory Lemelson ("Fr. Emmanuel"), Lemelson Capital Management, LLC

(LCM), and The Amvona Fund, LP (Amvona) answer Plaintiff Securities and Exchange

Commission's Amended Complaint as follows and demand a jury trial on all counts so triable:

### SUMMARY OF ALLEGATIONS

1.  Admitted that Fr. Emmanuel purchased short positions in the stock of Ligand

Pharmaceuticals, Inc. and that a short position is an investment technique whereby an investor

profits when the price of a stock falls.  Otherwise, denied.

2. Denied that an investor with a short position necessarily "hopes" the stock will "soon" drop. Denied that the investor merely "hopes"[1] the stock is overvalued. Otherwise, admitted.

3. Admitted that between May 2014 and October 2014, Fr. Emmanuel held short positions in Ligand stock through Amvona. Answering further, Defendants state that, as written, this allegation is misleading, because for the most part, he took the position early on and held it virtually the entire time, exposing The Fund to the risk of tremendous loss. Defendants specifically deny Fr. Emmanuel engaged in a "campaign attacking" Ligand. Defendants deny the remaining allegations of this Paragraph.

4. Admitted that between June 2014 and August 2014, Fr. Emmanuel authored research reports concerning Ligand. Further admitted that between June 2014 and October 2014, Fr. Emmanuel participated in live and written interviews concerning Ligand. Otherwise, denied.

5. Denied that Fr. Emmanuel ever said Ligand's main source of licensing revenue "was imminently 'going away'". Further denied that Fr. Emmanuel ever said that a "Ligand representative agreed with his analysis." Further denied that Fr. Emmanuel ever commented on the merits of Ligand's licensing agreement with Viking let alone called it a "sham." Defendants deny the remaining allegations in this Paragraph.

6. Denied.

7. Denied.

8. Admitted that on June 16, 2014, Ligand's opening share price was $67.26. Admitted that on October 13, Ligand's share price closed at $44.78. Admitted that Fr.

---

[1] One glaring example is activist short-sellers, like Fr. Emmanuel here, a recognized group of short-sellers who work to identify business and accounting frauds. Short sellers take on exceptional, unlimited risk, unlike longs whose maximum risk is capped at 100 percent.

Emmanuel had covered the vast majority of Amvona's short position in Ligand by October 13 and had generated approximately $1.3 million in profits on behalf of Amvona. Denied that Fr. Emmanuel engaged in a scheme to mislead investors about Ligand's value. Denied that any of Amvona's profits were illegal. Denied that as of March 21, 2019, the day that the Commission filed the Amended Complaint, Ligand's stock traded at over $250 per share. This is a patently false statement. On March 21, 2019, Ligand's stock price opened at $121.40, more than 50% lower than the Commission's false allegation. Except as specifically admitted, Defendants deny the allegations in this Paragraph.

9.      Denied.

10.     Admitted the Commission seeks this relief. Denied it is entitled to it.

## JURISDICTION AND VENUE

11.     Admitted that the Commission brings the action and seeks the imposition of a civil penalty pursuant to the statutes referenced. Denied the Commission is entitled to any relief.

12.     Admitted the Court has jurisdiction. Denied the Commission has any viable remedy under these statutes.

13.     Admitted venue is proper. Admitted Fr. Emmanuel lived and worked in Massachusetts during the relevant time period. Denied that the principal place of business of Amvona and Lemelson Capital Management is in Massachusetts. Denied that Defendants violated any securities laws.

14.     This is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny same.

15.     Denied.

16.     Denied that Fr. Emmanuel has ever engaged, or will engage, in any securities law violations.

## DEFENDANTS AND RELIEF DEFENDANTS

17.     Denied that Fr. Emmanuel resides, or has ever resided, in Mansfield, Massachusetts. The remaining allegations in this Paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny same.

18.     Denied that Lemelson Capital Management, LLC has its principal office in Marlborough, Massachusetts. Otherwise admitted.

19.     Denied that The Amvona Fund, LP has its principal office in Marlborough, Massachusetts. Denied that more than half of Amvona's assets belong to Fr. Emmanuel and his family. Denied that Fr. Emmanuel is the director of "Amvona Limited" or that such an entity exists. Denied that Amvona has approximately $15 million of assets. Denied that Amvona advertises itself as a long-position fund. Amvona correctly holds itself out to be a "long-biased, deep value fund." Otherwise, admitted.

## RELATED ENTITIES

20.     Denied that Ligand is a biopharmaceutical company involved in the development and licensing of medicines and technologies. Otherwise, admitted.

21.     Denied that Viking Therapeutics is a clinical-stage biopharmaceutical company focused on developing treatments for metabolic and endocrine disorders. Denied that through a Master License Agreement between Ligand and Viking dated May 2014, Ligand became a 49.8% owner of Viking common stock. Ligand did not become an owner of Viking common stock until a year later in April 2015. Otherwise, admitted.

## FACTS

**A.    Lemelson Published and Disseminated Negative Reports about Ligand While Increasing Amvona's Short Position in Ligand[2]**

22.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph concerning Defendants' initial short position in Ligand. Admitted that shortly thereafter, Fr. Emmanuel began publicly disseminating information about Ligand—much of which questioned the legitimacy of Ligand's business model and practices. Denied that any of his statements were false or misleading.  Denied that Fr. Emmanuel engaged in a fraudulent scheme to drive down Ligand's share price and profit from his short position.

23.    Admitted that between June 16 and August 22, 2014, Fr. Emmanuel published five reports that discussed Ligand.  Admitted that, aside from his editor, Fr. Emmanuel was the sole author and solely responsible for the content of each report.  Denied that the reports were negative about Ligand and the company's value and prospects; rather they reported truthful and accurate information about Ligand.  Denied that these reports contained false or misleading statements of material fact.  Denied that Fr. Emmanuel used any false or misleading statements in any way.  Denied that Fr. Emmanuel "levied" an "attack" against "Ligand and its valuation." Except as expressly admitted, Defendants deny the allegations in this Paragraph.

24.    Denied that Fr. Emmanuel published a report about Ligand on June 16, 2014, titled "Ligand Pharmaceuticals (NASDAQ: LGND)" (the "June 16th Report).  Answering further, Defendants state the title of the report was "Ligand Pharmaceuticals (NASDAQ: LGND) Severe competitive threat to key royalty program and 'going concern' risk drive 100 percent downside".  Defendants state that the report speaks for itself and deny any allegations inconsistent with the language of the document.  Specifically denied that Fr. Emmanuel stated

---

[2]        Defendants deny that they increased Amvona's short position in Ligand.

that Promacta "was on the brink of obsolescence." Denied that Fr. Emmanuel said a Ligand representative stated the company knew Promacta was "going away." Answering further, Defendants state that during a radio interview, Fr. Emmanuel truthfully stated that a third-party Investor Relations representative acknowledged that Promacta was going away. Answering further, recent events including statements made by Ligand's CEO, John Higgins, have demonstrated that this was unequivocally a true statement. Specifically denied that in the June 19 interview, Fr. Emmanuel said, "Ligand's fair value is roughly $0 per share, or 100 percent below the current stock price." Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph concerning the specifics of Fr. Emmanuel's short position in Ligand. Denied that "in the days following the June 16 report Ligand's stock price dropped approximately 16%." Given the extreme volatility of Ligand's stock price during that time, the Commission's statement in this regard is intentionally misleading.

25. Denied that Fr. Emmanuel took efforts to drive Ligand's stock price lower. Denied that Fr. Emmanuel's July 3, 2014 report contained any false statements. Denied that Fr. Emmanuel characterized a transaction between Ligand and Viking as a "sham". Answering further, Fr. Emmanuel states that the July 3rd Report speaks for itself and denies any allegations inconsistent with the language of that document.

26. Defendants state that the August 4, 2014 report speaks for itself and deny any allegations inconsistent with the language of that document. Specifically denied that the August 4th Report contains any false statements about Promacta. Also specifically denied that the August 4th report ever used the word "obsolete."

27.     Defendants state that the August 14, 2014 report speaks for itself and deny any allegations inconsistent with the language of that document.  Specifically denied that the August 14th Report claimed that Ligand was "teetering on the brink of bankruptcy."

28.     Defendants state that the August 22, 2014 report speaks for itself and deny any allegations inconsistent with the language of that document.  Specifically denied that the August 22nd Report made any misleading statements about Ligand's financial condition.  Further denied that the August 22nd Report claimed that "common shareholders could be wiped out almost entirely without notice."  This quotation does not appear in the August 22nd Report.

29.     Denied that Fr. Emmanuel distributed his reports to Globe Newswire.   Otherwise admitted.

30.     Denied that Fr. Emmanuel ever stated that Ligand's stock "had no intrinsic value" in any interviews between June and October 2014.  Answering further, Defendants state that Fr. Emmanuel never sought out these interviews.  Otherwise, admitted.

    a. Admitted that on June 19, 2014, Fr. Emmanuel appeared, by invitation, on Benzinga's Premarket Prep show for an audio interview.  Answering further, Defendants state that during the radio interview, Fr. Emmanuel truthfully stated that a third-party Investor Relations representative stated he understood Promacta was "going away".  Denied that Fr. Emmanuel ever said that a Ligand representative "agreed" with his reports. Denied that Fr. Emmanuel's comments regarding Promacta were "reiterated" in the August 4 Report. Answering further, recent events including statements made by Ligand's CEO, John Higgins, have demonstrated that this was unequivocally a true statement.

    b. Admitted.

    c. Admitted.

    d. Admitted

31.     Denied that the purpose of Fr. Emmanuel's reports and interviews was to shake investor confidence in Ligand and drive down Ligand's share price.  Denied that in a solicitation

to a prospective Amvona investor, Fr. Emmanuel touted the June 19th Interview and asserted that "[s]hares of Ligand dropped ~2% during the interview." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph.

32.     Denied that Fr. Emmanuel took affirmative steps to suppress commentary that highlighted his bias, his lack of familiarity with the pharmaceutical industry, and his motivation to drive down the price of Ligand stock. Further denied that Fr. Emmanuel had any bias, that he lacked familiarity with the pharmaceutical industry, or that he was motivated to drive down the price of Ligand stock. Denied that Fr. Emmanuel successfully petitioned Seeking Alpha to remove commentary on or around the dates listed in this Paragraph. Answering further, Defendants state that Seeking Alpha is an independent third-party corporation with clearly defined guidelines for comments. Comments that violate Seeking Alpha policies are removed by the company, regardless of how they are brought to the attention of the company. A member cannot "petition" the company for the removal of comments. Answering further, Defendants deny that Fr. Emmanuel has any control or influence over Seeking Alpha's comments policies, procedures, or guidelines. Denied that Fr. Emmanuel unsuccessfully petitioned Seeking Alpha to remove commentary on or around July 7, 2014 for the reasons listed above.

33.     Denied that Ligand's share price on August 22, 2014 had anything to do with Fr. Emmanuel's reports and interviews. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph concerning the specifics of Defendants' short position. Answering further, this Paragraph is misleading to the extent it ignores Amvona's significant cover in June 2014.

34.     Admitted that Amvona made profits from its trading in Ligand's stock.  Denied that Fr. Emmanuel personally profited from the trade.  Denied that any of the trading activity was fraudulent.

**B.     Lemelson's False and Misleading Statements Concerning Ligand.[3]**

35.     Denied that Fr. Emmanuel presented his reports as an "expose."  Answering further, Fr. Emmanuel accurately and transparently presented his reports as the work of a research analyst and activist short-seller.  Admitted that his research reports were based on extensive research and conversations with medical experts.  Denied that Fr. Emmanuel claimed his reports were based on discussions with the company's representatives.  Denied that Fr. Emmanuel made any material misstatement of fact—much less that he did so intentionally or recklessly.

**1)  Lemelson Falsely States that Ligand's Flagship Product was "Going Away."[4]**

36.     Defendants state that the June 16th Report speaks for itself and deny any allegations inconsistent with the language of that document.  Specifically denied that Fr. Emmanuel stated that a Ligand representative agreed with him and acknowledged that Promacta was going to become "obsolete."  Also specifically denied that the central thesis of the June 16th Report was that Promacta was "facing competitive pressure from a new competing drug, Sovaldi."  Answering further, Defendants state that during a radio interview, Fr. Emmanuel truthfully stated that a third-party Investor Relations representative acknowledged that Promacta was going away. Denied that Fr. Emmanuel ever stated that a Ligand representative used the

---

[3]     Defendants deny that Fr. Emmanuel made false and misleading statements concerning Ligand.
[4]     Defendants deny that Fr. Emmanuel stated Ligand's flagship produce was "going away" and further deny that such a statement was false.

word "obsolete." Answering further, recent events, including statements made by Ligand's CEO, John Higgins have demonstrated that this was unequivocally a true statement.

37. Admitted.

38. Admitted that Fr. Emmanuel's statement represented a conversation he had on June 18, 2014 with a representative of Ligand's investor relations firm (the "IR Representative"). Denied that the IR Representative never made such a statement. Answering further, Fr. Emmanuel's statement concerning the IR Representative's comment is corroborated by his electronic and contemporaneous notes, stamped with a digital date and time stamp, provided to the Commission. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph concerning an email from the IR representative. Admitted that Fr. Emmanuel did not correct or withdraw his accurate statement or disclose that the IR Representative apparently falsely denied having made the statement to him. Denied that Fr. Emmanuel's statement was false.

39. Denied.

40. Denied that Fr. Emmanuel attempted to bolster his representation that Promacta was "on the brink of obsolescence" by misleading readers of his reports about other evidence he had about Promacta. Denied that Fr. Emmanuel used the word "evidence" in this section of the June 16th report. Denied that Fr. Emmanuel made a false representation in this regard. Further denied that Fr. Emmanuel claimed Promacta was "on the brink of obsolescence." Answering further, Defendants state that the June 16 Report speaks for itself and deny any allegations inconsistent with the language of that document. Denied that any statement in the June 16 Report was misleading. Answering further, Fr. Emmanuel never claimed to have spoken to the U.S. doctor directly; in fact, he explicitly disclosed that it was the European doctor—not Fr.

Emmanuel —who spoke to the U.S. doctor.  Further, the failure to disclose the European doctor's investment in Amvona was not misleading where (i) the European doctor did not provide an opinion himself; (ii) the U.S. doctor, and source of the information, had no financial interest in Amvona; and (iii) the European doctor did not comment on Promacta, but rather merely conveyed his American colleague's view on another drug, Sovaldi.

41.     Defendants state that the June 16 Report speaks for itself and deny any allegations inconsistent with the language of that document.

42.     Denied that Fr. Emmanuel's statements about Promacta were false.  Denied that Fr. Emmanuel attributed to Ligand his statements about Promacta.  Answering further, Defendants state that during a radio interview, Fr. Emmanuel truthfully stated that a third-party Investor Relations representative acknowledged that Promacta was "going away," a term Fr. Emmanuel himself never used except when quoting the IR Representative.  Answering further, recent events, including statements made by Ligand's CEO, John Higgins, have demonstrated that this was unequivocally a true statement.  Denied that Fr. Emmanuel lied about Promacta's viability.  Denied that Fr. Emmanuel was reckless in any way.

43.     Denied that Fr. Emmanuel's statements about Promacta were false or material.  Admitted that Promacta was (but no longer is) one of Ligand's main sources of revenue.  Denied that Fr. Emmanuel had a scheme to drive down Ligand's stock price.  Except as expressly admitted, Defendants deny the allegations in this Paragraph.

### 2)  Misstatements about Viking Therapeutics, Inc.[5]

44.     Defendants state that the July 3 Report speaks for itself and deny any allegations inconsistent with the language of that document.  Denied that *Fr. Emmanuel* claimed that Ligand

---

[5]     Defendants deny that Fr. Emmanuel made any misstatements about Viking.

had "engaged in a 'creative transaction'" with Viking. Answering further, Defendants state that Fr. Emmanuel was simply quoting a statement made by Ligand's own CEO. Denied that Fr. Emmanuel used the term "to the detriment of shareholders." Denied that Fr. Emmanuel made any material misstatements of fact regarding Ligand's licensing agreement with Viking and Viking's S-1 registration statement.

45.     Denied that Viking was not a "shell." Denied that Viking was in the business of developing treatments for certain kinds of illnesses. Denied that Ligand had bought just under half of the company at this time. Denied that Fr. Emmanuel started trying to drive down Ligand's stock price. Denied that Viking was working on developing certain of Ligand's drugs with financial support from Ligand. Admitted that Ligand purportedly licensed five drugs to Viking, its alter-ego, to develop.

46.     Defendants state that the July 3 Report speaks for itself and deny any allegations inconsistent with the language of that document. Specifically denied that Fr. Emmanuel's statement that "Viking does not intend to conduct any preclinical studies or trials" was false. In its S-1, Viking explicitly stated that, "as a company, we do not have any experience in conducting clinical trials for our drug candidates." Viking then disclosed: **We intend to rely on third parties to conduct our preclinical studies and clinical trials and perform other tasks for us. . . .** (Emphasis in original). Denied that Fr. Emmanuel's claim that Viking was "an affiliate shell company" that Ligand used to "create almost a veritable pyramid of shell companies" that was "guaranteed to lose money" was false.

47.     Defendants state that the July 3 Report speaks for itself and deny any allegations inconsistent with the language of that document. Specifically denied that Fr. Emmanuel's statements in the July 3 Report were false. Answering further, the S-1 states only that certain

balance sheets were audited, not that the financial statements in their entirety were audited, and thus his comments regarding financial *statements* were accurate.

48.     Defendants state that the May 21, 2014 Master License Agreement speaks for itself and deny any allegations inconsistent with the language of that document.  Specifically denied that "Viking is engaged in the research, development, manufacturing and commercialization of pharmaceuticals products."  Answering further, in its S-1, Viking explicitly stated that, "as a company, we do not have any experience in conducting clinical trials for our drug candidates." Viking then disclosed:  **We intend to rely on third parties to conduct our preclinical studies and clinical trials and perform other tasks for us. . . .** (Emphasis in original).

49.     Denied that Fr. Emmanuel's statements about Viking were false.  Denied that Fr. Emmanuel's statements about Viking were contradicted by the source Fr. Emmanuel relied upon. Denied that Fr. Emmanuel lied about or was reckless as the truth or falsity of his statements. Answering further, Defendants state that the Commission's false statements in this regard are contradicted by the very sources upon which the Commission purports to rely.

50.     Denied that Fr. Emmanuel's statements about Viking were false or material. Denied that any of them concerned a significant financial transaction.  Denied that they sought to cast doubt on the stated benefits of the Ligand/Viking transaction and alleged misconduct by Ligand management.  Answering further, Fr. Emmanuel revealed the truth in an accurate way regarding Ligand's use of alter-ego, shell entities such as Viking.  Subsequent comments by Ligand's CEO, John Higgins, have proven Fr. Emmanuel's comments and research reports accurate.  Denied that Fr. Emmanuel referred to the Ligand-Viking business relationship as a "sham" or "fraud."  Denied that Fr. Emmanuel made any material falsehoods or any false claims

about the Ligand-Viking business relationship. Denied that Fr. Emmanuel engaged in a scheme to drive down Ligand's stock price

### 3) Lemelson Makes Misleading Statements About Ligand's Financial Condition.[6]

51. Defendants state that the August 14 Report speaks for itself and deny any allegations inconsistent with the language of that document. Specifically denied that Fr. Emmanuel did not explain his decision to exclude Ligand's intangible assets. Further denied that Fr. Emmanuel's decision to exclude Ligand's intangible assets was misleading. Denied that Ligand's purported intangible assets included intellectual property. Admitted that in its quarterly financial reports on Forms 10-Q both before and after Ligand's August 2014 debt issuance, Ligand's *total* assets exceeded its total liabilities. Otherwise, denied. Answering further, Defendants state that the Commission only concocted this frivolous theory after Defendants proved that the Commission's initial theory as to Fr. Emmanuel's debt-to-tangible equity ratio was patently false. Specifically, the SEC alleged in its original Complaint, "In calculating Ligand's 'debt to equity ratio of 11,667 to 1,' Fr. Emmanuel included the new debt but not the proceeds of the loan, which would have yielded a debt-to-equity ratio closer to 1:1." The SEC has since been forced to acknowledge that this allegation was wrong because, of course, proceeds from a debt offering are not—as the SEC stated—included in shareholder equity.

52. Defendants state that the August 22 Report speaks for itself and deny any allegations inconsistent with the language of that document. Specifically denied that Fr. Emmanuel "painted a misleading picture of Ligand's financial health," except insofar as he significantly *understated* the problems with Ligand's financial health. Admitted that Fr. Emmanuel calculated Ligand's debt-to-tangible equity as described in this Paragraph, the only

---

[6]      Defendants deny that Fr. Emmanuel made any misleading statements about Ligand's Financial Condition.

possible way to do so.  Denied that Fr. Emmanuel's correct calculation was misleading.  Denied that his calculation and statements "ignored the cash proceeds of the debt issuance."  Admitted that Ligand received "tens of millions of dollars," which the bond holders had a secured right to over the common shareholders, from the debt issuance—far less than the $245 million in debt it incurred.  Denied that the cash "remained at Ligand's disposal as of the end of the third quarter of 2014."  Denied that Fr. Emmanuel's statement that Ligand's shareholders "have only the protection of $21,000 in tangible equity to shield them from $245 million in debt" compares apples to oranges.  Denied that shareholder equity is not protection from debt.  Admitted that shareholder equity represents the difference between assets and liabilities on a balance sheet, and more specifically represents the *only* security interest of common shareholders that Fr. Emmanuel clearly was referencing.  Denied to the extent the SEC is alleging tangible equity is just a "balance sheet figure."  Denied that assets—including cash—"protect" shareholders from debt.  Specifically denied that the cash at issue here protected Ligand's common shareholders from debt.  Denied that tangible equity has no bearing on "protection from debt" or the actual financial wherewithal of Ligand.  Denied that Fr. Emmanuel's using the tangible equity as of June 30, 2014 and the full amount of the August 2014 debt offering "concoct[ed] a ratio that looks really bad (11,668 dollars of debt for every dollar of shareholder equity)…"  As the SEC must realize, this ratio vastly overstated Ligand's financial health because after the debt offering, Ligand's shareholder's tangible equity went from positive $21,000 to approximately *negative $13 million, making any ratio incalculable*.  Answering further, Defendants state that the Commission only concocted this frivolous theory after Defendants proved that the Commission's initial theory as to Fr. Emmanuel's debt-to-tangible equity ratio was patently false and further demonstrated the Commission's complete lack of understanding of basic accounting principles.

Specifically, the SEC alleged in its original Complaint, "In calculating Ligand's 'debt to equity ratio of 11,667 to 1,' Fr. Emmanuel included the new debt but not the proceeds of the loan, which would have yielded a debt-to-equity ratio closer to 1:1." The SEC has since been forced to acknowledge that this allegation was wrong because, of course, proceeds from a debt offering are not—as the SEC stated—included in shareholder equity. Except as expressly admitted, Defendants deny the allegations in this Paragraph.

53.     Denied that it is misleading to suggest that a debt-to-tangible equity ratio is a test for insolvency. It is. Answering further, Defendants state that the Commission only concocted this frivolous theory after Defendants proved that the Commission's initial theory as to Fr. Emmanuel's debt-to-tangible equity ratio was patently false. Specifically, the SEC alleged in its original Complaint, "In calculating Ligand's 'debt to equity ratio of 11,667 to 1,' Fr. Emmanuel included the new debt but not the proceeds of the loan, which would have yielded a debt-to-equity ratio closer to 1:1." The SEC has since been forced to acknowledge that this allegation was wrong because, of course, proceeds from a debt offering are not—as the SEC stated—included in shareholder equity.

54.     Denied that Fr. Emmanuel's statements were misleading or material. Answering further, Defendants state that the Commission only concocted this frivolous theory after Defendants proved that the Commission's initial theory as to Fr. Emmanuel's debt-to-tangible equity ratio was patently false. Specifically, the SEC alleged in its original Complaint, "In calculating Ligand's 'debt to equity ratio of 11,667 to 1,' Fr. Emmanuel included the new debt but not the proceeds of the loan, which would have yielded a debt-to-equity ratio closer to 1:1." The SEC has since been forced to acknowledge that this allegation was wrong because, of

course, proceeds from a debt offering are not—as the SEC stated—included in shareholder equity.

**C.     Lemelson and LCM Misled Prospective Investors.[7]**

55.     Denied.

56.     Denied that Fr. Emmanuel and LCM made any misstatements of material fact. Denied that the profitability of Fr. Emmanuel's and LCM's short selling was in any way based on any fraud or false statements. Denied that any disclosures concerning Amvona were materially false or misleading. The remainder of the allegations are denied.

## FIRST CLAIM FOR RELIEF

**Fraud in the Purchase or Sale of Securities in
Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

**(Lemelson and LCM)**

57.     Defendants reallege and incorporate by reference their responses to paragraphs 1 through 56 above, as if fully set forth herein.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

---

[7]     Defendants deny that Fr. Emmanuel and LCM misled prospective investors.

## SECOND CLAIM FOR RELIEF

### Fraudulent, Deceptive, or Manipulative Act or Practice
### to Investors or Potential Investors in Pooled Investment Vehicle in
### Violation of Section 206(4) of the Investment Advisors Act and Rule 206(4)-8 Thereunder

### (Lemelson and LCM)

62.     Defendants reallege and incorporate by reference their responses to paragraphs 1 through 61 above, as if fully set forth herein.

63.     This Paragraph contains a conclusion of law to which no response is necessary.

64.     Denied.

65.     This Paragraph contains a conclusion of law to which no response is necessary.

66.     This Paragraph contains a conclusion of law to which no response is necessary.

67.     Denied.

## THIRD CLAIM FOR RELIEF

### Other Equitable Relief, Including
### Unjust Enrichment and Constructive Trust

### (As to Relief Defendant The Amvona Fund, LP)

68.     Defendants reallege and incorporate by reference their responses to paragraphs 1 through 67 above, as if fully set forth herein.

69.     This Paragraph contains a conclusion of law to which no response is necessary.

70.     Denied.

71.     Denied.

72.     Denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof for such defenses that they would not otherwise have, Defendants assert the following affirmative defenses:

18

### First Affirmative Defense

The Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Commission's claims are barred by the First Amendment to the United States Constitution.

### Third Affirmative Defense

The Commission's claims are barred by the doctrine of unclean hands.

### Fourth Affirmative Defense

The Commission's claims are an illegal retaliation in response to Defendants' whistleblower complaint.

### Fifth Affirmative Defense

The Commission's claims are barred because the Complaint was filed after the deadline for filing an action under 15 U.S.C. § 78d-5 and the Commission's investigation was not sufficiently complex such that a determination regarding the filing of an action against a person could not be completed within the deadline specified in paragraph (1) of 15 U.S.C. § 78d-5.

### Sixth Affirmative Defense

The Commission's claims are barred, in whole or in part, because Defendants acted in good faith, at all times and in conformity with all applicable federal statues, including the Exchange Act and the Investment Advisors act, and all applicable rules and regulations promulgated thereunder.

## Seventh Affirmative Defense

The Commission's claim for injunctive relief is barred because, *inter alia*, there has been no violation of the Exchange Act or the Investment Advisors Act, and, even if there had, there is no reasonable likelihood that any violation will be repeated. The Commission's injunctive relief claim is further barred because the adverse effects of an injunction far outweigh any benefit form an injunction.

## Eighth Affirmative Defense

The Commission's claim for penalties is barred because, *inter alia*, any alleged violation was isolated and/or unintentional.

## Ninth Affirmative Defense

The Commission's claim for disgorgement is barred because, *inter alia*, Defendants never received any ill-gotten profits or direct economic gains as a result of any of the actions alleged in the Amended Complaint.

## Tenth Affirmative Defense

The Commission's Section 10(b) and Rule 10b-5 claims fail, in whole or in part, because Fr. Emmanuel's statements concerning Viking were not "in connection with the purchase or sale" of Viking's stock, and Viking securities were not marketed on either public or private exchanges, and could not have been subject to price manipulation.

## Reservation of Rights

Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserve all rights to amend this Answer and all such defenses.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court enter an Order:

1.      Entering judgment in favor of Defendants and against the Commission on all counts and alleged claims for relief;

2.      Dismissing the Amended Complaint with prejudice;

3.      Awarding Defendants their costs and attorney's fees incurred in defending this action;

4.      Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Defendants demand a trial by jury on all counts so triable.

Respectfully submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT, LLC,
and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
LIBBYHOOPES, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617) 338-9300
dbrooks@libbyhoopes.com

Dated:  April 3, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on April 3, 2019.

*/s/ Douglas S. Brooks*
Douglas S. Brooks