

# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Trading in the Securities of Ligand Pharmaceuticals, Inc. (HO-12718)**

To:     Gregory M. Lemelson
        Lemelson Capital Management, LLC
        225 Cedar Hill Street
        Suite 200
        Marlborough, MA  01752

---

☒     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

        ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than September 16, 2015 at 9:30 a.m.

---

☒     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

        Securities and Exchange Commission, 100 F Street, N.E., Washington, DC, October 27, 2015 at 9:00 a.m.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:     _Virginia Mark Desilets_                         Date:     September 1, 2015
        Virginia M. Rosado Desilets, Senior Counsel
        U.S. Securities and Exchange Commission
        100 F Street, N.E.
        Washington, DC  20549

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

Subject to Protective Order in D. Mass. Case No. 18-cv-11926-PBS

SEC-Lemelson-E-1175010
EPROD-SEC-LIT-E-001178022

SUBPOENA ATTACHMENT FOR GREGORY M. LEMELSON
September 1, 2015
In the Matter of Trading in the Securities of Ligand Pharmaceuticals, Inc. (HO-12718)

A.  **Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    "Lemelson Capital" means Lemelson Capital Management, LLC and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    "Amvona" means The Amvona Fund, L.P. and any other fund managed or advised by Lemelson Capital.

3.    "Lemelson" means Gregory M. Lemelson, also known as Emmanuel Lemelson, and any Representative thereof.

4.    "Ligand" or "LGND" means Ligand Pharmaceuticals, Inc., and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.    The term "Designated Accounts" means **any** brokerage account(s) controlled by you, for your benefit, or over which you have trading authority, that traded in the securities (including options trades, if applicable) of LGND.

6.    The term "ESD" means all electronic storage devices which can input, process, output, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  ESD includes, but is not limited to, any data-processing devices (e.g., personal computers, workstations, central processing units, memory typewriters, printers, facsimile machines, self-contained "laptop" or "notebook" computers); servers (e.g., file, application, and communication); internal and peripheral storage devices (e.g., fixed disks, removable media, external hard disks, thumb drives, flash drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, and other memory storage devices), peripheral input/output devices (e.g., as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (e.g., modems, cables and connections, recording equipment, RAM or ROM units), or parts that can be used to restrict access to computer hardware (e.g., physical keys and locks).

7.    The term "ESI" means electronically stored information of any kind, including each and every form including, but not limited to, matter, of any kind, type, nature, or description, including metadata; word processing files, including drafts and revisions; spreadsheet drafts and revisions; digital communications (e.g. e-mail, instant messaging, voicemail, etc.); databases including, but not limited to, schemas,

Subject to Protective Order in D. Mass. Case No. 18-cv-11926-PBS

SEC-Lemelson-E-1175011
EPROD-SEC-LIT-E-001178023

data dictionaries, etc.; documents created and modified by drawing, computer aided design software, document management software, or project management software; accounting application documents; presentation software documents including, but not limited to, slide shows, audio, video; documents created or modified by calendaring, task management, collaboration group management, or personal information software (e.g. Microsoft Outlook, Lotus Notes, Novell Group Wise, etc.); image or sound recordings; video; animation; audiovisual recordings; facsimile files; information created or modified through personal data assistants, (e.g. Palm Pilot), cellular telephones and smartphones (e.g. iPhone, Blackberry, Android) including, but not limited to, email, voicemail, short message service ("SMS") and multimedia messaging service ("MMS") messages; information created or modified with the use of archival software (e.g. .gho, .zip, etc.); information from network and server activity, such as logging files, electronic mail logging, routine software logs, access logs, etc.; and information created or modified using development, rapid development, and prototyping software. ESI includes all of the foregoing items of evidence in whatever form and by whatever means created, maintained, or stored, including, but not limited to, any electrical, electronic, or magnetic form or device, such as floppy diskettes, hard disk drives, ZIP disks, CD-ROMs, DVDs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal data assistants, and cellular telephones, smartphones, printouts or readouts from any magnetic storage device. ESI and documents produced in electronic or magnetic form shall include related hardware, software, documentation, and security instruments.

8.   The term "handheld device" consists of portable or mobile hardware devices to include wireless handheld devices, smartphones, personal digital assistants (PDA), tablets, Bluetooth, and other devices that provide computing, communications, electronic mail, telephone/fax, texting, instant messaging, paging, networking, or storage functionality. This includes, but is not limited to, devices used as a calendar, organizer, and computer or for electronic data storage.

9.   The term "security instruments" consists of passwords and other data security devices that are designed to grant or restrict access to or conceal data, information, software, or documentation. Security instruments may consist of hardware, software, biometric data, or other programming code. A password is an example of a security instrument, which functions as a digital key to allow or disallow access to particular data security devices. Security instruments also include hardware, which may include encryption devices, microchips, and adapter cards. Data security software or digital code may include programming code that maintains security functions when activated. Security instrument software or code may also encrypt, decrypt, compress, conceal, or cause destruction of any protected ESI to make it inaccessible or unusable, as well as reverse the process to restore it.

10.  The term "plain text" refers to the content of an ordinary document readable and reviewable as textual material with little or no processing or special decoding. Plain text documents are not encrypted and can be opened, read, and edited by the user.

Subject to Protective Order in D. Mass. Case No. 18-cv-11926-PBS

SEC-Lemelson-E-1175012
EPROD-SEC-LIT-E-001178024

11.    "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

12.    A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

13.    "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

14.    "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

15.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

16.    An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

17.    The term "you" and "your" means the Person to whom this subpoena is issued.

3

SEC-Lemelson-E-1175013
EPROD-SEC-LIT-E-001178025

18.   To the extent necessary to bring within the scope of this request any information or Documents that might otherwise be construed to be outside its scope:

    a.   the word "or" means "and/or";

    b.   the word "and" means "and/or";

    c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

    d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and

    e.   the singular includes the plural and the plural includes the singular.

## B.   Instructions

1.   Unless otherwise specified, the document request calls for production of the original Documents and all copies and drafts of same. Documents responsive to this request may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document request, including all metadata, should also be produced in their native software format.

2.   For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you must secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.   Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.   In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.   Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

4

SEC-Lemelson-E-1175014
EPROD-SEC-LIT-E-001178026

6.     Documents should be labeled with sequential numbering (bates-stamped).

7.     You must produce all Documents created during, or Concerning, the period **September 1, 2012 to the present**, unless otherwise specified.

8.     The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of your firm complete a business records certification (a sample of which is enclosed) and return it with the Document production.

10.    **If the Document production contains Bank Secrecy Act materials, please segregate and label those materials within the production.**

11.    This request covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing.  The list should describe each item separately, noting:

   a.     its author(s);
   b.     its date;
   c.     its subject matter;
   d.     the name of the Person who has the item now, or the last Person known to have it;
   e.     the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f.     the basis upon which you are not producing the responsive Document;
   g.     the specific request in the request to which the Document relates;
   h.     the attorney(s) and the client(s) involved; and
   i.     in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.    If Documents responsive to this request no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.     Documents to be Produced

1.     Any and all computers, handheld devices, peripheral storage devices, and any ESD as defined under the Definitions section of this subpoena attachment in Your possession, custody or control during the time period of September 1, 2012 to the date of Your response to this subpoena, which may have stored ESI Concerning

5

Subject to Protective Order in D. Mass. Case No. 18-cv-11926-PBS

LGND or any current or former officers, director, employee, consultant, advisor, attorney or accountant of LGND, and any security instruments (e.g., passwords, USB keys, etc.) necessary to render documents in plain text.

2.  Any and all Documents, including but not limited to account statements, confirmations, Communications and emails Concerning Your purchase or sale of LGND securities or derivatives (including options).

3.  Any and all Documents Concerning Your reasons for trading in the securities or derivatives (including options), or for recommending that others trade in the securities or derivatives, of LGND, including any research or other sources consulted by You or others in connection with such trading.

4.  All Documents and Communications, including but not limited to personal and business email, text messages, instant messages, BlackBerry Messages, Skype messages, Facebook messages or posts, or any other form of electronic Communication, or any Document Concerning any Communication, Concerning LGND.

5.  All Documents Concerning any Communications with any current or former officer, director, employee, consultant, advisor, attorney, or accountant of LGND or its subsidiaries or affiliates.

6.  All Documents Concerning any Communications Concerning buying, selling or short-selling in the securities of LGND by any Person.

7.  Documents sufficient to identify all of Your home and business addresses.

8.  Documents sufficient to identify all of Your email addresses, social networking accounts and/or blogs (including but not limited to Facebook, LinkedIn, Twitter, MySpace, Skype, and Google+).

9.  Documents sufficient to identify all telephone numbers assigned to You or used by You, in a personal and/or business capacity, including home telephone number(s), business phone number(s) and cellular and/or mobile telephone number(s), and all billing records for those telephone numbers.

10.  Documents sufficient to identify all internet services used by You, in a personal and/or business capacity, and all billing records for those services.

11.  All Documents Concerning travel and travel-related expenses, including but not limited to travel records and expenses submitted for corporate reimbursement.

12.  All business and personal rolodexes, address books, contacts, and lists of telephone numbers, whether electronic or hard-copy, maintained by You or on Your behalf.

13.  All Documents and electronic records Concerning Your daily appointments, activities, meetings, and whereabouts, including hard copy calendars, online calendars, electronic calendars, electronic task lists or reminders, appointment books, etc.

14.  Your current resume, C.V., or biographical summary.

15.  Documents sufficient to identify all brokerage accounts in Your name, controlled by You, or in which You share a beneficial interest.

6

SEC-Lemelson-E-1175016
EPROD-SEC-LIT-E-001178028

16. All account opening Documents including but not limited to new account card or form, margin agreement, option agreement, discretionary trading authorization, power of attorney, trust and/or partnership Documents for the Designated Accounts.

17. All monthly account statements for the Designated Accounts.

18. All Documents Concerning any Communications Concerning the Designated Accounts, including, without limitation, correspondence, requests for transfers of funds or securities, or e-mails, in hard copy or electronic form.

19. Documents sufficient to identify all bank accounts in Your name, controlled by You, or in which You share a beneficial interest, and all account statements for each such account.

20. All Documents Concerning any direct or indirect payments or transfers of $1,000 or more from anyone, to or for You, or any member of Your family.

21. All Documents Concerning any direct or indirect payments or transfers of $1,000 or more to anyone from You, on behalf of You, or on behalf of any member of Your family, for the period from November 1, 2010 through the date of Your response to this subpoena, excluding payment of debts owed by You or Your family to financial institutions, or payments to government entities.

22. All Documents responsive the September 1, 2015 subpoena to Lemelson Capital that are in Your possession, custody and control but not in the possession, custody and control of Lemelson Capital.

Subject to Protective Order in D. Mass. Case No. 18-cv-11926-PBS

SEC-Lemelson-E-1175017
EPROD-SEC-LIT-E-001178029