**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

    v.

GREGORY LEMELSON and LEMELSON CAPITAL
MANAGEMENT, LLC,

      Defendants,

  and

THE AMVONA FUND, LP,

      Relief Defendant

_____

Civil Action No. 1:18-cv-11926-PBS

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND TO**
**COMPEL GREEK ORTHODOX METROPOLIS OF BOSTON**
**TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA**

Defendants Fr. Emmanuel Lemelson (identified in the Complaint as "Gregory Lemelson") ("Fr. Emmanuel") and Lemelson Capital Management, LLC ("LCM"), along with Relief Defendant The Amvona Fund, LP ("Amvona"), submit this memorandum in support of their motion to compel Greek Orthodox Metropolis of Boston to produce documents in response to the subpoena served on December 4, 2019 (the "Subpoena").

In the course of this litigation, Plaintiff, Securities and Exchange Commission (the "Commission") deposed Fr. Emmanuel on two occasions. At one of those depositions, the Commission asked Fr. Emmanuel a number of questions regarding his status, his official title, and his position within the Greek Orthodox Church. Subsequently, the Commission communicated that it had heard from Reverend Theodore J. Barbas that Fr. Emmanuel was not an ordained priest in the Greek Orthodox Church and that Fr. Emmanuel had unsuccessfully

applied to be ordained by the Greek Orthodox Metropolis of Boston.  The Commission stated

that it was planning to further explore these issues by serving a subpoena on the Greek Orthodox

Metropolis of Boston, asserting this information may be relevant to undermine Fr. Emmanuel's

credibility at trial.  Because the Commission's understanding was incorrect, and Fr. Emmanuel is

a canonically ordained priest in the Greek Orthodox Church and never applied to be ordained by

the Greek Orthodox Metropolis of Boston,[1] Fr. Emmanuel, through counsel, subpoenaed the

Greek Orthodox Metropolis of Boston for documents to disprove the information that had been

conveyed by it to the Commission and sent the Commission a detailed email explaining his

status with the Greek Orthodox Church.

On December 23, 2019, Defendants received the Greek Orthodox Metropolis of Boston's

response to the Subpoena.  The response was inadequate.  Specifically, the Greek Orthodox

Metropolis of Boston withheld three relevant documents as privileged because the documents

"are Church-Administrative in nature as they are between Hierarchs and Chancellors of the

Greek Orthodox Archdiocese of America and the Greek Orthodox Metropolis of Boston."  This

is not a valid basis to assert a privilege to withhold documents from production.  Counsel for Fr.

Emmanuel explained that the assertion of privilege was inadequate via email on December 24,

2019.

Since that time, the Greek Orthodox Metropolis of Boston, through Rev. Barbas, has

refused to respond clearly as to whether it will continue to assert that the documents are

privileged.  Instead, Rev. Barbas has stated that the matter was under consideration with legal

counsel for the Greek Orthodox Metropolis of Boston.  Being on notice that counsel may be

representing the Greek Orthodox Metropolis of Boston, counsel for Fr. Emmanuel requested the

---

[1] In fact, Fr. Emmanuel declined multiple requests by the Greek Orthodox Metropolis of Boston to either be ordained to that diocese or to take a permanent assignment in the diocese.

contact information for its counsel to continue any discussion regarding the dispute, as required

by Rule 4.2 of the Supreme Judicial Court Rules of Professional Conduct.  Rev. Barbas has

continually refused to provide counsel's information or to indicate whether the Greek Orthodox

Metropolis of Boston will change course instead of continuing to assert the legally incorrect

position that the withheld documents are privileged.

Because the Greek Orthodox Metropolis of Boston incorrectly withheld documents from

its response to the Subpoena, this Court should grant this Motion to Compel the production of

documents.  Further, due to the Greek Orthodox Metropolis of Boston's inappropriate behavior

of refusing to respond timely to requests to reconsider its position and refusing to provide contact

information of its purported legal representation, the Greek Orthodox Metropolis of Boston

should be sanctioned accordingly, including Defendants' costs and attorney's fees incurred in

connection with this Motion.

## FACTUAL BACKGROUND

On November 12, 2019, the Commission deposed Fr. Emmanuel.  Affidavit of Douglas

S. Brooks ("Brooks Aff.") ¶ 2.  During that deposition, the Commission asked a number of

questions regarding Fr. Emmanuel's status, official title, and position within the Greek Orthodox

Church.  Brooks Aff. ¶ 2.  Shortly after the relevant deposition testimony, counsel for the

Commission spoke with Mr. Brooks to see whether Mr. Brooks planned to object, on behalf of

Defendants, to the Commission serving a subpoena to the Greek Orthodox Church.  Brooks Aff.

¶ 3.  The Commission indicated to Mr. Brooks that it had received information that Fr.

Emmanuel might not be an ordained priest in the Greek Orthodox Church and that he had

unsuccessfully applied for ordination as a priest to the Greek Orthodox Metropolis of Boston in

the past.  Brooks Aff. ¶ 3.  The Commission stated that it planned to send a subpoena for

documents to the Greek Orthodox Metropolis of Boston to potentially discover information that would cast doubt on Fr. Emmanuel's credibility at trial.  Brooks Aff. ¶ 3.  When Mr. Brooks assured the Commission that Fr. Emmanuel was an ordained priest in the Greek Orthodox Church, the Commission replied that it doubted that a non-party would have committed a violation of 18 U.S.C. § 1001 by lying to the Commission in this regard.  Brooks Aff. ¶ 4.  On December 9, 2019, the Commission sent an email to Mr. Brooks, attaching an email chain exchanged between Rev. Barbas and counsel for the Commission, indicating that they had an earlier conversation in which Rev. Barbas stated that Fr. Emmanuel had never been affiliated with the Greek Orthodox Metropolis of Boston and that he unsuccessfully applied to the Greek Orthodox Metropolis of Boston to be ordained.  Brooks Aff. Ex. 2.

Notably, the Commission initially sent an email to Rev. Barbas on October 23, 2019, seeking to confirm in writing that Rev. Barbas stated that, "Rev. Fr. Emmanuel Lemelson is not, and has never been, affiliated with the Greek Orthodox Metropolis of Boston and that you have no records relating or referring to him (please confirm this last point).  I further understand from our conversation that he applied to the Greek Orthodox Metropolis of Boston to be ordained, but that application was declined."  Brooks Aff. Ex. 2 at 3.  The Commission followed up on October 25, 2019 to confirm this information.  Brooks Aff. Ex. 2 at 2-3.  But, Rev. Barbas did not reply until almost six weeks later, on December 4, 2019—the same day the Greek Orthodox Metropolis of Boston was served with the Subpoena.  Brooks Aff. Ex. 2 at 2; Brooks Aff. ¶ 5, Ex. 1 at 6.  In that December 4, 2019 email, Rev. Barbas appeared to retract at least part of the earlier statements he made to the Commission, but Rev. Barbas still continued to falsely maintain that Fr. Emmanuel had unsuccessfully applied to be ordained by the Greek Orthodox Metropolis of Boston.  Brooks Aff. Ex. 2 at 2.

In response to these concerns raised by the Commission, counsel for Defendants prepared an email that it sent to the Commission on January 3, 2020.  Brooks Aff. Ex. 4.  That email explained that Fr. Emmanuel never applied for ordination to the Greek Orthodox Metropolis of Boston and was ordained in 2011 by a Hierarch of the Ecumenical Patriarchate of Constantinople—the highest ruling body within the Greek Orthodox Church, and even then did not apply, but was asked by the Hierarch, as he was previously asked by the Hierarch of the Greek Orthodox Metropolis of Boston, to be ordained.  Brooks Aff. Ex. 4 at 1.  Further, the Greek Orthodox Metropolis of Boston repeatedly requested Fr. Emmanuel take an assignment in the Greek Orthodox Metropolis of Boston, invitations Fr. Emmanuel repeatedly declined.[2] Brooks Aff. Ex. 4 at 1-2.  In addition, on December 4, 2019, counsel for Defendants served the Subpoena on the Greek Orthodox Metropolis of Boston.  Brooks Aff. Ex. 1.  Counsel for Defendants received the response to the Subpoena from the Greek Orthodox Metropolis of Boston on December 23, 2019.  Brooks Aff. ¶ 7.  The response to the Subpoena stated that the Greek Orthodox Metropolis of Boston was withholding three documents as privileged, because the documents "are Church-Administrative in nature and privileged as they are between Hierarchs and Chancellors of the Greek Orthodox Archdiocese of America and the Greek Orthodox Metropolis of Boston."  Brooks Aff. Ex. 3 at 1.

The next day, December 24, 2019, counsel for Defendants sent an email to Rev. Barbas of the Greek Orthodox Metropolis of Boston explaining that the assertion of privilege for those documents was inappropriate and asking that he let Defendants' counsel know by the end of that

---

[2] Further the Greek Orthodox Metropolis of Boston repeatedly invited Fr. Emmanuel to attend clergy meetings and events hosted by the Greek Orthodox Metropolis of Boston, and its Hierarch, Metropolitan Methodius, however Fr. Emmanuel declined each of these invitations. Brooks Aff. Ex. 4 at 1-2.

week whether the Greek Orthodox Metropolis of Boston would reconsider its position.[3] Affidavit of Brian J. Sullivan ("Sullivan Aff.")  Ex. 1 at 6.  On January 10, 2020, having not received any response from Rev. Barbas, counsel for Defendants sent another email seeking a response from the Greek Orthodox Metropolis of Boston or to otherwise confer about a motion to compel.  Sullivan Aff. Ex. 1 at 5.  Later that day, Rev. Barbas replied and stated that the matter was still being evaluated by legal counsel.  Sullivan Aff. Ex. 1 at 5.  This was the first indication to Defendants' counsel that the Greek Orthodox Metropolis of Boston was being represented by counsel related to the Subpoena.  Sullivan Aff. ¶ 2.  As required by the Rules of Professional Conduct, Defendants' counsel asked for the contact information for Greek Orthodox Metropolis of Boston's counsel and informed Rev. Barbas that they were obligated to speak with counsel for represented individuals.  Sullivan Aff. Ex. 1 at 4.  Rev. Barbas replied saying, "[f]or now, you may communicate directly with me."  Sullivan Aff. Ex. 1 at 4.

On January 13, 2020, Defendants' counsel replied and explained, again, that the Rules of Professional Conduct did not allow them to speak with a represented party unless the lawyer authorized it.  Sullivan Aff. Ex. 1 at 3.  The same email also noted that Defendants needed a response quickly and asked again for the lawyer's contact information to move forward accordingly.  Sullivan Aff. Ex. 1 at 3.

On January 17, 2020, Defendants' counsel sent a similar message—again requesting counsel's contact information to discuss a potential resolution to the dispute or a motion to compel.  Sullivan Aff. Ex. 1 at 2.  Rev. Barbas replied, "[a]s I told you, he is unavailable at the current time.  You may communicate directly with me."  Sullivan Aff. Ex. 1 at 2.  Defendants'

---

[3] Note that the email was sent to Rev. Barbas even though the response to the Subpoena directed further communications to be sent to Archbishop Ilia Katre, because Archbishop Ilia Katre is the ruling bishop of the Albanian Orthodox Diocese of America, and is not a member of the Greek Orthodox Metropolis of Boston to whom the Subpoena was directed.

counsel replied yet again to explain that the Rules of Professional Conduct did not permit such communication and asked to speak with counsel to try to resolve the dispute regarding the production of documents.  Sullivan Aff. Ex. 1 at 1.  Rev. Barbas did not respond for another week.  Defendants' counsel tried one last time, sending an email on January 28, 2020, noting that they planned to file a motion to compel in the next couple of days and invited counsel for the Greek Orthodox Metropolis of Boston to contact counsel to meet and confer.  Sullivan Aff. Ex. 1 at 1.  On January 28, 2020, Michael Sophocles contacted Brian Sullivan, counsel for Defendants, by phone.  Sullivan Aff. ¶ 3.  Mr. Sophocles stated he was a retired attorney, occasionally helped the Greek Orthodox Metropolis of Boston on matters *pro bono*, but that he did not necessarily represent the Greek Orthodox Metropolis of Boston in this matter.  Sullivan Aff. ¶ 3.  Mr. Sophocles stated that the communications at issue in this Motion to Compel involved the Archdiocese of America and he would contact General Counsel for the Archdiocese of America to see how they wanted to handle the matter.  Sullivan Aff. ¶ 3.  Mr. Sullivan informed Mr. Sophocles that because this matter had lingered for over a month, Defendants would be filing the Motion to Compel if they did not hear back from anyone by close of business on January 29, 2020.  Sullivan Aff. ¶ 3. Having received no response, *see* Sullivan Aff. ¶ 4, Defendants are filing the current Motion to Compel and seeking sanctions.

## ARGUMENT

The Greek Orthodox Metropolis of Boston withheld three documents as privileged, because they "are Church-Administrative in nature and privileged as they are between Hierarchs and Chancellors of the Greek Orthodox Archdiocese of America and the Greek Orthodox Metropolis of Boston."  However, that does not support even a prima facie showing of any viable claim for privilege recognized under Massachusetts law or federal common law.  *See Corvello v.*

*New England Gas Co., Inc.*, 243 F.R.D. 28, 34 (D.R.I. 2007) (noting that an *in camera* inspection may be necessary to resolve a dispute over whether documents are privileged in some scenarios, but only when a privilege log contains information sufficient to make a prima facie showing that the documents in question are privileged) (citing *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 700 (D. Nev. 1994) ("*in camera* review is not 'a substitute for a party's obligation to justify its withholding of documents' and it 'should not replace the effective adversarial testing of the claimed privileges'"); *United States v. Zolin*, 491 U.S. 554, 571-72 (1989) (While a court may conduct an *in camera* review in appropriate circumstances, it is not required to do so merely upon the request of a party)).

The only apparent basis for the privilege is the priest-penitent privilege.  However, the priest-penitent privilege is limited to communications where a penitent is seeking religious or spiritual advice or comfort.  *Commonwealth v. Nutter,* 87 Mass. App. Ct. 260, 263 (2015) ("The priest-penitent privilege is 'strictly construed and applies only to communications where a penitent seek[s] religious or spiritual advice or comfort'") (quoting *Commonwealth v. Vital*, 83 Mass. Ap. Ct. 669, 672 (2013); *Commonwealth v. Kebreau*, 454 Mass. 287, 301 (2009)); *Soc'y of Jesus of New England v. Commonwealth,* 441 Mass. 662, 674 n.14 (2004) (denying privilege exists between communications between two priests unless one of the priests makes confession to or seeks religious or spiritual advice or comfort from another priest).  Here, the Subpoena did not seek documents relating to anybody seeking spiritual advice, but rather sought communications with the media, SEC, or with the parish council concerning the Defendants.  Brooks Aff. Ex. 1 at 5.   Indeed, the Greek Orthodox Metropolis of Boston described the withheld documents as "Church-Administrative" in its own response.  Brooks Aff. Ex. 3 at 1.

Administrative documents are not privileged.  From the face of the response, there is no prima facie support for the assertion of any privilege and, therefore, the documents must be produced.

In addition, because the Greek Orthodox Metropolis of Boston asserted a baseless claim to withhold documents as privileged and then refused to respond to any efforts to meet and confer about the dispute—instead claiming it had legal counsel reviewing the matter and then refusing to provide any contact information for said counsel—the Greek Orthodox Metropolis of Boston should be sanctioned.  *See Samaan v. St. Joseph Hospital*, 670 F.3d 21, 36 (1st Cir. 2012) ("A district court has wide discretion in choosing sanctions for discovery violations"); *Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico*, 275 F.R.D. 65, 69-71 (D.P.R. June 16, 2011) (awarding sanctions where party refused to meet and confer over assertion of privilege that was not supported by law).  Because Defendants never should have been forced to file this motion, Defendants request that the Greek Orthodox Metropolis of Boston be ordered to pay for the associated attorney's fees and costs for this motion to make Defendants whole.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Compel the production of the three documents wrongfully withheld by the Greek Orthodox Metropolis of Boston as privileged and order sanctions against the Greek Orthodox Metropolis of Boston for asserting such an unsupportable position with regard to privilege and refusing to meet and confer (or even provide the name of its purported legal counsel).

Dated:  January 29, 2020

Respectfully submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT, LLC,
and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
LIBBYHOOPES, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617) 338-9300
dbrooks@libbyhoopes.com
bsullivan@libbyhoopes.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on January 29, 2020.

*/s/ Douglas S. Brooks*
Douglas S. Brooks