UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PROTECTIVE ORDERS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff, the United States Securities and Exchange Commission (the "Commission") moves for an order compelling Defendants to show cause why they should not be held in contempt and sanctioned for violating the Court's protective orders, preliminarily and permanently restraining them from future violations, and permitting discovery to determine the full extent of Defendants' discovery abuses.

**PRELIMINARY STATEMENT**

On February 10, 2020, the target of Defendants' short-and-distort scheme, Ligand Pharmaceuticals, Inc. ("Ligand"), received a request for comment from a Barron's journalist that referenced confidential discovery materials produced in this matter that are subject to the Court's

protective orders. (ECF. Nos. 25 & 39.) Neither Ligand nor the Commission provided confidential discovery materials to the Barron's reporter, or any other press or media outlet. Defendant Lemelson, on the other hand, had access to the confidential discovery materials in question and had both the motive and opportunity to provide those materials to Barron's.

This incident appears to be the latest (and perhaps not the last) in a series of discovery abuses, in which Lemelson abuses the discovery afforded to him in this litigation to settle scores and harass those he perceives to be his adversaries. These abuses of discovery must stop.

Lemelson may also have a financial interest in violating the protective orders. On information and belief, Defendant Lemelson has an open short position in Ligand today. Consistent with his past behavior, it appears that Defendant Lemelson may be misappropriating confidential discovery materials to generate negative publicity about Ligand and benefit his short position. If this is the case, Defendant Lemelson has not only flagrantly violated the Court's protective orders, but may have violated the federal securities laws prohibiting market manipulation.

For these reasons, the Commission respectfully requests that the Court enter an Order:

(1) Ordering Defendants to show cause why they should not be held in contempt for violating the Court's protective orders;

(2) Preliminarily enjoining Defendants and any persons acting on their behalf or at their direction from communicating directly or indirectly with any person other than their counsel about discovery material (or information referenced in discovery material) in this case;

(3) Ordering Defendants to show cause why the Court should not permanently enjoin Defendants and any persons acting on their behalf or at their direction from

communicating directly or indirectly with any person other than their counsel about discovery material (or information referenced in discovery material) in this case; and

(4) Ordering discovery sanctions including but not limited to an order prohibiting Defendants from using, or making any arguments based upon, any discovery materials disclosed in violation of the Court's protective orders.

In addition, the Commission respectfully requests that the Court schedule a show-cause hearing as soon practicable and require Defendants to produce to the Commission the following materials in advance of such hearing:

(1) Any and all documents and communications between Defendants or their agents and any person (other than counsel) comprising or concerning contacts with the press or media, including without limitation records, notes, or recordings of telephonic or VOIP communications (such as Skype or FaceTime communications), telephone bills or logs, text messages, text message bills or logs, emails, other electronic communications (such as communications through WhatsApp, Facebook Messenger, website forms, or similar means), or other communications in any form with members of the press or media (including without limitation print news organizations, publishers of electronic newsletters, internet news or commentary sites, and blogs) from September 2018 to present;

(2) A statement under oath by Defendant Lemelson concerning whether he transmitted any discovery materials or information derived therefrom to any person other than his counsel between September 2018 and present; and

(3) Any and all documents detailing any trading in, or trading related to, Ligand securities, including without limitation any short positions, long positions, or options trading, from September 2018 to present.

## BACKGROUND

**A.     Defendant Lemelson's Pattern of Discovery Abuses.**

This situation appears to be the latest example of Defendant Lemelson using this litigation as a forum to air (and obtain discovery about) unrelated grievances. For example, Defendant Lemelson sued Bloomberg for defamation and lost at the motion to dismiss stage and in the First Circuit. *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19 (1st Cir. 2018). Defendants nevertheless subpoenaed Bloomberg in this case for documents that might have been relevant to Defendant Lemelson's ill-fated defamation suit, but have no relevance here. (ECF No. 65-1.) And, relatedly, Defendant Lemelson has noticed a Rule 30(b)(6) deposition of the Commission to probe whether the Commission was the source of certain information contained in the Bloomberg article (which it was not, and Defendant Lemelson has produced no evidence to the contrary). (ECF Nos. 41 & 51.) Defendant Lemelson is also seeking to compel production of nonresponsive and irrelevant documents from the Greek Orthodox Metropolis of Boston that relate, if anything, to a personal spat between Lemelson and the Greek Orthodox Church. (*See* ECF No. 64.) Now, he appears to be engaged in an effort to generate negative press about Ligand during the pendency of this litigation (more about this later)—an abuse of the discovery process that appears designed to embarrass, oppress, and annoy the target of Defendant Lemelson's fraud.

**B.     The Court's Protective Orders Prohibit Use or Disclosure of Any Discovery Materials for Any Purpose Other Than Prosecution or Defense of This Matter.**

The parties and third-party victim, Ligand, negotiated protective orders governing the use of discovery materials during the pendency of this action. The resulting protective orders (ECF Nos. 25 & 39) provide, in no uncertain terms, that discovery materials and information derived therefrom shall not be disclosed beyond the parties to this case (with limited exceptions) and, in any event, shall be used solely for the purpose of prosecuting or defending this action.

On December 12, 2018, the Court entered the first of two protective orders jointly proposed by the parties, which provided, among other things, that:

> All documents and other information (including transcripts and recordings of depositions or their foreign equivalent) (together, "Discovery Materials") produced (i) in connection with the parties' initial disclosures and/or (ii) in response to requests for discovery in this litigation shall be treated as confidential, meaning that such Discovery Materials shall be used solely for the purpose of the prosecution or defense of this litigation, except as provided in Paragraph 6 below.

(ECF No. 25 at ¶ 1.)[1] Defendants' counsel signed the first protective order, which provided that "[t]he parties to the above-captioned matter, through their respective counsel, expressly agree to the terms of this Stipulation and Order and consent to its form and entry." (ECF No. 25 at ¶ 9.)

Counsel for Ligand subsequently proposed additional protections for materials produced by Ligand,[2] which were the subject of extensive negotiation with Defendants' counsel. The Court entered the agreed-upon supplemental protective order on October 18, 2019. (ECF. No.

---

[1] The protective order covered not only Discovery Materials but also any information derived therefrom. (ECF No. 25 at ¶ 7.)

[2] As for the purpose of the supplemental protective order, Ligand's counsel expressed concern that a circumstance such as the one now before the Court might come about, given Defendant Lemelson's past conduct, and also expressed concern that Defendant Lemelson's discovery requests, which included current information about Ligand's business, could reveal material nonpublic information exposing Defendant to a risk of insider trading liability.

5

39.) Among other things, the supplemental protective order provides that the parties could designate discovery materials as "Confidential" or "Highly Confidential," and included a mechanism for challenging those designations. (ECF No. 39 at ¶¶ 2-6.) Like the original protective order, the supplemental protective order provides that:

> All Discovery Material shall be used solely for the purpose of prosecuting or defending the Action, including in connection with any appeals taken by either Party, and shall not be disclosed to any person or entity other than in accordance with the terms of this Supplemental Stipulation and Order.

(ECF No. 39 at ¶ 1; see also *id.* at ¶ 11.) As with the first protective order, Defendants' counsel signed the supplemental protective order on behalf of Defendants. (ECF No. 39 at 9.) The supplemental protective order also provides a process for a party to challenge confidentiality designations. (ECF. No 39 at ¶¶ 2-3.)

C. **The Barron's Inquiry to Ligand References Discovery Materials Designated as "Confidential" Under the Supplemental Protective Order.**

Among the many thousands of documents Ligand produced in discovery is an internal Ligand email chain dated February 1, 2014 between John Higgins, Ligand's CEO, and Matt Foehr, Ligand's COO. (Day Decl. Exh. A.)[3] This email chain was produced by Ligand in discovery in this matter on October 18, 2019 and Bates labeled LGND_0019421 – LGND_0019422. (*Id.*) Ligand affixed the legend "Confidential" at the bottom left corner of the document pursuant to Paragraph 5 of the supplemental protective order. (*Id.*)

The email chain in question was marked as Exhibit 128 and used at length by Defendants' counsel during the deposition of Matt Foehr, Ligand's COO, on December 5, 2019. (Day Decl. ¶ 3.) Defendant Lemelson was present at the Foehr deposition (and all other

---

[3] The Commission is contemporaneously filing a motion for leave to file the Declaration of Alfred A. Day and exhibits thereto under seal because the declaration and exhibits reference or constitute materials designated as "confidential" under the supplemental protective order. The producing party, Ligand, assents to the motion to seal.

depositions in this matter), and had with him a binder with copies of the exhibits used during the deposition, as well as courtesy copies of the deposition exhibits that were handed out to attendees.

On February 10, 2020, a reporter from Barron's reached out to Ligand's investor relations firm to ask for comment on the Commission's case against Lemelson. (Day Decl. Exh. B.) The reporter stated that "we have seen copies of emails" and goes on to quote **verbatim**, including punctuation and emphasis, from Foehr Deposition Exhibit 128—an internal Ligand email that was produced in discovery in this matter and designated "Confidential" under the supplemental protective order in this case. (*Compare* Day Decl. Exh. B (Barron's email) *with* Day Decl. Exh. A (Foehr Dep. Exh. 128).) While the email from the Barron's reporter only quotes from Foehr Deposition Exhibit 128, it references the reporter having seen "copies of emails" (plural), raising the specter that Defendants violated the Court's protective orders as to additional discovery materials.

## ARGUMENT

Rule 37(b) of the Federal Rules of Civil Procedure equips courts with a "veritable arsenal of sanctions," *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 44 (1st Cir. 2007), for noncompliance with court directives, including holding a party in civil contempt, ordering discovery sanctions, and such other relief as the court deems proper under the circumstances. To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) "the order was clear and unambiguous," (3) the alleged contemnor "had the ability to comply with the order," and (4) the alleged contemnor violated the order. *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (internal quotation marks omitted). Providing discovery materials to the press in violation of a protective order is grounds for holding a party in civil

7

contempt. *E.g., Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 290 (5th Cir. 2002).

The facts here raise the inescapable inference that Defendant is engaged in yet another abuse of the discovery process, having willfully violated the Court's protective orders by sharing confidential discovery material with the Barron's reporter. Defendants should therefore be held in civil contempt:

*First*, Defendants had notice of the protective orders. Defendants' attorney signed both protective orders on behalf of all Defendants, and the first (which is incorporated by reference into the supplement (ECF No. 39 at 1)) provides that "[t]he parties to the above-captioned matter, through their respective counsel, expressly agree to the terms of this Stipulation and Order and consent to its form and entry." (ECF No. 25 at ¶ 9.)

*Second*, the protective orders are clear and unambiguous in stating that discovery materials shall be used solely for the purposes of prosecuting or defending this case. (ECF No. 25 at ¶ 1; ECF No. 39 at ¶ 1.) There is no exception in either protective order that could reasonably be construed as allowing disclosure of discovery materials to the press. Further, the document in question—Foehr Deposition Exhibit 128—was clearly and prominently marked "Confidential . . . Confidential Treatment Requested by Ligand Pharmaceuticals, Inc." (Day Decl. Exh. A.) There is therefore no question that the document in question was subject to the Court's protective orders.

*Third*, Defendants could have easily complied with the Court's protective orders by simply *not* disclosing confidential discovery materials to the Barron's reporter. *See Hearts with Haiti, Inc. v. Kendrick*, 2015 WL 732659, at *13 (D. P.R. Feb. 20, 2015) ("The confidentiality

8

orders in this case did not compel Mr. Kendrick to do anything to comply with their provisions; Mr. Kendrick was only required not to act, namely, not to disclose.").

**Fourth**, Defendant Lemelson is the only party with the motive *and* opportunity to have violated the Court's protective orders. As noted above, Foehr Deposition Exhibit 128 was used by Defendants' counsel in the context of questioning Mr. Foehr. The Barron's reporter specifically referenced the very same deposition exhibit, and raised questions about the very same issues probed in the deposition. (Day Decl. Exh. B at 3.) It is impossible to conclude that this is a coincidence; rather, the only reasonable inference is that Defendant Lemelson willfully violated the Court's protective orders to argue his case to the press.

Defendants' contempt is clear, and it is disturbing for another reason: During discovery, undersigned counsel and Ligand's counsel both raised concerns about Defendant Lemelson using discovery materials to trade in Ligand stock. In the course of those discussion, Defendants' counsel confirmed that Defendant Lemelson had—and presumably still has—an open short position in Ligand. Under these circumstances, Defendant Lemelson appears to be engaged in conduct similar to that for which the Commission has sued him—*i.e.*, misappropriating confidential discovery materials to generate negative publicity about Ligand and drive down its stock price. The Commission therefore respectfully requests that the Court permit discovery on Defendants' communications and trading activities, as set forth in the attached proposed order.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter the proposed order submitted herewith.

Dated: February 14, 2020	Respectfully submitted,

*/s/ Alfred A. Day*
Alfred A. Day (BBO #654436)
Marc J. Jones (BBO #645910)
Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
617-573-4537 (Day)
617-573-8947 (Jones)
DayA@sec.gov
JonesMarc@sec.gov
Attorneys for Plaintiff