# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and<br>LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

## MEMORANDUM IN SUPPORT OF NOTICE OF JOINDER
## OF INTERESTED PARTY LIGAND PHARMACEUTICALS, INC.

Interested party Ligand Pharmaceuticals, Inc. ("Ligand") hereby submits this memorandum in support of Ligand's Notice of Joinder with Plaintiff United States Securities and Exchange Commission's (the "SEC") Motion for Order to Show Cause Why Defendants Should Not Be Held In Contempt for Violating Protective Orders (the "Contempt Motion") (ECF Nos. 68 & 69).

1. At 6:30 a.m. EST on February 19, 2020, Barron's published online, under the byline of the reporter discussed in the Contempt Motion, an article about this matter titled, "Hedge Fund Alleges SEC Bias in Short-Selling Case." The article is available at https://www.barrons.com/articles/hedge-fund-manager-alleges-sec-bias-in-short-selling-case-51582111800 (the "Barron's Article").

2. The Barron's Article quotes verbatim from Foehr Deposition Exhibit 128. That exhibit is an internal company email that Ligand produced in discovery in response to a subpoena

from Defendants, and marked "Confidential" pursuant to the protective orders the Court entered. (ECF Nos. 25 & 39).

3. As the SEC explains in the Contempt Motion, the protective orders clearly and unambiguously permit the parties to use discovery materials solely for the purpose of litigating this matter *in court*, and prohibit the parties from disclosing discovery materials to third parties unconnected with the litigation, which would include the press. The SEC is correct that Ligand proposed the supplemental protective order (ECF No. 39), and negotiated its terms at length with counsel for Defendants, because of the company's (now clearly validated) concern that Defendant Lemelson would misuse its discovery materials, particularly while he, by his own account, has an open short position in the company's stock.

4. To the extent there was a lingering question whether it was Defendant Lemelson who leaked Ligand's confidential discovery materials, the Barron's Article removes any doubt. The Barron's Article confirms that the SEC, Ligand, and undersigned counsel declined to comment, but that *Defendant Lemelson spoke on the record with Barron's*. The Barron's Article attributes to Defendant Lemelson statements to the reporter describing his deposition by the SEC and his review of "pretrial discovery of Ligand's communications with the agency." The Barron's Article also quotes Defendant Lemelson's preposterous claim to the reporter that the SEC's investigation and lawsuit have left him "feel[ing] like I've been living in North Korea for the past few years."

5. Counsel for Defendants have refused to engage on this issue. In a phone call in the early afternoon of February 12, 2020, undersigned counsel told Brian Sullivan, one of Defendants' attorneys, about the Barron's reporter's email seeking comment from Ligand and quoting from Foehr Deposition Exhibit 128. Counsel for the SEC were also on the call. Undersigned counsel

and counsel for the SEC asked Mr. Sullivan for answers by the next day to a few straightforward questions to assist in assessing the source and scope of the discovery breach, and whether it was ongoing. A few hours later, undersigned counsel followed up by sending Mr. Sullivan and Douglas Brooks, Defendants' other attorney, the reporter's email and repeating the questions in writing:

> Has Fr. Lemelson, someone on his behalf, or anyone to Fr. Lemelson's knowledge, communicated with [the Barron's reporter] or anyone at Barron's during the pendency of this litigation?
>
> Did Fr. Lemelson, someone on his behalf, or anyone to Fr. Lemelson's knowledge, share – in form or substance – the emails described by [the Barron's reporter] or the content or summary of those emails with [the Barron's reporter] or anyone else affiliated with Barron's?
>
> Has Fr. Lemelson, someone on his behalf, or anyone to Fr. Lemelson's knowledge, provided any confidential documents produced by Ligand in this matter to anyone outside his legal team, including but not limited to members of the press? If so, identify all such persons.

6. Mr. Brooks responded by email the evening of February 13, 2020, saying, in full, "I've been [traveling] for work and have been completely tied up in meetings. If you think my client is the source, you can file something with the court, and we will respond accordingly." Promptly after the publication of the Barron's Article, undersigned counsel again wrote to Messrs. Brooks and Sullivan to ask for answers to the above questions, and to the simple question, "What other confidential emails were leaked and to whom?"

7. Counsel for Defendants have not responded to any of the questions, and their silence is deafening. To Ligand's knowledge, counsel for Defendants have not taken any action to mitigate Defendant Lemelson's unauthorized leak or to prevent further violation of the Court's protective orders and harm to Ligand.

8. The Barron's Article makes plain that Defendant Lemelson—who, again, claims to have an open short position in Ligand stock—wants to poison the well of public opinion with selective and out-of-context leaks of confidential discovery materials and ridiculous allegations of political intrigue and partisan action by the SEC. Of course, the SEC's non-partisan staff attorneys in the Enforcement Division first subpoenaed the Defendants about this matter *in September 2015*, when the Enforcement Division and the SEC were under the leadership of persons selected under the previous Administration. (*See* ECF Nos. 46 & 46-19 (January 7, 2020 affidavit of Douglas S. Brooks attaching "a true and accurate copy of the Subpoena sent to Father Emmanuel by the Securities and Exchange Commission, dated September 1, 2015")). Per longstanding SEC procedure, those same non-partisan staff attorneys would have been responsible for requesting the SEC's bipartisan Commissioners to authorize the lawsuit against Defendants. Indeed, the same staff attorney who sent the subpoena to Defendants in September 2015 also signed the Complaint and Amended Complaint filed against the Defendants. (*Compare* ECF No. 46-19 *with* ECF Nos. 1 & 33).

9. Given Defendant Lemelson's plain and egregious violation of the protective orders, and his other discovery abuses described by SEC in the Contempt Motion, there is every reason to believe that, absent action by the Court, he will continue to abuse the discovery process to settle scores, benefit his open short position, and try this matter in the press. Ligand therefore submits that the sanctions and other relief requested by the SEC in the Contempt Motion are necessary and appropriate to address Defendant Lemelson's unauthorized disclosure of Ligand's confidential discovery materials; to maintain the confidentiality and ensure the proper use of discovery materials going forward; to protect the integrity of the public market for Ligand stock; and to ensure that this matter is litigated fairly and on the merits before the Court and the Court alone.

Dated: February 19, 2020        Respectfully Submitted,

CAHILL GORDON & REINDEL LLP

By: /s/ Andrea Abarca
    Bradley J. Bondi (*pro hac pending*)
    Sean P. Tonolli (*pro hac pending*)
    Andrea Abarca (BBO #703151)
    1990 K Street N.W., Suite 950
    Washington, D.C. 20006
    Tel: 202.862.8910
    Fax: 866.836.0501
    bbondi@cahill.com

*Attorneys for Interested Party*
*Ligand Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I certify that on February 19, 2020, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

Dated: February 19, 2020        By: /s/ Andrea Abarca
    Andrea Abarca