UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS<br><br>LEAVE TO FILE GRANTED ON MARCH ___, 2020 |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PROTECTIVE ORDERS**

The Court need not read any further than the first paragraph of Defendants' opposition to determine that Defendant Lemelson willfully violated the Court's protective orders. (ECF No. 85 at 1.) Indeed, Lemelson *admits* that he leaked approximately 50 pages of confidential discovery materials—including documents Lemelson knew Ligand sought to claw back as attorney-client privileged—to the press in deliberate violation of this Court's protective orders. (ECF No. 88 at ¶¶ 2, 8-10, 12.)

Lemelson's violation is far worse than the Commission suspected when it brought this motion. At that time, it appeared that one (though perhaps more) documents subject to the Court's protective orders had been provided to a Barron's journalist. But, far from some innocent or inadvertent disclosure, Lemelson cherry picked confidential discovery materials to

try this case in the press, in response to what he characterizes as a "false public narrative"[1] about this "unfair" proceeding.  (ECF No. 88 at ¶¶ 8-9.)  He even sent the reporter Ligand's letters requesting the return of inadvertently produced privileged documents to show the reporter that the cherry-picked documents he was leaking were even more secret and valuable (and unequivocally violating Fed. R. Civ. P. 26(b)(5)(B) ("After being notified [of a claim of inadvertent disclosure] … a party must promptly return, requester, or destroy the specified information … [and] must not use or disclose the information until the claim is resolved….")).

While Lemelson purports to apologize to the Court, it is an apology in words only, without any remorse.  Instead, he strains to justify his violation by claiming that this action is somehow "unfair" and that he "believed a fair and objective investigative journalist could help counter the existing false public narrative about this litigation."  (ECF No. 88 at ¶ 8.)  To support this argument, Defendant Lemelson goes on at length about matters that are irrelevant to the merits of the Commission's motion, irrelevant to the parties' claims and defenses, and, in any event, hotly disputed.  For example, Defendant Lemelson devotes many pages to his bogus accusation that the *victim* of his short-and-distort scheme (Ligand) bringing Lemelson's unlawful conduct to the Commission's attention is somehow nefarious.[2]  In the end, the vast majority of Defendant Lemelson's opposition has *nothing* to do with the sole remaining question before the Court—*i.e.*, what consequence should flow from Defendant Lemelson's contempt.

As if Defendant Lemelson's admitted violation of the Court's protective orders wasn't bad enough, he has continued his campaign to attack Ligand *while holding an open short*

---

[1] Defendant Lemelson does not explain the origin of this supposed "false public narrative."  Indeed, Commission counsel is not aware of any Commission personnel communicating with journalists about this matter since this action was filed (other than to decline to comment to the reporter to whom Lemelson leaked).

[2] The Commission disagrees with Lemelson's many conspiracy theories—none of which have any basis in fact much less relevance to this motion or this case—but this is not the place address them.

2

*position in the company*. This is similar to the conduct for which the Commission has sued Defendant Lemelson—*i.e.*, attempting to generate negative press about Ligand (this time using purloined confidential discovery materials rather than calculated falsehoods) to benefit a short position. In this regard, Defendant Lemelson's behavior is telling. Lemelson leaked the confidential discovery materials in question to the Barron's reporter on January 23, 2020. (ECF No. 88 at ¶¶ 2, 9-10.) After Barron's contacted Ligand's investor relations firm on February 11, 2020 referencing confidential discovery materials, Ligand's counsel brought the potential violation to defense counsel's attention on February 12, 2020. (ECF No. 87 at ¶ 2.) Without explanation, Lemelson now says he covered his short position in Ligand starting *the very next day*, on February 13 and 14, 2020. (ECF No. 88 at ¶ 28.) The timing is more than a little suspicious—having been caught in the act of attempting to once again manipulate Ligand's stock price, Lemelson liquidated his short position before any negative media coverage he prompted was published.

For the purposes of this motion, Lemelson's ongoing abuse of the discovery process should not go unnoticed. Leaking confidential discovery materials to try this case in the press and potentially benefit an open short position threatens to make the Court's files a "vehicle for improper purposes." *Cf. Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes . . . [such as] gratify[ing] private spite or promot[ing] public scandal[.]").

This brings us to the issue of sanctions. Lemelson violated the Court's protective orders. He does not claim that he was unaware of the protective orders, or thought that the confidential discovery materials he leaked were not subject to the protective orders. He leaked the materials

willfully, in an effort to combat what he considers an "unfair" process—never mind that he has been afforded every opportunity that every civil litigant enjoys in defending this matter. He may well have been trying to once again to benefit an open short position in Ligand. In short, Lemelson's conduct constitutes a willful and egregious violation of the Court's protective orders.

Under these circumstances, sanctions are warranted. The Commission respectfully requests that the Court enter an order:

(1) Finding Defendants in civil contempt;

(2) Requiring Defendants to return to their counsel or destroy all discovery materials in their possession;

(3) Prohibiting Defendants from taking possession of any discovery materials in the future;

(4) Permanently enjoining Defendants and any persons acting on their behalf or at their direction from communicating directly or indirectly with any person other than their counsel about discovery material (or information referenced in discovery material) in this case;

(5) Prohibiting Defendants from using, or making any arguments based upon, any discovery materials disclosed in violation of the Court's protective orders;

(6) Imposing upon Defendant Lemelson personally a penalty of $100 per page of confidential discovery materials disclosed in violation of this Court's protective orders;

(7) Prohibiting Defendants from taking any position in Ligand stock, or its derivatives, for the duration of this action; and

(8) Granting such other relief as the Court deems just and proper.

Dated: March 8, 2020                                        Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Alfred A. Day*
Marc J. Jones (Mass. Bar #645910)
Alfred A. Day (Mass. Bar #654436)
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-4537 (Day direct)
(617) 573-4590 (fax)

**CERTIFICATE OF SERVICE**

    I certify that on March 8, 2020, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

*/s/ Alfred A. Day*