

Douglas S. Brooks<br>
Email: dbrooks@libbyhoopes.com

March 9, 2020

**BY EMAIL**

The Honorable Patti B. Saris
United States District Court Judge
Untied States District Court for the District of Massachusetts
1 Courthouse Way
Boston, MA 02210

  Re: *SEC v. Lemelson, et al.; No. 18-cv-11926-PBS*

Your Honor:

  This Firm represents Defendants in the above-referenced civil action. The undersigned is lead counsel on this matter. We write to respond to the letter that Plaintiff Securities and Exchange Commission (the "Commission") sent to Your Honor at 5:15 p.m. on Friday, March 6, 2020, in which the Commission hurls patently false and scurrilous allegations against the undersigned, while failing to disclose critical information to this Court.

  ***First***, the Commission's claims that the undersigned sought to influence a "*potential witness*" (Fr. Theodore Barbas) are directly contrary to the Commission's prior representations filed with this Court and provided to Defendants in discovery making clear that Fr. Barbas is *not* a potential witness. ***Second***, the undersigned relied in good faith on the Commission's prior representations in initiating a separate civil demand letter—sent to Fr. Barbas's counsel outside the context of this case and *after* it was clear that Fr. Barbas was *not* a potential witness here—in a good-faith attempt to settle an independent dispute between Fr. Barbas and Defendant Fr. Emmanuel Lemelson and complying with all applicable laws and Rules. ***Third***, by *knowingly* contradicting its prior representations filed with this Court, and failing to disclose same, the Commission's letter intentionally withheld critical information from this Court.[1] For these reasons, as set forth in more detail below, the Court should reject the Commission's attempt to smear the reputation of the undersigned as both baseless and brought in bad faith.

### 1. The Commission's Allegations Run Directly Contrary to Its Prior Representations to this Court.

  The Commission alleges that the undersigned engaged in *criminal misconduct* by seeking to influence the testimony of a "potential witness" (Fr. Barbas) in this matter. This allegation is groundless, and ***it runs directly contrary to the Commission's prior representations to this Court*** in its Opposition to Defendants' Motion for Sanctions and to Compel Greek Orthodox

---

[1] *See* Massachusetts Rules of Professional Conduct 3.3 (Candor Toward the Tribunal).

LibbyHoopes, P.C. 399 Boylston Street • Boston, Massachusetts 02116
Telephone: 617-338-9300 • Facsimile: 617-338-9911
Web: www.libbyhoopes.com



The Honorable Patti B. Saris
March 9, 2020
Page 2

Metropolis of Boston to Produce Documents in Response to Subpoena (ECF No. 64), in which the Commission made clear that *any information Fr. Barbas has is irrelevant to <u>this</u> case, thus disavowing any notion that Fr. Barbas was or could ever be a potential witness in <u>this</u> case.* The Commission's failure to disclose this to the Court in its March 6 letter while simultaneously impugning the integrity of a fellow member of the Bar, is grossly inappropriate.[2]

By way of relevant background, according to the Commission, Fr. Barbas told it three things—*all related to issues **which the Commission has claimed are <u>irrelevant</u> to this case***; *i.e.*, issues *that involve Defendant Fr. Emmanuel Lemelson's religious affiliation*, namely: (1) Fr. Emmanuel was not a Greek Orthodox Priest; (2) Fr. Emmanuel applied to the Greek Orthodox Metropolis of Boston to be ordained but was denied; and (3) Fr. Emmanuel was never officially assigned to any Greek Orthodox parish and has never been affiliated with the Greek Orthodox Metropolis of Boston. *See* ECF No. 64 at 3-4 & ECF No. 65-5 at 1.

After Fr. Barbas made the above (false) statements to the Commission, counsel for the Commission told Defendants' counsel that it intended to send a documents subpoena to the Greek Orthodox Metropolis of Boston (not to Fr. Barbas, its Chancellor, individually). The Commission represented that it was seeking documents to support these (false) statements about Fr. Emmanuel to undermine his credibility. Therefore, *purely as a result of the Commission's stated intention*, Defendants' counsel issued its own subpoena to the Greek Orthodox Metropolis of Boston to ensure that it received the necessary documents to prove that the information provided to the Commission about Fr. Emmanuel's religious affiliation was false in the event the Commission decided to try to call anyone affiliated with the Metropolis as a witness.

In response to Defendants' subpoena, the Metropolis of Boston produced certain documents but withheld others under a specious claim of privilege. After lengthy discussions failed, Defendants filed a motion to compel the production of the wrongly withheld documents. Although the Metropolis did not file an Opposition, the Commission did. Critically, in that Opposition, the Commission made the following representations (for the first time) to this Court, demonstrating that it did *not* consider Fr. Barbas to be a potential witness in this case:

- *"The documents Lemelson seeks . . . has (sic) no bearing on whether he committed fraud when he shorted the stock of Ligand Pharmaceuticals, Inc. ("Ligand") 2014."*

- *"Undersigned counsel did not—and does not—<u>view Lemelson's religious affiliation as relevant to this case</u> . . . ."*

---

[2] The undersigned notes that the Commission's frivolous letter follows Magistrate Judge Cabell's allowance of a 30(b)(6) deposition *of the Commission* concerning potential Commission wrongdoing.

LibbyHoopes, P.C. 399 Boylston Street • Boston, Massachusetts 02116
Telephone: 617-338-9300 • Facsimile: 617-338-9911
Web: www.libbyhoopes.com



The Honorable Patti B. Saris
March 9, 2020
Page 3

- *"Perhaps there is a misunderstanding, mutual or otherwise, between Lemelson and the Greek Orthodox Metropolis of Boston.  Perhaps someone is dissembling.  <u>But in either case, this is not the forum to sort it out.</u>"*

(Emphases added).  In other words, the Commission represented that the information provided by Fr. Barbas was both irrelevant to this case and, to the extent disputed by Fr. Emmanuel, should be sorted out in a different forum than the present litigation.

Ultimately, with the motion to compel still pending, the Metropolis produced the wrongly withheld documents voluntarily, and, after defense counsel immediately notified the Court about the production, Magistrate Judge Cabell issued an order finding the motion moot.  *See* ECF Nos. 78 & 79.

Based on the above representations of counsel for the Commission (as well as the termination of the motion to compel and the review of the previously withheld documents), the undersigned came to the only logical conclusion possible, that Fr. Barbas *could no longer be considered* (if he ever was) a potential witness in this matter.  Otherwise, the Commission's above statements to the Court would have been false, as there is no way to reconcile Fr. Barbas remaining a "potential witness" in this matter with the Commission's express representations that his statements were irrelevant to this case and that any dispute concerning them *should not be sorted out in this forum.*[3]

In addition, despite its current claim that Fr. Barbas is a "potential witness," the Commission has ***never*** listed Fr. Barbas as a person with even discoverable information—much less a potential witness.  The Commission has ***twice*** amended its Initial Disclosures—***each time***

---

[3] Moreover, in a classically-Commission-"reservation-of-rights" footnote in its Opposition to the motion to compel, the Commission purported to reserve its right to challenge Fr. Emmanuel's credibility "**[i]f further facts** establish that Lemelson made misleading statements about his religious affiliation . . . ." ECF No. 64 at 1, n.1 (emphasis added).  Given that the Commission had already communicated on multiple occasions with Fr. Barbas—who at that point had provided the Commission with inconsistent information—clearly the "additional evidence" the Commission contemplated *had nothing to do with Fr. Barbas*.  Accordingly, the Commission's reservation of rights provides further proof that it does not consider Fr. Barbas a potential witness in this case.

Indeed, it was largely as a result of the Commission's gratuitous and internally inconsistent reservation of rights that Defendants felt compelled to continue to press for the remaining documents from the Metropolis of Boston (not Fr. Barbas individually) even after the Commission filed its Opposition.  *See generally* ECF No. 75 (Defendants' reply memorandum in support of motion to compel).  In other words, Defendants wanted to ensure they had all available documents to demonstrate Fr. Emmanuel had never misrepresented his religious affiliation in the event the Commission purported to later come up with "additional evidence" separate and apart from Fr. Barbas.  Notably, having now reviewed those documents (something the undersigned did *before* sending the civil demand letter at issue), none of those documents support either the Commission's credibility arguments about Fr. Emmanuel *or the notion that Fr. Barbas could be a potential witness in this case.*

LibbyHoopes, P.C. 399 Boylston Street • Boston, Massachusetts 02116
Telephone: 617-338-9300 • Facsimile: 617-338-9911
Web: www.libbyhoopes.com



The Honorable Patti B. Saris
March 9, 2020
Page 4

***to specifically add people with discoverable information as new potential witnesses.*** Tellingly, it did not do so to list Fr. Barbas. To "pop out of the box" now and claim that Fr. Barbas is a witness—and therefore the undersigned's civil demand letter constituted a *criminal act*—is outrageous.

It is also worth noting that it is clear from the materials the Commission has provided to defense counsel that Fr. Barbas has made inconsistent statements to the Commission. ***Does the Commission really expect this Court to believe that it considers an individual with <u>only irrelevant information</u> who has provided it with <u>inconsistent statements</u> to be a potential witness for it at trial in this case?*** Such a position strains all credulity. And, of course, *Defendants* have no reason to call Fr. Barbas as a witness in this case—agreeing wholeheartedly with the Commission's *prior* representations that the false statements he made to the Commission are irrelevant to *this* litigation and should be sorted out in another forum (*i.e.,* Fr. Emmanuel's planned civil suit against Fr. Barbas).

2. <u>**The Undersigned Relied in Good Faith on the Commission's Representations, and There was Nothing Illegal or Unethical About the Civil Demand to Fr. Barbas' Counsel.**</u>

Based on the above, the undersigned unequivocally believed that Fr. Barbas was not a potential witness in this matter and accordingly sent the demand letter in good faith to his counsel (the General Counsel for the Greek Orthodox Archdiocese of America)—***completely independent of this case and not in any way to "influence a potential witness."*** That demand letter had ***nothing*** to do with any potential testimony in this case; indeed, it couldn't, as the Commission had already told this Court that Fr. Barbas was irrelevant to this case. Moreover, as set forth below, the undersigned believed—and continues to believe—that the demand letter constituted a good-faith attempt to settle a civil dispute prior to litigation and complied with all applicable laws and Rules.

Although not expressly mentioned in its letter to the Court, in a subsequent telephone conversation the undersigned had with counsel for the Commission, the Commission took the position that the civil demand letter to Fr. Barbas's counsel constituted misconduct, because Fr. Emmanuel has no viable defamation claim arising from the false statements that Fr. Barbas made to the Commission as they would fall under the "litigation privilege" (and thus, the Commission's argument apparently goes, the demand letter must have been sent for the improper purpose alleged by the Commission). Counsel for the Commission's assertion about the litigation privilege is legally incorrect. First, that privilege only applies to statements made in the course of judicial proceedings that ***"pertain to that proceeding."*** See *Patriot Group, LLC v. Edmands,* 96 Mass. App. Ct. 478, 483-84 (2019) (quoting *Correllas v. Viveiros,* 410 Mass. 314, 319 (1991)) (emphasis added). ***As the Commission has expressly represented to this Court, Fr. Barbas's statements to it concerning Fr. Emmanuel's religious affiliation <u>did not</u>—and <u>do</u>***



***not**—pertain to this proceeding*. *See generally*, ECF No. 64. Accordingly, while Fr. Emmanuel's planned suit against Fr. Barbas includes—*but notably will not be limited to*—false statements that Fr. Barbas made to the Commission, those statements do not pertain in any way to this proceeding, and thus the litigation privilege does not apply. Second, Fr. Barbas is not a "witness" in this judicial proceeding such that his malicious false statements would be covered by the litigation privilege.[4]

While it is none of the Commission's business given its lack of relevance to *this* case, to the extent the Commission is alleging that there is anything wrong with the settlement demand itself, such a claim also has no merit. *Defense counsel believes every statement in the proposal to be true and accurately reflect the facts concerning Fr. Emmanuel's religious affiliation.* Fr. Barbas has been on a retaliatory campaign of making disparaging statements about Fr. Emmanuel (after Fr. Emmanuel publicly advocated for Fr. Barbas's ouster). The proposed settlement demand was therefore made for the ***legitimate purpose*** of having Fr. Barbas agree in writing to nine (true) facts and confirming the specifics of his false statements to the Commission, with the intent of avoiding protracted litigation while also stopping Fr. Barbas from making further false statements about Fr. Emmanuel ***outside of the context of this case. It was not intended (nor could it be)—as the Commission recklessly alleges—to impact any testimony in this case***.

Further, the Commission also seems to indicate that the settlement demand of $10,000 somehow constitutes misconduct. It does not. That number reflects a *conservative* estimate of the legal fees that Fr. Emmanuel incurred—completely unnecessarily—based on Fr. Barbas's willful refusal to comply with the subpoena, his delay tactics, and his frivolous claims of privilege. Fr. Emmanuel has every right to try to recoup this amount as part of any settlement— ***again, separate and apart from anything to do with trial in this case.***

### 3. The Commission's Letter Failed to Properly Disclose the Commission's Prior Representations Critical to This Issue.

Should the Court believe a hearing as requested by the Commission is necessary, the undersigned respectfully requests that the Court inquire of counsel for the Commission as to how its claim that Fr. Barbas is a "potential witness" in this case can be reconciled with its prior position that "it did not—and does not—view Lemelson's religious affiliation as relevant to this case" and "***this is not the forum*** to sort [] out" issues involving any dispute between Fr. Emmanuel and Fr. Barbas concerning the former's religious affiliation. The undersigned also respectfully suggests that the Court inquire of Commission counsel about their willful failure to

---

[4] Indeed, the Commission itself acknowledges that it only spoke to Fr. Barbas by happenstance, when it reached out to the Greek Orthodox Metropolis of Boston for the purpose of determining where to direct a document subpoena aimed at undermining Fr. Emmanuel's credibility. *See* ECF No. 64 at 3.



The Honorable Patti B. Saris
March 9, 2020
Page 6

disclose these prior representations (among the other things set forth above) in their March 6, 2020 letter to this Court. The lawyers who signed the March 6 letter apparently believe they have the unfettered power to falsely accuse a fellow member of the Bar of committing a criminal act, while at the same time withholding from the Court critical information demonstrating the falsity of their accusations. They do not.

                        Sincerely,

                        /s/ Douglas S. Brooks

                        Douglas S. Brooks

LibbyHoopes, P.C. 399 Boylston Street • Boston, Massachusetts 02116
Telephone: 617-338-9300 • Facsimile: 617-338-9911
Web: www.libbyhoopes.com