

# Securities and Exchange Commission
# Division of Enforcement



Enforcement Manual

Office of Chief Counsel

*November 28, 2017*

# Table of Contents

1. Introduction ........................................................................................................................... 1
1.1 Purpose and Scope ................................................................................................. 1
1.2 Origin ...................................................................................................................... 1
1.3 Public Disclosure ................................................................................................... 1
1.4 Fundamental Considerations ................................................................................. 1
1.4.1 Mission Statement .................................................................................................. 1
1.4.2 Updating Internal Systems ..................................................................................... 2
1.4.3 Consultation ........................................................................................................... 2
1.4.4 Ethics ...................................................................................................................... 2
2. A Guide to Matters Under Inquiry ("MUIs") and the Stages of Investigations ............. 4
2.1 General Policies and Procedures ............................................................................ 4
2.1.1 Ranking Investigations and Allocating Resources ................................................ 4
2.1.2 Quarterly Reviews of Investigations and Status Updates ..................................... 6
2.2 Tips, Complaints, and Referrals ............................................................................. 7
2.2.1 Complaints and Tips from the Public .................................................................... 7
2.2.1.1 Processing Tips and Complaints from the Public ................................................. 7
2.2.1.2 Whistleblower Award Program ............................................................................. 9
2.2.2 Other Referrals ....................................................................................................... 9
2.2.2.1 Referrals Involving Bank Secrecy Act Material .................................................... 9
2.2.2.2 Referrals from the Public Company Accounting Oversight Board ..................... 10
2.2.2.3 Referrals from State Securities Regulators ......................................................... 10
2.2.2.4 Referrals from Congress ...................................................................................... 11
2.2.2.5 Referrals from Self-Regulatory Organizations ................................................... 12
2.3 Matters Under Inquiry and Investigations ........................................................... 12
2.3.1 Opening a MUI ..................................................................................................... 12
2.3.2 Opening an Investigation and Converting or Closing a MUI ............................. 15
2.3.3 Formal Orders of Investigation ............................................................................ 17
2.3.4 Formal Order Process .......................................................................................... 17
2.3.4.1 Supplementing a Formal Order ........................................................................... 18
2.3.4.2 Requests for a Copy of the Formal Order ........................................................... 18
2.4 The Wells Process ................................................................................................. 19
2.5 Enforcement Recommendations .......................................................................... 22
2.5.1 The Action Memo Process ................................................................................... 22
2.5.2 Commission Authorization .................................................................................. 23
2.5.2.1 Closed Meetings ................................................................................................... 23
2.5.2.2 Seriatim Consideration ........................................................................................ 23
2.5.2.3 Duty Officer Consideration ................................................................................. 24
2.5.3 Delegations of Commission Authority ................................................................ 24
2.6 Closing an Investigation ....................................................................................... 26
2.6.1 Policies and Procedures ....................................................................................... 26
2.6.2 Termination Notices ............................................................................................. 27
3. A Guide to Investigative Practices ................................................................................. 28
3.1 Special Considerations ......................................................................................... 28

| | | |
|---|---|---|
| 3.1.1 | External Communications Between Senior Enforcement Officials and Persons Outside the SEC Who Are Involved in Investigations | 28 |
| 3.1.2 | Statutes of Limitations and Tolling Agreements | 31 |
| 3.1.3 | Investigations During Ongoing SEC Litigation | 32 |
| 3.1.4 | Parallel Investigations and the State Actor Doctrine | 33 |
| 3.2 | Documents and Other Materials | 34 |
| 3.2.1 | Privileges and Privacy Acts | 34 |
| 3.2.2 | Bluesheets | 34 |
| 3.2.3 | Voluntary Document Requests | 35 |
| 3.2.3.1 | Forms 1661 and 1662 | 36 |
| 3.2.3.2 | White Papers and Other Materials (excluding Wells Submissions) | 37 |
| 3.2.5 | Document Requests to the News Media | 38 |
| 3.2.6 | Subpoenas for Documents | 41 |
| 3.2.6.1 | Service of Subpoenas | 41 |
| 3.2.7 | Form of Production | 43 |
| 3.2.7.1 | Accepting Production of Copies | 45 |
| 3.2.7.2 | Bates Stamping | 46 |
| 3.2.7.3 | Format for Electronic Production of Documents to the SEC | 47 |
| 3.2.7.4 | Privilege Logs | 49 |
| 3.2.7.5 | Business Record Certifications | 49 |
| 3.2.7.6. | Confirming Completeness of Production | 50 |
| 3.2.8 | Forthwith Subpoenas in Investigations | 50 |
| 3.2.9 | Maintaining Investigative Files | 51 |
| 3.2.9.1 | Document Control | 52 |
| 3.2.9.2 | Document Imaging in Investigations | 54 |
| 3.2.9.3 | Electronic Files | 55 |
| 3.2.9.4 | Complying with Federal Rule of Civil Procedure 26(a) Requirements and Preserving Evidence in Anticipation of Litigation | 56 |
| 3.2.9.5 | Iron Mountain | 57 |
| 3.2.9.6 | Preserving Internet Evidence | 58 |
| 3.2.9.7 | Preserving Physical Evidence | 58 |
| 3.2.9.8 | Preserving Audio Recordings | 58 |
| 3.2.9.9 | Preserving Electronic Media | 59 |
| 3.3 | Witness Interviews and Testimony | 60 |
| 3.3.1 | Privileges and Privacy Acts | 60 |
| 3.3.2 | No Targets of Investigations | 60 |
| 3.3.3 | Voluntary Telephone Interviews | 61 |
| 3.3.3.1 | Privacy Act Warnings and Forms 1661 and 1662 | 61 |
| 3.3.3.2 | Documenting the Interview | 61 |
| 3.3.4 | Voluntary On-the-Record Testimony | 62 |
| 3.3.5 | Testimony Under Subpoena | 62 |
| 3.3.5.1 | Authority | 62 |
| 3.3.5.2. | Using a Background Questionnaire | 63 |
| 3.3.5.3 | Witness Right to Counsel | 64 |
| 3.3.5.4 | Going off the Record | 65 |
| 3.3.5.5 | Transcript Availability | 65 |

| | | |
|---|---|---|
| 3.3.6 | Special Cases | 66 |
| 3.3.6.1 | Contacting Employees of Issuers and Other Entities | 66 |
| 3.3.6.2 | Contacting Witnesses Residing Overseas | 66 |
| 3.3.7 | Proffers and Proffer Agreements | 68 |
| 4. | Privileges and Protections | 69 |
| 4.1 | Assertion of Privileges | 69 |
| 4.1.1 | Attorney-Client Privilege | 69 |
| 4.1.1.1 | Multiple Representations | 72 |
| 4.1.2 | Attorney Work Product Doctrine | 72 |
| 4.1.3 | The Fifth Amendment Privilege Against Self-Incrimination | 73 |
| 4.2 | Inadvertent Production of Privileged or Non-Responsive Documents | 74 |
| 4.2.1 | Purposeful Production Without Privilege Review | 75 |
| 4.3 | Waiver of Privilege | 75 |
| 4.3.1 | Confidentiality Agreements | 78 |
| 4.4 | Compliance with the Privacy Act of 1974 | 79 |
| 4.5 | Compliance with the Right to Financial Privacy Act of 1978 | 79 |
| 4.6 | Compliance with the Electronic Communications Privacy Act of 1986 | 80 |
| 4.7 | Handling Bank Secrecy Act Material | 81 |
| 5. | Working with Other Agencies and Organizations | 82 |
| 5.1 | Disclosure of Information and Access Requests | 82 |
| 5.2 | Cooperation with Criminal Authorities | 84 |
| 5.2.1 | Parallel Investigations | 84 |
| 5.2.2 | Grand Jury Matters | 86 |
| 5.3 | Cooperation with the Food and Drug Administration | 86 |
| 5.4 | Cooperation with the Public Company Accounting Oversight Board | 88 |
| 5.5 | Coordination and Consultation with Banking Agencies | 88 |
| 5.6 | Informal Referrals from Enforcement | 89 |
| 5.6.1 | Informal Referrals to Criminal Authorities | 91 |
| 5.6.2 | Informal Referrals to Self-Regulatory Organizations | 91 |
| 5.6.3 | Informal Referrals to the Public Company Accounting Oversight Board | 93 |
| 5.6.4 | Informal Referrals to State Agencies | 94 |
| 6. | Cooperation | 95 |
| 6.1 | Analytical Frameworks | 95 |
| 6.1.1 | Framework for Evaluating Cooperation by Individuals | 95 |
| 6.1.2 | Framework for Evaluating Cooperation by Companies | 98 |
| 6.2 | Cooperation Tools | 99 |
| 6.2.1 | Cooperation Agreements | 99 |
| 6.2.2 | Deferred Prosecution Agreements | 101 |
| 6.2.3 | Non-Prosecution Agreements | 102 |
| 6.2.4 | Immunity Requests | 103 |
| 6.2.5 | Oral Assurances | 105 |
| 6.2.6 | Termination Notices | 106 |
| 6.2.7 | Settlement Recommendations | 106 |
| 6.3 | Publicizing the Benefits of Cooperation | 107 |

Quarterly Case Review Meetings Between Assistant Directors and Associate Directors or Unit Chiefs

In addition, each Associate Director/Unit Chief should conduct a quarterly case review meeting with each Assistant Director under the Associate Director/Unit Chief's direct supervision. These reviews should focus on significant investigations assigned to the Assistant Director.  Suggested topics to cover during these meetings include investigation status, a discussion of any major issues presented, estimated completion time of investigation, and the need for any assistance or additional resources to advance investigations to completion.

Quarterly Case Review Meetings Between Associate Directors/Unit Chiefs and Director/Regional Director

Finally, the Director and/or Deputy Director should conduct a quarterly case review meeting with each Associate Director/Unit Chief.  Regional Directors also should conduct such meetings with Associate Regional Directors in their office.  Topics to be covered may include the status of significant cases, any major issues presented, coordination with other law enforcement agencies, estimated completion time of investigations, and the need for any assistance or resources to advance investigations to completion.

Processes, Confirmation and Reporting

For each quarterly review period, Associate Directors/Unit Chiefs should record the current status of each matter in inventory on a Quarterly Review Check Sheet form that will be generated based on Hub data.  Associate Directors/Unit Chiefs should return completed Quarterly Review Check Sheet forms before the end of each calendar-year quarter to a person designated by the Office of the Director.

Ongoing Updates to Hub System:

- The assigned staff should review the investigation and periodically update in Hub the status of an ongoing investigation.

- The Executive Summary in Hub should summarize what the matter is about, the activity to date, current status, and plans for the upcoming period.  For example, the staff might note that they are taking testimony, that they are conducting settlement negotiations, or that a potential defendant has been indicted.

- Any inaccurate or out-of-date information should be corrected.

### 2.2 Tips, Complaints, and Referrals

#### 2.2.1 Complaints and Tips from the Public

##### 2.2.1.1 Processing Tips and Complaints from the Public

Public complaints and tips are primarily received through the SEC's online web form (*http://www.sec.gov/complaint.shtml*) or through contact with staff at any of the SEC's offices.

The vast majority of complaints and tips received by the Division are in electronic form and the Division encourages the public to communicate with it through the online web form.  Every complaint is carefully reviewed by Division staff for apparent reliability, detail and potential violations of the federal securities laws.  After review, the complaint or tip generally is processed according to the guidelines below.

Guidelines for Processing of Public Complaints and Tips:

- Complaints that appear to be serious and substantial are usually forwarded to staff in the Home Office or the appropriate regional office for more detailed review, and may result in the opening of a MUI.

- Complaints that relate to an existing MUI or investigation are generally forwarded to the staff assigned to the existing matter.

- Complaints that involve the specific expertise of another Division or Office within the SEC are typically forwarded to staff in that particular Division or Office for further analysis.

- Complaints that fall within the jurisdiction of another federal or state agency may be referred to the SEC contact at that agency.  Information that may reasonably identify a whistleblower is generally not shared with other agencies, and the staff should consult with the Office of the Whistleblower before sharing any complaint that may contain such information.

- Complaints that relate to the private financial affairs of an investor or a discrete investor group are usually forwarded to the Office of Investor Education and Advocacy ("OIEA").  Comments or questions about agency practice or the federal securities laws are also forwarded to OIEA.

Searching the TCR System

Staff members are required to search the TCR System periodically to ensure that they are aware of tips, complaints and referrals related to their MUIs and investigations.  Staff members should search the system as frequently as needed during an investigation and before making material decisions about a matter, including whether to open a MUI or investigation, or add a related party.  Prior to closing a matter, staff members should use their best judgment in considering whether to search the TCR system, taking into account whether the existence of a related TCR potentially could affect the decision to close the matter.  Staff members may request the assignment of any related tip, complaint or referral discovered as a result of their search.

Further information:

      Staff should address any questions regarding the handling of tips, complaints and referrals to their group's TCR point of contact.

### 2.2.1.2 Whistleblower Award Program

Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act provides that the Commission shall pay awards to eligible whistleblowers who voluntarily provide the SEC with original information that leads to a successful enforcement action yielding monetary sanctions of over $1 million. The award amount is required to be between 10 percent and 30 percent of the total monetary sanctions collected in the Commission's action or any related action such as in a criminal case. The Dodd-Frank Act also expressly prohibits retaliation by employers against whistleblowers and provides them with a private cause of action in the event that they are discharged or discriminated against by their employers in violation of the Act.

Further information:

For further information on the SEC's whistleblower award program staff should consult the Office of the Whistleblower.

### 2.2.2 Other Referrals

#### 2.2.2.1 Referrals Involving Bank Secrecy Act Material

Enacted in 1970 and amended by the USA PATRIOT Act, the Bank Secrecy Act ("BSA") is designed to prevent financial institutions, including broker-dealers, from being used as vehicles through which criminals hide the transfer of illegally obtained funds. The recordkeeping and reporting requirements of the BSA create a paper trail for federal, state and local law enforcement to investigate the movement of funds in money laundering and other illegal schemes. The BSA is codified at 31 U.S.C. § 5311, *et seq*. The regulations implementing the BSA are located at 31 C.F.R. Part X.

For the SEC, the primary mechanism for enforcing compliance by brokers and dealers with the requirements of the BSA is Section 17(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 17a-8. Under Rule 17a-8, every registered broker or dealer must comply with the reporting, recordkeeping and record retention provisions of 31 C.F.R. Part X. In the investment company context, the registered "funds" must comply with Rule 38a-1 of the Investment Company Act of 1940 ("Investment Company Act"). Rule 38a-1 states that funds must adopt and implement written policies and procedures reasonably designed to prevent violation of the "Federal Securities Laws," which, for purposes of that rule, include the BSA. Rule 38a-1(e)(1), 17 C.F.R. § 270.38a1(e)(1).

BSA information is highly confidential, and subject to the strict limitations set out by the Financial Crimes Enforcement Network ("FinCEN"), a bureau in the Department of the Treasury. Enforcement staff has access to and reviews certain electronic reports filed under the BSA.

The Division's BSA Review Group handles, evaluates and assigns BSA information for consideration by offices within the Commission. Enforcement staff may receive information from the BSA Review Group about Suspicious Activity Reports (SARs) or other BSA reports that either relate to open Enforcement matters or warrant further Enforcement consideration.

involved in the investigation and with the unimpeded conduct of the investigation." 17 C.F.R. § 203.7(a).

- Only an Assistant Director or higher level Division official may approve a written request for a copy of a formal order. There may be circumstances that warrant denial of the request, such as when there is evidence that the requester intends to use the formal order for purposes outside the representation in the matter, or does not intend to keep the formal order confidential.

- Keep in mind that even if a request for a copy of the formal order is denied, a requesting person who is compelled or requested to furnish documentary evidence or testimony at a formal investigative proceeding is still entitled to review the formal order without retaining a copy. 17 C.F.R. § 203.7.

### 2.4 The Wells Process

The Commission's Wells Rule

Rule 5(c) of the SEC's Rules on Informal and Other Procedures states that "[p]ersons who become involved in . . . investigations may . . . submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation." The rule further provides that, "[u]pon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding." 17 C.F.R. § 202.5(c).

The practice reflected in Rule 5(c) evolved from recommendations made by an advisory committee chaired by John Wells. The objective of the practice is, as the Commission stated in the original Wells Release, for the Commission "not only to be informed of the findings made by its staff but also, where practicable and appropriate, to have before it the position of persons under investigation at the time it is asked to consider enforcement action." *See* Securities Act of 1933 Release No. 5310, "Procedures Relating to the Commencement of Enforcement Proceedings and Termination of Staff Investigations." As the Commission stated in the Release, "[t]he Commission, however, is also conscious of its responsibility to protect the public interest. It cannot place itself in a position where, as a result of the establishment of formal procedural requirements, it would lose its ability to respond to violative activities in a timely fashion." The Commission made clear in the Release that the practice is "informal" and involves the exercise of discretion by the staff.

The Wells Notice:

A Wells notice is a communication from the staff to a person involved in an investigation that: (1) informs the person the staff has made a preliminary determination to recommend that the Commission file an action or institute a proceeding against them; (2) identifies the securities law violations that the staff has preliminarily determined to include in the recommendation; and

(3) provides notice that the person may make a submission to the Division and the Commission concerning the proposed recommendation.

Providing a Wells Notice:

The staff is required to obtain an Associate Director or Regional Director's approval before issuing a Wells notice or determining to recommend an enforcement action without issuing a Wells notice.

As the Commission explained in the Wells Release, it has a "responsibility to protect the public interest" and "often is called upon to act under circumstances which require immediate action if the interests of investors or the public interest are to be protected." To determine whether or when to provide a Wells notice, staff should consider all of the relevant facts and circumstances, including but not limited to:

- Whether the investigation is substantially complete as to the recipient of the Wells notice.

- Whether immediate enforcement action is necessary for the protection of investors. If prompt enforcement action is necessary to protect investors, providing a Wells notice and waiting for a submission may not be practical (for example, a recommendation to file an emergency action requesting a temporary restraining order and asset freeze to stop an ongoing fraud).

- Whether providing a Wells notice may alert potential defendants to a possible asset freeze or otherwise put at risk investor funds that the recommendation is intended to protect.

- Whether there is a parallel criminal investigation that may be adversely affected by providing a Wells notice.

The Content of the Wells Notice:

A Wells notice should be in writing when possible. If a Wells notice is given orally, it should be followed promptly by a written confirmation. If the staff intends to provide a written Wells notice, the staff may give advance notice of the intention to the recipient or his or her counsel by telephone. As in a Wells notice, the substance of a Wells call should follow the general guidance below, but the staff also may refer to specific evidence regarding the facts and circumstances that form the basis for the staff's recommendation.

The written Wells notice or written confirmation of an oral Wells notice should:

- Identify the specific charges the staff has made a preliminary determination to recommend to the Commission.

- Accord the recipient of the Wells notice the opportunity to provide a voluntary statement, in writing or on videotape, setting forth the recipient's position with respect to the proposed recommendation, which in the recipient's discretion may include arguments why the Commission should not bring an action or why proposed charges or remedies

should not be pursued, or bring any relevant facts to the Commission's attention in connection with its consideration of the matter.

- Set reasonable limitations on the length of any submission made by the recipient (typically, written submissions should be limited to 40 pages, not including exhibits, and video submissions should not exceed 12 minutes), as well as the time period allowed for the recipient to submit a voluntary statement in response to the Wells notice.

- Advise the recipient that any submission should be addressed to the appropriate Assistant Director.

- Inform the recipient that any Wells submission may be used by the Commission in any action or proceeding that it brings and may be discoverable by third parties in accordance with applicable law.

- Include a link to a copy of the Wells Release, Securities Act Release No. 5310, which is posted on the Commission's website at: http://www.sec.gov/divisions/enforce/wells-release.pdf.

- Include a link to (or attach a copy of) the SEC's Form 1662 ("Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena"), which is posted on the Commission's website at: http://www.sec.gov/about/forms/sec1662.pdf.

Acceptance of a Wells Submission:

As discussed above, a Wells notice informs a recipient that they may make a voluntary submission to the Commission regarding the Division's proposed recommendation. However, there are limited circumstances in which the staff may reject a Wells submission:

- If the Wells submission exceeds the limitations on length specified in the Wells notice, the staff may reject the submission.

- If the Wells submission is submitted after the deadline, including any extensions of time granted by the staff, the staff may reject the submission. Requests for extensions of time should be made in writing, clearly state the basis for the request, and be directed to the appropriate Assistant Director. The staff may determine not to grant a Wells notice recipient's request for an extension of time.

- The staff may reject a Wells submission if the person making the submission seeks to limit (including by reserving the right to limit) either its admissibility under Federal Rule of Evidence 408 or the Commission's ability to use the submission for the purposes described in Form 1662.

- The staff may reject a Wells submission if the submission contains or discusses a settlement offer. Offers of settlement should not be combined with, or included in, Wells submissions, and instead may be made in a separate document.

Wells submissions that are accepted by the staff will be provided to the Commission along with any recommendation from the staff for an enforcement action against the recipient of the Wells notice. Wells submissions that are rejected on one of the bases above generally will not be provided to the Commission

The Post-Notice Wells Process:

- Recipients of Wells notices occasionally request to review portions of the staff's investigative file. On a case-by-case basis, the staff has discretion to allow the recipient of the notice to review portions of the investigative file that are not privileged. In considering a request for access to portions of the staff's investigative file, the staff should keep in mind, among other things:

  - Whether access to portions of the file would be a productive way for both the staff and the recipient of the Wells notice to assess the strength of the evidence that forms the basis for the staff's proposed recommendations.

  - Whether the prospective defendant or respondent failed to cooperate, invoked his or her Fifth Amendment rights, or otherwise refused to provide information during the investigation.

  - The stage of the investigation with regard to other persons or witnesses, including whether certain witnesses have yet to provide testimony, and whether there is a parallel criminal or regulatory investigation or proceeding that may be adversely affected by granting access to the staff's file.

- Recipients of Wells notices may request meetings with the staff to discuss the substance of the staff's proposed recommendation to the Commission. Assigned staff should consult with supervisors if a request is made. A Wells recipient generally will not be accorded more than one post-Wells notice meeting.

- The staff may engage in appropriate settlement discussions with the recipient of the Wells notice. However, the staff may choose to inform the recipient that the staff will not engage in ongoing settlement discussions that would delay timely consideration of the matter by the Commission.

Further Information:

Staff should consult with OCC concerning any questions relating to the Wells process.

### 2.5 Enforcement Recommendations

#### 2.5.1 The Action Memo Process

The filing or institution of any enforcement action must be authorized by the Commission. In addition, while the Commission has delegated certain authority to the Division Director or the Secretary, most settlements of previously authorized enforcement actions, as well as certain other aspects of civil litigation, among other things, require Commission authorization.

Staff should consult with senior managers, OCC, and, if appropriate, OGC, before taking action to ensure that proper authorization is requested.

Commission authorization is sought by submitting an action memorandum to the Commission that sets forth a Division recommendation and provides a comprehensive explanation of the recommendation's factual and legal foundation.

Prior to submitting an action memorandum to the Commission, staff should solicit review and comment from OCC, OGC, and other interested Divisions or Offices.

### 2.5.2 Commission Authorization

After the Division presents a recommendation to the Commission, the Commission will consider the recommendation and vote on whether to approve or reject the recommendation. The Commission's consideration of the recommendation takes place in a closed Commission meeting, by seriatim consideration, or by Duty Officer consideration.

Before any recommendation is considered by the Commission, the staff must identify the counsel representing the subjects of the proposed enforcement action, so that the Commissioners may determine whether to recuse themselves from considering the matter.

#### 2.5.2.1 Closed Meetings

The Commission considers and votes on some of the Division's recommendations in "closed meetings," which are meetings that the Commission, pursuant to exemptions in the Government in the Sunshine Act ("Sunshine Act"), 5 U.S.C. § 552b, has voted to close to the public. For each matter which will be considered in a closed meeting, the staff prepares a Sunshine Act certification, to be signed by the General Counsel of the Commission, certifying that the matter falls within one of the exemptions provided by the Sunshine Act and the Commission's Sunshine Act regulations, 17 C.F.R. § 200.402(a). Generally, recommendations that are eligible to be considered at a closed meeting include recommendations to institute, modify, or settle an enforcement action or to consider an offer of settlement or other proposed disposition of an enforcement action.

At a closed meeting, Division staff orally presents a recommendation to the Commission and answers any questions before the Commission votes on the recommendation. Except in unusual circumstances, the Commissioners receive a copy of the Division's written recommendation prior to the closed meeting. Staff should be prepared to answer the questions that are likely to be asked by the Commissioners and should contact the Commissioners' offices prior to the meeting to learn of any particular concerns or questions about the recommendation.

#### 2.5.2.2 Seriatim Consideration

If the Chairman or the Duty Officer (*see* Section 2.5.2.3 of the Manual), determines that consideration of a recommendation at a closed meeting is "unnecessary in light of the nature of the matter, impracticable, or contrary to the requirements of agency business," but that the recommendation should be the subject of a vote by the entire Commission, the recommendation