

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE          )
COMMISSION,                      )
                                 )
            Plaintiff,           )   Case No.
                                 )   1:18-CU-11926-PBS
vs.                              )
                                 )
GREGORY LEMELSON and             )
LEMELSON CAPITAL                 )
MANAGEMENT, LLC,                 )
                                 )
                                 )
            Defendants,          )
                                 )
and                              )
                                 )
THE AMVONA FUND, LP,             )
                                 )
            Relief Defendant.    )
                                 )


Deposition of BRUCE VOSS

San Diego, California

December 3, 2019


Reported by:
Sheri L. Somers
CSR No. 9734
Job No. 10062968

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | ) | |
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 1:18-CU-11926-PBS |
| vs. | ) | |
| | ) | |
| GREGORY LEMELSON and | ) | |
| LEMELSON CAPITAL | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE AMVONA FUND, LP, | ) | |
| | ) | |
| Relief Defendant. | ) | |
| | ) | |

        Deposition of BRUCE VOSS, taken on behalf of
defendant, at 600 West Broadway, Suite 300, San Diego,
California, beginning at 8:57 a.m., and ending at
5:52 p.m., on Tuesday, December 3, 2019, before
Sheri L. Somers, CSR No. 9734.

APPEARANCES:

For Plaintiff:
        U.S. SECURITIES AND EXCHANGE COMMISSION
        BOSTON REGIONAL OFFICE
        33 Arch Street, 24th Floor
        Boston, Massachusetts 02110
        617.573.8947
        617.573.4590 fax
                By:  Marc Jones, Esq.
                     Jonesmarc@sec.gov
                     Alfred A. Day, Esq.
                     Daya@sec.gov

For Defendants GREGORY LEMELSON and LEMELSON CAPITAL
MANAGEMENT, LLC:

        LIBBY HOOPES
        399 Boylston Street
        Boston, Massachusetts 02116
        617.338.9300
        617.338.9911 fax
                By:  Douglas S. Brooks, Esq.
                     Dbrooks@libbyhoopes.com

For LIGAND PHARMACEUTICALS and BRUCE VOSS:
        CAHILL GORDON & REINDEL LLP
        1900 K Street, Suite 950
        Washington, D.C., 20006
        202.862.8900
        202.862.8958 fax
                By:  Sean P. Tonolli, Esq.
                     Stonolli@cahill.com
                     Bradley J. Bondi, Esq.
                     Bbondi@cahill.com
                     William C. McCaughey, Esq.
                     Wmccaughey@cahill.com

APPEARANCES (Continued):


The Videographer:

          Ryan Asanas

          Key Discovery


Also present:

          Gregory Lemelson

INDEX

WITNESS:  BRUCE VOSS

                                                              PAGE
EXAMINATION BY MR. BROOKS                                      12


                            EXHIBITS
DEFENDANT'S                                                   PAGE
Exhibit 75      E-mail string, top e-mail to            39
                various recipients from Bruce
                Voss dated 6/16/2014, Bates Nos.
                LCM_SEC0000220 to '221
Exhibit 76      E-mail to Bruce Voss from John          52
                Higgins dated 6/17/2014, Bates
                Nos. LCM_SEC0000826
Exhibit 77      E-mail string, top e-mail to            59
                John Higgins from Bruce Voss
                dated 6/17/2014, Bates Nos.
                LCM_SEC0000259 to '261

Exhibit 78      E-mail string, top e-mail to            79
                John Higgins from Bruce Voss
                dated 6/17/2014, Bates Nos.
                LCM_SEC0000276 to '279
Exhibit 79      E-mail string, top e-mail to            85
                Keith Lippert from Bruce Voss
                dated 6/17/2014, Bates Nos.
                LCM_SEC0000289 to '292
Exhibit 80      E-mail string, top e-mail to            91
                Matt Foehr from Bruce Voss dated
                6/17/2014, Bates Nos.
                LCM_SEC0000295 to '296
Exhibit 81      E-mail string, top e-mail to            95
                John Higgins and Matt Foehr from
                Bruce Voss dated 6/17/2014,
                Bates Nos. LCM_SEC0000303 to
                '306

EXHIBITS

| DEFENDANT'S | | PAGE |
|---|---|---|
| Exhibit 82 | Top page says, "This document was produced natively, and attached notes of Bruce Voss, Bates Nos. LCM_SEC0000001 to '002 | 103 |
| Exhibit 83 | E-mail string, top e-mail to John Higgins and Matt Foehr from Bruce Voss dated 6/18/2014, Bates Nos. LCM_SEC0000316 to '318 | 132 |
| Exhibit 84 | E-mail to Bruce Voss from John Higgins dated 6/20/2014, Bates Nos. LCM_SEC0000883 | 139 |
| Exhibit 85 | E-mail string, top e-mail to John Higgins from Bruce Voss dated 6/20/2014, Bates Nos. LCM_SEC0000324 to '325 | 144 |
| Exhibit 86 | E-mail to Matt Foehr from Bruce Voss dated 6/20/2014, Bates Nos. LCM_SEC0000323 | 159 |
| Exhibit 87 | E-mail string, top e-mail to John Higgins from Bruce Voss dated 6/20/2014, Bates Nos. LCM_SEC0000327 to '328 | 164 |
| Exhibit 88 | Draft #1, June 20, 2014, Ligand Pharmaceuticals Response to the Lemelson Capital Management Report, Bates Nos. LCM_SEC0000332 to '333 | 164 |
| Exhibit 89 | E-mail string, top e-mail to Matt Foehr and John Higgins from Bruce Voss dated 6/20/2014, Bates Nos. LCM_SEC0000329 to '330 | 172 |

EXHIBITS

DEFENDANT'S                                                PAGE
Exhibit 90    E-mail to John Higgins and Matt       173
              Foehr from Bruce Voss dated
              6/20/2014, Bates Nos.
              LCM_SEC0000331

Exhibit 91    E-mail string, top e-mail to          179
              Matt Foehr and John Higgins from
              Bruce Voss dated 6/20/2014,
              Bates Nos. LCM_SEC0000334 to
              '337

Exhibit 92    E-mail string, top e-mail to          188
              Bruce Voss from John Higgins
              dated 6/20/2014, Bates Nos.
              LCM_SEC0000902 to '907

Exhibit 93    E-mail string, top e-mail to          189
              John Higgins from Bruce Voss
              dated 6/23/2014, Bates Nos.
              LCM_SEC0000346 to '350

Exhibit 94    E-mail string, top e-mail to Fr.      191
              Lemelson from Bruce Voss dated
              6/23/2014, Bates Nos.
              LCM_SEC0000351 to '352

Exhibit 95    E-mail string, top e-mail to          195
              Erika Luib from Bruce Voss dated
              6/23/2014, Bates Nos.
              LCM_SEC0000354 to '359

Exhibit 96    E-mail string, top e-mail to          200
              Bruce Voss from John Higgins
              dated 6/24/2014, Bates Nos.
              LCM_SEC0000923 to '924

Exhibit 97    E-mail string, top e-mail to          204
              Bruce Voss from John Higgins
              dated 6/24/2014, Bates Nos.
              LCM_SEC0000928 to '930

Exhibit 98    E-mail string, top e-mail to          207
              Bruce Voss from Matt Foehr dated
              6/25/2014, Bates Nos.
              LCM_SEC0000936 to '937

                          EXHIBITS
         DEFENDANT'S                                    PAGE
         Exhibit 99      E-mail string, top e-mail to    217
                         John Higgins from Matt Foehr
                         dated 7/7/2014, Bates Nos.
                         LCM_SEC0000991 to '1005

         Exhibit 100     E-mail string, top e-mail to    221
                         various recipients from John
                         Higgins dated 7/9/2014, Bates
                         Nos. LCM_SEC0001027
         Exhibit 101     E-mail string, top e-mail to    225
                         Bruce Voss from Erika Luib dated
                         7/14/2014, Bates Nos.
                         LCM_SEC0001036 to '037

         Exhibit 102     E-mail string, top e-mail to    229
                         Bruce Voss from Erika Luib dated
                         6/12/2014, Bates Nos.
                         LCM_SEC0000806 to '808
         Exhibit 103     E-mail string, top e-mail to    230
                         Bruce Voss from Vincent dated
                         7/14/2014, Bates Nos.
                         LCM_SEC0001038 to '039

         Exhibit 104     E-mail string, top e-mail to    230
                         John Higgins from Bruce Voss
                         dated 7/22/2014, Bates Nos.
                         LCM_SEC0000431 to '433
         Exhibit 105     E-mail string, top e-mail to    242
                         Bruce Voss from Erika Luib dated
                         8/14/2014, Bates Nos.
                         LCM_SEC0001084 to '085
         Exhibit 106     E-mail string, top e-mail to    247
                         John Higgins and Charles Berkman
                         from Bruce Voss dated 8/18/2014,
                         Bates Nos. LCM_SEC0000491 to
                         '495
         Exhibit 107     E-mail string, top e-mail to    252
                         Bruce Voss from John Higgins
                         dated 8/19/2014, Bates Nos.
                         LCM_SEC0001133 to '138

EXHIBITS

DEFENDANT'S                                                  PAGE

Exhibit 108      E-mail to Randy Osborne from          261
                 Bruce Voss dated 9/5/2014, Bates
                 Nos. LCM_SEC0000524

Exhibit 109      E-mail string, top e-mail to          263
                 John Higgins, Matt Foehr and
                 Charles Berkman from Bruce Voss
                 dated 9/23/2014, Bates Nos.
                 LCM_SEC0000528 to '535

Exhibit 110      E-mail string, top e-mail to          267
                 Matt Foehr from Bruce Voss dated
                 9/23/2014, Bates Nos.
                 LCM_SEC0000543 to '544

Exhibit 111      E-mail string, top e-mail to          270
                 Jody Burfening from Bruce Voss
                 dated 11/17/2014, Bates Nos.
                 LCM_SEC0000578 to '579

Exhibit 112      E-mail string, top e-mail to          289
                 Bruce Voss from John Higgins
                 dated 10/27/2015, Bates Nos.
                 LCM_SEC0000676 to '682

Exhibit 113      E-mail string, top e-mail to          299
                 Bruce Voss from Todd Pettingill
                 dated 5/14/2015, Bates Nos.
                 LCM_SEC0001268 to '270

Exhibit 114      E-mail string, top e-mail to          302
                 John Higgins from Bruce Voss
                 dated 10/27/2015, Bates Nos.
                 LCM_SEC0000102 to '108

Exhibit 115      E-mail string, top e-mail to          303
                 Bruce Voss from Matt Foehr dated
                 3/18/2016, Bates Nos.
                 LCM_SEC0000755 to '757

PREVIOUSLY MARKED EXHIBITS

EXHIBIT NO.                    PAGE
        4                       33

```
 1        SAN DIEGO, CALIFORNIA; TUESDAY, DECEMBER 3, 2019

 2                    8:57 A.M. - 5:52 P.M.

 3

 4        THE VIDEOGRAPHER:  We are now on the record.

 5   Today's date is December 3rd, 2019, and the time is

 6   8:57 a.m.  This begins the video-recorded deposition of

 7   Bruce Voss being taken in the matter of SEC versus

 8   Lemelson Capital Management, LLC, on behalf of the

 9   defendants, pending in the United States District

10   Court, District of Massachusetts, Case

11   No. 1:18-CU-11926-PBS.

12              This deposition is taking place at Aptus

13   Court Reporting located at 600 West Broadway,

14   Suite 300, San Diego, California 92101.  My name is

15   Ryan Asanas, the videographer, of Key Discovery.

16              Will all counsel please identify yourselves

17   and state whom you represent starting with the taking

18   attorney.

19        MR. BROOKS:  Good morning.  Doug Brooks, law firm

20   of Libby Hoopes, and I represent the defendants in this

21   matter.

22        MR. JONES:  Good morning.  Marc Jones for the

23   plaintiff, Securities and Exchange Commission.

24        MR. DAY:  Al Day for the Securities and Exchange
```

1  Commission.

2      MR. BONDI:  Brad Bondi of Cahill Gordon & Reindel

3  for the witness, Bruce Voss.

4      MR. McCAUGHEY:  William McCaughey of Cahill Gordon

5  for Bruce Voss.

6      MR. TONOLLI:  Sean Tonolli of Cahill Gordon on

7  behalf of Mr. Voss.

8      THE VIDEOGRAPHER:  Thank you.  The court reporter

9  today is Sheri Somers also with Key Discovery, and she

10  may now swear in or affirm the deponent.

11

12                       BRUCE VOSS,

13  having been administered an oath, was examined and

14  testified as follows:

15

16                      EXAMINATION

17  BY MR. BROOKS:

18      **Q.**   Good morning, Mr. Voss.  We met briefly off

19  the record.  My name is Doug Brooks and I represent the

20  defendants in this matter.

21            Can you please state and spell your last name

22  for the record.

23      **A.**   Last name is Voss, V -- like "Victor" --

24  o-s-s -- like "Sam."

1   when Mr. Berkman sent it to you?

2        **A.**   I don't recall exactly when I read the full

3   report.  It's quite long.  I read parts of it when

4   Mr. Berkman forwarded it to me.

5        **Q.**   Do you recall what parts?

6        **A.**   The Seeking Alpha alert is a link back to the

7   Seeking Alpha website, and as best as I can recall, I

8   started to scan the document on Seeking Alpha, which in

9   turn, as I recall, had a link to the document here in

10  front of me.

11       **Q.**   Had you heard of Seeking Alpha before

12  June 16, 2014?

13       **A.**   I had.

14       **Q.**   And what was your understanding of what

15  Seeking Alpha was?

16       **A.**   My understanding of Seeking Alpha is that it

17  is a website into which various contributors write

18  notes and opinions and information about publicly

19  traded companies.

20       **Q.**   Now, ultimately you spoke with Father

21  Lemelson about his report, correct?

22       **A.**   I ultimately spoke with Father Lemelson about

23  his report on June 18, right?

24       **Q.**   Okay.  So two days after the report came out,

1   correct?

2       **A.**    That's correct.  The report came out on the

3   16th.

4       **Q.**    When you spoke to Father Lemelson on June 18,

5   had you read the entire report at that point?

6       **A.**    By that point, yes.

7       **Q.**    How many times?

8       **A.**    I don't recall.

9       **Q.**    Now, prior to speaking with Father Lemelson

10  on June 18, 2014, did you discuss that report with

11  anyone at Ligand?

12      **A.**    As I recall, we had multiple discussions

13  about the report with various people at Ligand.

14      **Q.**    Did that include -- strike that.

15              Did that include telephone conversations?

16      **A.**    As I recall, it did.

17      **Q.**    And, again, focusing on the time between June

18  16 and June 18, did you speak with anyone at Ligand in

19  person?

20      **A.**    I -- as I recall, I did not.

21      **Q.**    Have you ever exchanged text messages with

22  anyone at Ligand about Father Lemelson?

23      **A.**    I have not.

24      **Q.**    With whom at Ligand did you speak about the

Page 99

1          Do you see that?

2     **A.**    I do.

3     **Q.**    Other than this e-mail, do you know if he

4   ever provided you a proposed narrative in writing?

5     **A.**    I don't recall ever receiving a proposed

6   narrative in writing.

7     **Q.**    Do you recall ever seeing a proposed

8   narrative outside of this e-mail on a phone call with

9   Mr. Higgins?

10    **A.**    I don't follow, seeing on a phone call.

11    **Q.**    I misspoke.  I'm sorry.

12         So did you ever receive a proposed narrative

13  from Mr. Higgins on a phone call?

14    **A.**    I don't recall.

15    **Q.**    He then writes, "Specifically, in my proposal

16  I do not think the first call should be jump into

17  content or a rebuttal."

18         Do you see that?

19    **A.**    I do.

20    **Q.**    Did you agree with that suggestion?

21    **A.**    That's him making a suggestion.

22    **Q.**    Did you agree with it?

23    **A.**    It's -- was presented for consideration.

24    **Q.**    And what did you consider about it?

1     **A.**   This is ultimately what happened.

2     **Q.**   Meaning ultimately that's the way the call

3   went --

4     **A.**   Right.

5     **Q.**   -- without jumping into content or rebuttal,

6   correct?

7     **A.**   I think what's key here is that he's --

8   Mr. Higgins is suggesting that I call Father Lemelson

9   first to feel him out for tone and approach.

10    **Q.**   Right.  And he's writing in that first call

11  he doesn't want you to jump into content or rebuttal,

12  correct?

13    **A.**   I don't -- I think what he's responding to is

14  that the previous suggestion was to have Matt on with

15  me because so much of Father Lemelson's report was

16  about topics where Matt is the subject matter expert.

17    **Q.**   Right.

18    **A.**   And I'm not sure that Mr. Higgins here was

19  talking in very definitive terms on content or

20  rebuttal.

21    **Q.**   So if you look at the fourth line down,

22  Mr. Higgins writes, "To me, if we jump right into

23  rebuttal mode without knowing our counterparty, it

24  seems we are less prepared for any call we could have

1      **Q.**   All right.  Now we're going to get to the

2   hard part where I'm going to ask you to decipher all of

3   your notes.

4      **A.**   I understand.

5      **Q.**   So I think we can start because you've talked

6   about the ones above it.  So you see the date 6-18-14?

7      **A.**   Yeah.

8      **Q.**   That's the date of the call, right?

9      **A.**   I'll read through it.  6-18-14 is the date.

10     **Q.**   Yep.

11     **A.**   Under where it says 8:49, then crossed out,

12  55 A, that means at 8:55 a.m., "LVN" means I left a

13  voicemail.

14     **Q.**   Okay.

15     **A.**   And then under that, "9:56 A to 10:16 A,"

16  that's when the returned call and the conversation took

17  place.

18     **Q.**   Okay.  So fair to say it was a 20-minute

19  conversation?

20     **A.**   Correct.

21     **Q.**   Okay.  All right.  Then can you continue

22  reading.

23     **A.**   I would note here that these notes that I

24  took are in the main things Father Lemelson was saying

1          Do you recall anything that Father Lemelson

2     said during your June 18, 2014 telephone conversation

3     that is not written in your notes that are Exhibit 82,

4     I believe?

5          **A.**    There's a lot he said not in these notes.  I

6     don't recall all of it.  The notes are not a

7     transcription of the call.  They are my best ability.

8     But to answer your question, I recall that Father

9     Lemelson had a pattern of speech during that call where

10    after many of his statements he would say the phrase,

11    "Don't you agree?"  But the way he said it was just

12    that, it was a pattern of speech.  It was a very

13    dismissive, "Don't you agree?" and then the

14    conversation would go on.  And it struck me as just a

15    personal tick that I hadn't heard before, which is why

16    I remembered it.

17         **Q.**    And in response to him saying, "Don't you

18    agree?" did you explicitly disagree as to any of his

19    points when he phrased it like that?

20         **A.**    I don't recall specifically addressing any of

21    those because, like I said, they were so regular and

22    they were so basically dismissive that they were just

23    part of his speech pattern.

24         **Q.**    And I believe -- is it one of your

1     **Q.**    So if you go down in that first paragraph of

2    your thing towards the end, do you see where, three

3    lines up, it says, "As I wrote last night"?

4     **A.**    I see that.

5     **Q.**    You said, "As I wrote last night, he made

6    that statement with a rhetorical, "Don't you agree?"

7    and I moved on to the next subject as we had more to

8    cover and his statement was ridiculous."

9            What were you referring to there?

10    **A.**    This refers to a comment Father Lemelson made

11   during the Benzinga interview whereby he mentioned that

12   he had talked to Ligand's IR representative, meaning

13   me, and that I had said to him in agreement that we,

14   meaning Ligand, agree and know that Promacta is going

15   to go to zero in sales.

16    **Q.**    Okay.  And that's what you're referring to in

17   that sentence I just read, correct?

18    **A.**    That's the statement that I'm referencing.

19    **Q.**    You wrote, "As I wrote last night."  Do you

20   know what you're referring to there?

21    **A.**    I don't.

22    **Q.**    So I'll just represent for the record that we

23   do not have any e-mails from you from -- that relate to

24   this in any way from the prior night.  So to the extent

1    that they exist, I'd ask counsel to look for them.

2        MR. TONOLLI:  I'll represent that we have looked,

3    we're aware of this, and there is nothing there.  And

4    as you've indicated, Mr. Voss has testified he had not

5    seen or heard of the interview until the 20th, so

6    saying, "As of last night" would have been the 19th.

7    BY MR. BROOKS:

8        **Q.**   So you don't know why you wrote that?

9        **A.**   I don't know what it refers to or how it

10   might be written incorrectly.  I don't know.

11       MR. TONOLLI:  And to be clear, we've checked both

12   Ligand's and Bruce at LHA.

13       MR. BROOKS:  I appreciate that.  We've obviously

14   done the same.  So --

15   BY MR. BROOKS:

16       **Q.**   And, again, just to clarify, now that we've

17   had the back and forth, you just -- sitting here today,

18   you have no memory of what you were referring to,

19   correct?

20       **A.**   Unfortunately I don't.

21       **Q.**   Okay.  Now, in the next paragraph you say,

22   "We could always threaten legal action against him for

23   being reckless by making knowingly incorrect statements

24   publicly, but I'm not sure what that would include."

Page 152

1      **A.**   I do see that.

2      **Q.**   And prior to your e-mail to Mr. Higgins on

3   January 20, you had spoken to him by phone on -- prior

4   to -- sorry.  Mr. Tonolli is ready to object.

5      MR. TONOLLI:  You said January.

6      MR. BROOKS:  I know.

7   BY MR. BROOKS:

8      **Q.**   Let me rephrase it so the transcript is

9   clear.

10          Prior to your e-mail -- strike that.

11          Prior to Mr. Higgins' e-mail to you on

12   June 20 that's part of Exhibit 85, you had spoken to

13   Mr. Higgins about your conversation with Father

14   Lemelson on June 18, correct?

15      **A.**   That's correct, in the debrief.

16      **Q.**   Okay.  And Mr. Higgins' characterization was

17   that you made a tacit agreement -- you were in tacit

18   agreement that Promacta was going away, right?

19      MR. TONOLLI:  Object to form.

20      MR. JONES:  Vague.

21   BY MR. BROOKS:

22      **Q.**   You can answer.

23      **A.**   What you just said he wrote.

24      **Q.**   Did you agree with Mr. Higgins' assessment

1      **Q.**   Was that true?

2      **A.**   There had been no dialogue between Father

3   Lemelson and Ligand or LHA prior to issuing the report,

4   as we have discussed.  To say no prior contact, that's

5   an error because there were attempted contacts and

6   there were some exchanges.

7      **Q.**   Why did you not tell Mr. Balsamo about Father

8   Lemelson's attempted contacts with Ligand before

9   issuing his report?

10     **A.**   I think the precision of this e-mail was not

11  to that degree.  I was trying to make the point that

12  the report had been issued by Father Lemelson without

13  the benefit of a conversation with Ligand Management or

14  with LHA.

15     **Q.**   And then you wrote, "The report's content and

16  conclusions are so egregious and the author so marginal

17  that Ligand has chosen not to respond publicly."

18          Was that your opinion at the time?

19     **A.**   It was.

20     **Q.**   And does it remain your opinion sitting here

21  today?

22     **A.**   It does.

23     **Q.**   Mr. Voss, you've just been handed what's been

24  marked as Exhibit 102.  I'll ask you to take a look at

1    **Q.**   But you don't recall who at Ligand told you?

2    **A.**   I don't recall who.  I don't recall when.

3    **Q.**   You then wrote, "If your client might go that

4    route, I can took them up with the Latham & Watkins

5    guys in San Diego who spearheaded the effort."

6           Does that refresh your recollection on who

7    Ligand used for their meeting with the Boston SEC in

8    2014?

9    **A.**   It does refresh my memory because I believe

10   previously I had stated that I knew Ligand had a

11   relationship with Latham & Watkins, but I was not aware

12   if they were involved in this matter.

13   **Q.**   And just to be clear, somebody at Ligand

14   would have been the one to tell you that there seems to

15   be an investigation underway; is that right?

16          MR. JONES:  Objection.

17          THE WITNESS:  The only entity I would have heard

18   this from would have been Ligand, and specifically who,

19   I don't know.  I don't recall.

20   BY MR. BROOKS:

21   **Q.**   At this point, November 17, 2014, had you

22   spoken to anybody at the SEC about Father Lemelson?

23   **A.**   I don't believe so.

24   **Q.**   Have you ever spoken with anybody at the SEC

1    accomplished by meeting with me in person and talking

2    and discussing things.  Whether it was an interview or

3    something else, I don't know.

4        **Q.**   As best you can remember, did you say

5    anything during the meeting with the SEC in New York

6    that is inconsistent with what you've testified to here

7    today?

8        **A.**   As best I can remember, absolutely not.

9        **Q.**   But you don't recall them showing you any

10   e-mails?

11       **A.**   They may have, but I honestly don't recall.

12       **Q.**   Getting back to the e-mail that led us down

13   this road, which was the last exhibit, which was 111 --

14       **A.**   That's right.

15       **Q.**   -- you talked about -- you talked about that

16   there was a lengthy meeting.  Do you see that?  The

17   last paragraph.  I'm sorry.

18       **A.**   I see, yes.

19       **Q.**   Do you know if any presentation was made at

20   that meeting?

21       **A.**   I don't know if there was or was not.

22       **Q.**   Have you ever seen a presentation that Ligand

23   or its counsel made to the SEC?

24       **A.**   I don't recall seeing any such presentation.

Page 288

 1          (Mr. Day leaves the deposition.)

 2     Q.   And you see obviously that Ligand was using

 3   Latham & Watkins and then ultimately decided on Cahill;

 4   is that right?

 5     A.   And whether there was anyone in between, I

 6   don't know.

 7     Q.   Fair enough.  Did anyone at Ligand ever

 8   explain to you why they started using Cahill?  I don't

 9   want to hear about any conversations you had with

10   anyone at Cahill.

11   MR. TONOLLI:  Well, objection to the extent it

12   would call on conversations that are privileged or work

13   product between people with common interests.

14   MR. BROOKS:  So are you saying -- is there a

15   common interest agreement, written or oral?

16   MR. TONOLLI:  I'm just saying to the extent it

17   calls on those kinds of conversations.

18   MR. BROOKS:  I'm not.

19   MR. TONOLLI:  I understand.  I'm just making a

20   record.

21   BY MR. BROOKS:

22     Q.   I guess, first, did you ever have any such

23   conversations?

24     A.   I was aware that Ligand was talking to law

1              DECLARATION UNDER PENALTY OF PERJURY

2

3      I, BRUCE VOSS, hereby certify under penalty of

4    perjury under the laws of the State of California that

5    the foregoing is true and correct.

6

7      Executed this _____ day of _____, 2019

8    at _____, California.

9

10

11

12                          _____

13                               BRUCE VOSS

14

15

16

17

18

19

20

21

22

23

24

```
 1                 DEPOSITION ERRATA SHEET
 2
    CASE NAME: SEC v. LEMELSON
 3  DEPOSITION DATE: December 3, 2019
    WITNESS NAME: BRUCE VOSS
 4
 5  Reason Codes:  1. To clarify the record.
                   2. To conform to the facts.
 6                 3. To correct transcription errors.
 7
    Page _____ Line _____ Reason Code _____
 8  From _____ to _____
 9  Page _____ Line _____ Reason Code _____
    From _____ to _____
10
    Page _____ Line _____ Reason Code _____
11  From _____ to _____
12  Page _____ Line _____ Reason Code _____
    From _____ to _____
13
    Page _____ Line _____ Reason Code _____
14  From _____ to _____
15  Page _____ Line _____ Reason Code _____
    From _____ to _____
16
    Page _____ Line _____ Reason Code _____
17  From _____ to _____
18  Page _____ Line _____ Reason Code _____
    From _____ to _____
19
    Page _____ Line _____ Reason Code _____
20  From _____ to _____
21  Page _____ Line _____ Reason Code _____
    From _____ to _____
22
    Page _____ Line _____ Reason Code _____
23  From _____ to _____
24
```

1    Page _____ Line _____ Reason Code _____

     From _____ to _____

2

     Page _____ Line _____ Reason Code _____

3    From _____ to _____

4    Page _____ Line _____ Reason Code _____

     From _____ to _____

5

6

     _____ Subject to the above changes, I certify that

7            the transcript is true and correct

8    _____ No changes have been made. I certify that the

             transcript is true and correct.

9

10

11                         _____

                                   BRUCE VOSS

12

13

14

15

16

17

18

19

20

21

22

23

24

# ERRATA SHEET

<u>Case</u>: *Securities and Exchange Commission v. Lemelson*, No. 1:18-cv-11926-PBS (D. Mass)

<u>Date of Deposition</u>: December 3, 2019

<u>Deponent</u>: Bruce Voss

| Page | Line(s) | Change | Change To | Reason |
|------|---------|--------|-----------|--------|
| 1 | N/A | 1:18-CU-11926-PBS | 1:18-CV-11926-PBS | Clarification |
| 2 | N/A | 1:18-CU-11926-PBS | 1:18-CV-11926-PBS | Clarification |
| 11 | 11 | 1:18-CU-11926-PBS | 1:18-CV-11926-PBS | Clarification |
| 14 | 10 | No. | Yes, in local court in San Francisco about a neighbor my landlord was trying to evict. | Clarification. |
| 15 | 16 | strike preserved | strike are preserved | Transcription Error |
| 16 | 18 | firms' limited partnership | firm's limited partnerships | Transcription Error |
| 16 | 24 | NW Ayer | N.W. Ayer | Transcription Error |
| 17 | 3 | NW Ayer | N.W. Ayer | Transcription Error |
| 17 | 2 | York. | York. Correction, I worked at N.W. Ayer before Southmark. | Clarification |
| 18 | 4 | three times. | three years. | Transcription Error |
| 26 | 14 | that roughly Promacta | that, roughly, Promacta | Clarification |
| 27 | 9 | importance to of | importance of | Transcription Error |
| 34 | 23 | right? | right. | Transcription Error |
| 37 | 23 | or Q&A | or a Q&A | Transcription Error |
| 38 | 6 | and Q&A | and a Q&A | Transcription Error |
| 43 | 2 | get any public | get in a public | Clarification from exhibit |
| 50 | 3 | get benefit | get a benefit | Transcription Error |
| 55 | 3 | Today, | Today. | Clarification from exhibit |
| 55 | 3-4 | undress | UNDRESS | Clarification from exhibit |
| 56 | 5, 11 | you | YOU | Clarification from exhibit |
| 56 | 7 | was, | was | Clarification from exhibit |
| 57 | 10 | call Gary | Gary call | Transcription Error |
| 64 | 8 | and then | then | Clarification from exhibit |

| Page | Line(s) | Change | Change To | Reason |
|------|---------|--------|-----------|--------|
| 70 | 2 | today, | today | Clarification from exhibit |
| 72 | 17 | belief | brief | Transcription Error |
| 74 | 3-4 | "Promacta, along with Kyprolis, is early in its lifecycle" | Promacta, along with Kyprolis, "are early in their . . . lifecycles" | Clarification from exhibit |
| 77 | 11 | 2.2 | $2.2 | Clarification from exhibit |
| 77 | 17 | 10 | $10 | Clarification from exhibit |
| 78 | 19 | 10 | $10 | Clarification |
| 80 | 14 | this. | this? | Clarification from exhibit |
| 80 | 14 | Bruce, | Bruce - | Clarification from exhibit |
| 82 | 1 | call. | call, | Clarification from exhibit |
| 83 | 11 | forceful and | forceful. and | Clarification from exhibit |
| 86 | 19 | new | new, | Clarification from exhibit |
| 88 | 12 | 4 | $4 | Clarification from exhibit |
| 89 | 7 | new | new, | Clarification from exhibit |
| 92 | 17 | Both, | Both: | Clarification from exhibit |
| 95 | 21 | "You have three choices" | "We have three choices" | Clarification from exhibit |
| 99 | 10 | call. | call? | Transcription Error |
| 100 | 23-24 | it seems | seems | Clarification from exhibit |
| 101 | 8 | to or | to, to | Transcription Error |
| 103 | 10 | meeting call | meeting/call | Clarification from exhibit |
| 103 | 10-11 | when dates | when/dates | Clarification from exhibit |
| 103 | 13 | coming out." | coming." | Clarification from exhibit |
| 106 | 15 | I all | all I | Transcription Error |
| 111 | 11 | side | size | Transcription Error |
| 113 | 12 | "LVN" | "LVM" | Transcription Error |
| 114 | 1 | I myself | myself | Transcription Error |
| 120 | 7 | "research," rsch, | research, "rsch," | Transcription Error |

| Page | Line(s) | Change | Change To | Reason |
|------|---------|--------|-----------|--------|
| 120 | 8 | Silvadi | "Solvadi" | Clarification from exhibit |
| 122 | 4 | technology in biotechnology | biotechnology | Clarification |
| 125 | 8 | "none-GAAP," | "non-GAAP," | Clarification from exhibit |
| 142 | 14 | were | was | Transcription Error |
| 142 | 16 | Ligand mentioned | Ligand was mentioned | Transcription Error |
| 143 | 8 | often | often than | Clarification |
| 151 | 18 | there were more things to cover or | 'there were more things to cover.' Or | Clarification from exhibit |
| 156 | 18 | guy's | guys | Clarification from exhibit |
| 157 | 19 | to phrase | the phrase | Transcription Error |
| 160 | 22 | 'kook' | kook, | Clarification from exhibit |
| 161 | 17 | folly | personal | Clarification |
| 169 | 17 | to be | to not be | Clarification |
| 169 | 20-21 | to be | to not be | Clarification |
| 170 | 10 | about being | about not being | Clarification |
| 173 | 13 | write | wrote | Transcription Error |
| 174 | 4 | that basically | that you basically | Transcription Error |
| 174 | 13-15 | Benzinga," paren, "a self-described financial media outlet for traders at Benzinga.com," close paren, "during which | Benzinga," paren, "(a self-described financial media outlet for traders at benzinga.com)," close paren, "during which | Clarification from exhibit |
| 190 | 10, 13 | "Bruce, no, it looks good." | Bruce – note looks good." | Clarification from exhibit |
| 190 | 15-16 | underline," quote, "only one," in the para about Promacta, "not sure | underline", quote, "'only one' in the first para about Promacta. Not sure | Clarification from exhibit |
| 193 | 3 | is KOL's | his KOL's | Transcription Error |
| 196 | 15 | 84 | $84,000 | Clarification |
| 200 | 6 | have didn't | didn't | Transcription Error |
| 201 | 4 | on | of | Transcription Error |
| 201 | 9 | news. | news? | Clarification from exhibit |
| 203 | 6 | UPS | UBS | Transcription Error |
| 204 | 19 | hold | old | Transcription Error |
| 205 | 1 | any | my | Transcription Error |
| 206 | 18 | polling | pulling | Transcription Error |
| 207 | 15 | person different | different person | Transcription Error |
| 211 | 19 | to men | for men | Transcription Error |

| Page | Line(s) | Change | Change To | Reason |
|------|---------|--------|-----------|--------|
| 212 | 2-3 | this his | his | Transcription Error |
| 214 | 22 | flash | in | Transcription Error |
| 214 | 24 | then | than | Transcription Error |
| 215 | 2 | they very | they are very | Transcription Error |
| 229 | 16 | there | they | Transcription Error |
| 234 | 10 | understand | under | Transcription Error |
| 237 | 15 | Mr. Higgins | Mr. Higgins' | Transcription Error |
| 240 | 8 | Leff | Left | Transcription Error |
| 240 | 16 | trade | tread | Transcription Error |
| 254 | 11-12 | to," quote, "not comment," closed quote, "should | to quote "not comment," closed quote, "should | Clarification from exhibit |
| 255 | 10-11 | out," open paren, "the opinions of others," closed paren, "and | out," open paren, "(the opinions of others)," close paren, "and | Clarification from exhibit |
| 256 | 17-19 | Lemelson," open paren, "the person, the report, the fund, the model, the assumptions, WWF, et cetera, he says | Lemelson", open paren, "(the person, the report, the fund, the model, the assumptions, WWF, etc.), he says | Clarification from exhibit |
| 256 | 22-23 | future," open paren, quote, "I won't give him any more space," closed quote, closed paren. | future," open paren, quote "('I won't give him anymore space')," closed quote, closed paren. | Clarification from exhibit |
| 259 | 23 | et cetera | etc. | Clarification from exhibit |
| 262 | 5 | 38 percent | 38% | Clarification from exhibit |
| 264 | 14 | 4,000,000 | $400 million | Clarification |
| 266 | 4 | 400 | $400 | Clarification |
| 266 | 24 | share | shares | Transcription Error |
| 271 | 14 | worth zero, not 1.1 billion, | worth $0, not $1.1 billion, | Clarification from exhibit |
| 273 | 14-15 | SEC," open paren, "Lemelson is based in Mass," closed paren, "and | SEC," open paren, "(Lemelson is based in Mass.)," closed paren, "and | Clarification from exhibit |
| 274 | 4 | took | hook | Clarification from exhibit |
| 276 | 12 | trades of | trading in | Clarification |
| 290 | 8 | sometime | some time | Transcription Error |
| 293 | 5-6 | He's been coaching to go witness all day. | He's been coaching the witness all day. | Transcription Error |
| 304 | 10 | closed | close | Transcription Error |

| Page | Line(s) | Change | Change To | Reason |
|------|---------|--------|-----------|--------|
| 305 | 18 | that | there | Transcription Error |
| 305 | 21 | has | have | Transcription Error |
| 308 | 15 | trailing | trading | Transcription Error |

## <u>CERTIFICATE OF DEPONENT</u>

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

Bruce Voss