

```
         UNITED STATES DISTRICT COURT
                  FOR THE
           DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE      )
COMMISSION,                  )
                             )
            Plaintiff,       )  Case No.
                             )  1:18-CU-11926-PBS
vs.                          )
                             )
GREGORY LEMELSON and         )
LEMELSON CAPITAL             )
MANAGEMENT, LLC,             )
                             )
            Defendants,      )
                             )
and                          )
                             )
THE AMVONA FUND, LP,         )
                             )
            Relief Defendant.)
```

Deposition of MATTHEW FOEHR
San Diego, California
December 5, 2019

Reported by:
Sheri L. Somers
CSR No. 9734
Job No. 10062971

```
                UNITED STATES DISTRICT COURT
                         FOR THE
                 DISTRICT OF MASSACHUSETTS


   SECURITIES AND EXCHANGE          )
   COMMISSION,                      )
                                    )
              Plaintiff,            )  Case No.
                                    )  1:18-CU-11926-PBS
   vs.                              )
                                    )
   GREGORY LEMELSON and             )
   LEMELSON CAPITAL MANAGEMENT,     )
   LLC,                             )
                                    )
              Defendants,           )
                                    )
   and                              )
                                    )
   THE AMVONA FUND, LP,             )
                                    )
              Relief Defendant.     )
```

      Deposition of MATTHEW FOEHR, taken on behalf of defendant, at 600 West Broadway, Suite 300, San Diego, California, beginning at 8:59 a.m., and ending at 6:35 p.m., on Thursday, December 5, 2019, before Sheri L. Somers, CSR No. 9734.

APPEARANCES:

For Plaintiff:
    U.S. SECURITIES AND EXCHANGE COMMISSION
    BOSTON REGIONAL OFFICE
    33 Arch Street, 24th Floor
    Boston, Massachusetts 02110
    617.573.8947
    617.573.4590 fax
        By: Marc Jones, Esq.
            Jonesmarc@sec.gov

For Defendants:
    LIBBY HOOPES
    399 Boylston Street
    Boston, Massachusetts 02116
    617.338.9300
    617.338.9911 fax
        By: Douglas S. Brooks, Esq.
            Dbrooks@libbyhoopes.com

For LIGAND PHARMACEUTICALS and MATTHEW FOEHR:

    CAHILL GORDON & REINDEL LLP
    1900 K Street, Suite 950
    Washington, D.C., 20006
    202.862.8900
    202.862.8958 fax
        By: Bradley J. Bondi, Esq.
            Bbondi@cahill.com
            William C. McCaughey, Esq.
            Wmccaughey@cahill.com

The Videographer:
    Ryan Asanas and Mike Tisa
    Key Discovery
Also present:
    Gregory Lemelson

                          INDEX
     WITNESS:  BRUCE VOSS
                                                   PAGE
     EXAMINATION BY MR. BROOKS                        9


                        EXHIBITS


     DEFENDANT'S                                    PAGE

     Exhibit 116    Subpoena to Testify at a          18
                    Deposition in a Civil Action
     Exhibit 117    E-mail string, top e-mail to      36
                    various recipients from Olivia
                    Holiday dated 3/12/2014, Bates
                    Nos. LGND_0020049 to '061

     Exhibit 118    Form S-1 Registration Statement   68
                    for Viking Therapeutics, Inc.
     Exhibit 119    Slide deck entitled, "Board of    73
                    Directors Meeting, June 10,
                    2015," Bates Nos. LGND_0056230
                    to '268

     Exhibit 120    E-mail string, top e-mail to      90
                    Jeffrey Finnell from Scott
                    Friestad dated 5/21/2015, Bates
                    Nos. SEC-SEC-E-0000892 to '895
     Exhibit 121    Document titled, "Overview of    106
                    Event Study Analysis," Bates
                    Nos. SEC-LIGAND-E-0000761 to
                    '766

     Exhibit 122    Slide deck entitled, "Meeting   108
                    with SEC Enforcement Division
                    Re: Emmanuel Lemelson," Bates
                    Nos. LGND_0048070 to '129

EXHIBITS

DEFENDANTS'                                                    PAGE

Exhibit 123    Document titled, "Ligand                        165
               Pharmaceuticals Incorporated
               Going Concern Analysis," Bates
               Nos. LGND_0021095 to '098

Exhibit 124    Table of Contents, Item 1A. Risk                168
               Factors, Bates Nos. LGND_0009352
               to '361

Exhibit 125    E-mail string, top e-mail to                    197
               Matt Foehr from Nishan De Silva
               dated 8/29/2013, Bates Nos.
               LGND_0010818, and attached slide
               deck entitled, "Shots-on-Goal
               Portfolio Review"

Exhibit 126    E-mail string, top e-mail to                    208
               John Higgins, matt Foehr and
               Nishan De Silva from Jason Aryeh
               dated 12/6/2013, Bates Nos.
               LGND_0018514 to '516

Exhibit 127    E-mail string, top e-mail to                    210
               undisclosed recipients from
               Robyn Karnauskas-Deutsche Bank
               dated 12/6/2013, Bates Nos.
               LGND_0018523 to '524

Exhibit 128    E-mail string, top e-mail to                    212
               John Higgins from Matt Foehr
               dated 2/1/2014, Bates Nos.
               LGND_0019421 to '422

Exhibit 129    E-mail string, top e-mail to                    224
               John Higgins from Matt Foehr
               dated 2/3/2014, Bates Nos.
               LGND_0019446 to '447

Exhibit 130    E-mail to Glenn Dourado from Lin                227
               Zhi dated 4/1/2014, Bates Nos.
               LGND_0022920 to '932

                          EXHIBITS
      DEFENDANTS'                                              PAGE

      Exhibit 131    E-mail to John Higgins from Matt           231
                     Foehr dated 9/26/2014, Bates
                     Nos. LGND_0061987 to '2010

      Exhibit 132    E-mail string, top e-mail to               246
                     Bruce Voss from Matt Foehr dated
                     6/17/2014, Bates Nos.
                     LCM_SEC0000849 to '851

      Exhibit 133    E-mail string, top e-mail to               250
                     Bruce Voss from Matt Foehr dated
                     6/17/2014, Bates Nos.
                     LCM_SEC0000857 to '859

      Exhibit 134    E-mail string, top e-mail to               266
                     Bruce Voss and John Higgins from
                     Matt Foehr dated 6/25/2014,
                     Bates Nos. LCM_SEC0000936 to
                     '937

      Exhibit 135    E-mail string, top e-mail to               271
                     Bruce Voss from Matt Foehr dated
                     9/26/2014, Bates Nos.
                     LCM_SEC0001190 to '193

      Exhibit 136    E-mail to John Higgins from Matt           272
                     Foehr dated 10/6/2014, Bates No.
                     LGND_000165

      Exhibit 137    Document titled, "Pipeline                 279
                     Ligand Pipe Dream, Citron
                     Publishes the Smoking Gun on
                     Ligand Pharmaceuticals

PREVIOUSLY MARKED EXHIBITS

| EXHIBIT NO. | PAGE |
|---|---|
| 4 | 236 |
| 79 | 245 |
| 85 | 261 |
| 99 | 268 |
| 110 | 270 |

1      SAN DIEGO, CALIFORNIA; THURSDAY, DECEMBER 5, 2019

2                   8:59 A.M. - 6:35 P.M.

3

4

5         THE VIDEOGRAPHER:  We are now on the record.

6    Today's date is December 5, 2019, and the time is

7    8:59 a.m.  This begins the video-recorded deposition of

8    Matt Foehr being taken in the matter of SEC versus

9    Lemelson Capital Management, LLC, et al., on behalf of

10   the defendant, pending in the United States District

11   Court, District of Massachusetts, Civil Action

12   No. 1:18-CV-11926-PBS.

13            This deposition is taking place at Aptus

14   Court Reporting located at 600 West Broadway,

15   Suite 300, San Diego, California 92101.  My name is

16   Ryan Asanas, the videographer, of Key Discovery located

17   at 40 Court Street, Boston, Massachusetts 02108.

18            Will all counsel present identify yourselves

19   and state whom you represent starting with the taking

20   attorneys.

21       MR. BROOKS:  Doug Brooks from the law firm Libby

22   Hoopes and I represent the defendants in this matter.

23       MR. JONES:  Marc Jones, Securities and Exchange

24   Commission, representing the plaintiffs.

1      MR. McCAUGHEY:  William McCaughey, Cahill Gordon &
2  Reindel, on behalf of Matt Foehr.
3      MR. BONDI:  Brad Bondi, Cahill Gordon & Reindel,
4  on behalf of Ligand Pharmaceuticals and the witness.
5      THE VIDEOGRAPHER:  Thank you.  The court reporter
6  today is Sheri Somers also with Key Discovery, and she
7  may now swear in or affirm the deponent.
8
9                     MATTHEW FOEHR,
10 having been administered an oath, was examined and
11 testified as follows:
12
13                      EXAMINATION
14 BY MR. BROOKS:
15     **Q.**   Good morning, Mr. Foehr.  My name is Doug
16 Brooks.  We met briefly off the record.  I represent
17 the defendants in this matter.
18          Have you ever been deposed before?
19     **A.**   I have.
20     **Q.**   How many times?
21     **A.**   Approximately five.  I'm not sure exactly.
22     **Q.**   When was the last time you were deposed?
23     **A.**   Within the last six months.
24     **Q.**   And what was the nature of that deposition,

 1     Q.   Do you have any memory of what Viking was
 2   worth as a company at this time?
 3     A.   I do not.
 4     Q.   Do you recall what percentage of Viking did
 5   Ligand -- strike that.
 6          At this point -- at the point of the master
 7   license agreement, Ligand didn't own any part of
 8   Viking, did it?
 9     A.   I don't believe Ligand owned any Viking prior
10   to the master license agreement.
11     Q.   Okay.  When did Ligand first take an
12   ownership stake in Viking?
13     A.   In some ways this is a highly technical
14   question.  Here we plan to fund Viking with a
15   2.5 million loan that was convertible into stock.  So
16   I'm not sure how to answer your question precisely, but
17   it would have been generally following the master
18   license agreement.
19     Q.   Was Viking established to access public
20   markets to raise additional capital to fund Ligand's
21   unpartnered assets?
22        MR. JONES:  Objection.
23        MR. BONDI:  Objection.
24        THE WITNESS:  Viking existed prior to us doing the

 1   but if you look at the second paragraph, it says,
 2   "While Ligand and its prior counsel have had some
 3   contact with the enforcement staff (through the Boston
 4   office and the Office of Whistleblower Protection) in
 5   the past concerning Lemelson, we wish to discuss new
 6   contact -- new conduct by Lemelson since those
 7   meetings."
 8           Do you see that?
 9      A.   I see that.
10      Q.   Were you aware -- strike that.
11           In May 2015, were you aware that Ligand and
12   its prior counsel had had contact with the enforcement
13   staff of the SEC?
14      A.   Yes.
15      Q.   Had you personally had any?
16      A.   I was part of a meeting, yes.
17      Q.   When did that meeting take place?
18      A.   I don't recall the date exactly.  It was
19   prior to this, but I don't recall exactly when.
20      Q.   Do you know if it was in 2014?
21      A.   I don't know.  I'd have to look at the
22   records.
23      Q.   Where did that meeting take place?
24      A.   In Boston.

 1    Q.   Who was at that meeting?
 2    A.   John Higgins, myself, Charles Berkman, our
 3  general counsel, and I believe Nishan de Silva, who was
 4  our CFO at the time, and there may have been other
 5  attendees, and I don't recall who attended from the
 6  SEC.
 7    Q.   Do you remember how many people from the SEC
 8  attended?
 9    A.   I don't.
10    Q.   Mr. Jones was not there, correct, the
11  gentleman sitting over there?
12    A.   I don't recall Mr. Jones being there.
13    Q.   How long did that meeting last?
14    A.   My estimate, as I sit here today, is a little
15  more than an hour, but I'm not sure.
16    Q.   And I'm sorry if I -- was anyone from -- was
17  Ligand's outside counsel there?
18    A.   There were attorneys from our outside counsel
19  there.
20    Q.   Okay.  Do you know the firm?
21    A.   Latham & Watkins.
22    Q.   Do you know the attorneys that were there?
23    A.   I don't recall the names.
24    Q.   Do you remember what office they were from?

```
 1      A.    I believe that there was.
 2      Q.    And was that somebody who was hired by
 3   Ligand's counsel?
 4      A.    I believe that the individual you're
 5   referring to was --
 6      Q.    Okay.
 7      A.    -- a consultant of Cahill or hired by Cahill.
 8      Q.    Do you know when Ligand hired Cahill in
 9   connection with the Father Lemelson matter?
10      A.    Not exactly, no.
11      Q.    Do you recall approximately how much before
12   May 2015?
13      A.    I don't.
14      Q.    Who -- do you recall who specifically was
15   present from the SEC at the June 2015 meeting?
16      A.    From this document, it looks like an
17   individual named Scott Friestad was there.  I generally
18   recall that, but I don't recall anyone else.
19      Q.    Okay.  How long approximately did that
20   meeting last?
21      A.    My recollection is it was about an hour.
22      Q.    Was a presentation made?
23      A.    Yes.
24      Q.    Was there a PowerPoint presentation?
```

 1      **A.**   Yes.
 2      **Q.**   Was it the same presentation as was made in
 3  Boston?
 4      **A.**   I don't recall.
 5      **Q.**   Do you recall whether the presentation
 6  involved things that took place after the meeting in
 7  Boston occurred?
 8      **A.**   It may have.
 9      **Q.**   Did you take notes at that meeting?
10      **A.**   No.
11      **Q.**   Did anyone?
12      **A.**   I don't know.
13      **Q.**   As best you can recall, what was in that
14  presentation?
15      **A.**   Generally a summary of Ligand and our
16  business.  I believe there was also material that I
17  spoke to relating to Promacta.  There may have been
18  other analysis by -- or other work or other material
19  that was prepared by Cahill or the individual who was
20  contracted by Cahill, but I don't recall specifically.
21      **Q.**   Okay.  And again, outside of that
22  presentation, can you tell me everything you recall
23  being said at the meeting.
24      **A.**   I don't recall any specific statements, and

 1            I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby certify:
 3            That the foregoing proceedings were taken
 4   before me at the time and place herein set forth; that
 5   any witnesses in the foregoing proceedings, prior to
 6   testifying, were duly sworn; that a record of the
 7   proceedings was made by me using machine shorthand,
 8   which was thereafter transcribed under my direction;
 9   that the foregoing transcript is a true record of the
10   testimony given.
11            Further, that if the foregoing pertains to the
12   original transcript of a deposition in a federal case,
13   before completion of the proceedings, review of the
14   transcript [ X ] was [ ] was not requested.
15
16            I further certify I am neither financially
17   interested in the action nor a relative or employee of
18   any attorney or party to this action.
19            IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: December 19, 2019
22
23   _____
     Sheri L. Somers
24   CLR, CSR No. 9734

1  DECLARATION UNDER PENALTY OF PERJURY
2
3    I, MATTHEW FOEHR, hereby certify under penalty of
4  perjury under the laws of the State of California that
5  the foregoing is true and correct.
6
7    Executed this _____ day of _____, 2019
8  at _____, California.
9
10
11
12                                   _____
13                                         MATTHEW FOEHR
14
15
16
17
18
19
20
21
22
23
24

```
 1                   DEPOSITION ERRATA SHEET
 2
         CASE NAME: SEC v. LEMELSON
 3       DEPOSITION DATE: December 5, 2019
         WITNESS NAME: MATTHEW FOEHR
 4
 5       Reason Codes:   1. To clarify the record.
                         2. To conform to the facts.
 6                       3. To correct transcription errors.
 7
         Page _____ Line _____ Reason Code _____
 8       From _____ to _____
 9       Page _____ Line _____ Reason Code _____
         From _____ to _____
10
         Page _____ Line _____ Reason Code _____
11       From _____ to _____
12       Page _____ Line _____ Reason Code _____
         From _____ to _____
13
         Page _____ Line _____ Reason Code _____
14       From _____ to _____
15       Page _____ Line _____ Reason Code _____
         From _____ to _____
16
         Page _____ Line _____ Reason Code _____
17       From _____ to _____
18       Page _____ Line _____ Reason Code _____
         From _____ to _____
19
         Page _____ Line _____ Reason Code _____
20       From _____ to _____
21       Page _____ Line _____ Reason Code _____
         From _____ to _____
22
         Page _____ Line _____ Reason Code _____
23       From _____ to _____
24
```

1      Page _____ Line _____ Reason Code _____

       From _____ to _____
2
       Page _____ Line _____ Reason Code _____
3      From _____ to _____

4      Page _____ Line _____ Reason Code _____

       From _____ to _____
5

6
       _____ Subject to the above changes, I certify that
7              the transcript is true and correct

8      _____ No changes have been made. I certify that the
               transcript is true and correct.
9

10

11                                  _____

                                         MATTHEW FOEHR
12

13

14

15

16

17

18

19

20

21

22

23

24

# ERRATA SHEET

Case: *Securities and Exchange Commission v. Lemelson, No. 1:18-cv-11926-PBS (D. Mass)*

Date of Deposition: December 5, 2019

Deponent: Matthew Foehr

| Page | Line(s) | Change | Change To | Reason |
|---|---|---|---|---|
| 1 | N/A | 1:18-CU-11926-PBS | 1:18-CV-11926-PBS | Clarification |
| 2 | N/A | 1:18-CU-11926-PBS | 1:18-CV-11926-PBS | Clarification |
| 4 | N/A | WITNESS: BRUCE VOSS | WITNESS: MATTHEW FOEHR | Clarification |
| 16 | 21 | Santol | Antle | Transcription Error |
| 16 | 24 | Ed | Eric | Transcription Error |
| 25 | 15 | McCartney | Macartney | Transcription Error |
| 25 | 17 | Steven | Stephen | Transcription Error |
| 51 | 21 | it was your question. | it. | Clarification |
| 52 | 10 | had | may | Transcription Error |
| 52 | 21 | 2.5 million | $2.5 million loan | Clarification from exhibit |
| 53 | 15 | 2.5 | $2.5 | Clarification |
| 54 | 14 | prefer | refer | Transcription Error |
| 56 | 23 | so had | so we | Transcription Error |
| 181 | 23 | Sovaldi | Hepatitis C | Clarification |
| 215 | 5 | Transcept primary Asset Intermezzo." | "Transcept: Primary Asset Intermezzo." | Clarification from exhibit |
| 223 | 6 | believe was | believe it was | Clarification |
| 229 | 18 | amount discussion | amount of discussion | Transcription Error |
| 254 | 24 | is not nonsensical | is a nonsensical | Transcription Error |
| 262 | 20 | misstates | misstatements | Transcription Error |

## CERTIFICATE OF DEPONENT

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

_____
Matthew Foehr