

United States District Court

District of Massachusetts

Securities and Exchange            )

Commission,                        )

       Plaintiff,              )    1:18-cv-11926-PBS

  v.                               )

Gregory Lemelson and Lemelson      )

Capital Management, LLC,           )

       Defendants,             )

  and                              )

The Amvona Fund, LP,               )

       Relief Defendant.       )

_____

30(b)(6) Video Deposition of VIKING THERAPEUTICS INC.

BRIAN LIAN, PH.D.

San Diego, California

December 12, 2019

Reported by:

Veronica S. Thompson

CSR 6056, RPR, CRR, CCRR

KEY Discovery

United States District Court

District of Massachusetts


Securities and Exchange          )

Commission,                      )

        Plaintiff,               )    1:18-cv-11926-PBS

    v.                           )

Gregory Lemelson and Lemelson    )

Capital Management, LLC,         )

        Defendants,              )

    and                          )

The Amvona Fund, LP,             )

        Relief Defendant.        )

_____


   30(b)(6) Video Deposition of VIKING THERAPEUTICS INC.

              BRIAN LIAN, PH.D.,

was taken on behalf of Defendants at 600 West Broadway,

Suite 300, San Diego, California 92101, commencing at

11:10 AM and ending at 3:50 PM, on Thursday,

December 12, 2019, before Veronica S. Thompson,

CSR 6056.

APPEARANCES


For Plaintiff:
     U.S. Securities and Exchange Commission
     By:  Alfred A. Day, Sr. Trial Counsel
     33 Arch Street
     Boston, Massachusetts 02110
     617-573-4537
     daya@sec.gov


For Defendants:
     Libby Hoopes
     By:  Douglas A. Brooks, Esq.
     399 Boylston Street
     Boston, Massachusetts 02116
     617-338-9300
     dbrooks@libbyhoopes.com


For Ligand Pharmaceuticals, John Higgins, and Viking
Therapeutics:

     Cahill Gordon & Reindel LLP
     By:  Sean P. Tonolli, Esq.
     By:  Bradley J. Bondi, Esq.
     By:  William C. McCaughey, Esq.
     1990 K Street, N.W., Suite 950
     Washington, D.C. 20006
     202-862-8900
     stonolli@cahill.com
     bbondi@cahill.com
     wmccaughey@cahill.com
Also Present:
     Fr. Emmanuel Lemelson
Videographer:
     Daniel Bermudez, KEY Discovery

INDEX

EXAMINATION                                          PAGE

By Mr. Brooks                                          7

Lunch recess                                          52

By Mr. Day                                           136

EXHIBITS

NUMBER                    DESCRIPTION              PAGE

Exhibit 159  Subpoena to Viking Therapeutics Inc.    9

Exhibit 160  Ligand-Viking Master License           52
             Agreement

Exhibit 161  06/18/14 email from Jeffrey Riedler,    94
             SEC, to Brian Lian;
             VKTX_0001058-0001064

Exhibit 162  07/31/14 memo from Liang Zhao to       102
             Ligand Pharmaceuticals;
             LGND_0041028-0041031

Exhibit 163  Email string ending 04/20/17 from     109
             Steven Vertucci to Brian Lian;
             VKTX_0000386-0000387

Exhibit 164  Email string ending 04/08/14 from     111
             Steve Rapattoni to Brian Lian;
             VKTX_0000278-0000289

Exhibit 165  Email string ending 05/02/14 from      119

           Michael Morneau to Brian Lian;

           VKTX_0000422

Exhibit 166  Email string ending 05/08/14 from      124

           Steve Brian Lian to Matt Foehr;

           LGND_0074148-0074149


           FIRST REFERENCE TO PREVIOUSLY MARKED EXHIBITS

NUMBER                                    PAGE    LINE

Exhibit 117                                97      23

Exhibit 118                                60       9

Exhibit 119                               108      22

SAN DIEGO, CALIFORNIA, DECEMBER 12, 2019, 11:10 AM

VIDEOGRAPHER:  We are now on the record.
Today's date is December 12, 2019, and the time is
11:10 AM.  This is the video deposition of Brian Lian
being taken in the matter of SEC versus Lemelson Capital
Management LLC pending in the United States District
Court, District of Massachusetts.

We are at Aptus Court Reporting, San Diego.
My name is Daniel Bermudez of Aptus Court Reporting
located at 600 West Broadway, Suite 300, in San Diego,
California 92101.

Will counsel please identify yourselves and
state whom you represent.

MR. BROOKS:  Doug Brooks, Libby Hoopes, and I
represent the defendants in this matter.

MR. DAY:  Al Day for the plaintiff, the
Securities and Exchange Commission.

MR. McCAUGHEY:  William McCaughey, Cahill
Gordon & Reindel, on behalf of Viking Therapeutics and
the witness.

MR. BONDI:  Brad Bondi, Cahill Gordon &
Reindel, on behalf of Viking Pharmaceuticals and the
witness.

MR. TONOLLI:  Sean Tonolli of Cahill Gordon &

1   Reindel on behalf of Mr. Lian and Viking Therapeutics.

2          MR. BONDI:  Excuse me.  Viking Therapeutics.

3          VIDEOGRAPHER:  The court reporter is Veronica

4   Thompson, and she may now swear in the witness.

5                        BRIAN LIAN,

6      having been duly sworn, testified as follows:

7                        EXAMINATION

8   BY MR. BROOKS:

9      **Q.**   Can I ask you to state your name for the

10  record to make sure I pronounce it correctly.

11     **A.**   Yes.  Brian Lian.

12     **Q.**   Mr. Lian, my name is Doug Brooks.  We met

13  briefly off the record.  I represent the defendants in

14  this matter.

15          Have you ever been deposed before?

16     **A.**   No.

17     **Q.**   Have you ever testified in any other

18  litigation?

19     **A.**   No.

20     **Q.**   Just a few ground rules since you've never

21  been deposed.

22          You and I should do our best, and I'll do my

23  best, not to talk over each other because it's hard for

24  the stenographer to get it down.  All responses should

1   met with the SEC in 2015?

2       **A.**   No, not in any particular way.  My

3   understanding of Ligand and the SEC was that something

4   may proceed with the SEC, and that was it, but nothing,

5   like -- beyond that.

6       **Q.**   Do you recall when you first heard of

7   Fr. Lemelson?

8       **A.**   It was in the summer of 2014.

9       **Q.**   Okay.  Are you aware that Fr. Lemelson wrote

10  certain reports about Ligand?

11      **A.**   I'm aware of one report that referenced

12  Viking, and that was in July.

13      **Q.**   Is that the only report of Fr. Lemelson's that

14  you're aware of?

15      **A.**   Yes.  That's the only one I know of, yeah.

16      **Q.**   Okay.  Have you read that report?

17      **A.**   I -- I read a SeekingAlpha summary of it.  I

18  don't know if that was the actual report or not, but

19  then Cahill brought a copy of portions of it.

20          MR. TONOLLI:  Object and instruct the witness

21  not to answer what you -- discussions with your

22  attorneys or what documents may or may not have been

23  shown to you.

24  ///

1    that it was part of the risk language.  We certainly had

2    personnel who were skilled at execution of clinical

3    trials.

4         **Q.**   If you turn to page 17 --

5         **A.**   Uh-huh.

6         **Q.**   -- you'll see the bold language on that page.

7    It begins, "We intend to rely on third parties to

8    conduct our preclinical studies and clinical trials and

9    perform other tasks for us."  Do you know why that

10   language was included in the S-1?

11        **A.**   Yeah.  I think that's a very standard element

12   of the entire biotechnology industry.  The model to hire

13   contractors to conduct preclinical and clinical work

14   is -- it's just very standard across the industry, so --

15        **Q.**   Does Ligand include dis- -- that type of

16   disclosure in any of their public filings?

17             MR. TONOLLI:  Objection.  Lacks foundation.

18             MR. DAY:  Objection.

19             THE WITNESS:  I don't know.

20   BY MR. BROOKS:

21        **Q.**   Who were the third parties being referred to

22   in that sentence that we just read?

23        **A.**   So it would be any contractor that's hired to

24   conduct any particular assay.  So if it's a -- if it's

1   manufacturing of drug product, it would be that

2   manufacturer.  If it's conducting some assay -- so

3   there's a -- I mean, it's a very large bucket of

4   vendors.

5       Q.   As of July 1, 2014, when this was filed, did

6   Viking intend to conduct any preclinical studies or

7   clinical trials in-house?

8           MR. DAY:  Objection.

9           THE WITNESS:  So the model of Viking, and

10  75 percent of the industry, is to hire third parties to

11  conduct their experiments.  We never intended to build

12  wet labs because we have vendors that can do that much

13  more cost effectively.  And we had discussions with

14  them, and we were moving forward with those plans.

15  BY MR. BROOKS:

16      Q.   Do you remember the names of any of those

17  vendors?

18      A.   The names that -- sure.  The -- WuXi had

19  manufactured drug.  Patheon had manufactured drug.

20  Charles River Labs had done some animal testing.  Yeah,

21  I mean, there's -- I don't know how -- very many

22  companies had been engaged previously, yes.

23      Q.   By whom?  Who had engaged them?

24      A.   Metabasis, Ligand.  We were -- upon funding,

1          VIDEOGRAPHER:  We're on the record at 3:30 PM.

2    BY MR. BROOKS:

3       **Q.**   Mr. Lian, have you ever spoken with any Viking

4    investors about Fr. Lemelson?

5       **A.**   No.  Not really, no.  And I'm saying that kind

6    of vaguely that -- I -- I'm remembering on the IPO we

7    would occasionally get questions about the report, so it

8    was not really about a person there.

9       **Q.**   All right.  Let me broaden the question.

10          Have you ever spoken with any Viking investors

11   about Fr. Lemelson's reports?

12      **A.**   Really only to the extent of someone mentions

13   they'd seen it, and that's about it.  Not in a -- any

14   sort of depth.

15      **Q.**   Do you believe Fr. Lemelson has caused any

16   harm to Viking's stock price?

17      **A.**   Viking was private when the first report

18   was -- well, when the report that I'm aware of was

19   issued.  And I don't know of the other reports or what

20   other things have been published that would be damaging

21   to Viking.

22      **Q.**   Have you ever spoken with any Ligand investor

23   about Fr. Lemelson or his reports?

24      **A.**   Yes.  I -- it -- I may have been made aware of

1   the initial report from someone at Ligand, but I just

2   can't remember who flagged that to me because it was

3   right after our test-the-waters meeting, and then maybe

4   once, just in small talk, asked if anything ever came of

5   that report or something like that to Matt Foehr who was

6   on our board.

7        **Q.**   What did Mr. Foehr say in response?

8        **A.**   Nothing substantive that I can remember, just

9   that the SEC may pursue some action there or something.

10  It's just nothing -- it was kind of the small talk

11  during a break of our board meeting.

12       **Q.**   When was that board meeting?

13       **A.**   Oh, I don't recall when that conversation

14  occurred, no.

15       **Q.**   Do you recall what year?

16       **A.**   No, I don't actually.  No.

17       **Q.**   Okay.

18       **A.**   It wasn't this year.

19       **Q.**   When -- do you recall reading the July 2014

20  report that Fr. Lemelson wrote?

21       **A.**   No.  I recall -- I don't think I ever read the

22  actual report.  That SeekingAlpha story that I had

23  was -- I don't think it was a report.  I think it was a

24  summary of the report.  Maybe it was in there, but

1   that's what I saw.

2        **Q.**   What was your reaction to reading the summary

3   of the report?

4        **A.**   Well, I just thought that it was -- many items

5   were presented as fact and they were demonstrably false.

6   And many things that were -- technically maybe had a

7   shade of truth were misrepresented very badly to skew an

8   interpretation, I think, unreasonably.

9        **Q.**   Did you do anything in response to having read

10  the SeekingAlpha summary of Fr. Lemelson's July 2014

11  report?

12       **A.**   I may have forwarded it to my team and just --

13  you know, in case somebody -- just to give them a

14  heads-up in case somebody were to ask them about it, but

15  that's probably as -- you know, that's really the extent

16  of it, yeah.

17       **Q.**   Did you have any follow-up discussions at all

18  with your team about Fr. Lemelson's July 2014 report?

19       **A.**   Not that I can recall.

20       **Q.**   Did anyone on your team express concern over

21  that report?

22       **A.**   No, no.  I don't think -- I don't think I

23  received any responses to the message that I sent.

24       **Q.**   Were you concerned about Fr. Lemelson's

1   July 2014 report?

2       **A.**   I wasn't particularly because it was so poorly

3   sort of put together.  You know, it's like somebody

4   writing, you know, "Brian Lian has green hair."  I mean,

5   obviously I don't, and so I'm not going to worry about

6   that.  You know, it's just ridiculous.

7       **Q.**   Have you ever heard of the accounting

8   principle substance over form?

9       **A.**   No.

10      **Q.**   Were you aware that Ligand booked $28 million

11  on its income statement as a result of the Viking IPO?

12              MR. DAY:  Objection.

13              THE WITNESS:  I don't know how Viking -- or

14  how Ligand booked this transaction.

15  BY MR. BROOKS:

16      **Q.**   Were any products -- did any products or

17  services change hands upon Viking's IPO?

18              MR. TONOLLI:  Objection.  Vague.

19              THE WITNESS:  Had any products or services

20  changed hands?

21  BY MR. BROOKS:

22      **Q.**   Yeah.

23      **A.**   Between whom?

24      **Q.**   Between -- start with between Viking and

```
 1          I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby certify:
 3          That the foregoing proceedings were taken
 4   before me at the time and place herein set forth; that
 5   any witnesses in the foregoing proceedings, prior to
 6   testifying, were duly sworn; that a record of the
 7   proceedings was made by me using machine shorthand,
 8   which was thereafter transcribed by me; that the
 9   foregoing is a true record of the testimony given.
10          Further, that if the foregoing pertains to the
11   original transcript of a deposition in a federal case,
12   before completion of the proceedings, review of the
13   transcript [ X ] was [  ] was not requested.
14          I further certify I am neither financially
15   interested in the action nor a relative or employee of
16   any attorney or party to this action.
17          In witness whereof, I have this date
18   subscribed my name.
19
20   Dated:  December 27, 2019
21
22
23          _Veronica S. Thompson_
24          _____
             Veronica S. Thompson
             CSR 6056, RPR, CRR, CCRR
```

1              DECLARATION UNDER PENALTY OF PERJURY

2

3    Case Name:  SEC v. Lemelson

4    Date of Deposition:  12/12/19

5    KEY Discovery Job

6

7              I, BRIAN LIAN, PH.D., hereby certify under

8    penalty of perjury under the laws of the State of

9    _____ that the foregoing is true and correct.

10             Executed this _____ day of _____,

11   20_____, at _____.

12

13

14                        _____

15                        BRIAN LIAN, PH.D.

16

17

18

19

20

21

22

23

24

1                    DEPOSITION ERRATA SHEET

2    Case Name:  SEC v. Lemelson

3    Name of Witness:  BRIAN LIAN, PH.D.

4    Date of Deposition:  12/12/19

5    KEY Discovery Job

6    Reason Codes:  1.  To clarify record.

7                   2.  To conform to facts.

8                   3.  To correct transcription errors.

9

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24   Page _____ Line _____ Reason _____

1    From _____ to _____

2    Page _____ Line _____ Reason _____

3    From _____ to _____

4    Page _____ Line _____ Reason _____

5    From _____ to _____

6    Page _____ Line _____ Reason _____

7    From _____ to _____

8    Page _____ Line _____ Reason _____

9    From _____ to _____

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24   _____ Subject to the above changes, I certify that the

1          transcript is true and correct.

2    _____ No changes have been made.  I certify that the

3          transcript is true and correct.

4

5    _____   _____

6    Date          Brian Lian, Ph.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24