United States District Court

District of Massachusetts


Securities and Exchange                 )

Commission,                             )

        Plaintiff,                     )   1:18-cv-11926-PBS

    v.                                  )

Gregory Lemelson and Lemelson          )

Capital Management, LLC,                )

        Defendants,                   )

    and                                 )

The Amvona Fund, LP,                    )

        Relief Defendant.              )

_____



Highly Confidential

30(b)(6) Video Deposition of LIGAND PHARMACEUTICALS

JOHN HIGGINS

San Diego, California

December 11, 2019


Reported by:

Veronica S. Thompson

CSR 6056, RPR, CRR, CCRR

KEY Discovery Job 371

United States District Court

District of Massachusetts


| Securities and Exchange | ) | |
| Commission, | ) | |
| Plaintiff, | ) | 1:18-cv-11926-PBS |
| v. | ) | |
| Gregory Lemelson and Lemelson | ) | |
| Capital Management, LLC, | ) | |
| Defendants, | ) | |
| and | ) | |
| The Amvona Fund, LP, | ) | |
| Relief Defendant. | ) | |

_____


Highly Confidential

30(b)(6) Video Deposition of Ligand Pharmaceuticals

JOHN HIGGINS

was taken on behalf of Defendants at 600 West Broadway,

Suite 300, San Diego, California 92101, commencing at

9:03 AM and ending at 7:03 PM, on Wednesday,

December 11, 2019, before Veronica S. Thompson,

CSR 6056.

APPEARANCES

For Plaintiff:
        U.S. Securities and Exchange Commission
        By:  Alfred A. Day, Sr. Trial Counsel
        33 Arch Street
        Boston, Massachusetts 02110
        617-573-4537
        daya@sec.gov

For Defendants:
        Libby Hoopes
        By:  Douglas A. Brooks, Esq.
        399 Boylston Street
        Boston, Massachusetts 02116
        617-338-9300
        dbrooks@libbyhoopes.com

For Ligand Pharmaceuticals, John Higgins, and Viking
Therapeutics:

        Cahill Gordon & Reindel LLP
        By:  Bradley J. Bondi, Esq.
        By:  Sean P. Tonolli, Esq.
        By:  William C. McCaughey, Esq.
        1990 K Street, N.W., Suite 950
        Washington, D.C. 20006
        202-862-8900
        bbondi@cahill.com
        stonolli@cahill.com
        wmccaughey@cahill.com
Also Present:
        Fr. Emmanuel Lemelson
Videographer:
        Daniel Bermudez, KEY Discovery

Page 4

INDEX

EXAMINATION                                              PAGE

By Mr. Brooks                                              9

Lunch recess                                             147


EXHIBITS

NUMBER                  DESCRIPTION                     PAGE

Exhibit 138  Slide Deck, Board of Directors            53
             Meeting, 09/18/13;
             LGND_0078931-0079032

Exhibit 139  04/02/14 email from Glenn Dourado to      70
             Jinzi Wu; LGND_0022935-0022947

Exhibit 140  01/04/13 email from Matt Foehr to         77
             Steven Pessagno; LGND_000190-000198

Exhibit 141  08/02/13 Ligand Update by Cantor          82
             Fitzgerald; LGND_009625-009633

Exhibit 142  Email string ending 06/24/14 from         94
             John Higgins to Debbie Schneider;
             LGND_0037632-36633

Exhibit 143  Email chain ending 07/20/14 from John    186
             Higgins to Matt Foehr and Nishan de
             Silva; LGND_0000051-0000053

Exhibit 144   Email string ending 10/28/15 from      203
              Charles Berkman, etc.; LGND_0001322

Exhibit 145   Email string ending 03/18/16 from      209
              Matthew Korenberg to Todd Pettingill
              and Bruce Voss;
              LCM_SEC0001360-0001361

Exhibit 146   Ligand Presentation to the SEC,        211
              09/25/14; LGND_0080678-0080737

Exhibit 147   Ligand Presentation to the SEC,        259
              06/08/15; LGND_0080738-0080799

Exhibit 148   Email string ending 09/02/14 from      301
              Erika Luib to Matt Foehr;
              LGND_0041839-0041841

Exhibit 149   Email string ending 06/20/14 from      330
              John Higgins to Matthew Perry;
              LGND_00375666

Exhibit 150   Email string ending 07/07/14 from      333
              Matt Foehr to John Higgins;
              LGND_0039378-0039409

FIRST REFERENCE TO PREVIOUSLY MARKED EXHIBITS

| NUMBER | PAGE | LINE |
|--------|------|------|
| Exhibit 4 | 85 | 4 |
| Exhibit 75 | 97 | 22 |
| Exhibit 76 | 108 | 2 |
| Exhibit 77 | 122 | 4 |
| Exhibit 79 | 125 | 10 |
| Exhibit 80 | 129 | 5 |
| Exhibit 84 | 148 | 4 |
| Exhibit 85 | 149 | 12 |
| Exhibit 88 | 161 | 17 |
| Exhibit 89 | 160 | 23 |
| Exhibit 90 | 161 | 17 |
| Exhibit 91 | 162 | 20 |
| Exhibit 96 | 165 | 19 |
| Exhibit 98 | 173 | 16 |
| Exhibit 99 | 179 | 6 |
| Exhibit 100 | 183 | 2 |
| Exhibit 104 | 194 | 17 |
| Exhibit 114 | 200 | 13 |
| Exhibit 116 | 12 | 12 |
| Exhibit 117 | 324 | 11 |
| Exhibit 128 | 64 | 19 |
| Exhibit 133 | 132 | 19 |

QUESTIONS INSTRUCTED NOT TO ANSWER

| PAGE | LINE |
|------|------|
| 217  | 10   |
| 271  | 17   |
| 282  | 7    |
| 320  | 20   |

1    SAN DIEGO, CALIFORNIA, DECEMBER 11, 2019, 9:03 AM

2           VIDEOGRAPHER:  We are now on the record.

3    Today's date is December 11, 2019, and the time is

4    9:04 AM.

5           This is the video deposition of John Higgins

6    being taken in the matter of SEC versus Lemelson Capital

7    Management LLC pending in the United States District

8    Court, District of Massachusetts.

9           We are at Aptus Court Reporting, San Diego.

10   My name is Daniel Bermudez of Aptus Court Reporting

11   located at 600 West Broadway, Suite 300, in San Diego,

12   California 92101.

13          Will counsel please identify yourself and

14   state whom you represent.

15          MR. BROOKS:  Yes.  Doug Brooks, law firm Libby

16   Hoopes, and I represent the defendants in this matter.

17          MR. DAY:  Al Day for the Securities and

18   Exchange Commission.

19          MR. McCAUGHEY:  William McCaughey, Cahill

20   Gordon & Reindel on behalf of Ligand Pharmaceuticals and

21   the witness.

22          MR. TONOLLI:  Sean Tonolli at Cahill Gordon &

23   Reindel representing John Higgins.

24          MR. BONDI:  Brad Bondi of Cahill Gordon &

1   Reindel on behalf of Ligand Pharmaceuticals and

2   Mr. Higgins.

3              VIDEOGRAPHER:  The court reporter today is

4   Veronica Thompson, and she may now swear in the witness.

5                       JOHN HIGGINS,

6         having been duly sworn, testified as follows:

7              MR. BROOKS:  Before we get going, let's put

8   the stipulations on the record that we've been using

9   throughout this case.

10             All objections and motions to strike other

11  than to the form are preserved until trial.

12             And will -- 30 days to read and sign the

13  transcript, but we'll waive the notary, and one

14  objection by the SEC or by deponent's counsel is good

15  for all.  Is that okay?

16             MR. DAY:  Yes.

17             MR. BONDI:  Agree.

18                       EXAMINATION

19  BY MR. BROOKS:

20      **Q.**   Good morning, Mr. Higgins.  We met briefly off

21  the record.  My name is Doug Brooks, and I represent the

22  defendants in this matter.

23             Have you ever been deposed before today?

24      **A.**   Yes.

1    **Q.**   And have you spoken with Mr. Foehr about his

2    deposition?

3    **A.**   No.

4    **Q.**   In the -- if you turn to the first page of

5    Exhibit 75, so the first email on the exhibit which

6    would be the last email in time, it's about a half-page

7    email from Mr. Voss.  Do you see that?

8    **A.**   Yes.

9    **Q.**   And he writes, "I've quickly read the report,

10   and here are my thoughts.  It's TBD what impact, if any,

11   this report will have on trading and valuation, but the

12   only reason we would respond publicly would be if there

13   were a meaningful negative impact and there were errors

14   we needed to address."  Do you see that?

15   **A.**   Yes.

16   **Q.**   Did you agree with that statement made by

17   Mr. Voss?

18   **A.**   Well, I agree with the first part.  It's to be

19   determined what impact it would have.

20   **Q.**   Okay.

21   **A.**   I do not agree that the only reason we'd

22   respond is if this or that.

23   **Q.**   Okay.  Did Ligand ever publicly respond to any

24   of Fr. Lemelson's reports or statements about the

1  company?

2      **A.**   We talked -- we talked with investors who

3  would have questions, calls, or emails.

4      **Q.**   Did Ligand ever make any kind of a public

5  statement?

6      **A.**   No.

7      **Q.**   Why not?

8      **A.**   We're certain of the -- the falseness, the

9  lies in the reports.  We're certain of that.  We didn't

10  know who Mr. Lemelson was, and we felt that this is so

11  off base, without a relationship, this -- this is going

12  to go away, this -- this will die out.  You know, it's a

13  rock thrown through our window, but it will go away.  We

14  felt that it was a hit job, somebody who admitted he was

15  short, to profit.  And so we were not going to publicly

16  talk about it or legitimize it.

17      **Q.**   You just said that the thought was that it

18  would go away.  Did it, in fact, go away?

19      **A.**   No.

20      **Q.**   Why then did Ligand never publicly respond to

21  Fr. Lemelson's reports or statements?

22      **A.**   It was crystal clear after the interviews and

23  then the successive reports, not only doubling down on

24  the lies but writing new lies, that this was illegal,

1    there's near $12,000 versus -- of debt versus one dollar

2    of value.

3        **Q.**    Was it false that the debt-to-tangible equity

4    was approximately 11,000 to one?

5        **A.**    It -- the -- the message he gave is,

6    "Investors, you gotta get out now.  They can't cover

7    their debt," that bonds are going to be called.  "They

8    can't cover their debt.  Look -- and I'll tell you

9    why -- I've done the math.  There is 11,667 of debt for

10   a dollar of value.  Get out now."

11           And it's an analysis.  Investors don't --

12   don't -- he made up the analysis.  And then he chose

13   what he included or not.  It was a completely false

14   premise for how to present the underlying value of the

15   company.  Didn't give credit to intangibles, to the

16   value of royalties, to our tax assets.  So it completely

17   manipulated the story for -- for investors to draw the

18   conclusion that they should get out now to drive the

19   stock price down.

20       **Q.**    Was Fr. Lemelson's math wrong?

21       **A.**    His -- his A-plus-B may have been correct.

22   The formula he was trying to convince people to follow

23   was misplaced, and what he chose to include or not

24   include was misplaced.

Page 212

1          VIDEOGRAPHER:  This marks the end of media

2    number three of the deposition of John Higgins.  We're

3    off the record at 3:24 PM.

4          (Recess, 3:24 PM - 3:32 PM.)

5          VIDEOGRAPHER:  We're on the record at 3:32 PM,

6    and this marks the beginning of media number four of the

7    deposition of John Higgins.

8    BY MR. BROOKS:

9      **Q.**   Mr. Higgins, do you recognize Exhibit 146?

10     **A.**   Yes.

11     **Q.**   And, for the record, and for counsel here,

12   we've discussed this presentation in prior depositions,

13   but I believe Exhibit 146 was the final version of the

14   presentation which we just received so we haven't

15   actually looked at this exact version before.

16          Were you involved, Mr. Higgins, in drafting

17   this slide deck?

18     **A.**   Yes.

19     **Q.**   Who else was involved in drafting it?

20     **A.**   Matt Foehr, Charles Berkman, attorneys, Nishan

21   de Silva.

22     **Q.**   When you -- and I don't want to get into any

23   attorney-client privileges, but when you referenced

24   "attorneys," were you referring to the law firm of

1    Latham & Watkins?

2        **A.**    They -- they are our corporate attorneys, yes.

3        **Q.**    Were they involved in the drafting of this

4    document, Exhibit 146?

5        **A.**    Can I answer that?

6            MR. BONDI:  You can answer yes or no.

7            THE WITNESS:  Yes.

8    BY MR. BROOKS:

9        **Q.**    Okay.  And, again, without getting into any

10   communications, which attorneys at Latham & Watkins were

11   involved in this?

12           MR. BONDI:  You can answer.

13           THE WITNESS:  John was his first name.  I

14   forget his last name.

15   BY MR. BROOKS:

16       **Q.**    Okay.  Do you know what office -- what office

17   of Latham they were out of?

18       **A.**    I -- our -- our corporate attorneys are based

19   in San Diego.  Latham has offices all over.  I don't

20   recall which office John was from, who was assigned.

21   That's why I don't know his last name.  He was not a

22   regular Latham attorney.  I don't know what office he

23   worked from.

24       **Q.**    Okay.  So the presentation is dated

1   place at that SEC meeting in September 2014 in Boston?

2       **A.**   No.

3       **Q.**   Okay.  As the meeting ended, how did you

4   understand it was left with the SEC?

5       **A.**   We -- we left.  We -- they thanked us for the

6   presentation -- or we politely left and -- and it was,

7   as I think I mentioned early, really an opaque process,

8   kind of a black box, and it's not like a business

9   transaction.  It's "thank you," and you leave, and okay,

10  and you get back to running the company.

11      **Q.**   At some point Ligand hired the Cahill Gordon

12  firm in connection with its efforts to have the SEC

13  bring a case against Fr. Lemelson.  Right?

14      **A.**   Correct.

15      **Q.**   When did Ligand engage Cahill for that

16  purpose?

17      **A.**   I do not recall.

18      **Q.**   Had Ligand ever used Cahill as counsel before?

19      **A.**   Not that I recall.

20      **Q.**   And, again, I want you to be careful.  I'm

21  asking questions.  I'm trying -- I don't want any

22  communications between you and lawyers, but prior to

23  hiring Cahill, had Ligand ever hired Mr. Bondi in any

24  capacity before?

1      **A.**   Ligand -- members of Ligand's board had, but

2   Ligand --

3      **Q.**   Correct.

4      **A.**   -- as a corporation had not.

5      **Q.**   Okay.  So I think you just said you don't

6   remember when exactly Ligand hired --

7      **A.**   No.

8      **Q.**   -- Cahill?

9      **A.**   Sometime between -- I mean, this -- the fall

10   of '14 and the spring of '15, but I do not know when.

11      **Q.**   Whenever it was, prior to hiring Cahill as far

12   as you know, had Ligand heard back from the SEC as to

13   its presentation in Boston?

14      **A.**   I -- I do not recall.

15      **Q.**   Okay.  Whose choice was it to hire Cahill?

16      **A.**   The board.

17      **Q.**   Okay.

18      **A.**   Board of directors.

19      **Q.**   Okay.  And to the extent you can answer this

20   without revealing any attorney-client communications, do

21   you know why the board decided to hire Cahill?

22          MR. BONDI:  Object.  Object to the form.  I

23   think that gets into the attorney-client privilege and

24   attorney work product as it relates to conversations

1  discussed Fr. Lemelson's second report having been

2  issued on July 3, 2014?

3  **A.**   You mentioned that.

4  **Q.**   Are you aware that Ligand's stock went up

5  between July 3, 2014, up until this period two, as

6  Ligand calls it?

7        MR. BONDI:  Object to the form.

8        THE WITNESS:  I -- I'm not aware of the exact

9  trading within that window right now.

10  BY MR. BROOKS:

11  **Q.**   Do you have any explanation for why Ligand's

12  stock went up in the approximate two-week period after

13  Fr. Lemelson issued his July 3 report?

14  **A.**   No, I can't count -- I don't have a --

15  **Q.**   Are you aware that two of the four challenged

16  statements in the SEC's case were contained in the

17  July 3 report?

18        MR. BONDI:  Object to the form.

19        THE WITNESS:  I'm aware of the four

20  statements, yes.

21  BY MR. BROOKS:

22  **Q.**   Okay.  Are you aware that two of those

23  statements are contained in Fr. Lemelson's July 3

24  report?

 1          MR. BONDI:  Object to the form.

 2          THE WITNESS:  Yes.

 3   BY MR. BROOKS:

 4      Q.   Okay.  Turn to slide 40.  You see that there's

 5   an overview titled "Overview"?

 6      A.   Yep.

 7      Q.   And this has to do with Fr. Lemelson's

 8   statements about the success of his fund?

 9      A.   Yes.

10      Q.   Sitting here today, are you aware that any of

11   these statements were inaccurate?

12      A.   I'm not aware.

13      Q.   Okay.  Go to slide 43.

14      A.   And to be clear, the success of the short

15   position -- he was talking about his short position.  I

16   just -- I've said this before, but --

17      Q.   Sure.

18      A.   -- if he made money shorting our stock

19   illegally and those were included in these, then it

20   would be illegitimate gains for the presentation, but as

21   far as the numbers or how he did the math, I don't know.

22   He was just reporting -- we're just reiterating what he

23   had reported out.

24      Q.   Okay.  So if you go to slide 43, Ligand notes

1    I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3    That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand,

8  which was thereafter transcribed by me; that the

9  foregoing is a true record of the testimony given.

10    Further, that if the foregoing pertains to the

11  original transcript of a deposition in a federal case,

12  before completion of the proceedings, review of the

13  transcript [x] was [ ] was not requested.

14    I further certify I am neither financially

15  interested in the action nor a relative or employee of

16  any attorney or party to this action.

17    In witness whereof, I have this date

18  subscribed my name.

19

20  Dated:  December 27, 2019

21

22

23

24  _____
    Veronica S. Thompson
    CSR 6056, RPR, CRR, CCRR

1                DECLARATION UNDER PENALTY OF PERJURY

2

3   Case Name:  SEC v. Lemelson

4   Date of Deposition:  12/11/19

5   KEY Discovery Job 371

6

7           I, JOHN HIGGINS, hereby certify under penalty

8   of perjury under the laws of the State of

9   _____ that the foregoing is true and correct.

10          Executed this _____ day of _____,

11   20_____, at _____.

12

13

14                      _____

15                      JOHN HIGGINS

16

17

18

19

20

21

22

23

24

1                    DEPOSITION ERRATA SHEET

2    Case Name:  SEC v. Lemelson

     Name of Witness:  JOHN HIGGINS

3    Date of Deposition:  12/11/19

     KEY Discovery Job 371

4    Reason Codes:  1.  To clarify record.

                    2.  To conform to facts.

5                   3.  To correct transcription errors.

6

7    Page _____ Line _____ Reason _____

8    From _____ to _____

9    Page _____ Line _____ Reason _____

10   From _____ to _____

11   Page _____ Line _____ Reason _____

12   From _____ to _____

13   Page _____ Line _____ Reason _____

14   From _____ to _____

15   Page _____ Line _____ Reason _____

16   From _____ to _____

17   Page _____ Line _____ Reason _____

18   From _____ to _____

19   Page _____ Line _____ Reason _____

20   From _____ to _____

21   Page _____ Line _____ Reason _____

22   From _____ to _____

23   Page _____ Line _____ Reason _____

24   From _____ to _____

1   Page _____ Line _____ Reason _____

2   From _____ to _____

3   Page _____ Line _____ Reason _____

4   From _____ to _____

5   Page _____ Line _____ Reason _____

6   From _____ to _____

7   Page _____ Line _____ Reason _____

8   From _____ to _____

9   Page _____ Line _____ Reason _____

10  From _____ to _____

11  Page _____ Line _____ Reason _____

12  From _____ to _____

13  Page _____ Line _____ Reason _____

14  From _____ to _____

15  Page _____ Line _____ Reason _____

16  From _____ to _____

17  Page _____ Line _____ Reason _____

18  From _____ to _____

19  Page _____ Line _____ Reason _____

20  From _____ to _____

21  _____ Subject to the above changes, I certify that the
        transcript is true and correct.

22  _____ No changes have been made.  I certify that the
        transcript is true and correct.

23

    _____   _____

24  Date          John Higgins