# In the Matter of:

*Securities and Exchange Commission vs*

*Gregory Lemelson, et al*

---

*David Becker*

*August 06, 2020*

---

68 Commercial Wharf • Boston, MA 02110
888.825.3376 - 617.399.0130
Global Coverage
court-reporting.com



1　　　　　　　UNITED STATES DISTRICT COURT
2　　　　　　FOR THE DISTRICT OF MASSACHUSETTS
3　　　　　CIVIL ACTION NO. 1:18-CV-11926-PBS
4
5　　_____
6　　SECURITIES AND EXCHANGE COMMISSION,
7　　　　　　PLAINTIFF,
8　　V.
9　　GREGORY LEMELSON AND LEMELSON CAPITAL
10　　MANAGEMENT, LLC,
11　　　　　　DEFENDANTS,
12　　　　AND
13　　THE AMVONA FUND, LP,
14　　　　　　RELIEF DEFENDANT.
15　　_____
16
17
18　　　　　　　　30(b)(6) DEPOSITION OF:
19　　　　　DAVID BECKER ON BEHALF OF THE SEC
20　　　　　　　　　CONDUCTED REMOTELY
21　　　　　　　　　BETHESDA, MARYLAND
22　　　　THURSDAY, AUGUST 6TH, 2020 AT 9:43 A.M.
23
24

A P P E A R A N C E S

ON BEHALF OF THE SECURITIES AND EXCHANGE COMMISSION:
    MARC JONES
    AL DAY
    33 ARCH STREET, 24TH FLOOR
    BOSTON, MASSACHUSETTS 02110
    TELEPHONE NO. (617) 573-8900
    E-MAIL: JONESMARC@SEC.GOV

ON BEHALF OF DEFENDANTS, GREGORY LEMELSON, ET AL.:
    DOUGLAS S. BROOKS
    BRIAN J. SULLIVAN
    LIBBYHOOPES, P.C.
    399 BOYLSTON STREET
    BOSTON, MASSACHUSETTS 02116
    TELEPHONE NO. (617) 338-9300
    FACSIMILE NO. (617) 338-9911
    E-MAIL:  DBROOKS@LIBBYHOOPES.COM
             BSULLIVAN@LIBBYHOOPES.COM

ALSO PRESENT:
    FATHER EMANUEL LEMELSON

3

1                            I N D E X

2                                                              PAGE

3    DIRECT EXAMINATION BY MR. BROOKS                          6

4    CROSS-EXAMINATION BY MR. JONES                            132

5    REDIRECT EXAMINATION BY MR. BROOKS                        137

6                     _____

7                          E X H I B I T S

8    NUMBER               DESCRIPTION                          PAGE

9    EXHIBIT 167    NOTICE OF DEPOSITION                       9

10   EXHIBIT 168    COMPLAINT                                  20

11   EXHIBIT 169    POWERPOINT PRESENTATION, 9-25-2014         32

12   EXHIBIT 170    POWERPOINT PRESENTATION, 6-8-2015          38

13   EXHIBIT 171    BLOOMBERG ARTICLE                          44

14   EXHIBIT 172    E-MAIL, RE: NEW MATTER                     74

15   EXHIBIT 173    E-MAIL, RE: LIGAND PHARMACEUTICALS         82

16   EXHIBIT 174    E-MAIL, RE: LIGAND                         92

17   EXHIBIT 175    E-MAIL, RE: LEMELSON'S LETTER TO SENATE   101

18   EXHIBIT 176    E-MAIL, RE: LEMELSON'S TWEET ABOUT LIGAND 104

19   EXHIBIT 177    E-MAIL, RE: CONFIDENTIAL                  109

20   EXHIBIT 178    STEPHANIE AVAKIAN WIKIPEDIA PAGE          121

21   EXHIBIT 179    STEVEN PEIKIN WIKIPEDIA PAGE              123

22   EXHIBIT 180    BRADLEY J. BONDI WIKIPEDIA PAGE           124

23   EXHIBIT 181    SEC FORM 1662                             131

24   EXHIBIT 182    LETTER FROM MR. BONDI, 3-21-2016          135

S T I P U L A T I O N S

The 30(b)(6) deposition of DAVID BECKER on behalf of the Securities and Exchange Commission taken remotely via Zoom in Bethesda, Maryland on Thursday, the 6th day of August, 2020 at 9:43 a.m., said deposition was taken pursuant to Notice for use in accordance with Federal Rules of Civil Procedure.

It is agreed that Kelley K. Bohan, being a Notary Public and Court Reporter for the State of Massachusetts, may swear the witness remotely and that the reading and signing of the completed transcript by the witness is not waived.

P R O C E E D I N G S

    COURT REPORTER:  This is Kelley Bohan.  I am a court reporter, and I am a notary public in the Commonwealth of Massachusetts.

    This deposition is being taken remotely.  This witness is appearing remotely from Bethesda, Maryland

    The attorneys participating in this proceeding acknowledge their understanding that I am not physically present in the proceeding room, nor am I physically present with the witness and that I will be reporting this proceeding remotely.  They further acknowledge that, in lieu of an oath administered in person, the witness will verbally declare his testimony in this matter under the pains and penalties of perjury.  The parties and their counsel consent to this arrangement and waive any objections to this manner of proceeding.

    Please indicate your agreement by stating your name and your agreement on the record, after which I will swear in the witness and we may begin.

    MR. BROOKS:  This is Doug Brooks, I agree.

    MR. JONES:  This is Marc Jones for the plaintiff, we agree as well.

    MR. SULLIVAN:  Brian Sullivan for the defendants, and I echo Mr. Brooks, we agree.

    _____

1                        DAVID BECKER
2           having been duly sworn, was examined and
3           testifies as follows:
4    DIRECT EXAMINATION
5    BY MR. BROOKS:
6         Q.   Good morning, Mr. Becker.  My name is Doug Brooks and
7    I represent the defendants in this matter.  Could you please
8    state your full name for the record?
9         A.   It's David Aaron Becker.
10        Q.   And, Mr. Becker, have you ever been deposed before?
11        A.   No.
12        Q.   Okay.  Have you ever testified in any litigation
13   before?
14        A.   Yes.
15        Q.   And what was the nature of that litigation?
16        A.   This was 1992 or so, I was a witness in a housing
17   discrimination action.
18        Q.   Was that the most recent time you've testified?
19        A.   I believe so, yes.
20             MR. JONES:  Doug?  Doug?
21             MR. BROOKS:  Yeah?
22             MR. JONES:  Before we go too much further, we may want
23   to put the stipulations on the record.  I don't know if you
24   wanted to do that or not?

1           MR. JONES:  Yes, it's privileged.  If there's a
2    version of that question that doesn't get to attorney work
3    product, we're happy to have him answer.  The topic is not
4    objectionable, it's just the answer is privileged.
5    BY MR. BROOKS:
6        Q.   Mr. Becker, is the SEC challenging any of Defendants'
7    mathematical calculations concerning Ligand's debt-to-tangible
8    equity ratio?
9        A.   I don't believe we made any allegation that
10   Defendants' calculation of debt-to-tangible equity ratio was
11   incorrect.
12       Q.   And I'm sorry if I asked this:  Did any accountants,
13   other than Mr. Hoess, review the allegations in paragraphs 51 to
14   53 of the original complaint before it was filed?
15           MR. JONES:  Objection, that's beyond the topic.  But,
16   David, if you know you can answer.
17       A.   Yeah, I don't know the answer to that.
18       Q.   Okay.  So just so I'm clear, other than Mr. Hoess --
19   turning to topic 1 -- who at the SEC was involved in the
20   analysis -- or strike that.
21           Let me just be clear, is it fair to say that no one at
22   the SEC analyzed Ligand's debt-to-tangible equity ratio prior to
23   the filing the complaint as far as you know?
24           MR. JONES:  Objection to form.  You can answer, David.

1     A.    I'm there.
2     Q.    Okay.  And I believe the question was something to the
3  effect of:  Do you agree that the allegations in Ligand's
4  presentation as set forth on page 51 of Exhibit 170 under the
5  word "solvency" were also contained in the SEC's original
6  complaint in this matter?
7     A.    It's not word for word what appears in the
8  presentation, but the original complaint does indicate that the
9  11,667-to-1 debt-to-equity ratio does not include -- what's the
10 actual wording -- does not include the proceeds of the loan.
11    Q.    And what is the basis for the SEC's contention that
12 cash proceeds from a loan should be included in a debt-to-equity
13 ratio?
14    A.    I think our basis for that is set forth in paragraph
15 52 of the amended complaint which explains why we think that the
16 debt-to-tangible equity ratio was misleading.
17    Q.    Okay.  Anything else?
18    A.    I'm not an accounting expert, but no.
19    Q.    Okay.  I'd like to turn your attention now to the
20 second topic of the deposition which involves communications
21 between the SEC and media sources, all right?
22    A.    Okay.
23    Q.    What is the SEC's policy regarding communications with
24 people outside of the commission concerning ongoing

1   didn't respond?
2       A.   As far as I'm aware, he did not.
3       Q.   Okay.  After October 27th, 2014, what was the next
4   communication between the SEC and Ligand's representatives?
5       A.   On November 12th, 2014, Mr. Sikora e-mailed Mr.
6   Kelcourse asking to touch base regarding the TCR.
7       Q.   Does the SEC have that e-mail?
8       A.   I would expect so, but I don't know.
9       Q.   Did Mr. Kelcourse respond to Mr. Sikora's November
10  12th, 2014 e-mail?
11      A.   Mr. Kelcourse recalls a telephone call to follow up.
12      Q.   When did that phone call take place?
13      A.   I believe it took place the same day, but I'm not
14  certain.
15      Q.   Okay.  What was said on the phone call that took place
16  on or around November 12th, 2014?
17      A.   Okay, I should take back -- I don't know when this
18  phone call took place.  I don't even know whether to say I
19  believe it took place the same day, so it was after that.
20      Q.   Okay.
21      A.   What was discussed on the phone call?  I believe Mr.
22  Kelcourse informed Mr. Sikora that the Boston regional office
23  didn't currently have the resources to pursue the allegations
24  that Ligand was making against Defendants and that the matter

1  was being referred to the Massachusetts Securities Division, and
2  he provided a contact point at the Massachusetts Securities
3  Division to Mr. Sikora.
4       Q.  Who was that contact point?
5       A.  I'm sorry?
6       Q.  Who was the contact point --
7       A.  I don't know.
8       Q.  -- at the Massachusetts Securities Division?
9       A.  Yes, I don't know.
10      Q.  What else, if anything, was said on this telephone
11 call between Mr. Kelcourse and Mr. Sikora?
12      A.  Mr. Kelcourse doesn't recall if he raised this or if
13 this was a question that Mr. Sikora had brought up, but he
14 advised Mr. Sikora that the Boston office didn't have any
15 objection to Latham approaching the home of office of the SEC
16 about the TCR.
17      Q.  I'm sorry, you broke up a little there.  He didn't
18 have any objection to Latham approaching?
19      A.  To Latham approaching the home office, which is
20 Washington, of the SEC about the TCR.
21      Q.  Did Latham approach the home office of the SEC about
22 the TCR?
23      A.  It appears that they did, yes.
24      Q.  Okay.  So when was that?

1  about the existence of the investigation to outside of the
2  commission; right?
3      A.  I'm sorry, can you repeat that one?  And if you don't
4  mind telling me what the date was of the Bloomberg article just
5  to help frame it, that would be helpful.
6      Q.  Yeah, I don't know how to go back on exhibits.  I
7  believe it was March 18th, 2016.
8          MR. SULLIVAN:  That is correct.
9      Q.  That was three days before this letter.  As of that
10 time, do you know who the SEC had communicated and provided
11 information from its files pursuant to section 1662 to?
12     A.  I do not know.
13         MR. BROOKS:  Nothing further.
14         MR. JONES:  I have nothing further either except to
15 say thank, guys, and thanks to you, Kelley, and Javier also.
16         MR. BROOKS:  Thanks, everyone.
17 (DEPOSITION CONCLUDED AT 2:34 P.M.)
18
19
20
21         ERRATA SHEET DISTRIBUTION INFORMATION
22         DEPONENT'S ERRATA & SIGNATURE INSTRUCTIONS
23
24         ERRATA SHEET DISTRIBUTION INFORMATION

1

2        The original of the Errata Sheet has been delivered to Marc

3    Jones, Esquire.

4        When the Errata Sheet has been completed by the deponent

5    and signed, a copy thereof should be delivered to each party of

6    record and the ORIGINAL forwarded to Douglas Brooks, Esquire, to

7    whom the original deposition transcript was delivered.

8

9                        INSTRUCTIONS TO DEPONENT

10

11       After reading this volume of your deposition, please

12   indicate any corrections or changes to your testimony and the

13   reasons therefor on the Errata Sheet supplied to you and sign

14   it.  DO NOT make marks or notations on the transcript volume

15   itself.  Add additional sheets if necessary.  Please refer to

16   the above instructions for Errata Sheet distribution

17   information.

18

19

20

21   PLEASE ATTACH TO THE DEPOSITION OF DAVID BECKER, SEC

22   CASE:  SEC V. GREGORY LEMELSON, ET AL.

23   DATE TAKEN:  AUGUST 6, 2020

24                        ERRATA SHEET

1  Please refer to Page 142 for Errata Sheet instructions and
2  distribution instructions.
3  PAGE LINE     CHANGE                REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12       I have read the foregoing transcript of my deposition,
13 and except for any corrections or changes noted above, I hereby
14 subscribe to the transcript as an accurate record of the
15 statements made by me.
16
17       Executed this _____ day of _____, 2020.
18
19                                 _____
20                                 DAVID BECKER
21 COMMONWEALTH OF MASSACHUSETTS                    HAMPSHIRE, SS.
22
23       I, KELLEY K. BOHAN, a Court Reporter and Notary Public
   duly commissioned and qualified in and for the Commonwealth of
24 Massachusetts, do hereby certify that there came before me on
   the 6th day of August, 2020, at 9:43 a.m., the person

1  hereinbefore named, identification as prescribed by Executive
   Order 455 (03-13) issued by the Governor of the Commonwealth of
2  Massachusetts, was by me duly sworn to testify to the truth and
   nothing but the truth of his knowledge concerning the matters in
3  controversy in this cause; that he was thereupon examined upon
   his oath, and his examination reduced to typewriting under my
4  direction; and that this is a true record of the testimony given
   by the witness to the best of my ability.
5           I further certify that I am neither attorney or
   counsel for, nor related to or employed by, any of the parties
6  to the action in which this deposition is taken, and further,
   that I am not a relative or employee of any attorney or counsel
7  employed by the parties hereto or financially interested in the
   action.
8
9
10          My Commission Expires:  December 25, 2026
11
12
13
14                        *Kelley K. Bn* (signature)
15                        _____
16                        Kelley K. Bohan
                          Court Reporter/Notary Public
17
18
19
20
21
22
23
24