THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION


In the Matter of:                    )

                                     )  File No. HO-12718-A

TRADING IN THE SECURITIES OF   )

LIGAND PHARMACEUTICALS, INC.   )


WITNESS:   Gregory Lemelson

PAGES:     708 through 1009

PLACE:     Securities and Exchange Commission

           100 F Street, NE

           Washington, D.C.

DATE:      Friday, July 22, 2016


     The above-entitled matter came on for hearing,

pursuant to notice, at 9:15 a.m.




             Diversified Reporting Services, Inc.

                  (202) 467-9200

```
 1   APPEARANCES:

 2

 3   On behalf of the Securities and Exchange Commission:

 4        VIRGINIA M. ROSADO DESILETS, ESQ.

 5        JEFFREY FINNELL, ESQ.

 6        SONIA TORRICO, ESQ.

 7        Securities and Exchange Commission

 8        Division of Enforcement

 9        100 F Street Northeast

10        Washington, D.C. 20549

11        (202) 5510-4955

12

13   On behalf of the Witness:

14        DOUGLAS F. MacLEAN, ESQ.

15        Armor Compliance

16        22 Batterymarch Street

17        Boston, Massachusetts 02109

18        (617) 501-2055

19

20   ALSO PRESENT:

21        LUCY GAUTHIER, Intern

22

23

24

25
```

1                        C O N T E N T S
2
3   WITNESS                                      EXAMINATION
4   Gregory Lemelson                                712
5
6   EXHIBITS          DESCRIPTION                 IDENTIFIED
7        50           Agreement                      721
8        51           Form S-1                       722
9        52           Excel Document                 794
10       53           Form 8-K                       826
11       55           E-mail                         851
12       56           Spreadsheet                    854
13       57           E-mail                         903
14       58           E-mail                         913
15       59           E-mail                         915
16       61           E-mail                         931
17       62           Correspondence                 937
18       63           E-mail                         958
19       64           Article                        968
20       65           Response                       969
21       66           Response                       970
22       67           Article                        974
23
24
25

1                        C O N T E N T S (CONT.)

2

3    EXHIBITS          DESCRIPTION                      IDENTIFIED

4         68           Article                             975

5         69           Press Release                       989

6         70           E-mail                             1001

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2            MS. DESILETS:  Going back on the record at
 3    9:15 a.m.
 4    Whereupon,
 5                    GREGORY LEMELSON
 6    was recalled as a witness and, having been
 7    previously duly sworn, was examined and testified
 8    further as follows:
 9                         EXAMINATION
10            BY MS. DESILETS:
11        Q    Welcome back, Father Emmanuel.
12        A    Thank you.
13        Q    While we were off the record, did you have
14    any substantive communications with the staff of the
15    SEC?
16        A    No.  But I did want to say that yesterday
17    off the record, I did have a -- I don't think it's
18    substantive at all, but I did just discuss with our
19    transcriptionist, you know, her work and transcribing
20    and so forth, where she used to work, that kind of
21    thing.  I don't think it's substantive, but just in
22    the interest of having full disclosure.
23        Q    Sure.  Sure.  That's not what we would
24    typically consider substantive.  I think you're right
25    about that, but it's fine to summarize just so that
```

1    **already said, I would rather we move along.**

2         A    Okay.  There is one new thing then I just

3    wanted to add.

4         **Q    Go ahead.**

5         A    It's not totally new, but I just wanted to

6    say that in regard to any inaccuracies or completeness

7    or errors of omission, unknown errors of omission, I

8    believe our full disclaimer covers those again on

9    page 24 of Exhibit 17 where we specifically speak to

10   that.

11        We say:  "Lemelson Capital makes no

12   representations, express or implied, as to the

13   accuracy, timeliness or completeness of any such

14   information or with regard to the results obtained

15   from its use."

16        So we -- we certainly I think made an effort

17   to anticipate that there may be errors or inaccuracies

18   despite our best efforts to avoid them.

19        **Q    Why did you disclaim the accuracy of your**

20   **reports?**

21        A    Well, at all times when I conduct any

22   research I always aim for absolute accuracy, but it's

23   human nature to make errors.

24        **Q    Were these reports accurate to the best of**

25   **your ability?**

1      A      To the best of my knowledge.  To the best of

2   my ability.  To the best of my knowledge.

3      **Q      The disclaimer also notes that your opinions**

4   **are subject to change without notice.**

5      A      Yes.

6      **Q      Are there opinions in these reports?**

7      A      There may be.  I try to keep them as

8   objective as possible, but there may be.

9           I did want to add one other thing I forgot

10  to add earlier, and that is that yesterday you asked

11  me if anyone else had worked on these reports, and I

12  mentioned that Michael Johns edited them, and at least

13  one sentence I was able to attribute to him that we

14  discussed.  But I wanted to add that I do believe I

15  did send all of my reports to counsel for review as

16  well.  So I wouldn't say he contributed to them, but I

17  did ask counsel to review them.

18     **Q      Did counsel recommend any changes to your**

19  **reports?**

20     A      I don't recall.  But I -- I have been in the

21  practice of having counsel review all of my work and

22  my annual and interim reports, and almost everything.

23     **Q      Did you make any changes to the reports as a**

24  **result of the advice of counsel?**

25     A      I don't recall.  I don't -- I don't think

1    so, but I don't recall.

2        **Q    Your disclaimer also notes that you are not**

3    **undertaking to update the report.**

4        A    Yes.

5        **Q    But you did update the report several times,**

6    **didn't you?**

7        A    I don't think I changed the existing

8    reports.  I created new reports that were add-ons to

9    it.

10       **Q    That were updates to the original report?**

11       A    Well, they continued along the same theme

12   and subject.

13       **Q    Isn't one of them even called "Update"?**

14       A    I believe so.

15       **Q    And one is called "Appendix"?**

16       A    Yeah, but I don't view them as an update of

17   this report.  I view it as a separate update on the

18   topic.

19       **Q    In the course of updating your readers and**

20   **investors on the topic of Ligand, if you learned that**

21   **any information or statements or conclusions that you**

22   **included in your prior reports were inaccurate, would**

23   **you have corrected them in those later reports?**

24       A    Absolutely.

25       **Q    Did you do that?**

1    A    I don't recall finding any inaccuracies or

2 errors.

3         And earlier when you asked me if I had any

4 substantive statements, comments with members of the

5 SEC, I don't think this is substantive either, but

6 just out of an abundance of caution, I want to say

7 that off the record I did apologize to --

8              -- Ms. Torrico; is that correct?

9              MS. TORRICO:  Yes.

10             THE WITNESS:  -- for what may have come off

11 as a diminutive expression of being your assistant.  I

12 didn't mean it in that sense.  I meant it in a general

13 sense.  I recognize she is a lawyer and a full-time

14 staff member of the SEC.  I don't know if that is

15 substantive, but I did express that.

16             MS. DESILETS:  Thank you.

17             BY MS. DESILETS:

18    **Q    If you can turn back to Exhibit 18.  That's**

19 **the July 3rd, 2014 report.  Page 10 of that report.**

20    A    Okay.  Okay, I've found it, page 10.

21    **Q    The fourth paragraph under the section**

22 **"Speculation has no intrinsic value," that first**

23 **sentence you refer to Ligand engaging in a creative**

24 **transaction with an affiliate shell company called**

25 **Viking Therapeutics.**

1                    PROOFREADER'S CERTIFICATE

2

3    In the Matter of:    TRADING IN THE SECURITIES OF

4                         LIGAND PHARMACEUTICALS, INC.

5    Witness:            Gregory Lemelson

6    File Number:        HO-12718-A

7    Date:               July 22, 2016

8    Location:           Washington, D.C.

9

10

11         This is to certify that I, Nicholas Wagner,

12   (the undersigned), do hereby swear and affirm

13   that the attached proceedings before the U.S.

14   Securities and Exchange Commission were held

15   according to the record and that this is the

16   original, complete, true and accurate transcript

17   that has been compared to the reporting or recording

18   accomplished at the hearing.

19

20

21

22   _____    _____

23   (Proofreader's Name)          (Date)

24

25