```
1              UNITED STATES DISTRICT COURT
2                DISTRICT OF MASSACHUSETTS
3   _____
                                   )
4   SECURITIES AND EXCHANGE        )
    COMMISSION,                    )
5                                  )
              Plaintiff,           )
6                                  ) Civil Action No.
         v.                        ) 1:18-cv-11926-PBS
7                                  )
    GREGORY LEMELSON and LEMELSON  )
8   CAPITAL MANAGEMENT, LLC,       )
                                   )
9             Defendants,          )
                                   )
10          and                    )
                                   )
11  THE AMVONA FUND, LP,           )
                                   )
12           Relief Defendant.     )
    _____)
13
14
15                   VOLUME 2
16
                VIDEOTAPED DEPOSITION OF GREGORY
17  (EMMANUEL) LEMELSON, taken on behalf of the
    plaintiff, at the U.S. Securities and Exchange
18  Commission, 33 Arch Street, Boston,
    Massachusetts, beginning at 9:19 a.m. and
19  ending at 5:42 p.m., on Tuesday,
    November 12, 2019, before Shannon M. Crowley,
20  Registered Professional Reporter and Notary
    Public in and for the Commonwealth of
21  Massachusetts.
22
23
24
25  JOB NO. 191112BLC
```

1

```
 1    APPEARANCES:
 2         For the Plaintiff:
 3         U.S. Securities and Exchange Commission
           BY: Marc Jones, Esq.
 4             Alfred A. Day, Esq.
           Boston Regional Office
 5         Division of Enforcement
           33 Arch Street, Suite 2400
 6         Boston, Massachusetts 02110
           Jonesmarc@sec.gov/617.573.8947
 7         Daya@sec.gov/617.573.4537
 8
           U.S. Securities and Exchange Commission
 9         BY: Sonia G. Torrico, Esq.
           100 F Street, N.E.
10         Washington, DC 20549
           Torricos@sec.gov
11         202.551.3515
12
           For the Defendant and Relief Defendant:
13
           Libby Hoopes
14         BY: Douglas S. Brooks, Esq.
           399 Boylston Street
15         Boston, Massachusetts 02116
           Dbrooks@libbyhoopes.com
16         617.338.9300
17
18    ALSO PRESENT:
19          David Woodford, legal video
            specialist
20
21
22
23
24
25
                                                    2
```

```
 1                    I N D E X

 2

 3    DEPOSITION OF:                                    PAGE

 4    GREGORY (EMMANUEL) LEMELSON

 5       EXAMINATION BY MR. JONES                          5

 6

 7                    E X H I B I T S

 8             (Exhibits Bound Separately)

 9    NO.          DESCRIPTION                          PAGE

10    Exhibit 28   Letter dated Sunday, March 27, 2016    20

11    Exhibit 29   Letter dated September 1, 2015         47

12    Exhibit 30   Letter dated May 25, 2016              47

13    Exhibit 31   Appellant's brief                      60

14    Exhibit 32   Amended complaint and jury demand      62

15    Exhibit 33   Plaintiffs' response in opposition to  79

16                 Defendants' motion to dismiss

17    Exhibit 34   Wells notice                           92

18    Exhibit 35   Notes of phone call with Bruce Voss   133

19                 dated June 18, 2014

20    Exhibit 36   Form 10-K/A Amendment No. 2           223

21    Exhibit 37   Form 10-Q                             255

22    Exhibit 38   Form 10-K                             320

23

24
```

1  THE VIDEOGRAPHER: This is the
2  start of tape labeled No. 1 to the videotaped
3  deposition of Father Emmanuel in the matter of
4  Securities and Exchange Commission versus
5  Gregory Lemelson and Lemelson Capital
6  Management, LLC, and The Amvona Fund.
7  This deposition is being heard
8  before the United States District Court in the
9  District of Massachusetts. The Civil Action
10  number is 1:18-cv-11926-PBS.
11  This deposition is taking place at
12  the office of the Securities and Exchange
13  Commission at 33 Arch Street, Boston,
14  Massachusetts, on November 12th, 2019,
15  beginning at 9:20 a.m.
16  My name is David Woodford, legal
17  video specialist from OTS Video. The court
18  reporter is Shannon Crowley from Gradillas
19  Reporting.
20  Would counsel present please
21  introduce yourselves and your affiliations, and
22  the witness will be sworn.
23  MR. JONES: Good morning. I am
24  Marc Jones for the Securities and Exchange
25  Commission, plaintiff in this action.

4

```
 1                    MR. DAY:  Al Day for the SEC.
 2                    MS. TORRICO:  Sonia Torrico for the
 3        SEC.
 4                    MR. BROOKS:  Doug Brooks, Libby
 5        Hoopes for the defendants.
 6
 7
 8
 9                    GREGORY (EMMANUEL) LEMELSON,
10        Deponent, having first been satisfactorily
11        identified and duly sworn by the Notary Public,
12        deposes and states as follows:
13
14
15
16
17        EXAMINATION BY MR. JONES:
18            Q.    Good morning.
19            A.    Good morning.
20            Q.    Father, this is going to be the
21        resumption of testimony that we took a few
22        weeks back.  You recall being here?
23            A.    I do.
24            Q.    Actually in the same room.  The same
25        ground rules will apply.  I don't know if you
```

5

```
 1        yourself, Oh, yeah.  I looked at this.
 2                  And then you would look at your
 3        report and say, Oh, I didn't cite this.  And
 4        then you would tell me, Hey, Marc, I looked at
 5        this source.  It is not cited in the report.
 6             A.    I'm not aware of anything like that.
 7             Q.    Anything like that?
 8             A.    No.  Not the example that you gave.
 9        I'm not aware of it.
10             Q.    That's fine.  That's what I'm trying
11        to get at.  Are you aware of any.
12                  Going back to page 2 of Exhibit 35
13        where you wrote, "He said the company agreed
14        that Gilead's drug would eliminate the need for
15        Promacta and understood that."
16             A.    Yes.
17             Q.    Did you believe that the company's
18        investor relations professional had given you
19        material, nonpublic information about the
20        company by agreeing to that?
21             A.    No.  Because the company's executive
22        made similar commentary on a conference call
23        prior to that.
24             Q.    That --
25             A.    That the new drugs entering the
```

183

1  market.
2      Q.   Would eliminate the need for
3  Promacta?
4      A.   They didn't use those exact words,
5  but that was the general ethos of the
6  commentary by the company's executives as cited
7  in my reports.
8           And that GSK had given no, quote,
9  "Quantitative" projections on where Promacta
10 might go, and there was great concern about the
11 new drugs entering the market which threatened
12 Promacta.
13     Q.   But you write about eliminating the
14 need for Promacta.  When you write about
15 "eliminating the need for Promacta," did you
16 mean entirely or as to one indication?
17     A.   He didn't clarify.  I wrote what I
18 recalled him saying.  I can't speak for him.
19     Q.   Well, did you believe that he was
20 speaking about all indications or did you
21 believe he was speaking about one indication?
22     A.   I don't think I asked him about that.
23 I just recorded what he said.
24     Q.   So you don't know whether Mr. Voss
25 was talking about Hep C or ITP or all of the

184

```
 1    indications that Promacta might be used for?
 2         A.    Well, it seems to indicate --
 3         Q.    Father, let me just finish the
 4    question for the record, okay.  Do you have
 5    that question in mind now?
 6         A.    Why don't you start from the
 7    beginning.
 8         Q.    Okay.  You don't know whether Mr.
 9    Voss was talking about Hep C or ITP or some
10    other indication that Promacta might be used
11    for?
12         A.    Well, he appears to be talking about
13    Hep C, since I wrote there that he understood
14    Gilead's drug.
15               In this case we were referring to
16    Sovaldi, a cure - a universal cure for
17    Hepatitis C, so he must have been referring to
18    Hepatitis C.
19         Q.    What do you mean "universal cure"?
20         A.    Well, they cured Hepatitis C.
21         Q.    What does the "universal" mean?
22         A.    Well, in all places, in all times it
23    was going to cure Hepatitis C, as well as
24    analogues that came into the market shortly
25    thereafter.
```

185

```
 1        Q.    So you believe that Mr. Voss was just
 2   talking about Hep C?
 3        A.    It appears that way.
 4        Q.    And you don't think he was talking
 5   about ITP?
 6        A.    Nothing in these notes indicate that.
 7        Q.    Okay.  And does anything in the notes
 8   indicate that he was talking about any other
 9   indication for Promacta?
10        A.    I have to look at the notes again,
11   actually.
12        Q.    You have them there.
13        A.    Yes.
14              It seems to me reading these notes
15   that his entire tone was so disingenuous, and
16   that he was not really interested in
17   communicating anything of value, that that's -
18   I wrote down what he said.
19              I didn't think he was interested in
20   sharing anything of real value about the
21   company, like I said before.
22              But I don't see where he may have
23   mentioned - I mean, we clearly discussed other
24   analysts, what they were saying.
25              He mentioned GSK's analysts.  It is
```

186

```
 1   not clear exactly what he meant by that.  But
 2   he seemed to be asking why we would disagree
 3   with other analysts, and that part I actually
 4   do recall.
 5       Q.   Father, what is the question you are
 6   answering right now?
 7       A.   If he had mentioned any another
 8   indications for Promacta.
 9       Q.   Okay.  What is the answer to that
10   question?
11       A.   It's not clear from my notes.
12       Q.   You don't know?
13       A.   It's not clear.
14       Q.   It's not clear from your notes.  Is
15   it possible it was clear on the call and you
16   just didn't record it correctly on your notes?
17       A.   I think if he had mentioned that, I
18   probably would have written it down.
19       Q.   If he had mentioned some other
20   indication?
21       A.   If he mentioned, for example, ITP or
22   aplastic anemia.  But then, again, that was
23   irrelevant, because I had already mentioned
24   those in my reports.
25       Q.   So you believe that Mr. Voss was just
```

187

```
 1      talking about Promacta - excuse me, just
 2      talking about Hep C?
 3          A.   He appears to be in this paragraph.
 4          Q.   Okay.  And you said that you don't
 5      think that Mr. Voss was trying to say anything
 6      helpful to you during the call, correct?
 7          A.   Well, we know John Higgins wrote the
 8      narrative for the call, right?
 9          Q.   Well, sir, I don't think I asked
10      about Mr. Higgins.  I'm asking whether or not
11      you thought that Mr. Voss was trying to say
12      anything helpful to you during the call?
13          A.   My impression is what I wrote in my
14      notes, which I now know as to be fact, is that
15      this call was not narrated or directed or
16      outlined my Mr. Voss himself at all.  It was
17      done by Mr. Higgins.
18          Q.   Mr. Higgins is the CEO of Ligand?
19          A.   Yes.
20          Q.   And Mr. Voss is the investment
21      relations professional for Ligand?
22          A.   Apparently.
23          Q.   Presumably, Mr. Voss, as the
24      investment relations professional, follows
25      instructions for Mr. Higgins?
```

188

```
 1        A.    I don't know if he's an outsourced
 2   independent third-party IR rep.  He is not an
 3   employee of Ligand.
 4        Q.    He represents the company, correct?
 5        A.    I don't know.  I haven't seen their
 6   agreements.
 7        Q.    Well, you --
 8        A.    He purports to.
 9        Q.    -- wrote that he represented the
10   company, correct?
11        A.    Well, he purports to be their
12   investor relations representative.
13        Q.    Okay.  Is there any reason to think
14   that he wasn't the investor relations
15   representative?
16        A.    Well, he mentioned that he had worked
17   with John Higgins for, what did he say, ten
18   years the previous company.
19        Q.    Father Lemelson, did you doubt that
20   Mr. Voss was the investment relations
21   professional for the company?
22        A.    Well, that's his title.  I took it at
23   face value, but I don't think he was really
24   carrying out that role in that capacity.
25        Q.    Father Lemelson, you believe that
```

189

```
 1        prior to June 18th, 2014, the company or its
 2        representatives had made public statements that
 3        Gilead's drug would eliminate the need for
 4        Promacta?
 5             A.    They did not use those exact words,
 6        but they alluded to that.
 7             Q.    They alluded to it?
 8             A.    They alluded that new drugs entering
 9        the market, that there was a preoccupation with
10        them.
11             Q.    And did they talk about eliminating
12        the need?
13             A.    They said that there was no
14        quantitative guidance on the future of
15        Promacta.
16             Q.    Is that a difference from eliminating
17        the need?
18             A.    Perhaps.
19             Q.    Okay.  In what way is it different?
20             A.    Well, the CEO, as I quoted in my
21        report, made one set of comments.  The IR rep
22        made another set of comments.
23             Q.    Different set?
24             A.    It appears so.
25             Q.    Difference in substance?
```

190

```
 1     their capital.
 2              And I think they recognized that,
 3     even though you are making the completely
 4     ludicrous claim that somehow I perpetrated a
 5     fraud on them.  None of them believe that or
 6     feel that way.
 7              So that's why I contacted 200
 8     brokers.  I think a lot of other people would
 9     have given up, probably after 20.
10              MR. JONES:  Nonresponsive.  Move to
11     strike.
12              THE WITNESS:  I think it is
13     responsive.  I think it is very responsive.
14              MR. JONES:  We're concluded.
15              THE VIDEOGRAPHER:  This is the end
16     of tape No. 5.  This will conclude today's
17     session of the videotaped deposition of Father
18     Emmanuel.  Off the record at 5:42 p.m.
19
20              (Whereupon at 5:42 p.m. the
21              deposition was suspended.)
22
23
24
25
```

409

```
 1                  C E R T I F I C A T E
 2        I, Gregory (Emmanuel) Lemelson, do hereby
 3   declare under penalty of perjury that I have read
 4   the foregoing transcript of my deposition; that I
 5   have made such corrections as noted herein, in ink,
 6   initialed by me, or attached hereto; that my
 7   testimony as contained herein, as corrected, is true
 8   and correct.
 9        _____  I have made corrections to my deposition.
10        _____  I have NOT made any changes to my deposition.
11
12        EXECUTED this _____ day of _____, 2019, at
13   _____,  _____.
14          (City)                    (State)
15
16                              _____
                                GREGORY (EMMANUEL) LEMELSON
17                              VOLUME 2
18
19
20
21
22
23
24
25
                                                         410
```

```
 1                        ERRATA SHEET
 2      Deposition of: GREGORY (EMMANUEL) LEMELSON, VOL. 2
        Date taken: November 12, 2019
 3      Case: SEC vs. LEMELSON, et al.
        PAGE LINE
 4      ____ ____      CHANGE:  _____
                       REASON:  _____
 5
                       CHANGE:  _____
 6      ____ ____      REASON:  _____
 7      ____ ____      CHANGE:  _____
                       REASON:  _____
 8
                       CHANGE:  _____
 9      ____ ____      REASON:  _____
10      ____ ____      CHANGE:  _____
                       REASON:  _____
11
                       CHANGE:  _____
12      ____ ____      REASON:  _____
13      ____ ____      CHANGE:  _____
                       REASON:  _____
14
                       CHANGE:  _____
15      ____ ____      REASON:  _____
16      ____ ____      CHANGE:  _____
                       REASON:  _____
17
                       CHANGE:  _____
18      ____ ____      REASON:  _____
19      ____ ____      CHANGE:  _____
                       REASON:  _____
20
                       CHANGE:  _____
21      ____ ____      REASON:  _____
22      ____ ____      CHANGE:  _____
                       REASON:  _____
23
24
        Signed    _____
25      Dated     _____

                                                            411
```

# CERTIFICATE

Commonwealth of Massachusetts
Suffolk, ss.

    I, Shannon M. Crowley, Registered Professional Reporter, and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify:

    That GREGORY (EMMANUEL) LEMELSON, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the said witness.

    IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal this 21st day of November, 2019.

SHANNON M. CROWLEY
Notary Public

My commission expires on March 2, 2023