```
 1              UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF MASSACHUSETTS
 3             CIVIL ACTION NO. 1:18-CV-11926-PBS
 4
 5    _____
 6    SECURITIES AND EXCHANGE COMMISSION,
 7              PLAINTIFF,
 8    V.
 9    GREGORY LEMELSON AND LEMELSON CAPITAL
10    MANAGEMENT, LLC,
11              DEFENDANTS,
12         AND
13    THE AMVONA FUND, LP,
14              RELIEF DEFENDANT.
15    _____
16
17
18              30(b)(6) DEPOSITION OF:
19          DAVID BECKER ON BEHALF OF THE SEC
20                 CONDUCTED REMOTELY
21                 BETHESDA, MARYLAND
22       THURSDAY, AUGUST 6TH, 2020 AT 9:43 A.M.
23
24
```

2

1                    A P P E A R A N C E S
2
3    ON BEHALF OF THE SECURITIES AND EXCHANGE COMMISSION:
4         MARC JONES
5         AL DAY
6         33 ARCH STREET, 24TH FLOOR
7         BOSTON, MASSACHUSETTS 02110
8         TELEPHONE NO. (617) 573-8900
9         E-MAIL: JONESMARC@SEC.GOV
10
11   ON BEHALF OF DEFENDANTS, GREGORY LEMELSON, ET AL.:
12        DOUGLAS S. BROOKS
13        BRIAN J. SULLIVAN
14        LIBBYHOOPES, P.C.
15        399 BOYLSTON STREET
16        BOSTON, MASSACHUSETTS 02116
17        TELEPHONE NO. (617) 338-9300
18        FACSIMILE NO. (617) 338-9911
19        E-MAIL:  DBROOKS@LIBBYHOOPES.COM
20                 BSULLIVAN@LIBBYHOOPES.COM
21
22
23   ALSO PRESENT:
24        FATHER EMANUEL LEMELSON

Securities and Exchange Commission vs   30(b)(6)   David Becker
Gregory Lemelson, et al                            August 06, 2020

3

I N D E X

| | PAGE |
|---|---|
| DIRECT EXAMINATION BY MR. BROOKS | 6 |
| CROSS-EXAMINATION BY MR. JONES | 132 |
| REDIRECT EXAMINATION BY MR. BROOKS | 137 |

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 167 | NOTICE OF DEPOSITION | 9 |
| EXHIBIT 168 | COMPLAINT | 20 |
| EXHIBIT 169 | POWERPOINT PRESENTATION, 9-25-2014 | 32 |
| EXHIBIT 170 | POWERPOINT PRESENTATION, 6-8-2015 | 38 |
| EXHIBIT 171 | BLOOMBERG ARTICLE | 44 |
| EXHIBIT 172 | E-MAIL, RE: NEW MATTER | 74 |
| EXHIBIT 173 | E-MAIL, RE: LIGAND PHARMACEUTICALS | 82 |
| EXHIBIT 174 | E-MAIL, RE: LIGAND | 92 |
| EXHIBIT 175 | E-MAIL, RE: LEMELSON'S LETTER TO SENATE | 101 |
| EXHIBIT 176 | E-MAIL, RE: LEMELSON'S TWEET ABOUT LIGAND | 104 |
| EXHIBIT 177 | E-MAIL, RE: CONFIDENTIAL | 109 |
| EXHIBIT 178 | STEPHANIE AVAKIAN WIKIPEDIA PAGE | 121 |
| EXHIBIT 179 | STEVEN PEIKIN WIKIPEDIA PAGE | 123 |
| EXHIBIT 180 | BRADLEY J. BONDI WIKIPEDIA PAGE | 124 |
| EXHIBIT 181 | SEC FORM 1662 | 131 |
| EXHIBIT 182 | LETTER FROM MR. BONDI, 3-21-2016 | 135 |

S T I P U L A T I O N S

```
 1
 2
 3   The 30(b)(6) deposition of DAVID BECKER on behalf of the
 4   Securities and Exchange Commission taken remotely via Zoom in
 5   Bethesda, Maryland on Thursday, the 6th day of August, 2020 at
 6   9:43 a.m., said deposition was taken pursuant to Notice for use
 7   in accordance with Federal Rules of Civil Procedure.
 8
 9   It is agreed that Kelley K. Bohan, being a Notary Public and
10   Court Reporter for the State of Massachusetts, may swear the
11   witness remotely and that the reading and signing of the
12   completed transcript by the witness is not waived.
13
14
15
16
17
18
19
20
21
22
23
24
```

5

1                    P R O C E E D I N G S
2           COURT REPORTER:  This is Kelley Bohan.  I am a court
3    reporter, and I am a notary public in the Commonwealth of
4    Massachusetts.
5           This deposition is being taken remotely.  This witness
6    is appearing remotely from Bethesda, Maryland
7           The attorneys participating in this proceeding
8    acknowledge their understanding that I am not physically present
9    in the proceeding room, nor am I physically present with the
10   witness and that I will be reporting this proceeding remotely.
11   They further acknowledge that, in lieu of an oath administered
12   in person, the witness will verbally declare his testimony in
13   this matter under the pains and penalties of perjury.  The
14   parties and their counsel consent to this arrangement and waive
15   any objections to this manner of proceeding.
16          Please indicate your agreement by stating your name
17   and your agreement on the record, after which I will swear in
18   the witness and we may begin.
19          MR. BROOKS:  This is Doug Brooks, I agree.
20          MR. JONES:  This is Marc Jones for the plaintiff, we
21   agree as well.
22          MR. SULLIVAN:  Brian Sullivan for the defendants, and
23              I echo Mr. Brooks, we agree.
24            _____

                                                                              6

1                        DAVID BECKER
2            having been duly sworn, was examined and
3            testifies as follows:
4    DIRECT EXAMINATION
5    BY MR. BROOKS:
6        Q.   Good morning, Mr. Becker.  My name is Doug Brooks and
7    I represent the defendants in this matter.  Could you please
8    state your full name for the record?
9        A.   It's David Aaron Becker.
10       Q.   And, Mr. Becker, have you ever been deposed before?
11       A.   No.
12       Q.   Okay.  Have you ever testified in any litigation
13   before?
14       A.   Yes.
15       Q.   And what was the nature of that litigation?
16       A.   This was 1992 or so, I was a witness in a housing
17   discrimination action.
18       Q.   Was that the most recent time you've testified?
19       A.   I believe so, yes.
20            MR. JONES:  Doug?  Doug?
21            MR. BROOKS:  Yeah?
22            MR. JONES:  Before we go too much further, we may want
23   to put the stipulations on the record.  I don't know if you
24   wanted to do that or not?

24

1   Q.   Sure.  Do you see in paragraph 52 where -- first of
2   all, okay, let's break it down.  It says, "Lemelson included the
3   new debt but not the proceeds of the loan, which would have
4   yielded a debt-to-equity ratio closer to 1-to-1."
5        Do you see that?
6   A.   I do.
7   Q.   Does the SEC still maintain that that allegation is
8   accurate?
9   A.   I think the SEC's position is currently what is stated
10  in paragraph 52 of the amended complaint, that's what we've
11  stated publicly.
12  Q.   Okay.  Are you aware of any accounting principle that
13  justifies including the proceeds of a loan as equity?
14       MR. JONES:  Objection.  Mr. Becker, is not here to
15  testify as an accounting expert, and accounting principles are
16  not within topic 1, and I mean he's not going to answer that.
17  BY MR. BROOKS:
18  Q.   Prior to the SEC filing its original complaint in this
19  matter, who at the SEC was involved in the analysis of Ligand's
20  debt-to-tangible equity?
21  A.   Do you mean -- are you saying the SEC's analysis of
22  debt-to-tangible equity?
23  Q.   Yes.
24       MR. JONES:  And I'm going to object here, Doug,

1  that calculation happened or whether it happened.
2          MR. BROOKS:  I don't have to testify.
3  BY MR. BROOKS:
4      Q.  So, Mr. Becker, let me ask you this:  Prior to
5  bringing this complaint, did the SEC ever calculate Ligand's
6  debt-to-tangible equity ratio as of August 2014?
7      A.  Debt-to-tangible equity ratio?
8      Q.  Yes.
9      A.  I'm not aware of whether we did or didn't.  I believe
10 that paragraph 52 of the amended complaint explains why we
11 thought that Defendants' calculation of that ratio was
12 misleading, but I'm not -- I don't know one way or the other of
13 whether or not SEC staff calculated a debt-to-tangible equity
14 ratio.
15     Q.  Did SEC staff ever calculate a debt-to-equity ratio
16 for Ligand?
17     A.  I think that's also laid out in paragraph 52 of both
18 the original and amended complaint.
19     Q.  I'm sorry, you just broke up.  I'm sorry, you froze.
20     A.  Yeah, no problem.  What I said was I believe that that
21 was set forth in paragraph 52 of both the original and amended
22 complaint.
23     Q.  Okay.  So turning back to 52, paragraph 52, it states,
24 "Lemelson included the new debt but not the proceeds of the

1   Q.   Well, did the SEC disagree with Defendants'
2   calculation of Ligand's debt-to-tangible equity ratio as laid
3   out in Defendants' reports from August 2014?
4   A.   Well, I think as laid out in paragraph 52 of the
5   amended complaint, we disagree that that was an appropriate
6   measure to be using, but I don't think that we disagreed with
7   the math once we understood what the inputs were that
8   Mr. Lemelson was using.
9         MR. BROOKS:   Okay, Brian, can you pull up tab 7?
10        (EXHIBIT 170 MARKED FOR IDENTIFICATION)
11        MR. SULLIVAN:   I've distributed what we marked as tab
12   7, which should be marked as Exhibit 170 now.
13        THE WITNESS:   I see it.
14        MR. BROOKS:   I have it.
15        MR. JONES:   I have it as well.  I think we're good to
16   go.
17   BY MR. BROOKS:
18   Q.   And, Mr. Becker, have you seen Exhibit 170 prior to
19   today?
20   A.   I think I have.  Again, I'm not positive if it's this
21   particular draft, but I have seen some version of this, yes.
22   Q.   And you'll agree Exhibit 170 is dated June 8th, 2015?
23   A.   Yes.
24   Q.   And did the SEC meet with representatives from Ligand

1    A.   I'm there.
2    Q.   Okay. And I believe the question was something to the
3    effect of: Do you agree that the allegations in Ligand's
4    presentation as set forth on page 51 of Exhibit 170 under the
5    word "solvency" were also contained in the SEC's original
6    complaint in this matter?
7    A.   It's not word for word what appears in the
8    presentation, but the original complaint does indicate that the
9    11,667-to-1 debt-to-equity ratio does not include -- what's the
10   actual wording -- does not include the proceeds of the loan.
11   Q.   And what is the basis for the SEC's contention that
12   cash proceeds from a loan should be included in a debt-to-equity
13   ratio?
14   A.   I think our basis for that is set forth in paragraph
15   52 of the amended complaint which explains why we think that the
16   debt-to-tangible equity ratio was misleading.
17   Q.   Okay. Anything else?
18   A.   I'm not an accounting expert, but no.
19   Q.   Okay. I'd like to turn your attention now to the
20   second topic of the deposition which involves communications
21   between the SEC and media sources, all right?
22   A.   Okay.
23   Q.   What is the SEC's policy regarding communications with
24   people outside of the commission concerning ongoing

143

1  Please refer to Page 142 for Errata Sheet instructions and
2  distribution instructions.
3  PAGE LINE        CHANGE                REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12       I have read the foregoing transcript of my deposition,
13 and except for any corrections or changes noted above, I hereby
14 subscribe to the transcript as an accurate record of the
15 statements made by me.
16
17       Executed this _____ day of _____, 2020.
18
19                                  _____
20                                  DAVID BECKER
21 COMMONWEALTH OF MASSACHUSETTS                    HAMPSHIRE, SS.
22
23       I, KELLEY K. BOHAN, a Court Reporter and Notary Public
   duly commissioned and qualified in and for the Commonwealth of
24 Massachusetts, do hereby certify that there came before me on
   the 6th day of August, 2020, at 9:43 a.m., the person

Case 1:18-cv-11926-PBS   Document 133-10   Filed 10/30/20   Page 12 of 12

| Securities and Exchange Commission vs<br>Gregory Lemelson, et al | 30(b)(6) | David Becker<br>August 06, 2020 |
|---|---|---|

144

1  hereinbefore named, identification as prescribed by Executive Order 455 (03-13) issued by the Governor of the Commonwealth of
2  Massachusetts, was by me duly sworn to testify to the truth and nothing but the truth of his knowledge concerning the matters in
3  controversy in this cause; that he was thereupon examined upon his oath, and his examination reduced to typewriting under my
4  direction; and that this is a true record of the testimony given by the witness to the best of my ability.
5              I further certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties
6  to the action in which this deposition is taken, and further, that I am not a relative or employee of any attorney or counsel
7  employed by the parties hereto or financially interested in the action.
8
9
10       My Commission Expires:  December 25, 2026
11
12
13
14
15       _____
16              Kelley K. Bohan
                Court Reporter/Notary Public
17
18
19
20
21
22
23
24