


EXHIBIT 63

22 Batterymarch Street, Boston, MA 02109 | Tel: 617.501.2055 | Fax: 617.507.6118 | armorlawgroup.com

September 14, 2015

<u>BY FEDEX</u>
Virginia M. Rosado Desilets
Senior Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

Dear Ms. Rosado Desilets:

I hope that all is well with you. Please be advised that my law firm Armor Law Group currently represents both Gregory M. Lemelson ("Father Lemelson") and Lemelson Capital Management, LLC ("LCM"). I am in receipt of both of your subpoenas dated September 1, 2015 for Father Lemelson and LCM and this letter is in response to both of those subpoenas. The purpose of this letter is to explain more fully certain subpoena responses. In generally, my client encountered difficulties copying email files to the numbered subpoena request folders due to file lengths, and has opted as a result to include copy of all relevant .PST files which should include all emails that could possibly be responsive to the requests.

Specifically we have included a 32 GB flash storage device that includes the following 3 main folders entitled "Companies," "Outlook Files," and "SEC." "Companies" includes all documents from Father Lemelson's and LCM's computer, which includes all business related files. "Outlook Files" includes all business emails from Father Lemelson and LCM as well as .PST files from The Lantern Foundation. However, one of the .pst files (related to current work-related emails) unfortunately was too large for the external drive's filing system and could not be copied. We will provide you with access to a Dropbox account where you can access and downloads this .pst file if that works for you. "SEC" includes documents that Father Lemelson has deemed responsive to a particular subpoena request and is organized by each numbered request. However, all documents include the "SEC" folder are also included in either the "Companies" or "Outlook Files." The "SEC" folder includes a folder entitled "EL," which includes all documents that Father Lemelson has deemed responsive to the subpoena for Father Lemelson, and a folder entitled "LCM," which includes all documents that Father Lemelson has

deemed responsive to the subpoena for LCM. Each of the folders contained numbered files within them that correspond to the particular document request for each subpoena. If a particular numbered file is empty, that means that Father Lemelson has deemed that there is nothing responsive to that particular subpoena request. Capitalized terms used in this letter but undefined have the meanings as provided in the subpoenas for Father Lemelson and LCM.

We have also not included any bates numbers on these documents, which you have indicated by telephone is acceptable. We have also provided the documents in their original format and you have indicated via email that is acceptable as well.

I have also some particular comments on specific subpoena requests below. If you have any questions at all, please feel free to contact me as I would be happy to discuss.

In terms of the subpoena for Father Lemelson, please note the following:

1. For request #1, a copy/snapshot of Father Lemelson's work desktop hard drive as it relates to business matters and is responsive to the subpoena requests has been provided. However, we have not included personal files which include but are not limited to the following sorts of materials and which we requested to not include and you agreed with via email:

    a. Personal communications in general, for example with Father Lemelson's parishioners that do not include communications related to investing, Lemelson Capital, Amvona or Ligand.

    b. Personal/family letters for example written by Father Lemelson that do not include communications related to investing, Lemelson Capital, Amvona or Ligand.

    c. Personal/family photos, videos and other media of Father Lemelson's family that do not include communications related to investing, Lemelson Capital, Amvona or Ligand.

    There is also a cloud drive and external Western Digital hard drive that are both synced with Father Lemelson's desktop and thus contain the same information. There is also a Western Digital network and attached storage drive (NAS) that is used for archival purposes, but to the best of Father Lemelson's knowledge has never had any LGND related materials stored on it.

    In addition, there are two computers no longer in Father Lemelson's possession:

    a. Dell office computer that Father Lemelson gave away in 2014.

    b. Dell office computer that Father Lemelson used in Switzerland, which was also given away.

There are other computers and handheld devices, but they did not store information regarding LGND to the best of Father Lemelson's knowledge, which includes the following computers:

a. Apple Macbook Air, which runs parallel to Father Lemelson's main computer. The OSX side is used for personal computing and occasionally checking email. Windows side is used to check outlook email and run trading software. The laptop is used primarily for travel. Usually Father Lemelson uses a cloud drive to access all work documents, and does not store much on this laptop which has limited memory. Any information on the Windows side, including emails, are mirrored on the work desktop for which a copy of the hard drive is provided.

b. Father Lemleson has owned several mobile / smart phones during the subject period, but he does not recall / believe any information regarding LGND would have been stored on those devices, although emails would have been read or websites searched and read on those devices.

3. For request #3, Empire Asset Management regularly contacted Father Lemelson and provided research, but this was after Father Lemelson had shorted LGND. Father Lemelson has never relied on their research for any decision so their information was not included as responsive to this request. Also the company's 10K, 10Q and 8K's were used as well as transcripts of their conference calls, but this information was not stored on Father's Lemelson work computers and is publicly available.

4. For request #4, usually Father Lemelson's media coverage of LGND was shared on Facebook, Linkedin and also Twitter, but to best of Father Lemelson's knowledge and belief, none of these posts have been deleted or removed and are all publicly available. Also, the LCM research reports were also published to Facebook and other social media such as Twitter and Linkedin. However, unfortunately, it is not clear how to download or retrieve these posts from the subject social networks.

9. For request #9, invoices are provided going back 24 months on both the 508-485-0607 and 508-596-9338 phone numbers, which is all Verizon provided. There is no identifying information for the work number of 508-630-2281 as it is owned and operated by Regus and part of the rental agreement with that firm. However, a document outlining how to log in to that system has been provided. You agreed in our email correspondence that the information available (in this case going back two years) would suffice.

10. For request #10, invoices are provided going back 24 months on both the home office Verizon Fios and Verizon data plan, which is all Verizon provided. You agreed in our email correspondence that the information available (in this case going back two years) would

suffice.

16.     For request #16, account opening agreements for TD and Schwab accounts were done online based on Father Lemelson's best recollection. Unfortunately, Father Lemelson can find no place where they can be found or downloaded.

17.     For request #17, some of the DZ Private Bank account statements are missing. Father Lemelson does not believe the bank provided these originally in electronic form but rather by regular mail. The account appears to have been closed in March 2013 (and appears to have been open for less than a year). The statements that were found have all been provided. Schwab and TD account statements were only available going back 2 years. Everything that was available has been provided by Father Lemelson.

In terms of the subpoena for LCM, please note the following:

5.     For request #5, this file includes rough drafts and work papers of Father Lemelson in preparing the letters.

13.     For request #13, four separate independent persons have been asked to independently verify Amvona's returns, which include the following persons:

- Amvona's administrator Liccar & Co.
- Amvona's auditor Michael Coglianese
- Amvona's new administrator ALPS
- LCM's outsourced CFO James Madison

Virtually all of these communications have been documented in emails, which have been included.

14.     For request #14, virtually all communication with investors as well as email templates have disclosures regarding rates of return. Also, all mentions of gross returns also include net returns. Virtually all annual and interim reports go to great lengths to discuss costs and expenses. Every annual report begins with the "bad news" before the "good news" – that is to say outlining management mistakes that have cost investors.

21.     For request #21, much if not most of the research was taken from SEC filings, including 10Ks, 10Qs and 8Ks as well as conference call transcripts found on SeekingAlpha. The research reports cite and reference the sources, which are all publicly available with the exception of the research done by Dr. Jabbour included in the emails. There are also several Excel spreadsheets in the relevant folders showing analysis done.

22.     For request #22, please note that LCM is an exempt reporting adviser currently

reporting with the Massachusetts Securities Division and the SEC. LCM has never been registered with the Massachusetts Securities Division or SEC. Therefore, there is no Form ADV Part 2B for Father Lemelson.

      30.     For request #30, we have included Section 5.05 of Amvona's Limited Partnership Agreement as responsive to this request.

My client wishes to emphasize his readiness to assist in the investigation of trading in securities of Ligand Pharmaceuticals and availability to prepare and provide any and all materials that might be responsive to the investigation.

Both my client and I look forward to meeting you in person on Tuesday October 27, 2015 at 9AM at Father Lemelson's scheduled testimony in front of the SEC.

                                              Sincerely,

                                              Douglas F. MacLean

Enclosure