United States District Court

District of Massachusetts

| | | |
|---|---|---|
| Securities and Exchange | ) | |
| Commission, | ) | |
| Plaintiff, | ) | 1:18-cv-11926-PBS |
| v. | ) | |
| Gregory Lemelson and Lemelson | ) | |
| Capital Management, LLC, | ) | |
| Defendants, | ) | |
| and | ) | |
| The Amvona Fund, LP, | ) | |
| Relief Defendant. | ) | |

_____

Highly Confidential

30(b)(6) Video Deposition of LIGAND PHARMACEUTICALS

JOHN HIGGINS

San Diego, California

December 11, 2019

Reported by:

Veronica S. Thompson

CSR 6056, RPR, CRR, CCRR

KEY Discovery Job 371

Page 2

United States District Court

District of Massachusetts

| | |
|---|---|
| Securities and Exchange ) | |
| Commission, ) | |
| Plaintiff, ) | 1:18-cv-11926-PBS |
| v. ) | |
| Gregory Lemelson and Lemelson ) | |
| Capital Management, LLC, ) | |
| Defendants, ) | |
| and ) | |
| The Amvona Fund, LP, ) | |
| Relief Defendant. ) | |

_____

Highly Confidential

30(b)(6) Video Deposition of Ligand Pharmaceuticals

JOHN HIGGINS

was taken on behalf of Defendants at 600 West Broadway, Suite 300, San Diego, California 92101, commencing at 9:03 AM and ending at 7:03 PM, on Wednesday, December 11, 2019, before Veronica S. Thompson, CSR 6056.

Page 3

APPEARANCES

For Plaintiff:
    U.S. Securities and Exchange Commission
    By:  Alfred A. Day, Sr. Trial Counsel
    33 Arch Street
    Boston, Massachusetts 02110
    617-573-4537
    daya@sec.gov

For Defendants:
    Libby Hoopes
    By:  Douglas A. Brooks, Esq.
    399 Boylston Street
    Boston, Massachusetts 02116
    617-338-9300
    dbrooks@libbyhoopes.com

For Ligand Pharmaceuticals, John Higgins, and Viking
Therapeutics:

    Cahill Gordon & Reindel LLP
    By:  Bradley J. Bondi, Esq.
    By:  Sean P. Tonolli, Esq.
    By:  William C. McCaughey, Esq.
    1990 K Street, N.W., Suite 950
    Washington, D.C. 20006
    202-862-8900
    bbondi@cahill.com
    stonolli@cahill.com
    wmccaughey@cahill.com
Also Present:
    Fr. Emmanuel Lemelson
Videographer:
    Daniel Bermudez, KEY Discovery

INDEX

| EXAMINATION | PAGE |
|---|---|
| By Mr. Brooks | 9 |
| Lunch recess | 147 |

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 138 | Slide Deck, Board of Directors Meeting, 09/18/13; LGND_0078931-0079032 | 53 |
| Exhibit 139 | 04/02/14 email from Glenn Dourado to Jinzi Wu; LGND_0022935-0022947 | 70 |
| Exhibit 140 | 01/04/13 email from Matt Foehr to Steven Pessagno; LGND_000190-000198 | 77 |
| Exhibit 141 | 08/02/13 Ligand Update by Cantor Fitzgerald; LGND_009625-009633 | 82 |
| Exhibit 142 | Email string ending 06/24/14 from John Higgins to Debbie Schneider; LGND_0037632-36633 | 94 |
| Exhibit 143 | Email chain ending 07/20/14 from John Higgins to Matt Foehr and Nishan de Silva; LGND_0000051-0000053 | 186 |

Exhibit 144   Email string ending 10/28/15 from         203
              Charles Berkman, etc.; LGND_0001322

Exhibit 145   Email string ending 03/18/16 from         209
              Matthew Korenberg to Todd Pettingill
              and Bruce Voss;
              LCM_SEC0001360-0001361

Exhibit 146   Ligand Presentation to the SEC,           211
              09/25/14; LGND_0080678-0080737

Exhibit 147   Ligand Presentation to the SEC,           259
              06/08/15; LGND_0080738-0080799

Exhibit 148   Email string ending 09/02/14 from         301
              Erika Luib to Matt Foehr;
              LGND_0041839-0041841

Exhibit 149   Email string ending 06/20/14 from         330
              John Higgins to Matthew Perry;
              LGND_00375666

Exhibit 150   Email string ending 07/07/14 from         333
              Matt Foehr to John Higgins;
              LGND_0039378-0039409

FIRST REFERENCE TO PREVIOUSLY MARKED EXHIBITS

| NUMBER | PAGE | LINE |
|---|---:|---:|
| Exhibit 4 | 85 | 4 |
| Exhibit 75 | 97 | 22 |
| Exhibit 76 | 108 | 2 |
| Exhibit 77 | 122 | 4 |
| Exhibit 79 | 125 | 10 |
| Exhibit 80 | 129 | 5 |
| Exhibit 84 | 148 | 4 |
| Exhibit 85 | 149 | 12 |
| Exhibit 88 | 161 | 17 |
| Exhibit 89 | 160 | 23 |
| Exhibit 90 | 161 | 17 |
| Exhibit 91 | 162 | 20 |
| Exhibit 96 | 165 | 19 |
| Exhibit 98 | 173 | 16 |
| Exhibit 99 | 179 | 6 |
| Exhibit 100 | 183 | 2 |
| Exhibit 104 | 194 | 17 |
| Exhibit 114 | 200 | 13 |
| Exhibit 116 | 12 | 12 |
| Exhibit 117 | 324 | 11 |
| Exhibit 128 | 64 | 19 |
| Exhibit 133 | 132 | 19 |

Page 7

QUESTIONS INSTRUCTED NOT TO ANSWER

| PAGE | LINE |
|------|------|
| 217  | 10   |
| 271  | 17   |
| 282  | 7    |
| 320  | 20   |

1    SAN DIEGO, CALIFORNIA, DECEMBER 11, 2019, 9:03 AM
2         VIDEOGRAPHER:  We are now on the record.
3    Today's date is December 11, 2019, and the time is
4    9:04 AM.
5         This is the video deposition of John Higgins
6    being taken in the matter of SEC versus Lemelson Capital
7    Management LLC pending in the United States District
8    Court, District of Massachusetts.
9         We are at Aptus Court Reporting, San Diego.
10   My name is Daniel Bermudez of Aptus Court Reporting
11   located at 600 West Broadway, Suite 300, in San Diego,
12   California 92101.
13        Will counsel please identify yourself and
14   state whom you represent.
15        MR. BROOKS:  Yes.  Doug Brooks, law firm Libby
16   Hoopes, and I represent the defendants in this matter.
17        MR. DAY:  Al Day for the Securities and
18   Exchange Commission.
19        MR. McCAUGHEY:  William McCaughey, Cahill
20   Gordon & Reindel on behalf of Ligand Pharmaceuticals and
21   the witness.
22        MR. TONOLLI:  Sean Tonolli at Cahill Gordon &
23   Reindel representing John Higgins.
24        MR. BONDI:  Brad Bondi of Cahill Gordon &

1    Reindel on behalf of Ligand Pharmaceuticals and

2    Mr. Higgins.

3            VIDEOGRAPHER:  The court reporter today is

4    Veronica Thompson, and she may now swear in the witness.

5                      JOHN HIGGINS,

6        having been duly sworn, testified as follows:

7            MR. BROOKS:  Before we get going, let's put

8    the stipulations on the record that we've been using

9    throughout this case.

10           All objections and motions to strike other

11   than to the form are preserved until trial.

12           And will -- 30 days to read and sign the

13   transcript, but we'll waive the notary, and one

14   objection by the SEC or by deponent's counsel is good

15   for all.  Is that okay?

16           MR. DAY:  Yes.

17           MR. BONDI:  Agree.

18                      EXAMINATION

19   BY MR. BROOKS:

20      Q.  Good morning, Mr. Higgins.  We met briefly off

21   the record.  My name is Doug Brooks, and I represent the

22   defendants in this matter.

23           Have you ever been deposed before today?

24      A.  Yes.

1    Q.   You -- then in the -- there's a bullet point
2    titled "Dishonest and dubious investment practices" --
3    or we were just talking about that, but do you see the
4    second -- I'm sorry -- the second dash.  It says, "Uses
5    religious credentials to inspire false confidence and
6    raise money."  How did Fr. Lemelson do that?
7    A.   This is a perspective that he was raising
8    money.  He made commentaries about his investors were
9    looking for returns.  His investors were part of his
10   faith community, and it's just a question if -- if his
11   statements were false -- and we knew they were false --
12   and he had never talked to management or had -- there's
13   no evidence that he had any way to corroborate his
14   falsehoods, that he's using lies to convey that he is
15   successfully making good stock picks.
16   Q.   When did Fr. Lemelson say that his investor
17   base was part of his religious community?
18   A.   We saw, on his Twitter account, photographs, a
19   description of going to his -- his congregation and his
20   congregants thanking him for his success and expecting
21   these returns.  So just seeing the visual imagery, the
22   way he chose to post his religious practice with his
23   investment fund, and then the way he used quotes from
24   his congregants to complement that they continue to

1  expect these sort of returns.  It was that sort of
2  evidence that we had to suggest that he was integrating
3  his stock picking with his faith community.
4      Q.   All right.  So sitting here today, are you
5  aware of whether any of his investors were ever part of
6  his congregation?
7      A.   From his own words where I read, somebody
8  said, "Father, we hope" -- or "You know we're going to
9  expect these returns in the future."  I would infer from
10 that that that person made money and, if that person is
11 referring to in that capacity, that it was a
12 participant.  I -- I don't know exactly who his
13 investors are.
14      Q.   Did anyone at Ligand ever tell the SEC that
15 Fr. Lemelson's investors were members of his
16 congregation?
17      A.   No, I do not recall that.
18      Q.   Okay.  Did any of -- do you think it's wrong
19 for a priest to also be a hedge fund manager?
20      A.   No.
21      Q.   And did any of Fr. Lemelson's statements about
22 religion affect Ligand in any way?
23      A.   No.
24      Q.   Can you turn to slide 27.  You see the slide

Page 224

1    entitled "Lemelson:  Outperformance Claims"?

2         A.   Yes.

3         Q.   Did you play any role in preparing this slide?

4         A.   I -- I do not recall.

5         Q.   Did Ligand do anything to verify whether these

6    claims were true or false before presenting them to the

7    SEC in September 2014?

8              MR. DAY:  Objection.

9              THE WITNESS:  So the -- we -- I'm just

10   reading.  These came from his press releases where he'd

11   talk about his fund performance.  We're making

12   observations which we thought were unusual in terms of

13   the timing.  And we asked investment banks, "How" --

14   "how do funds report out?  What's the technical

15   requirement?  And then what's the standard practice for

16   investors?"

17             And we were -- we were told that this is very

18   unusual.  This seems very selective.  Stocks go up and

19   down, but in order to have fair benchmarking, third

20   parties, independent people, are looking at this saying,

21   "This is very usual."

22             So we were taking Lemelson's claims and

23   describing not only the magnitude of return, we believe

24   that there were ill-gotten gains in his returns because

1    of the activity with Ligand.  So that is a premise of
2    this, the idea that you're trading off of lies but also
3    that he's cleverly using dates that help -- help his
4    reporting.  So that's what we were -- but we were not
5    able to look at his books or audit him directly.
6    BY MR. BROOKS:
7        Q.   At this point had you looked at Fr. Lemelson's
8    or Lemelson Capital Management's audited -- annual
9    statements, I should say?
10            MR. BONDI:  Object to the form.
11            THE WITNESS:  We tried to find whatever was
12   publicly available.
13   BY MR. BROOKS:
14       Q.   So had you read his annual reports?
15            MR. BONDI:  Object to the form.
16            THE WITNESS:  I -- I don't recall what I
17   read -- what I read.
18   BY MR. BROOKS:
19       Q.   Were you aware at this time that all of
20   Fr. Lemelson's returns were audited?
21            MR. BONDI:  Object to the form.
22            THE WITNESS:  I -- I do not recall.
23   BY MR. BROOKS:
24       Q.   So like, for instance, in the first dash, do

1  you see where it says, "Lemelson is claiming that over
2  the prior 12-month period his fund beat the S&P index by
3  fivefold"?
4       A.   Yes.
5       Q.   Sitting here today, are you aware that's true?
6       A.   I'm not -- I'm not aware if it's true or not
7  true.  We're just stating what he was claiming at that
8  time.
9       Q.   Sitting here today, do you believe that any of
10 the statements contained on slide 27 that Fr. Lemelson
11 made are untrue?
12      A.   I -- I do not know if these statements are
13 true or not.
14      Q.   On slide 29, the third -- so it's titled
15 "Lemelson's Insolvency Claims."  Do you see that?
16      A.   Yes.
17      Q.   The third bullet point says, "Lemelson uses a
18 highly unusual definition of insolvency to assert that
19 Ligand is insolvent."  Did you have anything to do with
20 the preparation of this slide?
21      A.   I -- I do not recall.
22      Q.   Okay.  Did you agree that Fr. Lemelson's -- or
23 Fr. Lemelson used a highly unusual definition of
24 insolvency?

1        **A.**   That he made this statement?

2        **Q.**   That the statement itself was true.

3        **A.**   I -- I do not know if it's true or not.

4        **Q.**   Do you have any basis to say it's not true?

5        **A.**   I do not.

6        **Q.**   Okay. On slide 18, the second bullet point
7   says, "He also appears to maintain a Wikipedia site
8   about himself." Did you view that as wrong?

9              MR. BONDI: Objection.

10             THE WITNESS: It's just a statement
11  identifying how he's disseminating information about
12  himself.

13  BY MR. BROOKS:

14       **Q.**   Okay. All right. And then it says -- at the
15  bottom it says, "Tweets relating to religious commentary
16  and current events mixed with stock performance." What
17  is the relevance, if any, that you see in the religious
18  commentary piece?

19             MR. DAY: Objection.

20             THE WITNESS: It just -- it was a statement, a
21  presentation having done research on his digital
22  platform, what we were observing. It was just a
23  statement of observations we made about how information
24  is distributed.

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken
 4    before me at the time and place herein set forth; that
 5    any witnesses in the foregoing proceedings, prior to
 6    testifying, were duly sworn; that a record of the
 7    proceedings was made by me using machine shorthand,
 8    which was thereafter transcribed by me; that the
 9    foregoing is a true record of the testimony given.
10              Further, that if the foregoing pertains to the
11    original transcript of a deposition in a federal case,
12    before completion of the proceedings, review of the
13    transcript [x] was [ ] was not requested.
14              I further certify I am neither financially
15    interested in the action nor a relative or employee of
16    any attorney or party to this action.
17              In witness whereof, I have this date
18    subscribed my name.
19
20    Dated:  December 27, 2019
21
22
23            _____
24            Veronica S. Thompson
              CSR 6056, RPR, CRR, CCRR
```

Page 350

1        DECLARATION UNDER PENALTY OF PERJURY

2

3    Case Name:  SEC v. Lemelson

4    Date of Deposition:  12/11/19

5    KEY Discovery Job 371

6

7            I, JOHN HIGGINS, hereby certify under penalty

8    of perjury under the laws of the State of

9    _____ that the foregoing is true and correct.

10           Executed this _____ day of _____,

11   20_____, at _____.

12

13

14                                   _____

15                                   JOHN HIGGINS

16

17

18

19

20

21

22

23

24

JOHN HIGGINS                                           December 11, 2019

```
                                                          Page 351
 1                   DEPOSITION ERRATA SHEET
 2    Case Name:  SEC v. Lemelson
      Name of Witness:  JOHN HIGGINS
 3    Date of Deposition:  12/11/19
      KEY Discovery Job 371
 4    Reason Codes:  1.  To clarify record.
                     2.  To conform to facts.
 5                   3.  To correct transcription errors.
 6
 7    Page _____  Line _____  Reason _____
 8    From _____ to _____
 9    Page _____  Line _____  Reason _____
10    From _____ to _____
11    Page _____  Line _____  Reason _____
12    From _____ to _____
13    Page _____  Line _____  Reason _____
14    From _____ to _____
15    Page _____  Line _____  Reason _____
16    From _____ to _____
17    Page _____  Line _____  Reason _____
18    From _____ to _____
19    Page _____  Line _____  Reason _____
20    From _____ to _____
21    Page _____  Line _____  Reason _____
22    From _____ to _____
23    Page _____  Line _____  Reason _____
24    From _____ to _____
```

```
 1    Page _____ Line _____ Reason _____
 2    From _____ to _____
 3    Page _____ Line _____ Reason _____
 4    From _____ to _____
 5    Page _____ Line _____ Reason _____
 6    From _____ to _____
 7    Page _____ Line _____ Reason _____
 8    From _____ to _____
 9    Page _____ Line _____ Reason _____
10    From _____ to _____
11    Page _____ Line _____ Reason _____
12    From _____ to _____
13    Page _____ Line _____ Reason _____
14    From _____ to _____
15    Page _____ Line _____ Reason _____
16    From _____ to _____
17    Page _____ Line _____ Reason _____
18    From _____ to _____
19    Page _____ Line _____ Reason _____
20    From _____ to _____
21    _____ Subject to the above changes, I certify that the
             transcript is true and correct.
22    _____ No changes have been made.  I certify that the
             transcript is true and correct.
23
      _____      _____
24    Date            John Higgins
```