UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
AND TO COMPEL GREEK ORTHODOX METROPOLIS OF BOSTON TO
PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA**

Defendant Lemelson, who describes himself as a Greek Orthodox priest, seeks to compel production of a small number of emails from the Greek Orthodox Metropolis of Boston. The documents Lemelson seeks—internal emails among "hierarchs and chancellors" of the Greek Orthodox Church sent in December 2015 (more than a year after the conduct underlying this case) (*see* ECF No. 60-3 at 1)—is not responsive to his subpoena and has no bearing on whether he committed fraud when he shorted the stock of Ligand Pharmaceuticals, Inc. ("Ligand") in 2014.[1] His motion should therefore be denied.

---

[1] If further facts establish that Lemelson made misleading statements about his religious affiliation, the Commission reserves the right to challenge Lemelson's credibility at trial on that ground.

1

There appears to be some animosity between Lemelson and the Greek Orthodox Metropolis of Boston dating back to at least 2015 when Lemelson says he was "removed" from a parish as a result of media scrutiny of his investment activities. (*E.g.*, Day Decl. Exh. D at 71-74; ECF No. 60-3 at 2). The discovery he now seeks appears to address that feud (and not this case).

This is not the first time that Lemelson has sought to use this litigation as a forum to air (and obtain discovery about) unrelated grievances. For example, Lemelson sued Bloomberg for defamation and lost at the motion to dismiss stage and in the First Circuit. *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19 (1st Cir. 2018). Lemelson nevertheless subpoenaed Bloomberg in this case for documents that might have been relevant to his ill-fated defamation suit, but have no relevance here. (Day Decl. Exh. A.) And, relatedly, as the Court is aware, Lemelson has noticed a Rule 30(b)(6) deposition of the Commission to probe whether the Commission was the source of certain information contained in the Bloomberg article (which it was not, and Lemelson has produced no evidence to the contrary).[2] (ECF Nos. 41 & 51.)

With respect to why we are even talking about Lemelson's affiliation with the Greek Orthodox Metropolis of Boston, some background is in order. Lemelson holds himself out as a Greek Orthodox priest. (*E.g.*, Day Decl. Exh. B (excerpt from the "Management" page of the Lemelson Capital Management website: "Rev. Fr. Emmanuel Lemelson is a Greek Orthodox priest").) Undersigned counsel did not—and does not—view Lemelson's religious affiliation as relevant to this case and had no reason to doubt his assertion that he is a member of the Greek

---

[2] Contrary to his baseless position that the SEC "leaked" information to Bloomberg, the First Circuit noted that Lemelson "alleged in his complaint that Bloomberg published its story 'without contacting anyone at the SEC to verify whether or not Plaintiff was being investigated.'" 903 F.3d at 25. The court further noted that "Lemelson also concede[d] that it was not possible to get anyone at the SEC to verify or refute the existence of an investigation." *Id.*

2

Orthodox clergy. Undersigned counsel was therefore puzzled when Lemelson gave roundabout and contradictory answers about his religious affiliation during his deposition. (*Compare* Day Decl. Exhibit C at 14-15 ("I'm a member of the Eastern Orthodox Church.") *with* Day Decl. Exh. D at 7 ("Q: Father, are you a Greek Orthodox priest? A: Yes.") *and* Day Decl. Exh. D at 8 (Lemelson: "I'm assigned to the Albanian Diocese of America"). *See also* Day Decl. Exh. D at 7-20 (14 pages of deposition testimony in which Lemelson was evasive and argumentative about his religious affiliation).) Lemelson was likewise evasive when asked about a document, produced during the investigation leading up to this action, that suggested there had been some consternation on the part of the Greek Orthodox Church regarding his activities as an investment adviser. (*E.g.,* Day Decl. Exh. D at 20-27; *see also* ECF No. 60-3 at 2.) In response, undersigned counsel sought to find out what Lemelson had said to the Greek Orthodox Metropolis of Boston about his investment activities to see if any such statements—which would be admissible at trial as admissions of a party opponent—might shed some light on the claims in this case. It turned out that this was something of a Pandora's Box of conflicting information about Lemelson's religious affiliation.

On or about October 23, 2019, undersigned counsel reached out to the Greek Orthodox Metropolis of Boston, which undersigned counsel understands to be the governing body of the Greek Orthodox Church in New England, to determine where to direct a document subpoena for communications with and/or about Lemelson. (Day Decl. ¶ 6.) In an ensuing telephone conversation with Rev. Fr. Theodore Barbas, the Chancellor of the Greek Orthodox Metropolis of Boston, Father Barbas indicated that:

> (1) Lemelson is *not* a Greek Orthodox priest, but was instead ordained in the Albanian Orthodox Church and is under the "spiritual jurisdiction" of the Albanian Orthodox Diocese;

3

(2) Lemelson had applied to the Greek Orthodox Metropolis of Boston to be ordained, but that application was denied; and

(3) Lemelson was never officially assigned to any Greek Orthodox parish as he did not and does not belong to the Greek Orthodox Archdioceses of America and/or the Greek Orthodox Metropolis of Boston.

(Day Decl. ¶ 6 & Exh. E.) Undersigned counsel also understood that the Greek Orthodox Metropolis of Boston did not have any potentially responsive documents related to Lemelson,[3] and was instead directed to contact the Albanian Orthodox Diocese. (Day Decl. ¶ 6 & Exh. E.)

Undersigned counsel did not further pursue third party discovery on the subject and instead asked Lemelson's counsel for clarification. Lemelson's counsel responded with a lengthy email that, if anything, further confused matters. (Day Decl. Exh. F.) For example, Lemelson claims that he was "asked by the Greek Orthodox Metropolis of Boston . . . to be ordained in 2004" and that he "declined this request." (*Id.*) Lemelson further maintains that he was ordained by the Ecumenical Patriarchate of Constantinople, which he says is the "highest ruling body" in the church. (*Id. But see* Day Decl. Exh. D at 13-14 (Lemelson claiming to have been ordained by the Metropolitan of Boston).) Lemelson also acknowledges, consistent with what Father Barbas indicated, that he serves an Albanian Orthodox parish at the "request" of an unidentified "Archbishop." (Day Decl. Exh. F.) Whether Lemelson is a member of the Albanian Orthodox Church, as Father Barbas appears to maintain, or a member of the Greek Orthodox Church,[4] as Lemelson maintains, remains unclear. It is likewise unclear to what extent

---

[3] The Greek Orthodox Metropolis of Boston ultimately produced a number of documents in response to Defendants' subpoena. (See ECF No. 60-3 at 2-24.) Defendants' motion seeks to compel production of a small number of additional internal emails over which the Greek Orthodox Metropolis of Boston asserts a claim of privilege. (ECF No. 59 at 2 ("the Greek Orthodox Metropolis of Boston withheld three relevant documents as privileged"); ECF No. 60-3 at 1 (correspondence from Greek Orthodox Metropolis of Boston identifying three internal church emails that are being withheld as privileged).)

[4] There is also some suggestion that Lemelson is, or was, a member of the Metropolitan of Switzerland. (ECF No. 60-3 at 2.)

4

that is a distinction without a difference. (*Compare* Day Decl. Exh. D at 10 (Lemelson: "It is one church: Romanian Orthodox, Albanian Orthodox, Russian Orthodox, Greek Orthodox. It's all one church.") *with* Day Decl. Exh. F (Father Barbas indicating that Lemelson is under the "spiritual jurisdiction" of the Albanian Orthodox Diocese).)

Lemelson subsequently subpoenaed documents from the Greek Orthodox Metropolis of Boston for reasons that are, frankly, unclear. (ECF No. 60-1 (subpoena to Greek Orthodox Metropolis of Boston dated December 3, 2019).) The materials Lemelson sought were communications between the Greek Orthodox Metropolis of Boston, on the one hand, and "the media," "the SEC," and the "parish council on Keane, New Hampshire," on the other. (*See id.* at 5.) The Greek Orthodox Metropolis produced a number of documents in response. The three withheld documents—all of which are *internal* church emails (and none of which appear to be communications with the SEC, the media, or the Keane parish council) (*see* ECF No. 60-3 at 1)—are not obviously responsive to Defendants' subpoena, much less relevant to this case. Instead, the materials Lemelson seeks to compel appear to be aimed at finding out what senior members of the Greek Orthodox Church said to each other about Lemelson in December 2015— a topic related to another of Lemelson's side-grievances[5] that has no place in this litigation.

In the end, the story of Lemelson's religious affiliation and connection to the Greek Orthodox Metropolis of Boston appears to be complicated and disputed. The only thing that *is* clear is that Lemelson's status is unclear. (*Compare, e.g.,* Day Decl. Exh. D at 13-14 (Lemelson: "he"—referring to the Metropolitan of Boston—"moved forward with my [Lemelson's] ordination" in 2011) *with* Day Decl. Exh. F (Defendants' counsel: "In 2011, a Hierarch of the Ecumenical Patriarchate of Constantinople asked to Ordain Fr. Emmanuel.").) Perhaps there is a

---

[5] Lemelson alleged in his Bloomberg lawsuit that he became a "pariah" as a result of press coverage of his investment activities and that he was "remov[ed] from his parish" as a result. (Day Decl. Ex. D at 71-74.)

5

misunderstanding, mutual or otherwise, between Lemelson and the Greek Orthodox Metropolis of Boston. Perhaps someone is dissembling. But in either case, this is not the forum to sort it out.

With respect to the instant motion, none of what Lemelson seeks to compel from the Greek Orthodox Metropolis of Boston is responsive to his subpoena or relevant to the question of whether he committed securities fraud in connection with his short position in Ligand in 2014. The Commission therefore respectfully opposes Defendants' motion.

Dated: February 12, 2020

Respectfully submitted,

/s/ Alfred A. Day
Alfred A. Day (BBO #654436)
Marc J. Jones (BBO #645910)
Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
617-573-4537 (Day)
617-573-8947 (Jones)
DayA@sec.gov
JonesMarc@sec.gov
Attorneys for Plaintiff

6

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on February 12, 2020.

                                                                   */s/ Alfred A. Day*