**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------- :
                                                                             :
SECURITIES AND EXCHANGE COMMISSION,                                          :
                                                                             :
                                        **Plaintiff,**                        :
                                                                             :
                v.                                                           :      **COMPLAINT**
                                                                             :
PAUL S. BERLINER                                                             :
                                                                             :
                                        **Defendant.**                        :
                                                                             :
---------------------------------------------------------------------------- :

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### NATURE OF THE ACTION

1.      This case involves the intentional dissemination of a false rumor
concerning The Blackstone Group's ("Blackstone") announced acquisition of Alliance
Data Systems Corp. ("ADS"). On May 17, 2007, ADS entered into a definitive
agreement to be acquired by Blackstone at a price of $81.75 per share. On November 29,
2007, Defendant Paul S. Berliner ("Berliner"), a proprietary trader at Schottenfeld Group,
LLC ("Schottenfeld"), drafted and disseminated a false rumor that ADS's board of
directors was meeting to consider a revised proposal from Blackstone to acquire ADS at a
significantly lower price of $70 per share. This false rumor caused the price of ADS
stock to plummet.

2.      Defendant disseminated this false rumor through instant messages to
numerous individuals, including traders at brokerage firms and hedge funds. This false

rumor spread rapidly across Wall Street, and various news services quickly picked up the "story." Heavy trading in ADS stock ensued, and within thirty minutes the false rumor had caused the price of ADS stock, which had been trading at approximately $77 per share, to plummet to an intraday low of $63.65 per share -- a 17% decline in the share price. Later in the day, ADS issued a press release announcing that the rumor was false.

3.      Berliner profited from spreading this false rumor by short selling ADS stock at the same time he was disseminating the false rumor. He covered these short sales when the price of ADS stock began to decline. Berliner made approximately $25,000 in illicit trading profits before the price of ADS stock recovered later in the day.

4.      By virtue of his conduct, Berliner violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 9(a)(4) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78i(a)(4) and 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Unless enjoined, Berliner is likely to commit such violations again in the future.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)] and Sections 21(d)(1), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(e), 78aa].

6.      Defendant, directly or indirectly, made use of the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange, in connection with the conduct alleged herein.

7.      Venue is proper because certain acts or transactions alleged herein

2

occurred within this judicial district.

## DEFENDANT

8.      Paul S. Berliner, age 32, resides in Brooklyn, New York.  During the relevant time period, Berliner was a registered proprietary trader at Schottenfeld Group, LLC, a registered broker-dealer.

## OTHER RELEVANT ENTITIES

9.      Schottenfeld Group, LLC is a Delaware limited liability company headquartered in New York, New York.  Schottenfeld is a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act.

10.      Alliance Data Systems Corp. is a Delaware corporation headquartered in Dallas, Texas.  The common stock of ADS is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is traded on the NYSE.

11.      The Blackstone Group is a Delaware limited partnership headquartered in New York, New York.  The common stock of Blackstone is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is traded on the NYSE.

## STATEMENT OF FACTS

### Blackstone's Announced Acquisition of ADS

12.      On May 17, 2007, it was publicly announced that Blackstone and ADS had entered into a definitive acquisition agreement, pursuant to which Blackstone agreed to acquire all of the outstanding common stock of ADS at a price of $81.75 per share.  The purchase price of $81.75 per share represented a premium of approximately 30% over ADS's closing share price of $62.96 on May 16, 2007.

3

**Berliner's False Rumor**

13.     Between 1:10 p.m. and 1:15 p.m. on November 29, 2007, Berliner wrote

and disseminated the following false rumor concerning Blackstone's pending acquisition

of ADS:

> ADS getting pounded – hearing the board is now meeting
> on a revised proposal from Blackstone to acquire the
> company at $70/share, down from $81.50.  Blackstone is
> negotiating a lower price due to weakness in World
> Financial Network – part of ADS' Credit Services Unit, as
> evidence [sic] by awful master trust data this month from
> the World Financial Network Holdings off-balance sheet
> credit vehicle.

14.     Berliner disseminated this false rumor through instant messages to 31

traders and other securities professionals.  Within minutes, the false rumor spread rapidly

across Wall Street.  The media and certain subscriber-based news services quickly picked

up the "story" and further disseminated it throughout the marketplace.

15.     Berliner's statements, which were material, were entirely false.

Blackstone had not proposed a lower acquisition price, nor was ADS's board meeting on

a revised acquisition proposal.  Berliner knew, or was reckless in not knowing, that the

rumor he fabricated and disseminated was false and misleading.

16.     At the time Berliner began disseminating this false rumor at approximately

1:11 p.m., ADS was trading at about $77 per share.  Minutes after Berliner disseminated

the false rumor, heavy trading in ADS stock ensued, and the price of ADS stock began to

plummet.  Within thirty minutes after Berliner sent his first instant message containing

the false rumor, the price of ADS stock fell from approximately $77 per share to an

intraday low of $63.65 per share -- a 17% decline.

4

17.     This false rumor had such a significant impact on trading in the securities

of ADS that day, that the New York Stock Exchange temporarily halted trading in ADS

stock.  Later in the day, ADS issued a press release announcing that the rumor was false.

The press release stated, in relevant part:

> Alliance Data has not been approached by Blackstone or its
> affiliates regarding any renegotiation of the $81.75 per
> share cash purchase price to be paid to holders of Alliance
> Data common stock under the terms of the agreement and
> plan of merger entered into on May 17, 2007… Further,
> Alliance Data is today confirming that neither its board of
> directors nor the special committee of the board of directors
> formed in connection with the transactions contemplated by
> the merger agreement has met, is meeting or has scheduled
> any meeting regarding any renegotiation of the terms of the
> merger agreement.

18.     By the close of trading on November 29, the price of ADS stock had

recovered, closing at approximately $77 per share.  That day, 33,813,796 shares of ADS

stock were traded, which was more than twenty times the previous day's trading volume

of 1,561,923 shares.

## Berliner's Illicit Trades

19.     Berliner profited from spreading this false rumor.  Berliner disseminated

the false rumor for the purpose of inducing others to sell ADS stock.  At the same time he

began disseminating the false rumor, Berliner began selling short ADS stock in a

proprietary account at Schottenfeld.  From approximately 1:11 p.m. to 1:17 p.m. on

November 29, 2007, Berliner sold short 10,000 shares of ADS at prices ranging from

$77.21 per share to $76.47 per share.  Berliner began profitably covering his entire short

position at approximately 1:19 p.m. as the false rumor caused the price of ADS stock to

fall. Berliner's illicit trading profits totaled $25,509.

## FIRST CLAIM FOR RELIEF

### (FRAUD)
### Violation of Section 17(a) of the Securities Act
### [15 U.S.C. § 77q(a)]

20.     Paragraphs 1 through 19 above are realleged and incorporated herein by reference.

21.     Berliner, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails:

> (a) with scienter, employed devices, schemes, or artifices to defraud,

> (b) obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchasers of such securities.

22.     By reason of the foregoing, Berliner violated Section 17(a) of the Securities Act.

6

## SECOND CLAIM FOR RELIEF

### (FRAUD)
**Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

23.     Paragraphs 1 through 22 above are realleged and incorporated herein by

reference.

24.     Berliner, by engaging in the conduct described above, directly or

indirectly, by use of any means or instrumentality of interstate commerce, or of the mails,

or of any facility of any national securities exchange, in connection with the purchase or

sale of securities:

        (a) with scienter, employed, devices, schemes, or artifices to defraud,

        (b) made untrue statements of material facts or omitted to state material

           facts necessary in order to make the statements made, in the light of

           the circumstances under which they were made, not misleading, or

        (c) engaged in acts, practices, or courses of business which operate or

           would operate as a fraud or deceit upon any person.

25.     By reason of the foregoing, Berliner violated Section 10(b) of the

Exchange Act and Rule 10b-5 thereunder.

## THIRD CLAIM FOR RELIEF

### (MARKET MANIPULATION)
**Violation of Section 9(a)(4) of the Exchange Act
[15 U.S.C. § 78i(a)(4)]**

26.     Paragraphs 1 through 25 above are realleged and incorporated herein by

reference.

27.    By engaging in the conduct described above, Berliner, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange, selling or offering for sale or purchasing or offering to purchase a security, made, regarding a security registered on a national securities exchange, for the purpose of inducing the purchase or sale of such security, statements which were at the time and in the light of the circumstances under which they were made, false or misleading with respect to material facts, and which he knew or had reasonable ground to believe were so false or misleading.

28.    By reason of the foregoing, Berliner violated Section 9(a)(4) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

(1)    Permanently restraining and enjoining Berliner from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 9(a)(4) and 10(b) of the Exchange Act [15 U.S.C. §§ 78i(a)(4) and 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(2)    Ordering Berliner to disgorge all the profits and proceeds he obtained as a result of his actions alleged herein, plus prejudgment interest thereon;

(3)     Ordering Berliner to pay civil penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C.

§ 78u(d)(3)]; and

(4)     Granting such other relief as this Court may deem just and proper.

Dated: April 24, 2008                          Respectfully submitted,

                                               Scott W. Friestad
                                               Robert B. Kaplan (RK-2310)
                                               Brian O. Quinn
                                               Anthony S. Kelly


                                               Counsel for the Plaintiff
                                               Securities and Exchange Commission
                                               100 F Street, N.E.
                                               Washington, D.C.  20549-6041
                                               (202) 551-4969 (Kaplan)
                                               (202) 772-9333 (Facsimile)

9