BRUCE VOSS  December 3, 2019

**EXHIBIT D**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
SECURITIES AND EXCHANGE      )
COMMISSION,                  )
                             )
            Plaintiff,       )  Case No.
                             )  1:18-CU-11926-PBS
   vs.                       )
                             )
GREGORY LEMELSON and         )
LEMELSON CAPITAL             )
MANAGEMENT, LLC,             )
                             )
                             )
            Defendants,      )
                             )
   and                       )
                             )
THE AMVONA FUND, LP,         )
                             )
            Relief Defendant.)
                             )
```

Deposition of BRUCE VOSS

San Diego, California

December 3, 2019


Reported by:
Sheri L. Somers
CSR No. 9734
Job No. 10062968

Page 2

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE      )
COMMISSION,                  )
                             )
            Plaintiff,       )  Case No.
                             )  1:18-CU-11926-PBS
vs.                          )
                             )
GREGORY LEMELSON and         )
LEMELSON CAPITAL             )
MANAGEMENT, LLC,             )
                             )
            Defendants,      )
                             )
and                          )
                             )
THE AMVONA FUND, LP,         )
                             )
            Relief Defendant.)
                             )

        Deposition of BRUCE VOSS, taken on behalf of
defendant, at 600 West Broadway, Suite 300, San Diego,
California, beginning at 8:57 a.m., and ending at
5:52 p.m., on Tuesday, December 3, 2019, before
Sheri L. Somers, CSR No. 9734.

1    at that and let me know when you're ready.

2                (Exhibit 97 was marked for identification.)

3        A.   I've read it.

4        Q.   So if you turn to the second page of

5    Exhibit 97, the top e-mail from Mr. Higgins to you with

6    a cc to Matt Foehr dated June 24, 2014 at 12:14 p.m.,

7    do you see that?

8        A.   I do.

9        Q.   All right.  The second paragraph says, "Also,

10   should we contract with a firm to do stock

11   surveillance."

12              What is stock surveillance?

13       A.   As Mr. Higgins even writes, that used to be

14   an option years ago.  Stock surveillance would involve

15   providing intelligence on, as frequently as a daily

16   basis, of who is trading your stock.  It wouldn't tell

17   you why.  It would just give you some data points on

18   who is trading or who is clearing those stocks, and in

19   the hold days there used to be a mechanism where you

20   could actually track it back to what institution was

21   behind those trades through various numbers associated

22   with that trade, none of which you can do anymore.

23       Q.   And could you do it on June 24, 2014?

24       A.   Not to my knowledge.  There are firms that

BRUCE VOSS                                                December 3, 2019

Page 205

1    still sell stock surveillance services, but in any
2    experience they are -- they aren't terribly valuable.
3        Q.   And at the top, your e-mail -- your last
4    e-mail on the chain, the one dated June 24 at 10:30 --
5        A.   Yes.
6        Q.   -- it states, "The most recent short interest
7    data just came out.  Compared with May 30, 2014, Ligand
8    pretty much held steady going from 3,226,344 shares
9    previously to 3,242,952 as of June 13, 2014."
10            Do you see that?
11       A.   I do.
12       Q.   Why were you reporting to Mr. Higgins about
13   the short interest data?
14       A.   I do that to a number of my clients on a
15   somewhat regular basis.  Short interest data come out
16   twice a month and clients who are concerned about their
17   short interest or have had issues because of it, I will
18   send them reports.  In this case clearly because Father
19   Lemelson's report was negative and his report disclosed
20   a short interest in the company, we were keeping an eye
21   on how many shares were being shorted in Ligand and how
22   that was trending.
23       Q.   Do you know -- because it looks like you went
24   from May 30 to June 13, which was three days before his

1   A.   I have never heard of a fund wanting to post
2   a counter piece and having compliance step in.
3   Q.   Did you look into that at all?
4   A.   I did not.
5   Q.   And did you look into at all whether or not
6   Conestoga Capital was in fact Small Pharma Analyst?
7   A.   I did not and would not know how to.
8   Q.   Okay.
9   A.   I've read it.
10       (Exhibit 100 was marked for identification.)
11   Q.   So it looks like in this e-mail dated July 9,
12   2014, the conversation is concerning Father Lemelson
13   and Lemelson Capital Management's Wikipedia page; is
14   that right?
15   A.   Yes, it is.
16   Q.   And Mr. Higgins asks, "Should we try to edit
17   it or otherwise try to get Wikipedia to delete it?"
18       Do you see that?
19   A.   I do.
20   Q.   At the time what, if any, opinion did you
21   have as to whether that should be done?
22   A.   I have no experience in whether that could be
23   done, which kind of makes the "should" part irrelevant.
24   Q.   Well, even if -- let's say that it could be

BRUCE VOSS                                                December 3, 2019

Page 222

```
 1   done, do you think it should be done?
 2          MR. TONOLLI:  Object to the hypothetical.
 3          MR. JONES:  Likewise.
 4   BY MR. BROOKS:
 5      Q.    You can answer.
 6      A.    I have no idea how one would edit a Wikipedia
 7   page or even if you could.
 8      Q.    Right.  But if one could, do you know Ligand
 9   should have edited Father Lemelson or Lemelson Capital
10   Management's Wikipedia page?
11          MR. TONOLLI:  Objection.  Hypothetical.
12          THE WITNESS:  I think this e-mail is just putting
13   forth the fact that the Wikipedia page had changed, and
14   it's under consideration for deletion already at
15   Wikipedia.  And so John asks if we should try to edit
16   this.  I really don't have an opinion on it because I
17   haven't worked with Wikipedia.
18   BY MR. BROOKS:
19      Q.    He then writes, "I am not familiar with how
20   that works or if Ligand will have visibility in the
21   process.  Are there firms we can hire to edit
22   WikiLeaks?  Should we have investors edit the page?"
23          Do you see that?
24      A.    I do.
```

1      Q.   Did you ever have any further communications
2  with Mr. Higgins about having investors of Ligand edit
3  Father Lemelson's Wikipedia page?
4      A.   I don't recall ever having any conversation
5  about investors editing the page.  I don't recall if I
6  had any conversations with Mr. Higgins about anyone
7  editing the page.
8      Q.   So do you know if Ligand ever took any
9  efforts to edit or delete Father Lemelson or Lemelson
10 Capital Management's Wikipedia page?
11     A.   I don't know if they did or did not.
12     Q.   Do you know if Ligand ever made any efforts
13 to cause Father Lemelson or Lemelson Capital
14 Management's Wikipedia pages to be edited or deleted?
15     A.   I don't know if they did anything related to
16 this page.
17     Q.   At the bottom of his e-mail, Mr. Higgins
18 says, "I have copied Todd as well as maybe he has some
19 experience here."
20          Did you understand him to be referring to
21 Todd Pettingill?
22     A.   I believe that's who he was referring to.
23     Q.   Did I pronounce that correctly?  Is it
24 Pettingill?

BRUCE VOSS                                                December 3, 2019

Page 310

1        I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby certify:
3        That the foregoing proceedings were taken
4   before me at the time and place herein set forth; that
5   any witnesses in the foregoing proceedings, prior to
6   testifying, were duly sworn; that a record of the
7   proceedings was made by me using machine shorthand,
8   which was thereafter transcribed under my direction;
9   that the foregoing transcript is a true record of the
10  testimony given.
11       Further, that if the foregoing pertains to the
12  original transcript of a deposition in a federal case,
13  before completion of the proceedings, review of the
14  transcript [ X ] was [ ] was not requested.
15
16       I further certify I am neither financially
17  interested in the action nor a relative or employee of
18  any attorney or party to this action.
19       IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21
22  Dated: December 16, 2019
23  _____

    Sheri L. Somers
24  CLR, CSR No. 9734