**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,      ) | |
|             Plaintiff               ) | |
|      v.                    ) | |
| GREGORY LEMELSON and LEMELSON CAPITAL  ) | Civil Action No. 1:18-cv-11926-PBS |
| MANAGEMENT, LLC,           ) | |
|             Defendants,         ) | |
|    and                    ) | |
| THE AMVONA FUND, LP,         ) | |
|             Relief Defendant     ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Pages**

**Table of Contents**...................................................................................... i

**Table of Authorities**................................................................................ ii

I.      **INTRODUCTION**............................................................................. 1

II.     **ARGUMENT**.................................................................................... 2

      A.     **Defendants are Entitled to Summary Judgment on All Claims Because the Commission has Failed to Establish the Required Element of Materiality**........................................................ 2

            1.     *This Court's Holding in Emerson v. Genocea Biosciences, Inc. Entitles Defendants to Summary Judgment*................................. 2

            2.     *The Commission's Scheme Liability Claim Does Not Provide Them With the Required Evidence of Materiality*....................... 4

            3.     *The Commission Cannot Rely on its Rebuttal Expert to Prove Materiality*.................................................................... 5

            4.     *The Commission's Remaining Materiality Arguments Fail*.......... 6

      B.     **The Statements Are Either Demonstrably True, Were Made Without Scienter, or Constitute Protected Opinion Commentary**.................... 9

      C.     **The Commission's Scienter Arguments Fail as a Matter of Law**....... 14

III.    **CONCLUSION**................................................................................ 16

i

## TABLE OF AUTHORITIES

### Cases

**Case**                                                                                    **Pages**

*Alves v. Mazda Motor of Am., Inc.*,
    448 F. Supp. 2d 285 (D. Mass. 2006)...................................................... 14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................... 3

*Bennett v. Saint-Gobain Corp.*,
    507 F.3d 23 (1st Cir. 2007)................................................................ 6

*Cates v. Sears, Roebuck & Co.*,
    928 F.2d 679 (5th Cir. 1991)............................................................. 5

*Calisi v. Abbott Laboratories*,
    No. 11-10671-DJC 2013 WL 5441355 (D. Mass. Sept. 27, 2013)........... 14, 15

*Dávila v. Corporación De Puerto Rico Para La Difusión Pública*,
    498 F.3d 9 (1st Cir. 2007)................................................................ 6, 7

*Emerson v. Genocea Biosciences, Inc.*,
    353 F. Supp. 3d 28 (D. Mass. 2018)................................................... *passim*

*Esturban v. Massachusetts Bay Transp. Auth.*,
    68 Mass. App. Ct. 911 (2007)........................................................... 14, 15

*Flannery v. SEC*,
    810 F.3d 1 (1st Cir. 2015)................................................................. 15

*Garside v. Osco Drug, Inc.*,
    895 F.2d 46 (1st Cir. 1990)............................................................... 7

*Goldberg v. Meridor*,
    567 F.2d 209 (2d Cir. 1977).............................................................. 3

*In Re PolyMedica Securs. Litig.*,
    453 F. Supp. 2d 260 (D. Mass. 2006)................................................. 6 n.6

*In re Vertex Pharmaceuticals Inc., Securs. Litig.*,
    357 F. Supp. 2d 343 (D. Mass. 2005)................................................. 11 n.9

*In Re Xcelera.com Securs. Litig.*,
    430 F.3d 503 (1st Cir. 2005)............................................................... 6 n.6

*Maraj v. Massachusetts*,
    953 F. Supp. 2d 325 (D. Mass. 2013)........................................................ 5

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006).................................................................... 5

*SEC v. Fiore*,
    416 F. Supp. 3d 306 (S.D.N.Y. 2019)..................................................... 4 n.3

*SEC v. Mangan*,
    598 F. Supp. 2d 731 (W.D.N.C. 2008)................................................... 6, 6 n.6

*SEC v. Mayhew*,
    121 F.3d 44 (2d Cir.1997)....................................................................... 7 n.7

*Theidon v. Harvard University*,
    948 F.3d 477 (1st Cir. 2020).................................................................. 16

## I.     INTRODUCTION

The Commission's Opposition to Defendants' Motion for Summary Judgment fails because despite all its rhetoric alleging that Fr. Emmanuel is a fraud, the Commission is unable to provide the necessary *evidence* to satisfy the *required elements* of its securities fraud claims.

*First*, in a failed effort to demonstrate the existence of the requisite element of materiality, the Commission relies exclusively on non-controlling caselaw from the Second Circuit, notwithstanding **this Court's** prior ruling in *Emerson v. Genocea Biosciences, infra. Emerson*, decided during the pendency of this action, is contrary to the Second Circuit law and conclusively establishes that the lack of movement in Ligand's stock price in response to all of Fr. Emmanuel's alleged false statements renders those statements ***immaterial as a matter of law***.

*Second*, the Commission's effort to explain away its failure to produce this required evidence of materiality by invoking so-called "scheme liability" is unavailing.  The Commission seeks to include *unchallenged* statements (*i.e.*, statements that the Commission does not allege to be false or misleading) as part of an alleged "scheme" and correspondingly argue that Fr. Emmanuel caused Ligand's stock price to drop *periodically* over a timeframe of *more than four months* (even though the four challenged statements themselves indisputably had no such causal effect).  The Commission's position that *legal* conduct can constitute a scheme to defraud finds no support whatsoever in the law.

*Third*, no doubt recognizing the above fatal flaws in its case, the Commission improperly relies on its **rebuttal** expert's report to try to establish the existence of a disputed fact concerning materiality in order to defeat summary judgment.  Unequivocal caselaw, however, precludes the Commission from using *rebuttal* expert evidence to meet its burden of *affirmatively* establishing a required element of its claim.

*Fourth*, even setting aside its fatal failure to show that the challenged statements negatively impacted Ligand's stock price, the Commission's five alternative arguments for materiality, all of which ignore this Court's clear holding in *Emerson*, are without merit.

*Fifth*, even beyond the Commission's inability to show materiality, which dooms its *entire* case, a review of each of the four challenged statements demonstrates that, as a matter of law, they are either objectively true, were made without the requisite scienter, constitute opinion commentary protected by the First Amendment, or some combination thereof.

*Sixth*, the Commission cavalierly sets forth facts and arguments, which, as recognized by both this Court and the Commission at the motion to dismiss hearing, are exclusively within the province of experts.  However, the Commission chose *not* to provide affirmative expert evidence.  Accordingly, its arguments that rest on the proper definition of "insolvency," the alleged misleading nature of Fr. Emmanuel's chosen ratio and corresponding mathematical calculation, the impact that a so-called "margin call" might have had on Fr. Emmanuel's fund, and its conclusion that Fr. Emmanuel caused Ligand's stock price to be lower on October 13, 2014 than it was on June 16, 2014, have ***no*** evidentiary support.

*Seventh*, this case has none of the hallmarks of a true short-and-distort scheme that typically provide the required evidence of scienter.  Instead, the Commission's scienter argument rests entirely on unsupported speculation and circular reasoning, and thus fails as a matter of law.

## II.   ARGUMENT

### A.   Defendants are Entitled to Summary Judgment on All Claims Because the Commission has Failed to Establish the Required Element of Materiality.

#### 1.   *This Court's Holding in Emerson v. Genocea Biosciences, Inc. Entitles Defendants to Summary Judgment.*

In *Emerson v. Genocea Biosciences, Inc.*, this Court *dismissed* plaintiff's Rule 10(b)(5) securities fraud claims on the ground that the alleged omission could not be material, because its

2

subsequent disclosure did not cause the defendant company's stock price to drop.  353 F. Supp. 3d 28, 40-41 (D. Mass. 2018) (Saris, J.) (holding omission "could not have been material to investors" because "stock price did not drop" when the information was subsequently released, and this lack of stock price movement was "fatal to Plaintiffs' allegations").  This is ***precisely*** the situation here, where the challenged statements did not cause Ligand's stock price to fall. *Emerson*, therefore, conclusively establishes that the challenged statements are immaterial as a matter of law.

In its Opposition, the Commission conspicuously chooses to ignore this controlling precedent, other than to make the entirely unremarkable observation that *Emerson* was a private fraud-on-the-market case.  *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF No. 131 at 7.  However, this purported distinction is legally irrelevant, because the Commission's burden to prove materiality is the ***exact same*** as it is for a private securities fraud plaintiff.  *See, e.g., Goldberg v. Meridor*, 567 F.2d 209, 220 (2d Cir. 1977) (stating the test for materiality is no different in SEC enforcement actions than in a private action); *Basic Inc. v. Levinson*, 485 U.S. 224, 241 n.18 (1988) ("We find no authority in the statute, the legislative history, or our previous decisions for varying the standard of materiality depending on who brings the action").[1]

Accordingly, there is *no* way to reconcile this Court's holding in *Emerson* with the Commission's argument that it does not have to show that the four challenged statements had a negative impact on Ligand's stock price.[2]

---

[1] Defendants cited this well-settled point of law in their initial memorandum, ECF No. 125 at 14-15, but the Commission chose to ignore it in its Opposition.

[2] Instead of addressing *Emerson* in making its materiality argument, the Commission relies exclusively on precedent from the Second Circuit which is *not* the law in this Circuit.  ECF No. 131 at 5-6.  For the reasons set forth in Defendants' principal memorandum, the First Circuit is far more likely to follow the Third Circuit's approach that materiality is determinative of stock price, given that the First Circuit has cited the leading Third Circuit case with

3

2.   *The Commission's Scheme Liability Claim Does Not Provide Them With the Required Evidence of Materiality.*

The Commission's fallback position (*i.e.*, that Fr. Emmanuel caused Ligand's stock price to fall, albeit not in response to the four challenged statements but instead over a *four-month period* in which the volatile stock moved both up and down) is legally and factually infirm. ECF No. 131 at 4. In advancing this alternative argument, the Commission purports to rely upon its "scheme liability" claim. ECF No. 131 at 4. However, the Commission does not allege that Fr. Emmanuel committed any particular wrongful acts other than the publication of the four challenged statements. Indeed, the Commission admitted as much during the hearing on Defendants' Motion to Dismiss.

| | |
|---|---|
| THE COURT: | But you are saying, even if I agree with him on all of these, you still have a case? |
| MR. DAY: | Not necessarily, your Honor. I think, if all of the misstatements went away, there's not a lot of other conduct that we've alleged in the complaint, but I just want to be clear that there are multiple theories in this case. |

ECF No. 127-41 at 25:2-8.

The Commission is unable to point to any caselaw—because none exists—to support its contention that *legal* conduct can somehow give rise to scheme liability.[3] Accordingly, the

---

approval. ECF No. 125 at 19. In any event, **this Court** has already conclusively ruled on this issue in *Emerson*, effectively agreeing with the Third Circuit approach.

[3] The sole case the Commission relies upon in discussing its scheme liability claim is *SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019). ECF No. 131 at 4. That case bears no resemblance to the present matter. In *Fiore*, the Commission alleged that in addition to making fraudulent statements, the defendant (i) manipulated the subject company's stock price by engaging in a practice called "scalping" by secretly paying promoters to promote the stock; (ii) made targeted purchases of the stock to artificially increase the market activity and price of the stock; (iii) executed "matched and wash" trades by buying the same amount of stock at exactly the same price with no change in beneficial ownership; and (iv) "marked the close" by executing trades at or near the close of the market to raise the closing price of the stock and create the false appearance that it was the result of legitimate market demand. *See Fiore*, 416 F. Supp. 3d at 314-316. No analogous conduct occurred here.

Commission's scheme liability claim is no broader than its false statements claim and therefore cannot be used to manufacture the missing element of materiality.[4]

### 3. The Commission Cannot Rely on its Rebuttal Expert to Prove Materiality.

In furtherance of its groundless argument that its "scheme liability" theory relieves it of its obligation to prove that the four challenged statements impacted Ligand's stock price, the Commission argues that its *rebuttal* expert would opine that Fr. Emmanuel caused Ligand's stock price to fall during a more than four-month period that began before the first challenged statement and ended months after the last.  ECF No. 131 at 4.  The Commission, however, is precluded as a matter of law from relying on an expert *rebuttal* report to prove a required element of its claim.  *Maraj v. Massachusetts*, 953 F. Supp. 2d 325, 328 (D. Mass. 2013) (granting summary judgment and holding plaintiff cannot rely on rebuttal expert to prove an essential element of its claim); *see also Marmo v. Tyson Fresh Meats, Inc*., 457 F.3d 748, 759 (8th Cir. 2006) ("[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief"); *Cates v. Sears, Roebuck & Co*., 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief").[5]

In the present action, the Commission deviated from its standard practice of offering affirmative expert opinions in market-manipulation cases.  *See* ECF No. 125 at 18.  As such, the

---

[4] The Commission attempts to confuse the issue by claiming that Defendants' materiality argument is premised entirely on the Commission's failure to conduct an affirmative event-study analysis.  ECF No. 131 at 1, 5. That is not true.  Defendants' argument, as discussed above, is that the Commission cannot show that the four challenged statements were material given that those statements did not cause the price of Ligand's stock to drop.  The fact that the Commission did not offer an affirmative event study provides additional support, but is not the sole basis, for Defendants' contention.

[5] Notably, Defendants set forth this well-settled principle of law in their initial memorandum, ECF No. 125 at 13 n.4, and ***the Commission simply ignored it***, choosing instead to present facts and argument that are contrary to the controlling caselaw.

Commission has produced no admissible evidence that Fr. Emmanuel (as opposed to other market forces discussed in Defendants' principal memorandum, ECF No. 125 at 10-11, including the negative commentary concerning Ligand that other analysts published during the same time period) caused the drop in Ligand's stock price between June and October 2014. *See SEC v. Mangan*, 598 F. Supp. 2d 731, 737 (W.D.N.C. 2008) (granting summary judgment because there was no "materially negative movement" in the stock price attributable to defendant). Accordingly, the Commission cannot use its rebuttal expert to defeat Defendants' Motion for Summary Judgment.[6]

### 4. *The Commission's Remaining Materiality Arguments Fail.*

Finally, the Commission asks the Court to ignore its prior holding in *Emerson* and find materiality based on other allegations, notwithstanding the lack of stock price movement. ECF No. 131 at 10-22. Even absent *Emerson,* the Commission's arguments fail.

First, the Commission alleges that numerous investors complained about Fr. Emmanuel's statements. ECF No. 131 at 4, 14. The evidence offered, however, is inadmissible hearsay that cannot be considered at summary judgment. *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 29 (1st Cir. 2007) ("'[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment'") (quoting *Dávila v. Corporación De Puerto Rico Para La Difusión Pública,* 498 F.3d

---

[6] The Commission also fails to offer any explanation as to how, in an efficient market, the effects of Fr. Emmanuel's alleged misstatements took ***weeks*** to permeate the market and become incorporated into Ligand's stock price, a spurious position which ***directly contradicts*** both the Commission's position in other cases and unequivocal First Circuit law. *See, e.g., Mangan*, 598 F. Supp. 2d at 733 (SEC's expert opined that stock traded in efficient market and statement was therefore "fully impounded" in the closing price on the day of the statement); *In Re PolyMedica Securs. Litig.*, 453 F. Supp. 2d 260, 278 (D. Mass. 2006) (discussing First Circuit's definition of efficient market and noting that "stock price must quickly and fully reflect the release of public information such that ordinary investors cannot profitably trade on the basis of it, requires that the reaction to news be fully completed on the same trading day as its release—and perhaps even within hours or minutes") (citing *In re Xcelera.com Securs. Litig.*, 430 F.3d 503, 513 n.11 (1st Cir. 2005) (approving a finding of market efficiency "because Plaintiffs' event study capture[d] the same-day reaction to Xcelera's stock price to company-specific events")).

9, 17 (1st Cir. 2007)); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("[h]earsay

evidence, inadmissible at trial, cannot be considered on a motion for summary judgment").

However, even if the Court were to consider the inadmissible hearsay evidence offered, none of

that evidence reflects any complaints about the second, third, or fourth challenged statements.

*See* ECF No. 132 ¶ 146 (and cited exhibits).  Therefore, by the Commission's own logic, at least

these three statements were immaterial.[7]

Second, recasting its failed scheme liability theory, the Commission alleges that

"Ligand's stock price fell by 34% during the time Fr. Emmanuel was publishing his reports."

ECF No. 131 at 4.  For all the reasons set forth above, the Commission has failed *as a matter of*

*law* to provide evidence that Fr. Emmanuel caused this drop.[8]  Indeed, the lack of expert

testimony showing that Fr. Emmanuel caused the 34% drop is especially glaring considering the

volatility of Ligand's stock in general, illustrated by its falling as much as 30% between March

and April 2014 (just *before* Fr. Emmanuel began publicly opining on Ligand) and then

plummeting more than 80% *after* the Commission brought this lawsuit.  *See* Defendants'

Concise Statement of Undisputed Material Facts in Support of Their Motion for Summary

---

[7] Ligand itself failed to raise any issue with the second and third statements in its two presentations to the Commission and excluded the time period around the July 3, 2014 report in which these statements were made when identifying time periods of alleged impact to its stock price.  ECF No. 126 at ¶ 98.  The Commission's only response in its Opposition to these glaring omissions was, "**so what?**"  ECF No. 131 at 19 (emphasis added).  The Commission's snide commentary is telling.  The fact that Ligand, with the assistance of two large international law firms, prepared two comprehensive written presentations and met with two different regional offices of the Commission and did not reference either of these two statements (or even mention *any* statement about Viking), ECF No. 126 at ¶ 98, is certainly probative of the issue of materiality.  *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir.1997) ("[A] major factor in determining whether information was material is the importance attached to it by those who knew about it.").

[8] Like many other allegations that the Commission baldly asserts, its allegation that Ligand's stock price dropped 34% "*during the time Lemelson was publishing his reports*" is **demonstrably false**. ECF No. 131 at 4. On June 16, 2014, the date of Fr. Emmanuel's first report, Ligand opened at $67.26 per share.  ECF No. 127-14 at 31. The closing price on August 22, 2014, the date of his last report, was $51.24.  ECF No. 127-14 at 30.  This represents a drop of 23.8%, not 34% as the Commission alleges.

Judgment, ECF No. 126 at ¶ 103; Defendants' Response to Plaintiff's Statement of Undisputed Facts and Statement of Additional Material Facts, ECF No. 135 at ¶ 22.

Third, the Commission's reliance on Fr. Emmanuel's first report, which contains 25 pages of statements that the Commission does *not* challenge, to show a causal impact on Ligand's stock price, is misplaced.  ECF No. 131 at 4.  Indeed, the negative market reaction to the first report only further underscores the lack of materiality of the subsequent challenged statements, which did not correspond to a drop in the stock price.  On the date of the first report, Ligand's stock price fell 5.4%, a drop the Commission apparently attributes to the materiality of Fr. Emmanuel's (***unchallenged***) statements in that report.  ECF No. 131 at 4.  By contrast, no stock price drop (instead, an increase) resulted from Fr. Emmanuel's publication of the four challenged statements.  ECF No. 126 at ¶¶ 34, 57, 64, 65, 133.  **The starkly different market reactions to Fr. Emmanuel's reports refute the Commission's claim that the four challenged statements could be deemed material in exactly the same way the publication of the alleged material omission with no impact on the stock price refuted materiality in *Emerson*.**

Fourth, the Commission claims that Fr. Emmanuel attributed Ligand's falling stock price to his alleged misstatements.  ECF No. 131 at 5.  This is not true, as Fr. Emmanuel simply pointed out the movement of Ligand's stock price during certain time periods, and Ligand's stock price increased on the days of the alleged misstatements.  ECF No. 126 at ¶¶ 34, 57, 64, 65, 133; Plaintiff's Response to Defendants' Statement of Undisputed Material Facts and Statement of Additional Facts, ECF No. 132 at ¶ 147, Ex. 71.  Fr. Emmanuel did not isolate any particular part of his analysis (*i.e.*, Fr. Emmanuel did not attribute the stock price movement in any period of time to any of the four challenged statements).  ECF No. 132 at ¶ 147, Ex. 71.  Further, it is

ironic that the Commission's entire enforcement action is based on Fr. Emmanuel's alleged lack

of candor, but yet it seeks to *prove* materiality based on the truth of certain of his statements.

Fifth, the Commission claims that because Fr. Emmanuel chose to include the challenged

statements (*among hundreds of other unchallenged statements*) in his four reports, they are by

definition material.  ECF No. 131 at 5.  Accepting such a conclusory argument that *any*

statement a defendant chooses to make must be material (because otherwise he would not have

made it) would render the materiality requirement a nullity.

### B. The Statements Are Either Demonstrably True, Were Made Without Scienter, or Constitute Protected Opinion Commentary.

The first challenged statement involves a telephone call between only two people—Fr.

Emmanuel, and Ligand's IR representative, Bruce Voss.  ECF No. 126 at ¶ 15.  In its

Opposition, the Commission repeatedly urges the Court to consider all the challenged statements

in *context*, ECF No. 131 at 3-4, 21-22, but the Commission entirely ignores the critical context

surrounding this statement which demonstrates, *at minimum*, that Fr. Emmanuel lacked scienter

when he stated that Mr. Voss "basically agreed" that Promacta was going away.

Specifically, the Commission ***completely ignores*** that shortly after his telephone

conversation with Fr. Emmanuel, Mr. Voss had numerous communications with Ligand's CEO,

John Higgins, about that telephone conversation (including an email about the conversation that

has curiously and conveniently gone missing).  ECF No. 126 at ¶¶ 30-31.  Based directly on

those communications, Mr. Higgins chastised Mr. Voss for having "***tacitly agreed***" with Fr.

Emmanuel about Promacta going away.  ECF No. 126 at ¶ 32 (emphasis added).  ***The***

***Commission does not address this critical fact in its Opposition.***  It therefore does not address

how Fr. Emmanuel's statement could have been knowingly false and made with the intent to

defraud when **Ligand's own CEO had the _exact same takeaway from the conversation._**   There

is no legal support for finding scienter under such circumstances.

Similarly, there is no evidence to permit a reasonable juror to conclude that the second

challenged statement was made with the intent to defraud.  After specifically quoting from

Viking Therapeutics' publicly filed S-1 Registration Statement, Fr. Emmanuel wrote, **_"In other_**

**_words_****,** Marcum was merely hired, but the company has not yet even consulted with the firm on

any material issues.  The financial statements provided on the S1 accordingly are unaudited."

ECF No. 126 at ¶ 45-46; Brooks Aff. ECF No. 127-15 at 10 (emphasis added).  In fact, as a

review of the S-1 demonstrates, that document contained _both_ audited and unaudited statements.

ECF No. 126 at ¶ 46.  At worst, in hindsight, Fr. Emmanuel's language in the report could have

been more precise and parsed out that some of the financial statements were audited and some

were not.  That is a far cry, however, from establishing that Fr. Emmanuel made this statement

with an intent to defraud.  Nothing in the record supports the required scienter.

The third challenged statement, also about Viking, comes _directly_ from Viking's own

public statements.  In its S-1, Viking disclosed its _total inexperience_ conducting preclinical

studies and clinical trials.  ECF No. 126 at ¶ 50.  "All clinical trials, preclinical studies and other

analyses performed to date with respect to our drug candidates have been conducted by Ligand.

_Therefore, as a company, we do not have any experience in conducting clinical trials for our_

_drug candidates."_  ECF No. 126 at ¶ 50 (emphasis added).   Viking further disclosed, **_IN BOLD_**,

"**We intend to rely on third parties to conduct our preclinical studies and clinical trials and**

**perform other tasks for us.**"  ECF No. 126 at ¶ 49 (emphasis in original).  Based on these

disclosures, Fr. Lemelson correctly concluded that: "**_Viking_** does not intend to conduct any

preclinical studies or trials …."  ECF No. 126 at ¶ 48 (emphasis added).

Once again, despite urging this Court to consider the *context* in which the four challenged statements were made, the Commission itself chooses to simply ignore it.  Here, the Commission ignores the ***specific, bolded*** language in Viking's S-1 and instead relies on the general language on the first page of the S-1 discussing the contemplated preclinical studies and clinical trials on Ligand's drugs.  ECF No. 131 at 15-16.  In other words, Viking discussed the preclinical studies and clinical trials and thereafter ***specifically disclosed*** that it had *zero* experience conducting such studies and trials and would accordingly be relying on third parties to do so.  ECF No. 126 at ¶¶ 49-50.  ***In its Opposition, the Commission does not even try to explain Viking's bolded disclosure*** (which is consistent with Fr. Emmanuel's statement) or how that disclosure can be reconciled with its claim that Fr. Emmanuel's statement constitutes securities fraud.

Further, in making its argument, the Commission also completely ignores the context of Fr. Emmanuel's commentary about Viking.  His main contention was that there was no functional justification for Ligand's transaction with Viking (*e.g.*, *Ligand* could hire its own third-party vendors to perform preclinical studies and clinical trials on its drugs as it always had) and instead the purpose of the transaction was so Ligand could "stuff its own balance sheet." ECF No. 126 at ¶ 52.  Nowhere in the commentary is there *any* implication that Ligand's drugs would be released to the market without preclinical studies and clinical trials being performed (obviously an impossibility in any event).[9]  Notably, there is ***no evidence*** that anyone misunderstood Fr. Emmanuel's statement and expressed concern that drugs were going to be released to market without the required preclinical studies and clinical trials.  In sum, there is no

---

[9] *See In re Vertex Pharmaceuticals Inc., Securs. Litig.*, 357 F. Supp. 2d 343, 345-46 (D. Mass. 2005) (discussing approval process for drugs to be released to market, which included preclinical studies); U.S. Food & Drug Administration, "The Drug Development Process," *available at* *https://www.fda.gov/patients/learn-about-drug-and-device-approvals/drug-development-process* (last updated Jan. 4, 2018) (outlining process for drugs to be released to market, which included preclinical studies).

precedent—and for good reason—that permits the Commission to charge a defendant with securities fraud based on a statement that is a *fair and accurate* recitation of a company's own public statements on the same issue.

Finally, the Commission challenges Fr. Emmanuel's calculation of Ligand's debt-to-tangible-equity ratio in the context of his overall discussion of Ligand's financial condition. ECF No. 131 at 20-21.  In its initial Complaint, the Commission falsely alleged that the calculation was mathematically incorrect, because Fr. Emmanuel failed to include proceeds from Ligand's debt offering as equity.  ECF No. 126 at ¶ 70.  This statement was false (because proceeds from debt are never added to equity), and ironically reflects the exact same type of false statement that the Commission claims constitutes securities fraud on the part of Fr. Emmanuel.

The Commission's argument *now* is that the ratio (while mathematically correct) is nonetheless misleading, because the Commission does not consider a company's debt-to-tangible-equity ratio to be a good indicator of a company's financial wherewithal.  ECF No. 131 at 20-21.  The Commission claims Fr. Emmanuel's use of this ratio violated the federal securities laws because he failed to explain *why* the cash proceeds from Ligand's debt offering were not relevant and *why* he discounted Ligand's intangible assets in performing a debt-to-tangible-equity ratio.  ECF No. 131 at 21.  However, these supposed failings are **inherent** and **intrinsic** characteristics of **any** debt-to-tangible-equity ratio, not omissions particular to Fr. Emmanuel's calculation.

Accordingly, through this enforcement action, the Commission seeks to mandate what ratios a securities analyst can and cannot use regardless of whether that analyst (*as Fr. Emmanuel did here*) accurately describes the ratio he chose to utilize.  In other words, Fr. Emmanuel did not claim to be calculating Ligand's debt-to-equity ratio when in fact he secretly

omitted the company's intangible assets from his calculation. To the contrary, he was clear and transparent as to the *components* that formed the basis of his mathematically correct calculation. ECF No. 126 at ¶ 74-75. At the risk of stating the obvious, ***the First Amendment, if it is to have any meaning at all, prevents the government from dictating what metrics securities analysts can utilize when providing open and public commentary on publicly traded companies***. *See generally, United States v. Stevens*, 559 U.S. 460, 468 (2010) ("the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content"). It is therefore not surprising that the Commission's Opposition is devoid of any caselaw to support this claim.

Further, in support of the alleged misleading nature of Fr. Emmanuel's chosen metric, the Commission casually relies upon facts and arguments that require *expert* testimony, despite having not procured an affirmative expert witness. For example, the Commission alleges that Fr. Emmanuel wrongfully defined "insolvency" and that a "debt-to-tangible-equity ratio is not a test for insolvency." ECF No. 131 at 20-21. Notably, at the motion to dismiss hearing, the Court forecast, and the Commission acknowledged, that such concepts *require* expert testimony.

> THE COURT: I mean, I just didn't understand it, what you do with those proceeds from a bond offering.
>
> MR. DAY: Your Honor, let me see if I can walk through this with you.
>
> THE COURT: Are you an accountant?
>
> MR DAY: I am not an accountant, your Honor. I have a fair amount of exposure to accounting through my work, but I'm not an accountant.
>
> THE COURT: My first year in law school I—the second year, I think, took a pass/fail accounting class, and that was about the extent of it. But usually I have **experts** and some explanation of it and I can pick it up, so go ahead.

*          *          *

THE COURT:  So there's a different way under the accounting rules to describe this that doesn't make someone feel as if they're on the brink of insolvency.

MR. DAY:  Exactly, exactly.

THE COURT:  Although it does still put them at risk, right, the difference, what did you say, $240 million in a bond offering, and they only have $168 million left?

MR. DAY:  Yes, your Honor, ___but I think that's a question that would have to be answered by experts and with reference to testimony in this case___.

Defendants' Reply to Statement of Facts at ¶ 129 (emphasis added); Affidavit of Douglas S. Brooks in Support of Defendants' Reply to Statement of Facts, Ex. 89.

The Commission's failure to provide affirmative expert testimony, therefore, precludes its arguments related to the fourth challenged statement and entitles Defendants to summary judgment.  *See Calisi v. Abbott Laboratories*, No. 11-10671-DJC, 2013 WL 5441355, at *15 (D. Mass. Sept. 27, 2013) (where determinations are "'generally beyond the scope of an average person's knowledge'" failure to present expert evidence on the topic is fatal to plaintiff's claims) (quoting *Esturban v. Massachusetts Bay Transp. Auth.,* 68 Mass. App. Ct. 911, 911 (2007) (affirming trial court's entry of summary judgment after excluding expert)); *Alves v. Mazda Motor of Am., Inc.,* 448 F. Supp. 2d 285, 301 (D. Mass. 2006) ( "[a]s expert evidence is essential to [the plaintiff's] case, the defendants are clearly entitled to prevail now that their evidence [of experts' testimony] is being excluded").

### C.     The Commission's Scienter Arguments Fail as a Matter of Law.

Absent *any* of the hallmarks of a true short-and-distort scheme, which typically provide the basis for scienter in a case like the present, the Commission instead relies on unsupported argument, conjecture, and irrelevant information which undercuts its own position.  As an initial matter, and as discussed above, the Commission's failure to produce evidence of materiality militates in favor of a finding that there was no scienter.  "Questions of materiality and scienter

are connected.  If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact."  *Flannery v. SEC*, 810 F.3d 1, 9, 11 (1st Cir. 2015) ("thin materiality showing cannot support a finding of scienter here").

Moreover, the Commission's argument concerning scienter is hopelessly circular.  It claims that Fr. Emmanuel allegedly "engaged in a lengthy campaign assailing Ligand in an effort to drive down its stock price and profit from his short position, [*i.e.*, that he had scienter]," and so he had "ample reason [*i.e.,* he had motive]" to make false and misleading statements.  ECF No. 131 at 24 (brackets added).  In other words, the Commission argues that the Court can *infer* scienter on the ground that the Commission *argues* Fr. Emmanuel had scienter.  There is no legal support for this tautological contention, which would require a finding of scienter in *every case* where the Commission alleges a false statement.

Further, the Commission relies heavily on the fact that Fr. Emmanuel received a "margin call" from his broker, and speculates that this could mean that Fr. Emmanuel was experiencing financial difficulties giving rise to scienter.  ECF No. 131 at 25-26.  While the Commission attempts to provide a definition of a "margin call" and why it might be relevant to its scienter argument, it does so without any expert evidence.  ECF No. 131 at 25.  The Commission's attorneys' description of a "margin call" and its alleged impact on Fr. Emmanuel's state of mind is not competent evidence.  *See Calisi*, 2013 WL 5441355, at *15; *Esturban*, 68 Mass. App. Ct. at 911.

In addition, while the Commission refers to the "margin call" in an attempt to raise the *possibility* that Fr. Emmanuel's fund *might* have been experiencing financial difficulty, it offers *no evidence* of the fund's financial situation at that time, and therefore the Commission's

discussion of the "margin call" amounts to nothing more than pure speculation that is insufficient to show scienter. *Theidon v. Harvard University*, 948 F.3d 477, 494 (1st Cir. 2020) (plaintiff seeking to avoid summary judgment "cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation'") (quotation omitted).

Finally, the Commission concedes that the "margin call" took place ***after*** Fr. Emmanuel started publishing his reports about Ligand. ECF No. 131 at 26. Accordingly, the Commission's claim that he partially covered the Ligand short to satisfy the margin call is not evidence that the short position was fraudulent. To the contrary, it demonstrates that this partial cover was *not* part of any alleged short-and-distort scheme but rather was necessary to satisfy a *subsequent* broker-directed margin call.[10]

## III.   <u>CONCLUSION</u>

For all the foregoing reasons as well as those set forth in Defendants' principal memorandum, the Commission has failed to prove that Defendants committed any fraud, and Defendants are therefore entitled to summary judgment on all counts of the Commission's Complaint.

---

[10] In addition, even if this argument had merit, it would not apply to the two Viking statements, as Fr. Emmanuel did not cover *any* of his Ligand short for more than six weeks after making those two statements.

Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com

Dated:  November 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on November 13, 2020.

*/s/ Douglas S. Brooks*
Douglas S. Brooks