```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2

 3   SECURITIES AND EXCHANGE            )
     COMMISSION,                        )
 4                                      )
               Plaintiff                )
 5                                      )  CA No. 18-11926-PBS
            -VS-                        )  Pages 1 - 51
 6                                      )
     GREGORY LEMELSON, et al,           )
 7                                      )
               Defendants               )
 8

 9
                 MOTION HEARING/SCHEDULING CONFERENCE
10
                  BEFORE THE HONORABLE PATTI B. SARIS
11                 UNITED STATES CHIEF DISTRICT JUDGE

12

13

14

15
                                     United States District Court
16                                   1 Courthouse Way, Courtroom 19
                                     Boston, Massachusetts  02210
17                                   December 6, 2018, 11:20 a.m.

18

19

20

21

22
                          LEE A. MARZILLI
23                      OFFICIAL COURT REPORTER
                     United States District Court
24                    1 Courthouse Way, Room 7200
                          Boston, MA  02210
25                         (617)345-6787
```

```
 1   A P P E A R A N C E S:

 2        ALFRED A. DAY, ESQ. and MARC J. JONES, ESQ.,
     United States Securities and Exchange Commission,
 3   33 Arch Street, 23rd Floor, Boston, Massachusetts,
     02110-1424, for the Plaintiff.
 4
          DOUGLAS S. BROOKS, ESQ., Libby Hoopes, P.C.,
 5   399 Boylston Street Suite 200, Boston, Massachusetts, 02116,
     for the Defendants.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S
 2            THE CLERK:  Court calls Civil Action 18-11926, SEC
 3   v. Lemelson, et al.  Could counsel please identify
 4   themselves.
 5            MR. DAY:  Good morning, your Honor.  Alfred Day
 6   for plaintiff, the Securities and Exchange Commission.  With
 7   me is Marc Jones.
 8            MR. JONES:  Good morning, your Honor.
 9            THE COURT:  Good morning.
10            MR. BROOKS:  Good morning, your Honor.  Doug
11   Brooks for the defendants.
12            THE COURT:  Good morning.  So it's your motion.
13            MR. BROOKS:  Thank you, your Honor.  I want to be
14   clear, first, why we're here, and I want to take, as I
15   anticipate, what the SEC put in their opposition what
16   they're going to argue, but our arguments about why this
17   case should be dismissed on 12(b)(6), as to the four
18   statements that we now know are at issue, are based on the
19   four corners of the complaint and the documents incorporated
20   therein by reference.  I think it's important to keep in
21   mind that the SEC's entire scienter allegations, for
22   instance, are based on what they say is -- are based on the
23   documents that we have attached.  They say that the scienter
24   is obvious because Lemelson --
25            THE COURT:  Can I start off by asking the basic
```

1   a stock price reaction immediately, especially when these
2   statements were disseminated to the market over a period of
3   time to different forums, and, you know, it's just not the
4   same thing as a corporate announcement.
5           THE COURT:  Where was the statement made, the one
6   about the key drug going away?
7           MR. DAY:  It was in an interview on June 19 of
8   2014.
9           THE COURT:  What kind of an interview?
10          MR. DAY:  It was an interview with an Internet
11  radio show called PreMarket Prep, I believe was the name of
12  the show.  So it was broadcast.
13          THE COURT:  It wasn't like an investor call or --
14          MR. DAY:  No, but it was also available to people
15  to listen to later.  It was sent in emails to prospective
16  and existing investors in the Amvona Fund.  It was made
17  available through Amvona's website and LCM's website, so it
18  had a lot of capability to be propagated out into the total
19  mix of information available to the market over time.
20          THE COURT:  But you're saying it might not have
21  happened precipitously?
22          MR. DAY:  Exactly, your Honor.
23          With respect to the debt-to-tangible equity
24  ratio --
25          THE COURT:  You're ready to do Accounting 101?

1        MR. DAY:  Well, no, your Honor, and I think that
2    underscores why this is inappropriate for resolution at the
3    motion to dismiss.
4        THE COURT:  You've got to give me something to
5    show whether it's plausible.
6        MR. DAY:  Yes.
7        THE COURT:  I mean, I just didn't understand it,
8    what you do with those proceeds from a bond offering.
9        MR. DAY:  Your Honor, let me see if I can walk
10   through this with you.
11       THE COURT:  Are you an accountant?
12       MR. DAY:  I am not an accountant, your Honor.  I
13   have a fair amount of exposure to accounting through my
14   work, but I'm not an accountant.
15       THE COURT:  My first year in law school I -- the
16   second year, I think, took a pass/fail accounting class, and
17   that was about the extent of it.  But usually I have experts
18   and some explanation of it and I can pick it up, so go
19   ahead.
20       MR. DAY:  Okay.  Your Honor, our fundamental
21   position on this is that it is misleading to state the
22   shareholders only have $21,000 as a shield against hundreds
23   of millions in debt, and that the company was in effect
24   insolvent, without taking into account the whole picture of
25   the financial condition of the company.  Defendants are

1    this, which is the concept of net debt, which means it's the
2    amount that's been drawn down essentially on, for example, a
3    line of credit.  It's a very different thing to say that a
4    company has --
5               THE COURT:  I understand it.  The net debt does it
6    for me.
7               MR. DAY:  Okay.
8               THE COURT:  So there's a different way under the
9    accounting rules to describe this that doesn't make someone
10   feel as if they're on the brink of insolvency.
11              MR. DAY:  Exactly, exactly.
12              THE COURT:  Although it does still put them at
13   risk, right, the difference, what did you say, $240 million
14   in a bond offering, and they only have $168 million left?
15              MR. DAY:  Yes, your Honor, but I think that's a
16   question that would have to be answered by experts and with
17   reference to testimony in this case.
18              THE COURT:  So you're just saying, don't do it
19   now?
20              MR. DAY:  Actually, backing up a little bit, even
21   for the Court to determine whether the debt-to-tangible
22   equity ratio was calculated correctly, the record is
23   insufficient to even make that determination.
24              THE COURT:  I know, but even the SEC has to state
25   a plausible claim in a way that I can understand it.

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS   ) ss.
CITY OF BOSTON              )

     I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 51 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 18-11926-PBS, SEC v. Gregory Lemelson, et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

     Dated this 15th day of February, 2019.


/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER