UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's April 14, 2021 Order for Pretrial Conference, the parties submit the following joint pretrial memorandum:

**I.     Summary of Evidence to be Offered at Trial**

**A. Plaintiff**

From May through October 2014, Lemelson engaged in a deceptive scheme to drive down Ligand's stock price and profit from his fund's short position in that stock. Defendants violated the federal securities laws in three ways: *First*, Defendants engaged in a fraudulent "short and distort" scheme to profit from Defendants' short position by driving down the price of Ligand shares. *Second*, to further their scheme, Defendants made four false and misleading statements of fact about a supposed statement by Ligand's investor relations representative about the viability of Ligand's flagship drug, Viking Therapeutics, Inc. ("Viking") and its relationship with Ligand, and Ligand's financial condition. *Third*, Defendants deceived investors and

prospective investors by making and disseminating false statements about The Amvona Fund's Ligand investment and by failing to disclose that the fund's positive returns from that position resulted from Defendants' stock price manipulation

At trial, the Commission expects to elicit testimony from and introduce certain exhibits through the following witnesses:

1. **Commission Witness.** A Commission witness will summarize voluminous materials concerning the timeline of Defendants' trading in Ligand's securities, the value of The Amvona Fund's short position in Ligand over time, and Ligand's stock price over the course of Defendants' fraudulent campaign. The Commission witness will also explain from personal knowledge certain investing terms, short selling, and certain SEC regulations.

2. **Matthew Foehr, COO, Ligand.** Mr. Foehr will testify about Ligand's history, business, and business model, including Ligand revenue attributable to the drug Promacta over time, Ligand's relationships with GlaxoSmithKline and Novartis with respect to Promacta, Ligand's sale of its rights to Promacta in 2019, and Ligand's other revenue sources in 2014. Mr. Foehr will also address Ligand's financial wherewithal in 2014 and a 2014 debt financing transaction discussed in certain of Defendants' public statements about Ligand. Mr. Foehr is also expected to testify about how he became aware of Defendants' false and misleading statements about Ligand in 2014, communications with analysts, investors, Ligand personnel, and Ligand's investor relations firm about Defendants' statements, and whether Defendants' statements about Ligand were true.

3. **John Higgins, CEO, Ligand.** Mr. Higgins will testify about how he became aware of and his reaction to Defendants' false and misleading public statements about Ligand in 2014 and certain communications with investors, analysts, Ligand personnel, and Ligand's

outside investor relations representative, Bruce Voss, related to Defendants' statements.

4. **Catherine Hyodo, Partner, Audit Services, Grant Thornton LLP.** Ms. Hyodo oversaw audits of Ligand's financial statements in 2014. She is expected to testify about audit procedures performed by Grant Thornton for Ligand.

5. **Sougata Banerjee, Partner-in-Charge, California Assurance Services, Marcum LLP.** Mr. Banerjee oversaw audits of Viking's financial statements, and is expected to testify about audit procedures performed by Marcum, when and why an audit is required as part of filing a Form S-1 registration statement with the SEC, and how and why Marcum's audit procedures were disclosed in Viking's SEC filings.

6. **Nicolas Jabbour, MD.** Dr. Jabbour, a liver transplant surgeon and former The Amvona Fund investor, is expected to testify about certain communications he had with Defendant Lemelson in 2014 concerning the drugs Promacta and Sovaldi.

7. **Michael Johns.** Mr. Johns is expected to testify about his role in editing Defendants' reports and his efforts to disseminate Defendants' 2014 public statements about Ligand through various Internet channels.

8. **Defendant Lemelson.** The Commission anticipates examining Defendant Lemelson on a number of topics, including without limitation The Amvona Fund's short position in Ligand in 2014, Defendants' false and misleading public statements about Ligand in 2014, Defendant Lemelson's efforts to widely disseminate his false and misleading statements about Ligand, Defendant Lemelson's knowledge of the statements' falsity, Defendant Lemelson's state of mind with respect to his false and misleading public statements about Ligand, Defendant Lemelson's statements and communications regarding The Amvona Fund's short position in Ligand and his reports and interviews concerning Ligand, and Defendants' communications with

and representations to existing and prospective investors in The Amvona Fund in 2014.

9. **Ligand Investors: Robert Fields, Cardinal Capital Management; Joseph Frohna, 1492 Capital Management.** Fields and Frohna are expected to testify about their respective funds' positions in Ligand in 2014, when and how they each became aware of Defendants' public statements about Ligand in 2014, their reaction to those statements (including whether they considered the subject matters of the statements as having the potential to significantly alter total mix of information available to Ligand investors), and communications with Ligand personnel and others about Defendants' statements.

10. **Brian Lian, PhD, CEO, Viking.** Dr. Lian will testify about the history and founding of Viking, Viking's business and drug development, including pre-clinical and clinical trials, the relationship between Viking and Ligand, Viking's 2014 Form S-1 registration statement, Marcum LLP's audit work performed on behalf of Viking, and Defendants' public statements about Viking in Defendants' July 22 and August 4, 2014 reports.

11. **Keith Marschke, PhD, Senior Vice President, Biology and Scientific Affairs, Ligand.** Dr. Marschke will testify about Ligand's business and history, the development, history, and approved uses of the drug Promacta, and the development and history of other Ligand drugs.

12. **Bruce Voss, Managing Director, LHA.** Mr. Voss will testify about his role as an outside investor relations representative providing services to public companies including Ligand. Mr. Voss will testify regarding communications he had with Defendant Lemelson in 2014 concerning Ligand, including a telephone conversation on June 18, 2014. Mr. Voss will also address a false and misleading public statement Defendant Lemelson made during a June 19, 2014 Internet radio interview concerning the June 18th telephone conversation. Mr. Voss will

also address communications with Ligand investors about Defendants' false and misleading statements and communications with Ligand personnel about Defendant Lemelson.

This summary of evidence is just that—a summary. It is not intended to be comprehensive and the Commission reserves the right to call additional witnesses and present testimony on additional topics. The Commission also reserves the right to call additional witnesses in rebuttal, as necessary and permitted by the Court.

**B. Defendants**

In 2012, Fr. Emmanuel created the Amvona Fund LP. Throughout its existence, Amvona has mostly held long positions in stocks, but has also occasionally taken short positions. Fr. Emmanuel routinely published research and commentary pieces discussing economics, securitization fraud, corporate governance, and high-level security analysis of common stocks, including accounting and securities fraud both before and after his analysis of Ligand that is the subject of this case.

In 2014, Fr. Emmanuel identified Ligand as a company whose stock he believed was overvalued and accordingly Amvona took a short position in the company. Fr. Emmanuel, as was customarily his practice, published reports, in his own name, discussing his opinion and analysis of why he believed that Ligand was overvalued on June 16, 2014, July 3, 2014, August 4, 2014, August 14, 2014, and August 22, 2014. All of Fr. Emmanuel's reports disclosed that Fr. Emmanuel was "shorting" Ligand, that the report contained the opinions of Lemelson Capital, that all expressions of opinion were subject to change without notice or update to the report, and that Lemelson Capital may benefit from any change in the valuation of any other companies, securities, or commodities discussed in the report. In addition to these reports, during the same time period Fr. Emmanuel was interviewed by an outlet called Benzinga on June 19, 2014, August 13, 2014, September 16, 2014, and October 16, 2014.

From all of these reports and interviews, and large amount of commentary made over a period of approximately four months, the Commission has alleged that Fr. Emmanuel made four false statements: (1) June 19, 2014 statement by Fr. Emmanuel in a Benzinga interview that Ligand's Investor Relations ("IR") firm "basically agreed" with his thesis that Promacta was going away; (2) July 3, 2014 statement in a report authored by Fr. Emmanuel/Lemelson Capital Management that the financial statements published in a public S1 filing for a pre-operational, startup company called Viking were unaudited; (3) July 3, 2014 statement in a report authored by Fr. Emmanuel/Lemelson Capital Management that Viking does not intend to conduct any preclinical studies or trials; and (4) statements made about Ligand's debt-to-tangible equity ratio and Fr. Emmanuel's expressly stated definition of insolvency made in reports authored by Fr. Emmanuel/Lemelson Capital Management on August 14 and 22, 2014. None of the statements were fraudulent.

With regard to the June 19, 2014 statement, Ligand instructed its investor relations representative, Bruce Voss, to speak with Fr. Emmanuel prior to Fr. Emmanuel's June 19, 2014 interview with Benzinga. Mr. Voss testified and wrote in emails that Fr. Emmanuel stated his opinion that Promacta was going away and then asked, "Don't you agree?" to which Mr. Voss remained silent in response. When detailing this interaction shortly after the June 19, 2014 interview, Ligand's CEO, John Higgins, expressed disappointment in Mr. Voss' response and noted Mr. Voss' response (or lack thereof) constituted a "tacit agreement." Further, Fr. Emmanuel's real-time notes taken shortly after his phone call with Mr. Voss are consistent with Fr. Emmanuel's statement. The interview also disclosed that Fr. Emmanuel had a short position in Ligand. Finally, the statement was made in passing at the 16-minute mark of a nearly 22-minute interview, never repeated, and did not prompt any follow up questions.

With regard to the July 3, 2014 statements concerning Viking, Fr. Emmanuel's reports cited the bases for his statements in his reports. There is no evidence that any investor of Ligand or Viking raised concerns about either of these statements. Moreover, Viking's CEO, Brian Lian, testified that he does not recall if he even read Fr. Emmanuel's July 3, 2014 report, did not speak with any investor about this report in any depth, and does not recall any of his colleagues expressing any concern about the statements.

With regard to the fourth statement on August 14 and 22, 2014, in its original Complaint, the Commission claimed that Fr. Emmanuel's calculation of Ligand's debt-to-tangible equity was wrong because he failed to include the cash proceeds from a loan as equity. The Commission's claim was false because cash proceeds from debt do not constitute equity. After this claim was dismissed, the Commission then amended its claim to allege that Fr. Emmanuel falsely claimed Ligand was insolvent based on his expressly stated definition of insolvency: the company's liabilities exceeding its tangible assets. Fr. Emmanuel further explained the basis for his excluding Ligand's intangible assets, which he opined were dubious. Notably, Fr. Emmanuel had previously questioned the value of intangible assets when analyzing *other* companies. The report is clear, and indeed internal communications at Ligand reflect that they understood, to the extent that Fr. Emmanuel stated Ligand was insolvent it was in the context of removing consideration of any of Ligand's intangible assets.

Fr. Emmanuel held on to the majority of his short position in Ligand for months.

To this day, Ligand has never made a public statement contesting anything Fr. Emmanuel has written or said about the company. Instead, Ligand used its influence to remove Fr. Emmanuel's commentary from various public forums and to intimidate news and media outlets from publishing his work. In addition, Ligand engaged two large international law firms in an

7

effort to silence Fr. Emmanuel by persuading the Commission to bring an enforcement action against him.  Ligand had two different meetings with two different offices of the Commission.  After the first meeting with the Commission's Boston regional office, the Commission told Ligand it did not intend to pursue an investigation or enforcement action.  Ligand then hired a different attorney who previously worked for the Commission's Washington, D.C. regional office.  Ligand's new counsel arranged a second meeting at the Commission's Washington, D.C. regional office, though the events in question took place in Boston.  Ligand made PowerPoint presentations at both meetings, totaling 122 slides.  Those slides never mentioned the two challenged statements concerning Viking.  Ligand's slides included the false contention that Fr. Emmanuel's calculation of Ligand's debt-to-tangible equity ratio was incorrect because it did not include cash proceeds from a loan.  The Commission repeated this incorrect allegation about the calculation of the debt-to-tangible equity ratio in its original complaint filed against Fr. Emmanuel.  Finally, Ligand caused former Congressman Duncan Hunter to send a letter to the Commission advocating that the Commission investigate Fr. Emmanuel, on the same day Ligand's new counsel met with the Commission.

The Commission never interviewed any of Amvona's investors as part of its investigation.  The Commission has no evidence that Fr. Emmanuel attempted to defraud any of Amvona's investors or potential investors or committed any fraud on the market

**II.     Joint Stipulation of Facts Agreed to by the Parties**

The joint stipulation of facts is attached here.

**III.    Contested Issues of Fact**

The Commission brings its first claim under Exchange Act Section 10(b) and Rule 10b-5.  Defendants violated these provision in two ways:  First, that Defendants engaged in a fraudulent scheme to artificially depress Ligand's stock price with the goal of profiting from that unlawful

manipulation. Second, that Defendants made a series of false public statements about Ligand's business as part of their fraudulent scheme. The Commission's second claim, brought under of Advisers Act Section 206(4) and Rule 206(4)-8, is that Defendants misled existing and prospective investors in The Amvona Fund by failing to disclose that the fund's positive returns from its Ligand short position were derived from Defendants' fraud.

**Exchange Act Claim**

Exchange Act Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

There is no dispute that Defendants' conduct involved interstate commerce. However, the parties dispute each other element on the Commission's claims, including:

(1) Whether Defendants' conduct constituted a scheme to defraud under Rule 10b-5(a) and (c) and/or whether the challenged statements were false and material in violation of Rule 10b-5(b);

(2) Whether Defendants acted with scienter, i.e., with intent to defraud or recklessly; and

(3) Whether Defendants' conduct was undertaken "in connection with the purchase or sale of any security."

**Advisers Act Claim**

Under Section 206(4) of the Advisers Act and Rule 206(4)-8, prohibits an investment adviser to a pooled investment vehicle from negligently:

> (1) making an untrue statement of a material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the pooled investment vehicle; or
>
> (2) otherwise engaging in an act, practice, or course of business that was fraudulent, deceptive, or manipulative with respect to an investor or prospective investor in the pooled investment vehicle.

The parties do not dispute that Defendants were at all relevant times investment advisers to The Amvona Fund. Nor do the parties dispute that The Amvona Fund is a "pooled investment vehicle" within the meaning of the Advisers Act. The parties dispute the remaining elements: First, whether Defendants' conduct violated the substantive prohibitions of Rule 206(4)-8, *i.e.*, that they made false statements or otherwise engaged in deceptive conduct, and, second, whether Defendants acted at least negligently.

### IV.   Jurisdictional Questions

There are no jurisdictional questions to be resolved.

### V.   Issues Raised by Pending Motions

Plaintiff will file motions *in limine* raising the following issues:

1) Whether the jury should hear evidence and argument the potential adverse consequences to Defendants of a verdict of liability. The Commission believes this subject should be excluded.

2) Whether the Defendants may argue to the jury that the four challenged statements alleged to be fraudulent misrepresentations were merely opinions, and thus not actionable. The Commission believes this issue is a question of law that has been resolved in the Court's

summary judgment order.

3) Whether the Defendants may argue that the materiality of the four challenged statements can be determined by the market price reaction. The Commission believes that, in its summary judgment order, the Court held that a stock price reaction is a measure of reliance, which is not an element the Commission must prove. Thus, no proof of stock price movement is necessary to find materiality.

4) Whether Defendants can introduce evidence and argument about how or why this case was brought, including allegations that the case was brought for an improper purpose, that the SEC "leaked" this case to the media, that the Commission's conducted this litigation in some untoward manner, that the Commission's counsel is biased against Lemelson's religious affiliation, or that Ligand's reporting of the case to the Commission was somehow improper. The Commission believes all of these topics—all raised by Defendants in support of their selective enforcement claim—are not relevant to any remaining claim or defense.

5) Whether Defendants can introduce irrelevant evidence and arguments attacking the Commission and Ligand: including attacking the stock sales and compensation of Ligand executives; attacking the price of medicines developed by Ligand and pricing in the pharmaceutical industry generally and under the Orphan Drug Act; and whether the Commission made errors in its original complaint, including the amendment after the motion to dismiss. The Commission believes each of these categories is irrelevant to the question of whether the Defendants engaged in fraudulent conduct in 2014.

Defendants will file motions *in limine* raising the following issues:

1) Whether the Commission can introduce evidence of the following, which Defendants

contend are the province of experts:

   a. Typical practices of the pharmaceutical industry;
   b. Whether debt-to-tangible equity is a GAAP metric or a metric that can be used to assess the risk of insolvency;
   c. Whether Ligand was insolvent at any particular point in time;
   d. Whether cash proceeds of a loan should be included in the calculation of tangible equity;
   e. Whether shareholder equity is protection from debt;
   f. Whether intellectual property is the most significant asset of a pharmaceutical company;
   g. The physiological effects of Promacta and the utility of Promacta for addressing conditions unrelated to hepatitis C; and
   h. The attribution of changes in stock price to any specific cause.

2) Whether the Commission can introduce evidence of scheme liability beyond the four specified statements. The Defendants contend that the scheme alleged by the Commission should be confined to these four statements as the Commission has failed to provide notice of any other alleged illegal activity, but rather has only labeled permissible, legal conduct as part of a purported "scheme."

3) Whether the Commission can present the testimony of certain Ligand investors that had not been disclosed in discovery and were identified for the first time in the Commission's proposed witness list.

4) Whether the Commission can introduce evidence of the current state of the Amvona Fund and its ongoing FINRA Arbitration; evidence of Defendants inquiring with a real estate agent about a home and the Amvona Fund's purported deficit; and a Wall Street Journal article and corresponding video that raises issues with Fr. Lemelson's religious practice and his interaction with President Trump. Defendants maintain that these subjects are irrelevant, unfairly prejudicial, and will needlessly create confusing "mini-trials" on

extraneous issues—many of which fall outside the relevant time period of the alleged conduct in this case.

5) Whether the Commission can present the summary witness for all the purposes designated in its summary of evidence to be offered at trial or whether certain topics of anticipated testimony are beyond the permissible scope of a summary witness.

## VI. Contested Issues of Law (including Evidentiary Issues)

Other than those raised by the motions *in limine* discussed above, the parties are not aware of other contested issues of law.

## VII. Probable Length of Trial

The parties believe the trial will last approximately 14 days, from the start of jury selection to the beginning of deliberations. At the court's instruction, the parties have assumed a trial schedule of 9:00 AM to 1:00 PM daily.

## VIII. Witnesses Expected to Testify

### A. Plaintiff

| NAME | CITY | PRESENTED BY DEPOSITION |
|---|---|---|
| Erin Smith | Salt Lake City, UT | |
| Gregory (Fr. Emmanuel) Lemelson | Shelburne, VT | |
| Catherine Hyodo* | Los Angeles, CA | |
| Sougata Banerjee* | Los Angeles, CA | |
| Michael Johns* | Emmaus, PA | POSSIBLE |
| Bruce Voss | Los Angeles, CA | |
| Keith Marschke | San Diego, CA | |
| Brian Lian | Rancho Santa Fe, CA | |
| Nicholas Jabbour | Westborough, MA | |
| Robert Fields | New Canaan, CT | |
| John Higgins | Minneapolis, MN | |
| Joseph Frohna* | Wales, WI | |
| Matthew Foehr | Belmont, CA | |

* The Commission has moved to present these witness via video teleconferencing

B. **Defendants**

| NAME | CITY | PRESENTED BY DEPOSITION |
|---|---|---|
| David Becker | Bethesda, MD | X |
| Todd Pettingill | San Marcos, CA | |

Dated: October 5, 2021

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Marc Jones*
Marc J. Jones (Mass. Bar #645910)
Alfred A. Day (Mass. Bar #654436)
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-4537 (Jones direct)
jonesmarc@sec.gov
daya@sec.gov

**REV. FR. EMMANUEL LEMELSON, LEMELSON CAPITAL MANAGEMENT, LLC, and THE AMVONA FUND, LP**

By their Attorneys,

 _/s/ Brian J. Sullivan_
Douglas S. Brooks (BBO No. 63697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
(617) 338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

## CERTIFICATE OF SERVICE

      I certify that on October 5, 2021, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                       */s/ Marc Jones*