UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC, <br><br> Defendants, <br><br> and <br><br> THE AMVONA FUND, LP, <br><br> Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff, the United States Securities and Exchange Commission (the "Commission") respectfully submits the following trial brief to supplement the parties' pretrial filings, including the Commission's motions *in limine* and the joint pretrial memorandum.

**PRELIMINARY STATEMENT**

The Commission alleges that Defendants engaged in a type of market manipulation known as a "short and distort" scheme. There is no dispute that The Amvona Fund ("TAF")—a hedge fund managed by Defendant Lemelson Capital Management ("LCM") and Defendant Lemelson—held a short position in the securities of Ligand Pharmaceuticals, Inc. ("Ligand") from May through October 2014. There is likewise no dispute that Defendant Lemelson wrote and disseminated a series of five public reports critical of Ligand—indeed, positing that Ligand was a fraud and consequently that its stock was worth nothing—between June 16 and August 22, 2014. Defendant Lemelson widely disseminated his Ligand reports and gave live interviews

about them.  The Commission alleges that Defendant Lemelson engaged in this conduct with the intent to illegally drive Ligand's stock price down and profit from TAF's short position.

The evidence at trial will show that Defendants violated the federal securities laws in three ways.  First, Defendants engaged in a fraudulent "short and distort" scheme to profit from Defendants' short position by driving down the price of Ligand shares.  Second, to further their scheme, Defendants made four false and misleading statements of fact about the viability of Ligand's flagship drug, the nature of Ligand's relationship with Viking Therapeutics, Inc. ("Viking"), and Ligand's financial condition.  Third, Defendants deceived investors and prospective investors by making and disseminating false statements about TAF's Ligand investment and by failing to disclose that the fund's positive returns from that position resulted from Defendants' stock price manipulation.  The first two of these violations comprise the Commission's First Claim, violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder.  The third is the Commission's Second Claim, violation of Section 206(4) of the Investment Advisers Act of 1940 (the "Advisers Act") and Rule 206(4)-8 thereunder.

## EVIDENTIARY AND OTHER ISSUES

### A.  Defendants Inappropriately Seek to Put Ligand and the Commission on Trial

The Commission alleges that Defendant Lemelson engaged in a market manipulation scheme (Exchange Act Rule 10b-5 (a) & (c)) and made a number of material misstatements in furtherance of that scheme (Exchange Act Rule 10b-5(b)).  The question for the jury is straightforward:  Did Defendant Lemelson's conduct between May and October of 2014 violate the antifraud provisions of the Exchange Act?

In pretrial filings, Defendants have made it clear that they wish to mount two irrelevant and unduly prejudicial defenses.  First, Defendants assert that Defendant Lemelson was correct

to say that Ligand was (and is) a fraud.  In support, they impugn Ligand's business model as somehow morally wrong, complaining about orphan drugs and drug pricing over which Ligand had no control.[1]  They also point to executive compensation Defendant Lemelson subjectively considers excessive, without reference to any yardstick by which such compensation might be measured.  In the end, they cite no evidence supporting this table-pounding and rely only on Defendant Lemelson's *ipse dixit*.

Second, Defendants persist in their now-dismissed "defense" that the Commission was unduly influenced or acted out of animus in bringing this case.  They cling to supposed errors in the Commission's original complaint, all of which were superseded by amendment.  And they don't explain how an alleged "error" in the complaint sheds any light on whether Defendants committed a fraud.  Neither of these "defenses" finds any support in the record; they are a transparent attempt to divert attention from Defendant Lemelson's conduct.

The first defense sidesteps the questions properly before the jury in this case by trying to put Ligand on trial.  Ligand is not on trial; Defendant Lemelson is.  His conduct, not Ligand's, is at issue.  The second defense is likewise irrelevant and was rejected by the Court on the Commission's motion for summary judgment.  Defendants have argued throughout this case that the Commission was somehow in cahoots with Ligand and engaged in some ill-defined type of misconduct in bringing this case.  Because they lacked any evidence for this spurious allegation, the defense was excised from this case [ECF No. 146] and should not be resuscitated in any incarnation at trial.

### 1.  Ligand is Not On Trial.

Defendants have marked no less than 77 exhibits that appear intended to cast aspersions

---

[1] Notably, Defendants only began making these claims about Ligand after the Commission interviewed Defendant Lemelson by phone about his trading and served him with a subpoena for documents and testimony.

on Ligand and its executives.  For example, Defendants have identified 70 exhibits that relate to

Ligand executive compensation and stock sales from 2011-2020, the bulk of which are well

outside the period at issue in this case (May through October 2014).  How much Ligand

executives were paid, how many stock options they had, and how much stock they sold is utterly

irrelevant to the Commission's claims.

Defendants have not (and cannot) explain how Ligand executive compensation is a

defense.  It isn't.  Ligand executive compensation has no relevance—none whatsoever—to any

claim or defense in this case.

### 2.  The Commission Is Not On Trial.

Defendants also want to divert attention from their misconduct by pointing the finger at

the Commission.  For example, Defendants have indicated that they intend to call Division of

Enforcement Assistant Director David Becker as a witness.  Mr. Becker was the Commission's

30(b)(6) witness in this matter with respect to topics related to Defendants' baseless conspiracy

theories about how and why this case was brought—"defenses" this Court dismissed on the

Commission's motion for summary judgment:

> 1. The SEC's analysis and mathematical calculation of Ligand's
> debt-to-tangible equity ratio.
>
> 2. Communications between the SEC and media sources
> concerning its non-public investigation of Defendants.
>
> 3. Pre-litigation communications between the SEC and Ligand
> regarding Defendants, including but not limited to meetings
> between Ligand and the SEC, how such meetings were arranged,
> and the relationships between SEC and Ligand's counsel.

[ECF No. 55 at 4].  These were the only 30(b)(6) topics, and the Court permitted this Rule

30(b)(6) deposition to "learn the facts underlying [Defendants'] selective enforcement defense . .

. ."  [*Id.* at 7].  There were no such facts, the selective enforcement defense is no longer part of

the case [ECF No. 146 at 28-32], and the discovery about it is no longer relevant to any claim or defense.

These topics, and any arguments flowing from them, are irrelevant and plainly intended to distract and confuse the jury.  As to the first topic, Defendants allege that the Commission made an error in its original complaint regarding Defendant Lemelson's misleading "debt-to-tangible equity ratio" which he used as a jumping off point to falsely claim that Ligand was insolvent.[2]  Even if the Commission made a mistake (which it didn't), it is of no relevance.  The Commission amended its complaint and the allegedly offending allegation was superseded.[3]  Moreover, any alleged error in the Commission's original complaint has no bearing on the merits of the Commission's claims.

The second topic concerns Defendant Lemelson's misguided belief that the Commission "leaked" information about its nonpublic investigation of Defendants to Bloomberg news in 2016—long after the charged conduct took place.  There is no evidence whatsoever that this happened and, even if it did, again, it is of no relevance.  An alleged after-the-fact leak of information to the media in 2016 has no bearing on whether Defendant Lemelson committed a fraud in 2014.

The third 30(b)(6) topic is likewise irrelevant.  Whether and to what extent Ligand's counsel had after-the-fact communications with Commission staff about Defendant Lemelson's conduct—publicly lying about the company to depress its stock price—again has no bearing on

---

[2] Tellingly, Defendant Lemelson now *admits* that Ligand was not insolvent at any relevant time in 2014—a fact evident from Ligand's 2014 SEC filings that Defendant Lemelson said he reviewed at the time.  [Answer (ECF No. 34) ¶51 (admitting that Ligand's assets exceeded its liabilities at all relevant times).]

[3] Even if Plaintiffs' allegations in the original complaint were judicial admissions, such admissions may be withdrawn by amendment.  *See Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir.1956) (recognizing that "withdrawn or superseded pleadings" do not constitute judicial admissions); *InterGen N.V. v. Grina*, 344 F.3d 134, 144–45 (1st Cir. 2003) ("An amended complaint supersedes the original complaint[,]").

the questions properly before the jury.  Moreover, this Court specifically found that Defendant Lemelson adduced no evidence that Ligand acted improperly in reporting Defendants' conduct, or that the Commission was unduly influenced in bringing this case.  [ECF No. 146.]

In the end, none of these topics have anything to do with whether Defendant Lemelson engaged in a scheme to manipulate the price of Ligand's stock and made material misrepresentations of fact in furtherance of that scheme.  FRE 401.  Defendants merely seek to re-litigate matters this Court already found meritless and prejudice the jury with specious accusations.

**B. Count III of the Commission's Complaint Should Be Decided by the Court During the Remedies Phase of this Case**

The third count of the Commission's amended complaint [ECF No. 33] alleges a claim for "Other Equitable Relief, Including Unjust Enrichment and Constructive Trust" as to the Relief Defendant The Amvona Fund, LP.  This Count is contingent on a finding of liability under Count I or II.  Further, this Count sounds in equity.  Accordingly, this Count should not be tried to the jury, but instead should be resolved by the Court in the remedies phase if there is a finding of liability on at least one of the other two counts.

Dated: October 5, 2021                    Respectfully submitted,

                                          **SECURITIES AND EXCHANGE
                                          COMMISSION**

                                          By its Attorneys,

                                          */s/ Alfred A. Day*
                                          Marc J. Jones (Mass. Bar #645910)
                                          Alfred A. Day (Mass. Bar #654436)
                                          Boston Regional Office
                                          33 Arch Street
                                          Boston, MA  02110
                                          (617) 573-4537 (Jones direct)
                                          jonesmarc@sec.gov
                                          daya@sec.gov

## CERTIFICATE OF SERVICE

        I certify that on October 5, 2021, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                          */s/ Alfred A. Day*