## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,  ) | |
| ) | |
| Plaintiff  ) | |
| ) | |
| v.  ) | |
| ) | |
| GREGORY LEMELSON and LEMELSON CAPITAL  ) | Civil Action No. 1:18-cv-11926-PBS |
| MANAGEMENT, LLC,  ) | |
| ) | |
| Defendants,  ) | |
| ) | |
| and  ) | |
| ) | |
| THE AMVONA FUND, LP,  ) | |
| ) | |
| Relief Defendant  ) | |
| ) | |

### DEFENDANTS' MOTION IN LIMINE TO PRECLUDE CATEGORIES OF
### IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital

Management LLC, and the Amvona Fund LP respectfully request that this Court rule that

Plaintiff, Securities and Exchange Commission (the "Commission") be precluded from offering

certain categories of evidence that are irrelevant and/or unfairly prejudicial pursuant to Fed. R.

Evid. 401 & 403.

## I.      Irrelevant Data Regarding the Amvona Fund and Unrelated FINRA Arbitration

In March 2020, while market conditions were suffering during the COVID-19 pandemic,

the Amvona Fund's broker-dealer engaged in activity that resulted in prospective impairments to

the Fund.  The Fund maintains the broker's conduct was in violation of FINRA standards and in

breach of the broker's agreement with the Fund.  Accordingly, the Fund has asserted claims

against the broker and related parties (the "FINRA Arbitration").  The Hearing in that matter is scheduled for December 2021.

On July 20, 2021, after the close of discovery, the Commission made a supplemental production of documents that included filings in the unrelated FINRA Arbitration.  Counsel for Defendants asked the Commission to confirm that it did not intend to seek the admission of evidence concerning the unrelated FINRA Arbitration and irrelevant data concerning the Fund at periods of time over six years after the alleged statements were made.  The Commission refused to so confirm.

Even under the most expansive view, the conduct that the Commission challenges in this case occurred between June and October 2014.  Any dispute between the Fund and its broker or related prospective impairments to the Fund, now *more than seven years later*, does not have "any tendency to make a fact more or less probable than it would be without the evidence" nor is it "of consequence in determining the action."  Fed. R. Evid. 401.  Likewise, the dispute between the Fund and its prime broker regarding whether the broker's conduct was in violation of FINRA standards or in breach of an agreement entered into with the Fund in 2019 has no bearing on any material issues in this case.  *Id.*  Therefore, the evidence should be precluded.

Moreover, even assuming this evidence has some relevance (and it does not) it should be excluded pursuant to Fed. R. Evid. 403.  Rule 403 permits courts to exclude probative evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "The district court has considerable discretion in conducting this weighing process ... and its ruling will only be overturned if it 'did not fall within

the ambit of reasonable debate.'" *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir. 1991) (internal citations and quotations omitted).

Here, in addition to its temporal irrelevance, this evidence has a substantial risk to be unfairly prejudicial, confuse the issues, and waste time.  It could be unfairly prejudicial to Defendants if jurors were to consider the acts of the broker or related prospective impairments to the Fund multiple years after the relevant events.  It will also be a waste of time and confuse the jurors, who will be tasked with determining whether Defendants committed securities fraud *in 2014*, if they are forced to consider evidence of Defendants' relationship with a broker-dealer with whom he had no relationship until 2019.  Further, any accurate presentation of this evidence would require an explanation of (i) the background of the broker-dealer relationship, (ii) the FINRA standards at issue, (iii) the contractual terms between the Fund and the broker, and (iv) the impact of the COVID-19 pandemic to the market in March 2020 which led to the broker's conduct that the Amvona Fund is challenging in a separate dispute.  This evidence should be excluded.

## II.     Evidence of Defendants Purportedly Seeking to Purchase a Home and Purported Deficit

Likewise, in its opposition to summary judgment, the Commission, in an effort to gin up some evidence that Defendants acted with scienter and devised a scheme to cause Ligand's stock prices to fall, set forth two specious theories of Defendants' purported "motive."  ECF No. 131 at 25-26.  The first consists of  an email chain from December 2013 through May 2014 where Fr. Lemelson inquired with a real estate professional about a home.  ECF No. 133-33.  The second was based on Fr. Lemelson's testimony that, at some unspecified point in time the Fund utilized margin up to $20 million and an email exchange reflecting that the Fund had "hundreds of

thousands of dollars in house calls and a 'federal call' (a legally mandated margin call)…" ECF No. 141 at ¶¶ 194, 195; ECF No. 133-36.

The real estate inquiry amounts to nothing more than rank speculation by the Commission. It is not relevant to any of the claims, especially where Fr. Lemelson never expressed any serious interest in purchasing the subject property, let alone made any offers. Further, the Commission did not seek discovery regarding Fr. Lemelson's personal financial condition, including the value of the home in which Fr. Lemelson was living at the time and his family wealth. If the Commission seeks to pursue this unsupported theory, it is going to open up a mini-trial on Fr. Lemelson's personal finances and the value of his real estate in 2014 that will waste time, confuse the jury, and potentially be unfairly prejudicial to Defendants. It should be excluded under Fed. R. Evid. 401 and 403. *See Martínez v. Cui*, 608 F.3d 54, 61 (1st Cir. 2010) (excluding testimony that would require a "minitrial"); *United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000) (excluding evidence in part because it would lead to a "mini-trial" with "the potential for confusion of the issues and for unfair prejudice").

The issue regarding the Fund utilizing margin and any purported deficit also reflects pure speculation by the Commission, especially where it is untethered to any evidence of the general financial condition of the Fund. In addition, while there was an immaterial deficit on June 3, 2014 (based on a changing overnight requirement and representing ***a fraction of a percent*** of the Fund assets), the larger house and federal deficit that was the focus of the Commission's arguments on summary judgment occurred *after* Defendants published their reports, and at any rate also represented a fraction of one percent of the funds gross assets at the time. Thus, the

timing,[1] and actual value of the purported deficit are inconsistent with any purported motive to devise a scheme in advance to artificially drive down Ligand's stock price.

Like the real estate inquiry, if the Commission is permitted to admit evidence on these issues it will open the door to a mini-trial on the capitalization of the Amvona Fund that will be a waste of time for the jury. Moreover, there is significant potential for confusion on this issue, as the Commission's (unsupportable) theory relies on a number of technical concepts like "trading on margin," "house calls," and "federal calls" for which the Commission has not designated any expert to testify. Because of the potential for confusion and the time it will take to address these purely speculative theories of motive, they should be excluded under Fed. R. Evid. 401 and 403. *See Torres-Arroyo v. Rullan*, 436 F.3d 1, 8 (1st Cir. 2006) ("District courts have the right— indeed, the obligation—to guard against juror confusion"); *United States v. Camuti*, 78 F.3d 738, 742 (1st Cir. 1996) (affirming district court's exclusion of evidence of conduct, offered as relevant to motive, because the timing of the conduct occurred after the alleged fraud occurred and thus the evidence was closer to "speculation" than proof of anything relevant).

## III.  Wall Street Journal Article and Corresponding Video

On October 28, 2015, more than one year after the challenged conduct at issue in this case, the *Wall Street Journal* published an article and corresponding video of Fr. Lemelson. The article and video ostensibly discuss Fr. Lemelson's fund and his work as a priest. The author of the article added a number of offensive comments including taking liberties of comparing the Bible to *The Intelligent Investor* by Benjamin Graham and inaccurately presenting alleged quotes from Fr. Lemelson. The article also described an interaction between Fr. Lemelson and former

---

[1] The timing does line up with why Defendants sold a small fraction of his Ligand short position on June 19, 2014. To the extent the Commission seeks to argue that Defendants' covering of a small portion of the short position in Ligand on that day was evidence of intent, Defendants reserve the right to explain that the positions were covered to meet this obligation and was easily accomplished.

President Trump.  Given that the article was published over a year after any of the challenged statements and has nothing to do with Fr. Lemelson's position in Ligand, it does not have any tendency to make a fact more or less probable at trial and should be excluded pursuant to Rule 401.  Balancing this lack of relevancy with the potential for unfair prejudice and waste of time that would result if presented to require Fr. Lemelson to address the perceived inaccuracies in the article, Defendants requests that the Court exclude this evidence pursuant to Rule 403.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court exclude evidence regarding (1) any irrelevant data concerning the Fund at periods of time over six years after the alleged statements were made and the Fund's FINRA Arbitration dispute with its broker; (2) evidence of Fr. Lemelson making certain inquiries about real estate and any purported house/federal deficit for the Fund; and (3) the October 28, 2015 *Wall Street Journal* article and corresponding video.

Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated:  October 6, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 6, 2021.

*/s/ Douglas S. Brooks*
Douglas S. Brooks
