# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff )<br><br>v. )<br><br>GREGORY LEMELSON and LEMELSON CAPITAL )<br>MANAGEMENT, LLC, )<br><br>Defendants, )<br><br>and )<br><br>THE AMVONA FUND, LP, )<br><br>Relief Defendant ) | Civil Action No. 1:18-cv-11926-PBS |

---

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM UNDISLOSED WITNESSES AND OTHER CATEGORIES OF IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP respectfully request that this Court rule that Plaintiff, Securities and Exchange Commission (the "Commission") be precluded from offering the testimony of Robert Fields and Joseph Frohna at trial, as well as other categories of irrelevant and unfairly prejudicial evidence.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that, as part of a party's initial disclosure, the "party must ... provide to the other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).  As part of its

pretrial disclosures, a party must also provide to the other parties "the name and,

if not previously provided, the address and telephone number of each witness" that the party

expects to present or may call if the need arises.  Fed. R. Civ. P. 26(a)(3)(A)(i).  A party must

supplement any Rule 26(a) disclosure "in a timely manner if the party learns that in some

material respect the disclosure or response is incomplete or incorrect, and if the additional or

corrective information has not otherwise been made known to the other parties during

the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Federal Rule of Civil

Procedure 37 authorizes sanctions for violations of these disclosure requirements.

Specifically, Rule 37(c) states that "[i]f a party fails to provide information or identify

a witness as required by Rule 26(a) or (e), the party is not allowed to use that information

or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

District courts have discretion to determine whether preclusion of a witness is the

appropriate sanction.  *Santiago-Díaz v. Laboratorio Clínico Y De Referencia Del Este And Sara

López, M.D.*, 456 F.3d 272, 275 (1st Cir. 2006).  The First Circuit has identified the following

factors as relevant for determining the proper sanction: "(1) the history of the litigation; (2) the

sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or

lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the

late disclosure's adverse effects—e.g., the surprise and prejudice associated with the

late disclosure; and (5) the late disclosure's impact on the district court's docket."  *Esposito v.

Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009).  Here, all five factors weigh in favor of

precluding the Robert Fields and Joseph Frohna[1] (the "Ligand Investor Witnesses") from

testifying.

## THE FACTORS FOR PRECLUSION WEIGH IN FAVOR OF PRECLUSION OF THE LIGAND INVESTOR WITNESSES

### 1.       The History of the Litigation

The history of the litigation clearly weighs in favor of preclusion.  On September 16,

2021, the parties exchanged preliminary witness lists.  At the time, the trial was scheduled to

begin on October 12, 2021.  The Court granted an extension of the trial date of two weeks,

because, *inter alia*, counsel for Defendants was in the middle of a two-week arbitration.  The

Commission's preliminary witness list included the Ligand Investor Witnesses.  These

individuals were not listed in the Commission's initial disclosures, first amended initial

disclosures, second amended initial disclosures, nor mentioned in any of their discovery

responses.  According to the Commission's summary of evidence exchanged between the parties

on September 29, 2021, the Commission intends to offer these witnesses "to testify about their

respective funds' positions in Ligand in 2014, when and how they each became aware of

Defendants' public statements about Ligand in 2014, their reaction to those statements (including

whether they considered the subject matters of the statements as having the potential to

significantly alter [*sic*] total mix of information available to Ligand investors), and

communications with Ligand personnel and others about Defendants' statements."

The Commission did not identify the Ligand Investor Witnesses in any of its initial

disclosures.  In addition, *the Commission objected to discovery requests seeking precisely the*

*type of information the Commission now intends to present at trial.*  For example, in the first set

---

[1] The Commission originally listed Joseph Eberhardy as well, but subsequently communicated that it does not plan on calling him as a witness.

of interrogatories to the Commission, Defendants requested the Commission to "[i]dentify all fact witnesses You intend to call as witnesses at trial in the Action and provide a summary of the anticipated testimony of each such fact witness."  Plaintiff responded to that Interrogatory by objecting because, *inter alia*, it was "seeking information that is redundant in light of the Initial Disclosures already made."

Further, in their summary judgment filing, Defendants noted that the Commission lacked evidence of investors raising concerns about certain alleged misstatements.  *See, e.g.* ECF No. 141 at ¶¶ 47, 53.  The Commission disputed these statements of fact based on deposition testimony of certain Ligand employees about what other investors allegedly said and even affirmatively asserted that "[n]umerous investors contacted Ligand and its investors relations firm to express concern over Lemelson's allegations …."  *Id.* at ¶ 146.  Defendants replied that the evidence that the Commission relied on to assert this alleged investor contact was inadmissible hearsay "about what other investors, many of whom are unidentified and not listed as potential witnesses for the Commission."  *Id.* (citing *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 29 (1st Cir. 2007) ("'[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment'") (quoting *Dávila v. Corporación De Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 17 (1st Cir.2007)); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment")).  Similarly, in its opposition to summary judgment, the Commission included the following statement of fact, "Numerous investors contacted Ligand and its investor relations firm to express concern over Lemelson's allegations and seek assurance that his statements were not true."  ECF No. 127 at ¶ 46.  Again, Defendants disputed the Commission's reliance on the cited

deposition testimony and emails discussing what investors allegedly said about Defendants' reports, noting that it was inadmissible hearsay.  *Id.*

Thus, Defendants—in their **November 13, 2020** filing—raised the issue that the Commission had not produced any admissible evidence of investors reacting to Defendants' reports (which notably were published more than seven years ago) and had not disclosed as witnesses any investors that would testify to their own reactions.  **The Commission unjustifiably waited *nearly a year* to attempt to address this shortcoming on the eve at trial and in a manner that precludes Defendants from seeking relevant discovery with trial imminent**.  *See Harriman v. Hancock County*, 627 F.3d 22, 30-31 (1st Cir. 2010) (affirming exclusion of witness affidavits in opposition where party had no reason for delay in identifying witnesses after discovery had closed and after summary judgment motion filed, and commenting that such prejudice was more significant "if trial were looming"); *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 59-60 (1st Cir. 2001) (holding disregarding expert witness affidavit justified where it was submitted after the close of discovery and fewer than three weeks before the scheduled final pretrial conference and describing it as "nothing short of a sneak attack"); *Prouty v. Thippanna*, 4:17-40126-TSH, 2021 WL 2144853, at *4 (D. Mass. May 26, 2021) (finding failure to supplement expert report for more than one year warrants precluding testimony at trial).

During the meet and confer process, the Commission claimed that Defendants were on notice pursuant to Fed. R. Civ. P. 26(e), because there were a handful of documents that referenced these individuals.  Upon searching the database—which hosts over 100,000 documents and 1.2 million pages of discovery produced in this case—for emails to and from Robert Fields and Joseph Frohna, Defendants found 18 total documents (less than .018%).  None

of those documents were sent to or from Mr. Frohna.  The statistically insignificant number of documents involving Mr. Fields within the Commission's massive document production is plainly inadequate to support the Commission's position that its production somehow provided Defendants with notice that Mr. Fields would be testifying at trial.  *See Osburn v. Hagel*, No. 2:12CV349-MHT, 2014 WL 4635447, at *3 (M.D. Ala. Sept. 15, 2014) (rejecting argument that party was on notice of potential witness that was not listed in initial disclosures because of production of email correspondence with that individual).  If that were the standard, then the Commission would have hundreds of potential witnesses in this case that it could call at trial without disclosing.  *See Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings*, No. 09-CV-1426 (JRT/SRN), 2010 WL 11646584, at *2 (D. Minn. Aug. 16, 2010) (excluding witness testimony because "[w]hile Defendant produced some documents and emails that included or mentioned [the witness], hundreds of individuals are named or referenced in the voluminous discovery produced by Defendant in this case").

### 2.    The Remaining Four Factors Also Weigh Heavily in Support of Preclusion

The remaining factors applied by the First Circuit also support preclusion.  The second factor is "the sanctioned party's need for the precluded evidence."  *Esposito*, 590 F.3d at 78.  As the Commission has repeatedly argued, materiality is determined solely on a "reasonable investor" standard, *e.g.* ECF No. 131 at 5-6, and, therefore, by their own arguments the Commission does not need the testimony of specific investors and their personal reactions to the Defendants' statements.

The third factor is "the sanctioned party's justification (or lack of one) for its late disclosure."  *Esposito*, 590 F.3d at 78.  As noted above, the Commission failed to list these investors in its initial disclosures and objected to discovery on topics directly related to the

proffered topic of the Ligand Investor Witnesses' testimony.  Further, nearly a year ago, Defendants explicitly raised the lack of any such witnesses and the inadmissible hearsay nature of the Commission's purported evidence of investors' reaction to Defendants' statements. Nevertheless, the Commission decided to wait until the eve of trial to name these witnesses. There was no justification for this tactical delay.  *Cook, Stratton &Co., Inc. v. Universal Ins. Group, Inc.*, 05-2173-PG, 2010 WL 1508469, at *3 (D.P.R. Apr. 13, 2010) (precluding witnesses from testifying where plaintiff "offered no reason for failing to disclose … while discovery was still open").

Further, the Commission seeks to offer testimony of the Ligand Investor Witnesses about alleged events from **seven years ago**.  This is nothing new, and if the Commission intended to present such information at trial, it was obligated to disclose so earlier.

The final two factors are "the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure" and "the late disclosure's impact on the district court's docket."  *Esposito,* 590 F.3d at 78.  Here, Defendants will be deprived of the ability to take proper discovery (both seeking documents and depositions) of the Ligand Investor Witnesses.  *Lohnes*, 272 F.3d at 60 (reasoning "prejudice is apparent" when failure to disclose witness until after party moved for summary judgment deprived moving party of opportunity to depose the witness, solicit expert opinions of its own in response, or conduct discovery); *Roger Edwards, LLC v. Fiddes & Son, Ltd.*, 216 F.R.D. 18, 20 (D. Me. 2003) (precluding witness from testifying where offering party disclosed witness for first time in pretrial memorandum two months before trial was scheduled to begin).  "This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate." *Lohnes*, 272 F.3d at 60.  The only way to resolve that would be to delay the trial to permit these

processes to take place and delay the trial, which will negatively impact the district court's docket.

## <u>CONCLUSION</u>

In sum, the Commission failed to disclose any Ligand Investor Witnesses and objected to multiple discovery requests seeking such information, which deprived Defendants of the opportunity to seek proper discovery of any potential witnesses.  Subsequently, Defendants explicitly raised the absence of admissible evidence of Ligand investors' reactions to Defendants' alleged statements, as well as the lack of notice of any potential investors in the parties' summary judgment filings that were filed nearly a year ago.  The Commission is plainly seeking to supplement its case with a "*sneak attack*" after avoiding discovery on this issue.  The Court should reject this effort and preclude the testimony of the Ligand Investor Witnesses.

Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated:  October 6, 2021

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 6, 2021.

*/s/ Douglas S. Brooks*
Douglas S. Brooks
