UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff <br><br> v. <br><br> GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC, <br><br> Defendants, <br><br> and <br><br> THE AMVONA FUND, LP, <br><br> Relief Defendant | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM PRESENTING EXPERT TESTIMONY THROUGH LAY WITNESSES**

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP respectfully request that this Court rule that Plaintiff, Securities and Exchange Commission (the "Commission") be precluded from attempting to introduce evidence and opinions through lay witnesses that require expert testimony.

**FACTUAL BACKGROUND**

The Commission has elected not to properly designate and present any affirmative expert or expert report in this case on any issue.[1] The Commission's decision in this regard stands in

---

[1] The Commission served a rebuttal expert report in response to an expert report served by Defendants. However, Defendants do not intend to present any affirmative expert at trial and, thus, the Commission's rebuttal expert is not admissible. *See Maraj v. Massachusetts*, 953 F. Supp. 2d 325, 328 (D. Mass. 2013) (granting summary judgment and holding plaintiff cannot rely on rebuttal expert to prove an essential element of its claim); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("[R]ebuttal evidence may be used to challenge the

stark contrast to its previous representations throughout the course of this case that it would present expert evidence on certain points. For example, at the motion to dismiss hearing, the Court addressed the issue underlying the Commission's fourth challenged statement involving Defendants' calculation of Ligand's debt-to-tangible equity ratio and whether the proceeds from a loan should have been included as equity in that calculation. The Court engaged in the following exchange with counsel for the Commission:

> THE COURT: Are you an accountant?
>
> MR. DAY: I am not an accountant, your Honor. I have a fair amount of exposure to accounting through my work, but I'm not an accountant.
>
> THE COURT: My first year in law school I -- the second year, I think, took a pass/fail accounting class, and that was about the extent of it. But **usually I have experts and some explanation of it** and I can pick it up, so go ahead.

ECF No. 142-3 at 27:23-28:19 (emphasis added).

Later in that same hearing, the Court addressed the issue of insolvency as raised in Defendants' reports regarding Ligand.

> THE COURT: So there's a different way under the accounting rules to describe this that doesn't make someone feel as if they're on the brink of insolvency.
>
> MR. DAY: Exactly, exactly.
>
> THE COURT: Although it does still put them at risk, right, the difference, what did you say, $240 million in a bond offering, and they only have $168 million left?
>
> MR. DAY: Yes, your Honor, **but I think that's a question that would have to be answered by experts** and with reference to testimony in this case.

---

evidence or theory of an opponent—and not to establish a case-in-chief"); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief").

ECF NO. 142-3 at 31:8-17 (emphasis added).

In addition, Defendants sought discovery on the Commission's theory that Defendants' statements caused Ligand's stock price to drop. *See* ECF No. 127-42 at 2. For example, Defendants served an interrogatory seeking the basis for the Commission's contention that Defendants' statements influenced or otherwise impacted the stock price for Ligand. *Id*. The Commission objected to the interrogatory as "a premature request for matter that may be the subject of expert testimony." ECF No. 127-44 at 2-3. The Commission made the same objection to Defendants' request for documents supporting the Commission's position that he caused Ligand's stock price to drop. ECF No. 127-45 at 2-3.

Based upon the Commission's Proposed Witness List and its Summary Judgment filings, it appears that the Commission may well attempt to present certain evidence through lay witnesses that is only properly within the scope of expert testimony, including but not limited to the insolvency and mathematical calculations discussed above. Specific additional examples include: (i) typical practices of the pharmaceutical industry; (ii) the assertion that debt-to-tangible equity is not a GAAP metric and not a metric that can be used to assess the risk for insolvency; (iii) whether cash proceeds of a loan should be included in the calculation of equity, tangible or otherwise; (iv) whether shareholder equity is protection from debt; (v) whether intellectual property is the most significant asset of a pharmaceutical company; (vi) the physiological effects of Promacta and the utility of Promacta for addressing conditions unrelated to hepatitis C; (vii) the customary and typical practices in the pharmaceutical industry of using third parties to conduct clinical trials; and (viii) the attribution of changes in stock prices to statements made by Defendants, as opposed to other factors (including other negative reports about Ligand, and commentary by federal reserve officials regarding the valuation of publicly-

traded pharmaceutical companies) concerning Ligand during the period from which the Commission hopes to cherry-pick. This swap of lay persons for experts is impermissible and should not be allowed.

## **ARGUMENT**

A witness not testifying as an expert is precluded from testifying in the form of an opinion that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701; *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F. Supp. 2d 155, 157 (D. Mass. 2005) (barring lay opinion testimony that was based on scientific, technical, or other specialized knowledge of telecommunications that required expert evidence pursuant to Fed. R. Evid. 702).

The anticipated testimony related to the topics listed above clearly falls within the scope of scientific, technical, or other specialized knowledge of Rule 702. Indeed, as detailed above, the Commission represented to this Court that in order to aid the Court's and the jury's understanding, it would *need* to present expert testimony as to whether cash proceeds of a loan should be included in the calculation of tangible equity and whether the debt-to-tangible equity ratio was a useful metric to assess the prospect of insolvency. *See* ECF No. 142-3 at 27:23-28:19, 31:8-17. The Commission failed to produce such expert evidence and should not be permitted to remedy its failure by using lay witnesses to address such expert topics at trial. Notably, other courts, including bankruptcy courts, routinely rely on experts to opine on the technical issue of whether a company was insolvent at a particular time. *See In re Industrial Commercial Elec., Inc.*, No. 02–45451–JBR, 02–4591–JBR, 2004 WL 1354530, at *7 (D. Mass. Apr. 27, 2004) (admitting expert testimony in bankruptcy case to opine on the issue of insolvency and noting that this expert had opined on the same issue in other bankruptcy courts in

the First Circuit); *Connolly Geaney Ablitt & Willard, PC*, 614 B.R. 133, 141 n.7 (1st Cir. 2020) (noting expert reports of debtor's insolvency at time certain transfers were made); *Branch v. Ernst & Young U.S.*, 311 F. Supp. 2d 179, 183-84 (D. Mass. 2004) (noting how competing experts disagreed on opinion of insolvency and denying summary judgment on that issue accordingly).

Here, the Commission's position that Ligand, a large pharmaceutical company, was *not* at risk of insolvency when excluding consideration of the company's intangible assets (as Defendants expressly did) certainly *requires* scientific, technical, or other specialized knowledge. Accordingly, any testimony opining as to whether Ligand was at risk for insolvency and whether the metric of debt-to-tangible equity was an effective metric to determine that risk should be excluded.

Likewise, whether (i) Defendants' use of Ligand's debt-to-tangible equity ratio was proper under General Generally Accepted Accounting Principles ("GAAP"), (ii) Defendants had any requirement to follow GAAP-approved metrics in his reports, (iii) as baldly stated by the Commission, intellectual property is the most important asset of a pharmaceutical company, and (iv) accounting principles dictate that cash proceeds from a loan be included in the calculation of debt to tangible equity ratios are also matters of expert testimony. *See Pegasus Management Co., Inc. v. Lyssa, Inc.*, 995 F. Supp. 29, 41-43 (D. Mass. 1998) (discussing expert reports regarding GAAP accounting principles and compliance therewith). Therefore, opinions regarding those topics should not be offered through the Commission's proffered lay witnesses here.

With regard to the challenged statement concerning Viking's use of third parties to conduct preclinical studies and trials, the Commission's summary judgment filings indicated that

it plans to present testimony that the hiring of third parties is typical industry practice. ECF No. 141 at 30. The typical practices of an industry, however, are matters that require expert testimony. *See Pelletier v. Main Street Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006) ("the customs and practices of an industry are proper subjects for expert testimony") (citing *Levin v. Dalva Bros.,* 459 F.3d 68, 79 (1st Cir. 2006)). Such opinions should not be admitted through lay witnesses in this case.

Also, in its summary judgment filing (and therefore likely at trial), the Commission pointed to testimony from lay witnesses about the physiological effects of Promacta and opinions that even if an alternative treatment for Hepatitis C replaced Promacta, Promacta would still be marketable for treating ITP. ECF No. 141 at ¶ 153. The physiological effects of Promacta is a matter for expert testimony. *See In re Neurontin Marketing, Sales Practices, and Products Liability Litig.*, 612 F. Supp. 2d 116, 141-42 (D. Mass. 2009) (discussing defendant's expert opinion of physiologic properties of drugs and how it differed with the opinion of the FDA's "blue-ribbon experts" on the issue).

Further, to the extent that the cited testimony relies on "ITP", as opposed to Hepatitis C, as a driver of Promacta sales, such testimony ignores the fact that Hepatitis therapies are the cause of ITP and there is no expert testimony as to the prevalence of ITP cases independent of Hepatitis treatments or how that would impact sales of Promacta. *See* Mayo Clinic, "Immune thrombocytopenia (ITP)" (Apr. 30, 2019) -*https://www.mayoclinic.org/diseases-conditions/idiopathic-thrombocytopenic-purpura/symptoms-causes/syc20352325#:~:text=Immune%20thrombocytopenia%20usually%20happens%20when,bacteria%20that%20causes%20stomach%20ulcers*. This proposed testimony is clearly outside of the province of lay witnesses.

Moreover, this evidence is not relevant to the claims and defenses in the case and will only result in needlessly (and significantly) increasing the length of this trial. The relevant issues relating to Promacta are solely whether Defendants lied when making the statement that Mr. Voss "basically agreed" Promacta was going away and whether that statement, in context, was material. Opening the door into details about the history and development of Promacta, its physiological properties, its indications for use, the market for the various indications for use, and its pricing will be a lengthy and complicated side show that is not germane to this challenged statement.

Finally, any attribution of a change in stock price to Defendants' statements are impermissible opinions. It is beyond dispute that attributing the cause of changes in stock prices to a specific event is a highly complex issue that is within the scope of Rule 702. The Commission routinely retains experts to conduct event studies to try to prove that a certain event caused a change in stock price. *See, e.g., SEC v. Aly*, No. 16 Civ 3853, 2018 WL 1581986, at *15-16 (S.D.N.Y March 27, 2018) (SEC permitted to present evidence of expert's event study to prove materiality); *SEC v. Mangan*, 598 F. Supp. 2d 731, 735 (W.D.N.C. 2008) (SEC sought to avoid summary judgment by submitting expert event window analysis that concluded movement in stock price showed materiality); *SEC v. Goldstone*, CIV 12-0257 JB/LFG, 2016 WL 3135651, at *48 (D.N.M. May 10, 2016) (SEC successfully argued for its expert's event study to be admitted to prove materiality); *SEC v. Ustian,* No. 16 C 3885, 2019 WL 7486835, at *26 (N.D. Ill. Dec. 13, 2019) (SEC successfully argued for the admission of its expert's event study to prove materiality); *SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *11-14 (N.D. Cal. July 29, 2010) (addressing SEC's argument in favor of admitting its expert's event study to prove materiality). The Commission has failed to present such expert testimony here. It cannot use lay

opinion testimony to offer opinions that Defendants' statements were the cause of any changes in stock prices.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court order that the Commission not be allowed to offer lay opinion testimony on topics within the scope of technical knowledge under Rule 702, including (i) typical practices of the pharmaceutical industry; (ii) that debt-to-tangible equity is not a GAAP metric and not a metric that can be used to assess the risk for insolvency; (iii) whether cash proceeds of a loan should be included in the calculation of tangible equity; (iv) whether shareholder equity is protection from debt; (v) whether intellectual property is the most significant asset of a pharmaceutical company; (vi) the physiological effects of Promacta and the utility of Promacta for addressing conditions unrelated to hepatitis C; (vii) the customary and typical practices in the pharmaceutical industry of using third parties to conduct clinical trials; and (viii) the attribution of changes in stock prices to statements by Defendants.

        Respectfully Submitted,

        REV. FR. EMMANUEL LEMELSON,
        LEMELSON CAPITAL MANAGEMENT,
        LLC, and THE AMVONA FUND, LP

        By: */s/ Douglas S. Brooks*
        Douglas S. Brooks (BBO No. 636697)
        Brian J. Sullivan (BBO No. 676186)
        Thomas M. Hoopes (BBO No. 239340)
        LIBBY HOOPES BROOKS, P.C.
        399 Boylston Street
        Boston, MA 02116
        Tel.: (617)-338-9300
        dbrooks@lhblaw.com
        bsullivan@lhblaw.com
        thoopes@lhblaw.com

Dated: October 6, 2021

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 6, 2021.

        */s/ Douglas S. Brooks*
        Douglas S. Brooks