UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant | Civil Action No. 1:18-cv-11926-PBS |

### DEFENDANTS' MOTION IN LIMINE TO RESTRICT EVIDENCE CONCERNING PLAINTIFF'S "SCHEME LIABILITY" THEORY

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP respectfully request that this Court limit Plaintiff's evidence in support of their purported "scheme liability" to the four alleged misstatements Plaintiff identified to the Court prior to trial.

### FACTUAL BACKGROUND

In its Opposition to Defendants' motion to dismiss, the Commission clarified that it was only claiming that Defendants made four alleged misstatements, which served as the basis for the Commission's Rule 10b-5 claim. ECF No. 16 at 2-3 ("The Commission alleges that Defendants made **four specific material misrepresentations** in the course of their campaign to drive down Ligand's share price and profit from their short position.") (emphasis added). However, the

Commission has repeatedly claimed, without clarification, that it is also pursuing a purported "scheme liability" theory.

The Court specifically questioned the Commission about this during the hearing on Defendants' motion to dismiss.

> THE COURT: But you are saying, even if I agree with [defense counsel] on all of these [four alleged misstatements], you still have a case?
>
> MR. DAY: Not necessarily, your Honor. I think, ***if all of the misstatements went away, there's not a lot of other conduct that we've alleged in the complaint,*** but I just want to be clear that there are multiple theories in this case.

ECF No. 127-41 at 25:2-8 (emphasis added).

Since that time, the Commission has offered only a minor, and legally infirm, clarification of the allegations supporting the purported "scheme." It claimed for the first time, in its response to Defendants' statement of material facts in support of his motion for summary judgment, that other evidence of the purported scheme included that "Defendants took affirmative steps to suppress commentary highlighting his bias against Ligand and [his] lack of familiarity with the pharmaceutical industry." ECF No. 132 at ¶ 121. On the eve of trial, the Commission has offered no other explanation or detail of what conduct constitutes part of the alleged "scheme," notwithstanding the years that have passed in litigation and the multiple opportunities the Commission has had to provide clarity on question first posed by the Court.

## ARGUMENT

For reasons of fundamental fairness, an initial pleading requires that the defendant be provided with "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). Likewise, a plaintiff cannot raise new allegations to support a claim at trial. *See Amsden v. Moran*, 904 F.2d

748, 753 (1st Cir. 1990) ("The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them") (citing *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976)).  Here, the Commission has not clarified its purported scheme liability theory, beyond alleging that other reports published were part of the "scheme" and that Defendants sought to remove certain comments about his articles from the SeekingAlpha website where the articles had been posted.

      Historically, the SEC was required to allege conduct beyond mere misstatements to state a claim for scheme liability.  See *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (stating scheme liability under Rule 10(b)-5 "hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement"); *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1235 (D.N.M. 2013) (SEC agreed with the Defendants that a claim for scheme liability requires "allegations that defendant's actions were deceptive independent of any fraudulent statement made to the investing public").  The Supreme Court effectively abrogated that law in its decision in *Lorenzo v. SEC*, 139 S.Ct. 1094 (2019).  The *Lorenzo* Court reasoned that an individual who disseminated false statements with intent to defraud could still be liable for scheme liability under Rule 10b-5, despite not being the individual that "made" the statements.  *Id.* at 1100-03.

      However, the holding in *Lorenzo* and subsequent cases on scheme liability have all been premised on some sort of *wrongful conduct*—in addition to allegedly false statements—to perpetuate the alleged scheme.  The Commission is unable to point to any caselaw—because none exists—to support its contention that *legal* conduct (such as publishing financial analysis in which no misstatements have been alleged and requesting a website administrator to remove

certain comments posted on its website in accordance with the third-party website's policies) can somehow give rise to scheme liability.

The only case the Commission cited in its opposition to summary judgment discussing its scheme liability claim is *SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019). ECF No. 131 at 4. That case bears no resemblance to the present one. In *Fiore*, the Commission alleged that in addition to making fraudulent statements, the defendant (i) manipulated the subject company's stock price by engaging in a practice called "scalping" by secretly paying promoters to promote the stock; (ii) made targeted purchases of the stock to artificially increase the market activity and price of the stock; (iii) executed "matched and wash" trades by buying the same amount of stock at exactly the same price with no change in beneficial ownership; and (iv) "marked the close" by executing trades at or near the close of the market to raise the closing price of the stock and create the false appearance that it was the result of legitimate market demand. *See Fiore*, 416 F. Supp. 3d at 314-16. No analogous wrongful conduct occurred here.

If the Commission is allowed to pursue this novel theory, it will constitute a seismic shift in the field of securities analysis. It is permissible for financial analysts to publish the analysis supporting their investment decisions, as long as the analysis is not knowingly false. Indeed, as pointed out in Defendants' opposition to the Commission's motion for partial summary judgment, there have been a number of financial reports published critical of Ligand. *See* ECF No. 134 at 17. The Commission's purported scheme theory in this case would make publication of all reports with the intent that the analysis is correct and reflected in the market, illegal. That should be rejected, because the only alleged conduct in furtherance of the purported scheme (dissemination of other reports; and requesting SeekingAlpha to remove comments, in accordance with the third-party site's policies, from its website) was *legal*. Therefore,

4

Defendants request that the Commission's scheme liability claim be properly limited to the four challenged statements.

At a minimum, the Commission should be limited to arguing that the alleged scheme involved the only other conduct that the Commission has identified as part of the alleged scheme to date: (1) dissemination of other reports; and (2) requesting SeekingAlpha to remove comments from its website. It would be inherently unfair if the Commission were allowed to present *new* allegations at trial, such as claiming any of the myriad of non-challenged statements in the reports are false, under the umbrella of its alleged scheme liability claim without notice to Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court rule that the Commission be precluded from asserting their purported "scheme liability" claim. Or, at a minimum, that the Commission be limited at trial to presenting and arguing its purported scheme liability theory based on the only facts previously disclosed as part of the purported scheme—distribution of other reports and requesting removal of posts from the SeekingAlpha website.

                                                Respectfully Submitted,

                                                REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated: October 6, 2021

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 6, 2021.

                                                */s/ Douglas S. Brooks*
                                                Douglas S. Brooks