UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**PLAINTIFF'S MOTION IN LIMINE TO
EXCLUDE IRRELEVANT EVIDENCE AND ARGUMENT**

Plaintiff Securities and Exchange Commission submits this motion *in limine*, to exclude irrelevant evidence and argument on the topics set forth below. Under Fed. R. Evid. 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence *and* the fact has to be "of consequence in determining the action." Defendants seek to introduce evidence of facts that are not of consequence here, in violation of Rule 402 (irrelevant evidence inadmissible). And even if this evidence were relevant, it should be excluded as causing a substantial risk of "confusing the issues, misleading the jury, [and] wasting time,' all of which are prohibited by Rule 403.

## BACKGROUND

The central issues here are whether Defendants: (1) engaged in a fraudulent scheme to drive down the price of Ligand Pharmaceuticals stock, (2) made one or more specified material

misrepresentations or fraudulent omissions about Ligand Pharmaceuticals and Viking Therapeutics, and (3) misled investors and prospective investors in The Amvona Fund by failing to disclose Defendants' fraudulent conduct. Defendants nevertheless propose to offer evidence on a number of topics that have one thing in common—they are not relevant to the merits of the Commission's claims or any current defense and so fail the basic test for admissibility.

## I.   EVIDENCE ABOUT DEFENDANTS' ASSORTED CRITICISMS OF LIGAND SHOULD BE EXCLUDED

Defendant Lemelson wrote and said many things critical of Ligand during and after his fraudulent campaign to disparage the company. He has accused the company of being a fraud and of overpricing its drugs, he has expressed skepticism of its business model, he has trashed its executives and questioned their compensation, and on and on. His disparaging remarks continued well after the conduct here. This trial, however, is not a vehicle for Lemelson to try to prove his accusations correct or to litigate the long-term merit of his investment thesis or opinions about Ligand.

***Executive Compensation.*** Defendants have identified 70 exhibits that relate to Ligand executive compensation and stock sales from 2011 to 2020, the bulk of which are outside the period at issue (May through October 2014). How much Ligand executives were paid, how many stock options they had, and how much stock they sold—especially before May 2014 and after October 2014—have no bearing on the merits of the Commission's claims. Indeed, Defendant Lemelson's plan to focus the jury on what Ligand executives were paid or received or sold in stock (and with 70-80 exhibits on the topic, it seems to be a big part of his defense) is no more than his improper attempt to shame and impugn those witnesses. He appears to want to suggest to the jury that these executives are greedy or immoral and therefore deserving of his

2

campaign against the company.  Defendants have not (and cannot) explain how Ligand executive compensation is a defense in this case or how it is relevant to any fact at issue.  It isn't.

***Ligand Presentations to the Commission.***  Defendants have also proposed as exhibits Ligand presentations to the Commission in 2014 and 2015.  These after-the-fact documents reveal that Defendants once again intend to argue that there was some improper collusion between Ligand and the Commission, even though the Court rejected this "defense" on summary judgment.

Defendants have, in the past, suggested that Ligand's failure to raise certain of the charged misrepresentations in these presentations is somehow probative of the materiality of those statements.  They imply that if Ligand didn't mention these particular misrepresentations in its slide deck, the statements cannot be material.  This argument confuses what a reasonable investor would consider material and what Ligand's counsel sought to focus on in a meeting with Commission staff.  In other words, the focus by Ligand's counsel on some of Lemelson's statements is not probative of whether other statements were material.  On top of being irrelevant, this argument and the documents that go with it are unduly prejudicial because, among other things, they will confuse the issues properly before the jury.

***Drug Pricing, Martin Shkreli, etc.***  Defendant Lemelson has often leveled accusations that Ligand's drugs are overpriced (even though, as Defendants well know, Ligand has no role in drug pricing), that Ligand exploited "Orphan Drug" designations, and that Ligand CEO John Higgins knew Martin Shkreli, the disgraced and convicted former pharmaceutical company CEO.  All of these claims are solely designed to paint Ligand in a negative light.  None of them make it any more or less likely that Defendants engaged in a fraudulent scheme and made

fraudulent misrepresentations. These topics are irrelevant, unduly prejudicial because they play only to the jury's emotions, and, at base, are a waste of time.

**II.     UNFOUNDED ACCUSATIONS ABOUT WHY THE COMMISION SUED DEFENDANTS AND UNSUPPORTED ALLEGATIONS OF MISCONDUCT BY THE COMMISSION SHOULD BE EXCLUDED**

***Alleged Errors In the Complaint.*** Defendants seek to show that the Commission made errors in its Complaint and Amended Complaint. For instance, Defendants allege that the Commission made an error in its original complaint about Defendant Lemelson's misleading "debt-to-tangible equity ratio" which he used as a jumping off point to falsely claim that Ligand was insolvent. The Commission amended and the allegation was superseded. *InterGen N.V. v. Grina*, 344 F.3d 134, 144-45 (1st Cir. 2003) ("An amended complaint supersedes the original complaint[.]").

As another example, Defendants want to show the jury that an allegation in the Amended Complaint about Ligand's stock price was incorrect. The allegation was carried over from the original complaint and not updated in the Amended Complaint, as the Court had not granted leave to amend that language. There is no real evidentiary value to this point; Defendants merely wish to introduce it in an improper attempt to embarrass or discredit the Commission's counsel in front of the jury. Any alleged error in the Commission's original complaint does not affect the merits of the Commission's claims.

Relatedly, Defendant has marked the Commission's original and amended complaints as exhibits. This is irrelevant and improper. This case is not about the Commission's pleadings; it is about Defendants' 2014 misconduct. Some line-by-line comparison of the Commission's allegations to highlight alleged errors and inconsistencies has no probative value. It is a waste of time related to a meritless defense that is just a tactic to confuse the issues before jury.

*Alleged Leaks to the Press.* Defendants have proposed as an exhibit a March 2016 Bloomberg article that referenced the Commission's investigation of Defendants. Defendants contend—without a scintilla of evidence—that the Commission "leaked" information about its nonpublic investigation to Bloomberg nearly two years after the conduct here. There is no evidence that this happened. Nor is it relevant in any way. An alleged after-the-fact leak of information to the media in 2016 has no bearing on whether Defendant Lemelson committed a fraud in 2014.

*Communications between Ligand and Commission Staff.* Defendants have included on their exhibit list several emails between Ligand's counsel and Commission staff. Whether and how often Ligand's counsel had after-the-fact communications with Commission staff about Defendant Lemelson's conduct—publicly lying about the company to depress its stock price—again does not affect the questions properly before the jury. Moreover, this Court found on summary judgment that Defendants presented no evidence that Ligand acted improperly in reporting Defendants' conduct, or that the Commission was unduly influenced or otherwise acted improperly in bringing this case.

*Selective Enforcement.* Defendants want to divert attention from their misconduct by pointing the finger at the Commission. For example, Defendants intend to call Division of Enforcement Assistant Director David Becker as a witness. Mr. Becker was the Commission's 30(b)(6) witness on topics related to Defendants' baseless theories about how and why this case was brought. The Court permitted a Rule 30(b)(6) deposition of the Commission so Defendants could "learn the facts underlying their selective enforcement defense[.]" [ECF No. 5 at 7]. There were no such facts, and the Court accordingly granted summary judgment on Defendants'

selective enforcement defense. [ECF No. 146]. It is no longer part of the case, discovery about it has no relevance, and there is no basis to call Mr. Becker as a witness in this case.

In the end, none of the topics and documents outlined above have anything to do with whether Defendant Lemelson engaged in a scheme to manipulate the price of Ligand's stock and made material misrepresentations of fact to further that scheme. Defendants merely seek to re-litigate matters this Court has already found meritless and prejudice the jury with baseless accusations.

### III.   OTHER IRRELEVANT EVIDENCE THAT SHOULD BE EXCLUDED

Defendants propose several exhibits that have no bearing on the merits of the Commission's claims:

1.   ***"Whistleblower" Complaints.***  Defendants have proposed many other after-the-fact exhibits, including Defendant Lemelson's five "whistleblower" complaints filed with the Commission between 2016 and 2021. These "complaints" double-down on Defendant Lemelson's meritless claims that his false and misleading statements about Ligand were right. Lemelson's complaints, all of which post-date his becoming aware that he was under investigation, have nothing to do with the Commission's claims and Defendants' conduct in 2014. These reports have also been used in the past by Defendants to suggest some retaliation from the Commission against Lemelson for filing them. This argument and evidence should be precluded after the Court's rejection of Defendants' selective enforcement defense.

2.   ***Other Analyst Reports.***  Defendants have marked as exhibits three analyst reports by Cantor Fitzgerald and Empire Asset Management. In pretrial proceedings, Defendants asserted that these other analysts were also critical of Ligand and that, by extension, Defendants' criticism of Ligand must be true and accurate. Not so. Criticism of Ligand by others doesn't answer whether Defendants engaged in a fraudulent "short and distort" scheme and made

material misstatements of fact to advance that scheme.  Nor are these reports necessary to show other possible causes of a stock price decline, because the cause of that decline is not a fact that the jury needs to determine to assess liability here.

3. ***Federal Reserve Report.***  Defendants propose to introduce a 2014 report of the Federal Reserve, presumably to argue that statements in the report may have contributed to a decrease in Ligand's stock price.  Like the other short reports, this is irrelevant and plays into Defendants' argument that the Commission has to show that Defendants' statements caused a drop in Ligand's stock price—an argument that would graft an inapplicable element of investor reliance onto this case (the subject of a separate motion *in limine*).

4. ***Ligand's Counsel Monitoring Defendants' Public Statements about Ligand.*** Defendants have identified two exhibits that appear to relate to an attempt by Ligand's counsel to listen to a Lemelson Capital Management broadcast in 2021.  This is, again, a long after-the-fact accusation that has nothing at all to do with the merits of this case.  This, too, is merely a tactic to besmirch others and distract from Lemelson's conduct.

Dated: October 6, 2021                                  Respectfully submitted,

                                                  **SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

*/s/ Alfred Day*
Marc J. Jones (Mass. Bar #645910)
Alfred A. Day (Mass. Bar #654436)
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-4537 (Jones direct)
jonesmarc@sec.gov
daya@sec.gov

## **CERTIFICATE OF SERVICE**

I certify that on October 6, 2021, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                                          */s/ Marc Jones*