UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE
TO RESTRICT EVIDENCE CONCERNING SCHEME LIABILITY**

Plaintiff opposes Defendants' motion *in limine* to restrict evidence concerning Plaintiff's claim of scheme liability. The Commission has charged Defendants with engaging in a fraudulent "short-and-distort" scheme to drive down the price of Ligand's stock through a series of fraudulent acts, false statements, and material omissions designed to make their short position in Ligand pay off. [ECF No. 1 ¶ 57.] Defendants moved to dismiss all charges in the Complaint, and this Court denied that motion. Defendants then moved for summary judgment on all charges, and this Court again denied their motion.

Defendants now seek to re-litigate this Court's orders through this motion *in limine*. They cite no evidentiary basis to prevent the Commission from introducing evidence supporting this charge, arguing instead that the claim was not properly pleaded. This Court has twice found otherwise, and should reject this attempt to re-litigate that issue.

ARGUMENT

I.   **The Commission Has Alleged Specific Conduct Supporting Scheme Liability**

As Defendants acknowledge, the Supreme Court held in *Lorenzo* that scheme liability under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 does not require conduct beyond material misrepresentations.  *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).  Nevertheless, the Commission here has alleged conduct by Defendants beyond the four misrepresentations cited in the Complaint, and the Commission must be permitted to prove those allegations at trial.

In its Complaint, the Commission alleged that "[b]etween May and October of 2014, Lemelson devised and carried out a fraudulent scheme in which he purchased 'short positions' in the stock of Ligand Pharmaceuticals, Inc. ('Ligand') and then sought to manipulate the stock price to make a profit."  [ECF No. 33 ¶ 1.]  The Commission further alleged that Lemelson "orchestrated a public campaign attacking Ligand," which the Commission alleged was "intended to shake investor confidence in the company, drive down the price of Ligand's stock, and, consequently, increase the value of Lemelson's short positions."  [*Id.* at ¶ 3.]

The four specific misrepresentations charged played an important role in the fraudulent scheme.  They bolstered and lent credence to Lemelson's many reports and interviews.  [*Id.* at ¶¶ 5, 23.]  Without these false statements of material fact, Lemelson's campaign against Ligand would have consisted of little more than Lemelson's bald claims that Ligand was a worthless fraud.  Recognizing this, Lemelson boosted his message by adding false claims that Ligand was insolvent, that Ligand's own representative admitted that its flagship drug was "going away," and that Ligand's partner was a shell company with unaudited financials and no intention of engaging in clinical trials.  [*Id.*]

The Commission has alleged additional specific acts in furtherance of the scheme.  For

example, the Commission has alleged that Lemelson disseminated his statements widely and repeatedly in press releases, on his blog, through social media, in various media outlets, and on radio shows. [*Id.* at ¶¶ 6, 30] He bragged about bringing the price of Ligand down. He took steps to silence his critics, orchestrating to have negative comments removed from the *Seeking Alpha* website, suing Bloomberg, and publishing a lengthy response to the Wall Street Journal over their negative coverage of him. [*Id.* at ¶ 32.] And he sought to raise funds for The Amvona Fund by touting his successful short position in Ligand, without disclosing his efforts to make that position profitable through fraudulent conduct.

## II. The Court Has Already Rejected Defendants' Claims that Scheme Liability Was not Adequately Pleaded

Defendants' claim that the Complaint did not provide them with "fair notice" has already been adjudicated through their motion to dismiss. Their complaint that the Commission should not be permitted to "raise new allegations to support a claim at trial" [ECF No. 182 at 2] ignores the specific allegations in the Commission's Complaint and Amended Complaint. The Commission's charge of scheme liability is not new, and Defendants' attempt to have it dismissed through a motion *in limine* should be rejected.

## III. Conduct Need Not Be Independently Illegal to Support Scheme Liability

Under *Lorenzo*, scheme liability may be established simply by the making of material false statements in the purchase or sale of a security; no further conduct is required. However, courts assessing additional conduct in support of scheme liability have looked to additional conduct that, absent the false statements, would have been perfectly legal. For example, courts have referenced broad dissemination of the statements, and attempts to "boost" the price of a stock by issuing multiple positive research reports and speaking up at conference calls and elsewhere. *See Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 239 (D. Mass. 2004)

(pre-*Lorenzo*); *see also In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1159, 1193-94 (D. Or. 2015) (noting scheme conduct included monitoring social media, posting on electronic message boards and blogs, sending emails, and using social media to call attention to positive articles and respond to negative articles and comments).  This Court has also referenced timely acquisitions as separate, scheme-related conduct.  *See Federal Energy Regulatory Commission v. Maxim Power Corp.*, 196 F. Supp. 3d 181, 199 (D. Mass. 2016) (acquiring natural gas before making offers on oil prices constituted additional scheme-related conduct beyond the Defendant's misrepresentations and omissions).

Section 10(b) and Rule 10b-5 set forth multiple prohibitions on fraudulent conduct.  They are overlapping.  The Commission has asserted claims under multiple theories, and is entitled to present evidence of each of them.

## CONCLUSION

For the reasons stated above, the Commission asks the Court to deny Defendants' motion *in limine* to restrict evidence concerning scheme liability.

Dated: October 12, 2021                    Respectfully submitted,

                                              SECURITIES AND EXCHANGE
                                              COMMISSION

                                              By its Attorneys,

                                              */s/ Marc Jones*
                                              Marc J. Jones (Mass. Bar #645910)
                                              Alfred A. Day (Mass. Bar #654436)
                                              Boston Regional Office
                                              33 Arch Street
                                              Boston, MA  02110
                                              (617) 573-4537 (Jones direct)
                                              jonesmarc@sec.gov
                                              daya@sec.gov

## CERTIFICATE OF SERVICE

      I certify that on October 12, 2021 a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                             */s/ Marc Jones*