UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN
LIMINE TO PRECLUDE THE COMMISSION'S ATTEMPT TO USE
A "SUMMARY WITNESS" FOR IMPROPER PURPOSES**

Defendants protest the Commission's intent to have a Commission employee, Erin Smith, PhD, testify as a fact and summary witness.[1] The Commission will call Dr. Smith to summarize trading data and voluminous stock price data and correlate the timing of those summaries with Defendants' false and misleading public statements about Ligand (without drawing conclusions about causation). In short, she will establish a timeline of relevant facts that sets the stage for the jury to understand this case. She will also explain, based on her personal knowledge, certain terms that are undisputed (like what a short position is) but helpful for the jury to understand. None of this should be controversial, but it is all crucial for the jury to understand. The

---

[1] Dr. Smith is a financial economist employed in the Commission's Division of Economic and Risk Analysis (commonly referred to as "DERA") in the Office of Litigation Economics ("OLE"). Among other things, OLE provides independent litigation support—including expert testimony, summary testimony, and fact testimony—to the Division of Enforcement.

Commission is entitled to present evidence to the jury in a digestible and persuasive manner, with live testimony and supporting summary and demonstrative exhibits. The jury should not, as Defendants suggest, be left to try to piece the evidence together on the basis of cold documents.

Defendants' objections are meritless, and their motion should be denied.

## ARGUMENT

### A. It Is Appropriate For Dr. Smith to Summarize Voluminous Data To Aid the Jury in Understanding the Timeline of Relevant Events

Dr. Smith will summarize Ligand's stock price and Defendants' trading juxtaposed with Defendants' false and misleading statements public statements about Ligand. This is a two part process. First, Dr. Smith will summarize each set of data—types of data with which the jury is likely unfamiliar and as to which summary charts will be much easier to understand. Second, she will line up these summaries with the dates and times of Defendants' false and misleading public statements so the jury can see for itself the timeline of events and draw its own conclusions about Defendants' conduct.

Defendants insist that the underlying records are not voluminous, despite acknowledging that, in addition to numerous trading statements, Dr. Smith has prepared, among other things, a summary of 40 GB of intraday trading data.[2] They then say that much of the data is not in dispute, effectively trying to stipulate their way out of live witness testimony supported by summary and/or demonstrative exhibits. But Defendants are entitled to present their case in a way that helps the jury to understand it, including through summary witnesses.

---

[2] Defendants complain that the Commission did not produce intraday trading data in discovery. When they asked for it, the Commission responded that the data is publicly available. While acknowledging that the data is in fact publically available, they now claim that it is only available for a fee (although they don't say how much or whether they, or their now-withdrawn expert, had access to the data). And Defendants concede they dropped the request, leaving undersigned counsel to believe Defendants found what they wanted or were otherwise satisfied. Further, Defendants offer no argument or reason to believe the intraday trading data Dr. Smith summarized is inaccurate or incomplete. In any event, it is far too late now to raise a discovery issue that could have been resolved months ago. Still, Commission counsel will work with Defendants' counsel to provide whatever it is they say they now want.

Indeed, the *Milkiewicz* case upon which Defendants rely is fatal to their position. In that case, the First Circuit held that there are two kinds of summaries that may be admitted at trial. The first is a summary of voluminous documents pursuant to FRE 1006. In that instance, the summary is typically admitted into evidence in lieu of the voluminous data. The second type is a summary or analysis of documents already admitted into evidence pursuant to Rule 611(a), which grants the Court discretion as to how evidence will be presented. In this regard, the First Circuit held that "the summary may be admitted in addition to the underlying documents to provide the jury with easier access to the relevant information." *U.S. v. Milkiewicz*, 470 F. 2d 390, 397 (1st Cir. 2006). The court continued: "Such summaries most typically are used as 'pedagogical devices' to 'clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury." *Id.*

As set forth above, the Commission intends to do exactly what the First Circuit endorsed—create summaries of both (1) voluminous data and (2) pedagogical summaries of admitted evidence help the jury understand the evidence (much of which is not in dispute). And, as to the intraday trading data, the summaries of that data plainly meet the requirements of Fed. R. Evid.1006 and are admissible in lien of the underlying 40 GB of stock price data.

### B.  Dr. Smith Will Not Present Any Expert Opinions

Defendants next object because Dr. Smith previously provided a rebuttal expert report in this case, and they accuse Commission of attempting to introduce her expert opinions through the "back door." This is simply not so. Nothing in the Commission's disclosure suggests that Dr. Smith will be opining about anything. And undersigned counsel hereby confirms that she won't. She will testify to facts—Defendants' trading activity and Ligand's stock price lined up with Defendant Lemelson's false and misleading statements. As discussed above, this is

3

perfectly acceptable under the Federal Rules of Evidence.

Defendants extemporize about how the Commission is allegedly "trying to effectuate an impermissible end-run around the expert requirement here through a 'summary witness[.]'" Br. at 5. But there is no "expert requirement." In denying Defendants' motion for summary judgment, the Court held the Commission need not proffer an event study to establish the materiality of Defendants' false and misleading statements. [ECF No. 146 at 16-17.] And the Court also held that the jury may consider stock price movement as a factor relevant to materiality, although "an absence of change in stock price is not dispositive." [*Id.* at 17 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991) ("[W]hether a public company's stock price moves up or down or stays the same . . . does not establish the materiality of the statements made, though stock movement is a factor the jury may consider relevant.")].

Here, the Commission seeks to present facts—how Ligand's stock price moved during the relevant period—that the jury may consider. The Commission's proposed jury instruction on stock price movement prevents any risk that the jury will give undue weight or ascribe undue significance to such evidence:

> Certain evidence has just been presented to you about Ligand's stock price over a certain time. With respect to its allegation that Defendants made false statements of material fact, the Commission must prove by a preponderance of evidence that the challenged statements were material. In other words, that a statement contained information that a reasonable investor would consider important when deciding on whether to buy, sell, or hold a particular stock.
>
> When many investors sell their stock—for example, because they believed important bad news about a company—the price of the stock may go down. Conversely, if new and important information causes many investors to buy a stock, the price of the stock may go up. Here, the Commission does not need to prove that one or more investors changed his or her investment decision—that is, that they bought or sold their stock because of what Defendants' said about Ligand—for a statement to be considered material. So, you may,

4

> but are not required to, consider a change in stock price as evidence that reasonable investors considered that fact important to his or her investment decision. And you may, but are not required to, consider a lack in stock price change as evidence that reasonable investors did not find that statement important or believable enough to change their investment decision. But you may not decide that a statement was not material just because the stock price didn't move following the statement. You must instead decide whether the statement contained facts that a reasonable investor would find important based on all the evidence presented to you.

Finally, Defendants complain about certain statements of counsel regarding the *possibility* that there might be expert discovery on stock price movement (indeed, there was expert discovery on the subject). Br. at 4-5 (subject matter of discovery requests "may" involve expert discovery). They also focus on a statements at the motion to dismiss hearing that a false statement does not "necessarily" result in an immediate stock price movement when it takes time to propagate into the market. *Id.* This was merely an observation, in response to Defendants' arguments, that a lack of stock price movement is not dispositive of materiality.

### C. It Is Perfectly Appropriate For Dr. Smith To Explain Basic and Uncontroversial, Yet Likely Unfamiliar, Investing Terms to the Jury

Finally, Defendants contend that Dr. Smith should not be permitted to explain basic investing terms that are within her personal knowledge and experience. This is not expert analysis or opinion. It's basic stuff, like: "What is a hedge fund?"; "What is a broker?"; "What is a long position, what is a short position, and how are they different?"; "What does SEC Regulation FD say?" These are facts; Dr. Smith is not expressing any opinion about any of these basic terms.

As to Regulation FD, that regulation "provides that when an issuer discloses material nonpublic information to certain individuals or entities—generally, securities market professionals, such as stock analysts, or holders of the issuer's securities who may well trade on

5

the basis of the information—the issuer must also make public disclosure of that information." *See https://www.investor.gov/introduction-investing/investing-basics/glossary/fair-disclosure-regulation-fd.* This regulation is relevant to a fact at issue, not to the law the jury must apply in reaching a verdict as to the Commission's claims. Specifically, the existence of Regulation FD makes it less probable that Ligand's investor relations representative—a professional with many years of experience and familiarity with Regulation FD—would have selectively disclosed to Defendant Lemelson material nonpublic information about the supposed demise of Promacta.

Defendants rely on *Adams v. New England Scaffolding, Inc.*, No. 13-12629-FDS, 2015 WL 9412518, at *5 (D. Mass. Dec. 22, 2015). That case actually supports the Commission's position. The Court there excluded certain expert opinions about duty, breach, and causation in a negligence case, *i.e.*, ultimate legal issues the jury would decide. *Id.* at *9. In contrast, the court allowed a regulation to be admitted into evidence and described by the witness, so long as the description was accurate and the witness did not offer any opinion on its content. *Id.* at *8-*9. That's exactly what Dr. Smith will do.

## CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court deny defendants' motion.

Dated: October 12, 2021                     Respectfully submitted,

                                                            **SECURITIES AND EXCHANGE COMMISSION**

                                                            By its Attorneys,

                                                           */s/ Alfred A. Day*
                                                           Marc J. Jones (Mass. Bar #645910)
                                                           Alfred A. Day (Mass. Bar #654436)
                                                           Boston Regional Office
                                                           33 Arch Street

>Boston, MA  02110
>(617) 573-4537 (Jones direct)
>jonesmarc@sec.gov
>daya@sec.gov

## **CERTIFICATE OF SERVICE**

    I certify that on October 12, 2021, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

>*/s/ Alfred A. Day*