UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GREGORY LEMELSON and LEMELSON
CAPITAL MANAGEMENT, LLC,

Defendants,

and

THE AMVONA FUND, LP,

Relief Defendant.

Civil Action No. 1:18-cv-11926-PBS

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM PRESENTING EXPERT TESTIMONY THROUGH LAY WITNESSES

Defendants seek to exclude swaths of relevant evidence that is plainly within the personal knowledge of witnesses the Commission intends to call at trial. They do this by mischaracterizing the evidence as "expert" testimony and faulting the Commission for not having hired umpteen experts. For example, Defendants seek to preclude Ligand witnesses from telling the jury what Promacta—the drug that Defendant Lemelson falsely claimed was "going away"— is and what it is used for. That is like saying a Ford Motor Company executive can't talk about cars.

In the end, there is nothing inherently "expert" about any of the topics Defendants identify. Defendants may object to specific questions at trial, but there is no basis to exclude entire witnesses or topics.

## ARGUMENT

### A.  Witnesses Can Testify to Matters within Their Personal Knowledge

Just because a witness has a specialized base of knowledge (which we often refer to as "expertise" in a nonlegal sense) does not mean everything the witness says is expert testimony. A witness may know things beyond the ken of a person without the witness's background, but that doesn't convert the witness's testimony to an expression of expert opinion where the witness testifies about facts from their personal knowledge and experience.  *See United States v. Valdivia*, 680 F.3d 33, 50-51 (1st Cir. 2012) (witness provided particularized testimony from requisite personal knowledge that was not considered scientific or technical expertise within scope of Rule 702); *United States v. Thompson*, 229 F. Supp. 3d 91, 93 (D. Mass. 2017) (witnesses may testify about business operations and industry practices to help jury understand as long as their testimony is based on personal knowledge); *Official Committee of Unsecured Creditors v. Calpers Corp. Partners*, No. 1:18-cv-00068-NT, 2021 WL 3264272 *1, *3 (D. Me. July 30, 2021) (witness permitted to testify about specific factual information because the fact that witness had "specialized education and experience does not automatically turn any testimony he gives into expert testimony.").  The hallmark of lay and expert testimony is offering *opinions*.  Fed. R. Evid. 701 (lay opinions); Fed. R. Evid 702 (expert opinions).  Here, the Commission does not intend to elicit *opinions* about anything.  Instead, the Commission's witnesses will testify about facts they know from personal knowledge.  It is of no consequence that some of that testimony, in the context of the pharmaceutical industry, may touch on complicated subjects.

The following chart illustrates the type of questions Commission counsel may ask of various witnesses (after laying an appropriate foundation of personal knowledge).  None seek to elicit opinions of any kind:

| Topic | Permissible & Relevant |
|---|---|
| Promacta | <ul><li>What was Promacta FDA-approved to treat in 2014?</li><li>Was Promacta approved for more than one thing?</li><li>Is Hepatitis C the only condition treated (as supportive care) with Promacta?</li></ul> |
| Debt-to-Tangible Equity | <ul><li>Have you ever heard of this ratio being used to assess insolvency?</li><li>What were Ligand's intangible assets in 2014?</li></ul> |
| Insolvency | <ul><li>Did Ligand's assets exceed its liabilities at all relevant times in 2014?</li><li>Was Ligand able to service its debt at all relevant times in 2014?</li></ul> |
| Viking – clinical trials | <ul><li>Did Viking plan to conduct preclinical and clinical studies in 2014?</li><li>How was it going to do that?</li><li>Were you aware, in 2020, of any companies similar to Viking that took a similar approach?</li></ul> |
| Viking – audit | <ul><li>In 2013 and 2014, did Viking engage an auditor?</li><li>What was the purpose of that engagement?</li><li>What was the outcome?</li></ul> |
| Stock price | <ul><li>What was the price of Ligand's stock on June 16, 2014?</li><li>Did the stock decrease in value over the next several months?</li><li>How much?</li></ul> |

There is a goose and gander problem with Defendants' arguments. Defendants want to preclude the Commission from offering evidence on the very issues his reports discuss. For instance, concerning Promacta, Defendants state that the only issue at trial is "whether

Defendants lied when making the statement that Mr. Voss 'basically agreed' Promacta was going away and whether that statement, in context, was material." Defs' Br. at 7. Defendants' position omits the very "context" that matters: Defendant Lemelson's lie about Promacta is built upon the false premise that Promacta was *only* used in connection with treating Hepatitis C and that a then-new antiviral drug would render Promacta obsolete. It cannot be the case that Defendant Lemelson can testify and offer his reports about this falsehood but the Commission can't elicit contrary evidence about Promacta's other existing and pending FDA-approvals.

As it usually does, the Court should assess testimony and other evidence on these topics on a case-by-case and question-by-question basis. *See Official Committee of Unsecured Creditors*, 2021 WL 3264272 at *3 (permitting witness to testify to personal knowledge from specialized education and experience, and holding that opposing party "remains free at trial to object to questioning that seeks to elicit impermissible lay witness opinion."). If a party impermissibly asks for expert opinion testimony, the Court can then rule on an objection. To exclude entire topics now without context and without hearing the questions would prevent the Commission from offering appropriate knowledge-based facts from its witnesses.

### B. You Do Not Need an Expert to Talk about Insolvency

Defendant Lemelson said Ligand was insolvent. Ligand was not insolvent at that time. The Court, in deciding summary judgment, accepted the testimony of Ligand's CEO that Ligand was not insolvent. [ECF No. 146 at 26 ("Because Ligand's CEO testified that Ligand was not insolvent at the time of Lemelson's statement or during his tenure at the company, and because the defendants have not put forth testimony showing that Ligand was insolvent, this issue involves a fact dispute.").] To resolve this fact dispute, the Commission need not resort to expert testimony. Defendants use a logical fallacy to support their contrary argument: other courts

"routinely rely" on experts' testimony about insolvency, they claim, therefore expert testimony is required on insolvency.  Defs'. Mot. at 4-5.  Not so.  Again, Defendants seek to clear the field of testimony contrary to statements by Lemelson (who is not an expert) about that insolvency and how it is determined.

To give his statement a veneer of plausibility, Defendant Lemelson employed a "debt-to-tangible equity ratio."  The Commission will offer evidence of the following facts:

(1) Ligand was never insolvent, in 2014 or otherwise, based on what Defendant Lemelson himself acknowledged is the usual test for insolvency—liabilities exceeding assets;

(2) Ligand was able to raise over $200 million in the bond market based in part on its financial position;

(3) What Lemelson was excluding in his tangible equity to debt ratio, and what the excluded assets were at Ligand;

(4) None of the Ligand executives—public company officers with extensive experience and duties to accurately report the company's financial statements—had ever heard of or seen Defendant Lemelson's ratio used for any purpose at any time in assessing Ligand's or any other company's insolvency; and

(5) No auditor, analyst, or investor (other than Defendant Lemelson) ever expressed to the Ligand executives any concerns about insolvency or going concern risk in 2014 (or at any other time).

These are facts—not expert opinions—that demonstrate the misleading nature of Defendant Lemelson's statement that Ligand was insolvent.

### C.  Witnesses Can Testify To Facts About Promacta's Approved Uses

Defendants seek to exclude evidence about "the physiological effects of Promacta and the utility of Promacta for addressing conditions unrelated to hepatitis C."  Defs'.Br. at 3.  It is not clear what "physiological effects" means (the Commission does not intend to get deeply into the pharmacology of Promacta), but the gist of Defendants' motion is to preclude evidence that Promacta, as of 2014, had been approved for a host of conditions, only one of which was

supportive care for certain Hepatitis C patients.  Ligand personnel of course know what Promacta is used for and what FDA and other regulatory approvals the drug had received.  These are facts that they needed to understand to run their business.

*In re Neurontin Marketing, Sales Practices, and Products Liability Litig.*, 612 F. Supp. 2d 116, 141-42 (D. Mass. 2009), cited at page 5 of Defendant's motion, is inapposite.  There, the defendant's offered evidence on the chemical makeup and pharmacology of a drug to "boldy invite the Court to proclaim the FDA and its panel of blue-ribbon experts dead wrong."  *Id.* at 142.  This is a far cry from testifying about existing regulatory approvals and existing uses of the drug.

One of Defendant Lemelson's false and misleading claims is that Promacta is *only* used to treat Hepatitis C—the jumping off point for his false and misleading claim that a then-new Hepatitis C treatment would render Promacta obsolete.  Defendants cite a web page about Promacta that is directly contrary.  Defs'.Br. at 5.  That Mayo Clinic article actually identifies a number of potential causes of ITP of which Hepatitis C is only one of a number of viral and bacterial infections identified as potential causes.  Defendant Lemelson is flat wrong about Promacta and the Commission should be allowed to present evidence to prove it.

### D.  Stock Price Movement

Defendants don't want the jury to hear about Ligand's stock price over the course of their 2014 short-and-distort campaign.  Their position is that saying anything about Ligand's stock price requires an expert.  Not so.

In ruling on Defendants' motion for summary judgment, the Court rejected Defendants' argument that the Commission must prove a downward stock price movement to establish materiality.  [ECF No. 146 at 16-17.]  The Court further held that the Commission need not

introduce an expert event study.  [*Id.* at 17.]  However, the jury may consider stock price movement as one factor relevant to materiality.  [*Id.*]  Thus, while both parties may argue that the presence or absence of stock price movement is *probative* of materiality, neither party may argue that such evidence *determines* the materiality of Defendants' conduct.

To be clear, the Commission will not be offering an expert to opine that changes in Ligand's stock price were, as a statistical matter, caused by Defendants' conduct.  But that is not required and does not render the entire subject matter inadmissible.  For example, Defendant Lemelson took credit for drops in Ligand's stock price and the Commission should be permitted to show that those drops actually happened.

### E.  Viking – Clinical Trials

In 2014, Defendant Lemelson falsely claimed that Viking Therapeutics, Inc., a startup that had partnered with Ligand to develop medicines, did not intend to conduct any preclinical or clinical drug trials.  Defendants now seek to exclude evidence about Viking's plans in 2014 and, specifically, its intent to use third party vendors for drug trials, claiming this requires expert testimony on "industry practices."

Contrary to Defendants' position, the Commission does not intend to elicit expert opinions about "the customary and typical practices in the pharmaceutical industry of using third parties to conduct clinical trials."  Defs'Br. at 3.  Viking's CEO, Brian Lian, PhD, will explain that, in 2014, Viking intended to hire outside vendors to conduct drug trials (and subsequently did) and that this is not unusual based on his observation and personal knowledge of similar companies doing the same thing.  He will further explain that it costs a significant amount of money to build labs and hire people to conduct drug trials in-house; hence the use of outside specialists.  This is not expert testimony—it is testimony about facts within Dr. Lian's personal

knowledge.

### F.  Miscellaneous

Defendants call out yet more examples of things they say are categorically expert:

- Whether a "debt-to-tangible-equity ratio" is a GAAP metric—if a witness knows that as a fact, there is nothing to prevent the witness from testifying as to that fact, once a proper foundation for personal knowledge has been established.  The ratio either is or is not a GAAP metric; there is no opinion involved.

- Whether "shareholder equity is protection from debt"—this is not an accurate characterization of the evidence the Commission intends to present, which is not an opinion testimony but facts.  A witness should be permitted to testify, for example, that Ligand had at least $168 million in the bank after the August 2014 debt transaction, all or a portion of which could've been used to pay down liabilities.

- Whether "intellectual property is the most significant asset of a pharmaceutical company" misses the point—the Commission has no intention of presenting evidence of a hypothetical pharmaceutical company.  But of course Ligand witnesses can testify that their company's intangible assets were significant.

<u>**CONCLUSION**</u>

For the reasons stated above, the Commission respectfully requests that the Court deny Defendants' motion.

Dated: October 12, 2021                     Respectfully submitted,

                                            **SECURITIES AND EXCHANGE
                                            COMMISSION**

                                            By its Attorneys,

                                            */s/ Alfred A. Day*
                                            Marc J. Jones (Mass. Bar #645910)
                                            Alfred A. Day (Mass. Bar #654436)
                                            Boston Regional Office
                                            33 Arch Street
                                            Boston, MA  02110
                                            (617) 573-4537 (Jones direct)
                                            jonesmarc@sec.gov
                                            daya@sec.gov


## CERTIFICATE OF SERVICE

I certify that on October 12, 2021, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                            */s/ Alfred A. Day*