UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON<br>CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' PROPOSED REDLINES TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S PROPOSED JURY INSTRUCTIONS**

**Preliminary Instruction**

[To be included with the Court's general preliminary instructions to the jury.]

The plaintiff in this case, the United States Securities and Exchange Commission (sometimes called the "SEC" or the "Commission") is an independent regulatory agency created by Congress.  One of the SEC's primary duties is to enforce the federal securities laws, which are intended to protect the investing public. The SEC's claims here are asserted under two different federal statutes and two related rules. The statutes are known as the Securities Exchange Act of 1934, which I will call the "Exchange Act" and the Investment Advisers Act of 1940, which I will call the "Advisers Act."

Congress passed both the Exchange Act and the Advisers Act to eliminate certain abuses in the securities industry that were found to have contributed to the stock market crash of 1929 and the Great Depression of the 1930s.¹  Congress set out to prevent fraud and other abuses in

1

~~our financial markets, by professionals giving investment advice, in the case of the Advisers Act, and by all participants, in the case of the Exchange Act. Both the Exchange Act and the Advisers Act establish standards of conduct that are enforceable by the SEC.[2]~~

The SEC bears the burden of proof in this case. The standard in this civil case is "preponderance of the evidence." A preponderance of the evidence simply means that the evidence persuades you that the SEC's claim is more likely true than not true. ~~Some of you may have heard of proof "beyond a reasonable doubt," which is the standard of proof for a criminal~~ trial. This is not a criminal trial and a plaintiff in a civil case does not have to satisfy that standard.[3]

~~Commonly, a civil action is brought by a private person who has been injured by some conduct by a defendant and seeks damages. This is not a suit by a private person for damages; this is a suit by the SEC to enforce the federal securities laws. Unlike a civil damage suit brought by a private party, there is no claim for damages here and the SEC need not prove that anyone was harmed.~~

The SEC alleges that ~~Defendants~~ Fr. Lemelson and Lemelson Capital Management violated the Exchange Act by engaging in a fraudulent scheme to drive down Ligand's stock price in order to profit from a short position. A short position is an investment technique where an investor profits when a stock price goes down. The SEC alleges that Fr. Lemelson and Lemelson Capital Management's ~~Defendants'~~ conduct violated the Exchange Act

---

[1] ~~Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78qq; Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 - 80b-21; *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963); *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1128 (D.C. Cir. 2015) (quoting *Cap. Gains Rsch. Bureau, Inc.*); *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977), *cert. denied*, 436 U.S. 913 (1978).~~

[2] ~~*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195-96 (1976); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 12-14, 34 (1979); *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 191, 200-201; *SEC v. Tambone*, 550 F.3d 106, 120-24 (1st Cir. 2008), *rev'd in part on other grounds*, 597 F.3d 436 (1st Cir. 2010). *See also ZPR Inv. Mgt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017); *SEC v. Penn*, 225 F. Supp. 3d 225, 236 (S.D.N.Y. 2016).~~

~~in two ways: *First*, that Defendants engaged in a fraudulent scheme to drive down the price of Ligand shares by publishing a series of misleading negative reports about Ligand, widely distributing those reports, emailing them to current and prospective investors, and appearing in newspaper and internet radio interviews. *Second*, that Defendants made~~<u>by making</u> four false and misleading statements of fact about Ligand's business.

Based upon the evidence you hear in this trial and my instructions to you, you will be called upon to decide whether <u>Fr. Lemelson and/or Lemelson Capital Management</u>~~Defendants~~ violated the law.[4] Specifically, you must decide whether the SEC proved by a preponderance of the evidence that <u>Fr. Lemelson and Lemelson Capital Management</u>~~Defendants~~ engaged in a fraudulent scheme and/or made one or more false and misleading statements.

**At the Introduction of a Lack of Stock Price Change**

Certain evidence has just been presented to you about Ligand's stock price over a certain time. With respect to its allegation that Defendants made false statements of material fact, the Commission must prove by a preponderance of evidence that the challenged statements were material. In other words, that a statement contained information that a reasonable investor would consider important when deciding whether to buy, sell, or hold a particular stock.

When many investors sell their stock—for example, because they believed important, bad news about a company—the price of the stock may go down. Conversely, if new and important information causes many investors to buy a stock, the price of the stock may go up. Here, the Commission does not need to prove that one or more investors changed his or her investment decision—that is, that they bought or sold their stock—for a statement to be considered material. This means, you may, but are not required to, consider a change in stock price as evidence that a reasonable investor considered that fact important to his or her investment decision. And you may, but are not required to, consider a lack in stock price change as evidence that a reasonable investor did not find a statement important or believable enough to change his or her investment decision. But you may not decide that a statement was not material just because the stock price didn't move following the statement. You must instead decide whether the statement contained facts that a reasonable investor would find important based on all the evidence presented to you.

**Instruction No. 1:    Parties Equal before the Law**

As you know, the plaintiff is the Securities and Exchange Commission, which I will call the SEC. The SEC is an independent agency of the federal government charged with regulating the securities industry. ~~One of the SEC's primary duties is to enforce the federal securities laws, which are intended to protect the investing public. It has the authority to issue rules that have the force of law. It has the authority to file lawsuits alleging violations of the federal securities laws.~~

The defendants are Gregory Lemelson, also known as Father Emmanuel Lemelson, and Lemelson Capital Management, LLC.

You should consider this case as a dispute between persons of equal standing in the community and of equal worth. An individual, a corporation, and a government agency are equally entitled to a fair trial. All persons, including individuals, corporations, and government agencies, stand equal before the law and are to be treated as equals.[5]

---

[5] 3 Kevin F. O'Malley *et al*., FEDERAL JURY PRACTICE AND INSTRUCTIONS §103:12 (6th ed. 2014); *Wilson v. Vermont Castings, Inc*., 977 F. Supp. 2d 691, 699 (M.D. Pa. 1997), *aff'd*, 170 F.3d 391 (3d Cir. 1999).

**Instruction No. 2:     The Statutory Purpose of the Securities Exchange Act**

The SEC alleges that ~~Defendants~~ Lemelson and Lemelson Capital Management engaged in illegal conduct in violation of two federal statutes and two rules that the SEC has adopted under those statutes.  The two statutes at issue are the Securities Exchange Act of 1934, which I will call "the Exchange Act," and the Investment Advisers Act of 1940, which I will call the "Advisers Act."

I will now give you the information you need about the Exchange Act and the particular provision and rule at issue. I will discuss the Advisers Act provision and rule later in my instructions.

~~Congress passed the Exchange Act to protect the investing public, to ensure fair dealing, and to outlaw deceptive practices by those who buy or sell securities. The Exchange Act prohibits fraud and requires full and fair disclosure of all important facts by those who offer and sell securities, so that investors can make informed investment decisions. Congress recognized that any deceptive or manipulative practice that related to trading activity could undermine the function and purpose of a free market and the integrity of securities transactions.[6]~~

~~Under the Exchange Act, there are a set of rules.  Those rules have the force of law and must be followed. Like the Exchange Act, the rules under it are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that undermine honest and fair dealing in the securities markets.~~

---

~~[6] *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) ("preserving the integrity of the securities markets was one of the purposes animating" the Exchange Act, as was the intent "to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face") (quotation and citation omitted); *Lowe v. SEC*, 472 U.S. 181, 199-200 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186-877 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry").~~

**Instruction No. 3:     Overview of the SEC's Exchange Act Claims**

The SEC alleges that ~~Fr. Lemelson and Lemelson Capital Management~~Defendants violated the Exchange Act by engaging in a deceptive scheme to drive down Ligand's stock price, so that they could profit from their short position in that stock. The SEC alleges that ~~Fr. Lemelson and Lemelson Capital Management~~Defendants violated the Exchange Act ~~in two ways: *First*, Defendants engaged in a fraudulent scheme to drive down the price of Ligand shares by publishing a series of misleading negative reports about Ligand and widely distributing those reports through republishing the reports, emailing them to current and prospective investors, and appearing in newspaper and internet radio interviews. *Second,* Defendants made~~by making four false and misleading statements of fact~~ about a) what Ligand's investor relations representative supposedly~~said about the viability of Promacta; b) Viking Therapeutics' financial statements; c) Viking Therapeutics' intention to carry out clinical trials of medicines licensed to it; and d) Ligand's supposed insolvency~~.

The SEC alleges that, by engaging in this fraudulent scheme and by making these false statements and material omissions, ~~Fr. Lemelson and Lemelson Capital Management~~Defendants violated Exchange Act Section 10(b) and Rule10b-5 issued under the Exchange Act.[7] ~~This statute and Rule are antifraud provisions of the Exchange Act, and they prohibit fraud in connection with the purchase or sale of securities.~~

I will now instruct you about the law you are to apply in order to determine whether the SEC has proved its Exchange Act claims. To render a verdict against ~~Fr. Lemelson and Lemelson Capital Management~~Defendants on any of theseclaims, you must find that the SEC has proved each element of the claim by a preponderance of the evidence.

---

[7] Amended Complaint (No. 33), ¶¶57-61.  This is the First Claim for Relief in the Complaint.

**Instruction No. 4:    Exchange Act Section 10(b) and Rule 10b-5 Claim – Elements**

To prevail on its Exchange Act claims against Lemelson and Lemelson Capital Management, the SEC must prove each of following elements by a preponderance of the evidence:

First, the SEC must prove that Fr. Lemelson or Lemelson Capital Management the Defendants directly or indirectly engaged in fraudulent conduct.

Second, the SEC must prove that Fr. Lemelson and Lemelson Capital Management the Defendants acted with the intent to deceive, manipulate, or defraud, or that they acted with a high degree of recklessness.

Third, that Fr. Lemelson and Lemelson Capital ManagementDefendants did so in connection with the purchase or sale of a security. Herethat security is the stock of Ligand Pharmaceuticals.[8]

I will now explain each of these elements in more detail.

---

[8] 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

**Instruction No. 5:  Fraudulent Conduct – Exchange Act Section 10(b) and Rule 10b-5
Claim**

The SEC may satisfy the fraudulent conduct element of a claim under Exchange Act

Section 10(b) and Rule 10b-5 by showing that Fr. Lemelson or Lemelson Capital

Management~~Defendants~~ did one or more of the following:

1.  Employed a device, scheme, or artifice to defraud; or

2.  Made an untrue statement of material fact, or omitted to state a material fact that
    made what was said, under the circumstances, misleading; or

3.  Engaged in an act, practice, or course of business that operated, or would operate,
    as a fraud or deceit upon any person.[9]

You need only find that Fr. Lemelson and Lemelson Capital Management~~Defendants~~ engaged in

<u>one</u> of these types of fraudulent conduct to find that the SEC has met its burden of proof on this

element of its Exchange Act claim.

The first type of fraud is a "device, scheme or artifice to defraud." A "device" in this

context means a "trick" or "fraud." A "scheme" is a design or plan formed to accomplish some

purpose. The phrase "device, scheme, or artifice to defraud" refers to any plan or course of

action that involves false or fraudulent pretenses or representations or any pattern of conduct

calculated to deceive.[10] Put another way, a "scheme to defraud" means conduct that has the

principal purpose and effect of creating a false appearance of fact.[11]

Second, the SEC may also prove that Fr. Lemelson and Lemelson Capital

Management~~Defendants~~ committed fraud by making one or more misrepresentations of

---

[9] 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

[10] Sand, 4 MODERN FEDERAL JURY INSTRUCTIONS (CIVIL) ¶82.02, Instruction 82-4 (2017).

[11] *SEC v. Muehler,* 2:18-cv-01677, 2018 WL 1665637, *5 (C.D. Cal. Apr. 4, 2018); *SEC v. Durgarian,* 477 F. Supp.
2d 342, 353 (D. Mass. 2007).

material fact or by omitting to state a material fact that would benecessary to make the other statements not misleading.

A misrepresentation is simply a statement that is not true when made.[12]  Fraud also includes omitting—or leaving out—information, where the omission makes other statements misleading under the circumstances.  This includes what are sometimes called "half-truths"— literally true statements that create a materially misleading impression.[13] Some statements, although literally accurate, can mislead investors depending on their context and how they are presented.[14] When someone makes a statement, there is a duty to make that statement complete and accurate.[15] The person making the statement must disclose all facts necessary to prevent the statement from misleading someone who heard or read it.[16]

A fact is material if there is a substantial likelihood that a reasonable investor would view the fact as significantly altering the total mix of information available.[17]  This requires you to step into the shoes of an ordinary investor and determine whether a fact would have been important to that person in deciding, for example, whether to buy, sell, or hold a security. However, materiality does not require proof that a misrepresentation or omission would have

---

[12] *SEC v. Cap. Sol. Monthly Income Fund*, 10-3995 (D. Minn. Oct. 23, 2013), ECF No. 354 (court's jury instruction), p. 15-16.

[13] *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013); *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 57-58 (D. Mass. 2006).

[14] *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 34-35 (D. Mass. 1997) (quoting *Lucia v. Prospect St. High Income Portfolio, Inc.* 36 F.3d 170, 175 (1st Cir. 1994)); *In re Cady, Roberts & Co.,* 40 S.E.C. 907, 913 (1961) ("a breach of duty of disclosure may be viewed as a device or scheme, an implied misrepresentation, and an act or practice, violative of all three subdivisions").

[15] *Lucia v. Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170, 175 (1st Cir. 1994) (quoting *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 26 (1st Cir. 1987)); *Rosenbaum Cap. LLC v. Boston Commc'ns Grp., Inc.*, 445 F. Supp. 2d 170, 175-76 (D. Mass. 2006) (quoting *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987)).

[16] *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 842 F.3d 71, 88 (1st Cir. 2016) (quoting *SEC v. Texas Gulf Sulfur Co.,* 401 F.2d 833, 862 (2d Cir. 1968)).

[17] *Basic*, 485 U.S. at 232 (quoting *TCS Industries, Inc. v. Northway, Inc.,* 426 U.S. 438 (1976)); *In re Smith & Wesson Holding Corp. Secs. Litig.*, 669 F.3d 68, 74 (1st Cir. 2012); *SEC v. Forman*, 2010 WL 2367372, *6 (D. Mass. June 9, 2010).

caused a reasonable investor to have changed his or her investing decision.[18] Rather, a misrepresentation or omission is material if it would have had some significance in a reasonable investor's decision-making process.[19]

~~Certain evidence has just been presented to you about Ligand's stock price over a certain time. With respect to its allegation that Defendants made false statements of material fact, the Commission must prove by a preponderance of evidence that the challenged statements were material. In other words, that a statement contained information that a reasonable investor would consider important when deciding whether to buy, sell, or hold a particular stock.~~

~~When many investors sell their stock—for example, because they believed important, bad news about a company—the price of the stock may go down. Conversely, if new and important information causes many investors to buy a stock, the price of the stock may go up. Here, the Commission does not need to prove that one or more investors changed his or her investment decision—that is, that they bought or sold their stock—for a statement to be considered material. This means, you may, but are not required to, consider a change in stock price as evidence that a reasonable investor considered that fact important to his or her investment decision. And you may, but are not required to, consider a lack in stock price change as evidence that a reasonable investor did not find a statement important or believable enough to change his or her investment decision. But you may not decide that a statement was not material just because the stock price didn't move following the statement. You must instead decide whether the statement contained facts that a reasonable investor would find important based on all the evidence presented to you.~~

---

[18] *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 439 (1976).

[19] *Id.*

~~You may find the Defendants liable if the SEC proves just *one* material misstatement or omission.~~

Third, the SEC may also prove the fraudulent conduct element by proving that <u>Fr. Lemelson and Lemelson Capital Management</u>~~Defendants~~ engaged in an "act, practice, or course of business" that "operated or would operate as a fraud or deceit upon any person."  The phrase "would operate" means that the act, practice, or course of business has the capacity to defraud a purchaser or seller, whether or not anyone wasactually defrauded.[20]

---

[20] *SEC v. SBM Inv. Certificates, Inc*., 2007 WL 609888, *14 (D. Md. Feb. 23, 2007); *SEC v. Hopper*, 2006 WL 778640, *13 (S.D. Tex. Mar. 24, 2006).

**Instruction No. 6:     State of Mind – Exchange Act Section 10(b) and Rule 10b-5 Claim**

If you determine the SEC has failed to prove by a preponderance of the evidence that Fr. Lemelson and Lemelson Capital Management engaged in fraudulent conduct, then you must find Fr. Lemelson and Lemelson Capital Management not liable.  If you determine that the SEC has proven fraudulent conduct by Fr. Lemelson or Lemelson Capital Management, then you must next consider whether Fr. Lemelson or Lemelson Capital Management  ~~Once you have decided that the Defendants engaged in fraudulent conduct by a preponderance of the evidence, you must decide whether Defendants~~ did so with a certain state of mind. The SEC may satisfy the state of mind element of a claim under Exchange Act Section10(b) and Rule 10b-5 in one of two ways.

First, the SEC may prove that Fr. Lemelson and Lemelson Capital Management~~Defendants~~ acted with a conscious intent to defraud.[21] Toact with intent to defraud means to act with the intent to deceive, manipulate, or defraud.[22] "A defendant's publication of statements when that defendant knew facts suggesting the statementswere inaccurate or misleadingly incomplete is . . . evidence of" the required state of mind.[23] Anintent to defraud may be inferred from a defendant's statements or conduct.[24]

Second,  the  SEC  may  prove  that  Fr. Lemelson  and  Lemelson  Capital Management~~Defendants~~ acted with a high degree of recklessness.[25] Recklessness is not ordinary negligence.[26] Conduct is "reckless" if it represents an extreme departure from the standards of ordinary care and presents a danger of misleading people  that waseither  known  to  the  defendant or  so  obvious  that  the defendant must have been aware of it.[27]

Recklessness can also be thought of as a reckless disregard for the truth.[28]

If a defendant knew about the danger of misleading investors *or* if the risk that investors would  be  misled  was  so  obvious  that  the  defendant  must  have  been  aware  of  it,  then  you  may

find the defendant liable even if he denies that he intended to mislead anyone.[29] A defendant who is aware of facts that make his conduct misleading acts recklessly even if he genuinely believes that his conduct does not create a risk of misleading investors.[30]

State of mind or intent may be established by circumstantial evidence, including the person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[31]

---

[21] *SEC v. EagleEye Asset Management, LLC*, 975 F. Supp. 2d 151, 158 (D. Mass. 2013); *SEC v. Forman*, 2010 WL 2367372, *6 (D. Mass. June 9, 2010).

[22] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS §161:157 (6th ed. 2014).

[23] *SEC v. Johnston*, 986 F.3d 63, 74 (1st Cir. 2021)(quotation omitted).

[24] *SEC v. Infinity Grp. Co*., 212 F.3d 180, 193 (3d Cir. 2000), *cert. denied*, 532 U.S. 905 (2001); *SEC v. McGinn, Smith & Co*., 2011 WL 1770472, *3 (N.D.N.Y. May 9, 2011); 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS §161:157 (6th ed. 2014).

[25] *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 198-99 (1st Cir. 1999); *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012); *EagleEye Asset Management,*, 975 F. Supp. 2d at 158 (quoting *SEC v. Ficken,* 546 F.3d 45, 47 (1st Cir. 2008)); *SEC v. Forman*, 2010 WL 2367372, at *6-7.

[26] *Rizek v. SEC*, 215 F.3d 157, 162 (1st Cir. 2000).

[27] *SEC v. Fife*, 311 F.3d 1, 9-10 (1st Cir. 2002) (quoting *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 198 (1st Cir. 1999)); *In re Genzyme Corp*., 2012 WL 1076124, *7 (D. Mass. Mar. 30, 2012).

[28] *SEC v. Tambone*, 597 F.3d 436, 459 (1st Cir. 2010)

[29] *Gould,* 692 F.3d at 158-59 (citing *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000)); *SEC v. Platforms Wireless Int'l Corp*., 617 F.3d 1072, 1094 (9th Cir. 2010); *Sundstrand Corp. v. Sun Chem. Corp*., 553 F.2d 1033, 1046 (7th Cir. 1977).

[30] *Sundstrand Corp.,* 553 F.2d at 1046; *see also Platforms Wireless Int'l Corp*., 617 F.3d at 1094; *Makor Issues & Rts., Ltd. v. Tellabs Inc*., 513 F.3d 702, 704 (7th Cir. 2008).

[31] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91 n.30 (1983).

**Instruction No. 7:      In Connection with Purchase or Sale of Securities**

If you determine the SEC has failed to prove by a preponderance of the evidence that Fr. Lemelson and Lemelson Capital Management engaged in fraudulent conduct with the requisite state of mind, then you must find Fr. Lemelson and Lemelson Capital Management not liable.  If you determine that the SEC has proven fraudulent conduct by Fr. Lemelson or Lemelson Capital Management with the requisite state of mind, then you must next consider whether Finally, to find the Defendants liable on the Exchange Act claim, the Commission must has proven by a preponderance of the evidence that the deceptive conduct was "in connection with" the purchase or sale of securities. This element is satisfied if you find there was some connection or relationship between the deceptive conduct and the sale or purchase of securities.  Conduct is in connection with the purchase and sale of securities "whenever assertions are made . . . in a manner reasonably calculated to influence the investing public."[32] This includes fraudulent misrepresentations and omissions made in the context of an analyst's report about a security.[33] If you find by a preponderance of evidence that Fr. Lemelson and Lemelson Capital Management Defendants engaged in a scheme to influence investors or made any statement that was reasonably calculated to influence investors, you have found the conduct is in connection with the purchase or sale of securities.[34]

---

[32] *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 862 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *see also S.E.C. v. Rana Rsch., Inc*., 8 F.3d 1358, 1362 (9th Cir. 1993).

[33] *Korinsky v. Salomon Smith Barney Inc.*, 2002 WL 27775, at *4-5 (S.D.N.Y Jan. 10, 2002).

[34] *SEC v. Benson,* 657 F. Supp. 1122, 1131 (S.D.N.Y.1987).

**Instruction No. 8:     The Statutory Purpose of the Advisers Act**

Along with the SEC's claim under the Exchange Act, which I just described, the SEC also alleges that Defendants violated the Advisers Act. Congress passed the Advisers Act to eliminate certain abuses in the securities industry that were found to have contributed to the stock market crash of 1929 and the Great Depression of the 1930s.[35] Congress set out to prevent fraud and other abuses by those who make investment recommendations or analyze securities in exchange for compensation.[36]. The Advisers Act establishes standards of conduct for investment advisers that are enforceable by the SEC.[37] Investment advisers have a duty of "utmost good faith, and full and fair disclosure of all material facts," and must "employ reasonable care to avoid misleading" their clients.[38]

Congress intended that the antifraud provisions in the federal securities laws, including the Advisers Act, should be applied flexibly, not narrowly or rigidly, to achieve their purpose of correcting the problems that Congress had identified.[39]

---

[35] *Cap. Gains Rsch. Bureau, Inc*., 375 U.S. at 186; *N.Y. Republican St. Comm. v. SEC*, 799 F.3d 1126, 1128 (D.C. Cir. 2015) (quoting *Cap. Gains Rsch. Bureau, Inc.*); *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977), *cert. denied*, 436 U.S. 913 (1978).

[36] 15 U.S.C. § 80b-2(a)(11).

[37] *Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 12 – 13, 34; *Cap. Gains Rsch. Bureau., Inc.*, 375 U.S. at 191, 200-201; *SEC v. Tambone*, 550 F.3d 106, 123-124 (1st Cir. 2008), *rev'd in part on other grounds*, 597 F.3d 436 (1st Cir. 2010). *See also ZPR Inv. Mgt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017); *SEC v. Penn*, 225 F. Supp. 3d 225, 236 (S.D.N.Y. 2016).

[38] *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 194.

[39] *Transamerica Mortg. Advisors*, 444 U.S. at 34; *Affiliated Ute Citizens of Utah v. U.S*, 406 U.S. 128, 151 (1972); *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 195; *SEC v. Fife*, 311 F.3d 1, 11 (1st Cir. 2002), *cert. denied*, 538 U.S. 1031 (2003)*; see also U.S. v. Haddy*, 134 F.3d 542, 549 (3d Cir.), *cert. denied*, 525 U.S. 827 (1998).

**Instruction No. 9:     Overview of the SEC's Advisers Act Claims**

Here, the SEC alleges that Defendants Lemelson and Lemelson Capital Management, who are investment advisers, misled investors and prospective investors in The Amvona Fund, the hedge fund Fr. Lemelson and Lemelson Capital Management~~Defendants~~ ran. ~~Defendants allegedly misled these investors and prospective investors in The Amvona Fund by making and disseminating false statements about Ligand as part of their efforts to obtain and retain Amvona Fund investors.  Defendants also misled investors and potential investors by not disclosing that The Amvona Fund's positive returns from its short position in Ligand were based on Defendants' fraudulent scheme to drive down Ligand's stock price.~~

The SEC alleges that, through this conduct, Fr. Lemelson and Lemelson Capital Management~~Defendants~~ violated Advisers Act Section 206(4) and Rule 206(4)-8, which prohibit fraudulent, deceptive, or manipulative acts or practices to investors or potential investors in a pooled investment vehicle.[40]

---

[40] 17 C.F.R. § 275.206(4)-8 (2007); Amended Complaint (No. 33), ¶¶62-67 (This is the Second Claim for Relief in the Complaint).

**Instruction No. 10:   Advisers Act Section 206(4) & Rule 206(4)-8 – Elements**

To be liable under Advisers Act Section 206(4) and Rule 206(4)-8, Defendants Lemelson and Lemelson Capital Management must be investment advisers to a pooled investment vehicle. The parties do not dispute that Fr. Lemelson and Lemelson Capital Management~~Defendants~~ are investment advisers[41] and that they advise The Amvona Fund, a pooled investment vehicle.[42]

To prove that Fr. Lemelson and Lemelson Capital Management~~Defendants~~ violated Advisers Act Section 206(4) and Rule 206(4)-8, theSEC must show by a preponderance of the evidence that Fr. Lemelson and Lemelson Capital Management~~Defendants~~ did at least <u>one</u> of the

following:

(1)   made an untrue statement of a material fact or omitted a material

fact in a way that made their statements misleading, to an investor

or prospective investor in The Amvona Fund; or

(2)   engaged in an act, practice, or course of business that was

fraudulent, deceptive, or manipulative to an investor or prospective

investor in The Amvona Fund.[43]

An "untrue" statement is a statement of fact that is false or misleading when it is made.[44] As I explained to you earlier, a fact is "material" if it would have had some significance in a reasonable investor's decision-making process.[45]

An "omission of material fact" means leaving out a fact or facts, and, by doing so, making what was said materially misleading. This includes what are sometimes called "half-

---

[41] ECF No. 135 (Defendant's Response to Plaintiff's Statement of Undisputed Facts), ¶¶ 1-2.

[42] ECF No. 34 (Answer) ¶19 (admitting non-denied facts in ¶19).

[43] 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-8(a).

[44] 3B FEDERAL JURY PRACTICE AND INSTRUCTIONS §162:210 (6th ed. 2014).

[45] *Id.*

truths"—literally true statements that create a materially misleading impression.[46] In other words, if the speaker or author had included the omitted fact, then a listener or reader would not have been misled. If you find that the Commission has proved by a preponderance of the evidence that the statements Fr. Lemelson and Lemelson Capital Management ~~the Defendants~~ actually made are materially misleading because certain material facts were omitted, then you have found this element.[47]

~~To prove that Defendants violated Advisers Act Section 206(4) and Rule 206(4)-8, the SEC does not need to prove that Defendants acted with the intent to defraud, nor that they acted recklessly.  If you find Defendants acted with the intent to defraud or recklessly, that is sufficient for this violation, but it is not required. Instead, the SEC need only prove that Defendants acted negligently.[48]  I will now explain to you what that means.~~

---

[46] *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013); *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 57-58 (D. Mass. 2006).

[47] *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987); *SEC v. Druffner*, 353 F. Supp. 2d 141, 148 (D. Mass. 2005). *See also SEC v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996).

[48] *ZPR Inv. Mgt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017); *SEC v. Steadman*, 967 F.2d 638, 641 n.3 (D.C. Cir. 1992); *SEC v. Kingdom Legacy Gen. Partner, LLC*, 2017 WL 417093, *8 (M.D. Fla. Jan. 31, 2017); *SEC v. Nutmeg Grp. LLC*, 162 F. Supp. 3d 764, 775 (N.D. Ill. 2016); *Prohibition of Fraud by Advisers to Certain Pooled Inv. Vehicles*, SEC Release No. IA-2628, 2007 WL 2239114, *5 (Aug. 3, 2007).

**Instruction No. 11:   Negligence**

Negligence is different from "intent" and "recklessness," the states of mind I explained earlier.

"Negligence" is the failure to use ordinary care under the circumstances. "Ordinary care" is not an absolute term but a relative one.[49] "Ordinary care" is defined as the care which reasonably careful people use when managing their own affairs in order to avoid injury to themselves or their own property, or to avoid injury to other persons or their property.[50] In other words, negligence is doing something that a reasonably careful person would not do, or not doing something that a reasonably careful person would do, given the circumstances.[51]

In deciding whether ordinary care was exercised in a given case, you should view the conduct in light of all the circumstances. You may find that a defendant acted negligently about any of the alleged false or misleading statements or omissions, or in engaging in the alleged deceptive conduct, if you find that he failed to exercise ordinary or reasonable care or competence in making those statements or omissions, or in engaging in deceptive conduct.[52]

In determining whether Defendant Lemelson and Lemelson Capital Management were negligent, it is proper for you to consider whether they used reasonable care in obtaining and communicating information to their investors and prospective investors, and whether they carried out appropriate research or investigation before making statements to their investors andprospective investors.[53]

---

[49] 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS §120:11 (6th ed. 2014). *See also Fithian v. Reed*, 204 F.3d 306, 309 (1st Cir. 2000).

[50] 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS §120:10 (6th ed. 2014).

[51] 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS §120:03, p.277 (6th ed. 2014).

[52] *SEC v. Goldsworthy*, Civ A. No. 06-10012 JGD, 2008 WL 8901272, * (D. Mass. June 11, 2008) (explaining negligence standard of reasonably prudent person).

[53] *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013); *Loos v. Club Paris, LLC*, 684 F. Supp. 2d 1328, 1334 (M.D. Fla. 2010) (quoting *Malicki v. Doe,* 814 So.2d 347, 362 (Fla. 2002)); *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 914 (E.D. Mich. 2008).

**Instruction No. 12:   Evidence of State of Mind**

Each of the fraud claims I have just discussed contains a state of mind requirement. I want to explain a couple of points for you to consider when deliberating on state of mind.

First, Lemelson Capital Management is a corporation owned and controlled by ~~Defendant~~ Fr. Lemelson. Lemelson Capital Management can only act when ~~Defendant~~ Fr. Lemelson acts on its behalf. As a result, in determining whether Lemelson Capital Management acted with a certain state of mind, ~~Defendant~~ Fr. Lemelson's state of mind is the same as Lemelson Capital Management's state of mind.[54]

Second, the question of whether ~~Defendant~~ Fr. Lemelson and Lemelson Capital Managementacted with intent to defraud _and/or~~,~~_ with a high degree of recklessness~~, and/or with negligence~~ is a question of fact for you to determine, like any other fact question. A defendant's state of mind can be proven by either direct evidence or circumstantial evidence. You cannot look into ~~Defendant~~ Fr. Lemelson's head to see what he was thinking at some time in the past. Direct proof of state of mind is often not available, and it is not required. You may determine whether ~~Defendant~~ Fr. Lemelson acted intentionally _or~~,~~_ recklessly~~, or negligently~~ based on circumstantial evidence about his actions and the surrounding context, and based on any reasonable inferences that you may draw.[55]

---

[54] *In re Centennial Techs. Litig.*, 20 F. Supp. 2d 119, 126 (D. Mass. 1997); *SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1361-62(S.D. Fla., 2013); *SEC v. Elliot*, 2012 WL 2161647, *7 (S.D.N.Y. June 12, 2012).

[55] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 391 n.30 (1983) (circumstantial evidence can constitute proof of scienter in fraud cases); *SEC v. Johnson*, 174 F. App'x 111, 115 (3d Cir. 2006) (citing *Herman*); *SEC v. Constantin*, 939 F. Supp. 2d 288, 309 n.14 (S.D.N.Y. 2013) (same); *SEC v. Aqua Vie Beverage Corp.*, 2007 WL 1430765, *13 (D. Idaho May 14, 2007) (same); 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS § 162:232 (6th ed. 2014).

**Instruction No. 13:    SEC Not Required to Prove Reliance, Harm, or Loss Causation**

For the claims that I have just discussed, the SEC does not need to prove that any person actually relied on fraudulent statements by Defendants,[56] or that any person actually suffered any harm as a result of the alleged fraudulent conduct or statements.[57] In particular, the SEC need not prove that any investor acted in reliance on Defendants' allegedly false statements. Rather, as I explained earlier, the SEC needs to show that a reasonable investor would consider the allegedly false statement significant to their investing decision. The SEC is not required to prove that Defendants' conduct caused the price of Ligand's stock to fall.  The SEC only needs to prove that the allegedly false statements were material.

When you consider whether Defendants committed the fraud violations alleged by the SEC, you should not consider or speculate about whether his conduct caused economic harm or other harm to any other person.

---

[56] *Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. at 192; *SEC v. Tambone*, 597 F.3d 436, 447 n.9 (1st Cir. 2010); *SEC v. Esposito*, 2017 WL 1398318, *6 (D. Mass. Apr. 14, 2017); *SEC v. Forman*, 2008 WL 2704554, *2 n.3 (D. Mass. July 7, 2008); *see also SEC v. Morgan Keegan & Co.,* 678 F.3d 1233, 1244 (11th Cir. 2012).

[57] *Graham v. SEC*, 222 F.3d 994, 1001 n.15 (D.C. Cir. 2000); *SEC v. Cook*, 2015 WL 5022152, *17 (S.D. Ind. Aug. 24, 2015); *SEC v. Couch*, 2014 WL 7404127, *7 (N.D. Tex. Dec. 31, 2014); *In re Reserve Fund Sec. & Derivative Litig.*, 2012 WL 12354220, *1 (S.D.N.Y. Sept. 11, 2012); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003).

**Instruction No. 14:   Impeachment by Prior Inconsistent Statements**

You have heard evidence that at some earlier time, a witness has said or done something that counsel contends conflicts with the witness's trial testimony. A prior inconsistent statement made by a witness in this trial is not evidence you should consider in determining whether the SEC has proven its case. The prior inconsistent statement was placed before you solely to attack the credibility of the witness. If you find that a witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.[58] But a prior inconsistent statement made by ~~Defendant~~ Fr. Lemelson <u>is</u> evidence if that statement was offered by the SEC.  You may consider such statements for any purpose, including assessing the credibility of ~~Defendant~~ Fr. Lemelson as a witness.

In determining a witness's credibility, you may consider whether there was, in fact, any inconsistency; whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that inconsistency appeals to your common sense. You should keep in mind that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood. The significance of that may depend on whether the misstatement has to do with an important fact or only an unimportant

---

[58] *Snyder v. Wells Fargo Bank*, 11-cv-4496 (S.D.N.Y. Oct. 1, 2013) (Scheindlin, J.) (Jury Charge), ECF No. 121, p. 878-79.

detail. It is your duty, based on all the evidence and your own good judgment, to decide how much weight to give to the inconsistency.[59]

---

[59] *Id.*

**Instruction No. 15:   Jury Should Not Consider Potential Remedies or Sanctions**

You are to determine only whether Fr. Lemelson and Lemelson Capital ManagementDefendants violated the federal securities laws as I have described them to you. This is not the kind of case in which the jury decides what damagesor other legal relief the plaintiff would be entitled to. If you find that Fr. Lemelson and Lemelson Capital ManagementDefendants violated the federal securities laws, it will be my job to determine what the appropriate remedies or sanctionsshould be.      When you consider whether Fr. Lemelson and Lemelson Capital Management Defendants committed any of the violations alleged bythe SEC, you should not consider or speculate about what kind of remedies or sanctions I might impose.[60]

---

[60] *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) (citing *Tull v. United States,* 481 U.S. 412, 425 (1987)); *SEC v. Ehrenkrantz King Nussbaum, Inc.*, 2012 WL 893917, *16 (E.D.N.Y. Mar. 15, 2012); *SEC v. Badian*, 822 F. Supp. 2d 352, 365 (S.D.N.Y. 2011); *SEC v. Conaway*, 695 F. Supp. 2d 534, 548 (E.D. Mich. 2010); *SEC v. Castaldo*, 2009 WL 2591376, *1 (S.D.N.Y. Aug. 19, 2009).