UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE STATEMENTS CHALLENGED IN THE COMPLAINT WERE OPINIONS (ECF No. 161)**

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP submit this opposition to Plaintiff, Securities and Exchange Commission's (the "Commission") motion *in limine* to exclude evidence or argument that the statements challenged in the complaint were opinions (ECF No. 161).

**INTRODUCTION**

The Commission's motion *in limine* should be denied. First, the Commission mischaracterizes the Court's decision on summary judgment in an effort to improperly convert a denial of Defendants' motion for summary judgment on First Amendment grounds into an affirmative ruling on its behalf, despite the fact that the Commission did not move for summary judgment on Defendants' First Amendment defense, as it did with respect to Defendants'

selective enforcement defense. The Court's decision clearly contemplated that the jury would determine the First Amendment issues.

Second, the reason the Commission did not move for summary judgment on First Amendment grounds seems clear. Because Defendants' reports "cannot reasonably be interpreted to suggest that [Defendants] had access to information about [Ligand and Viking] that was not accessible to others," well-settled law in the First Circuit renders the second, third, and fourth challenged statements non-actionable under the First Amendment.

## ARGUMENT

I. **The Commission's Argument Mischaracterizes this Court's Summary Judgment Decision in an Attempt to Improperly Convert a Denial of Defendants' Summary Judgment Motion into an Affirmative Ruling on Its Behalf.**

The Commission's position—effectively that the Court granted *it* summary judgment on Defendants' First Amendment defense—is belied by the very quotes from the Court's decision on which it purports to rely, which make clear that the Court did not intend to take the First Amendment query out of the jury's hands. For example, contrary to the Commission's argument, with respect to the first two challenged statements, the Court found:

- "Lemelson's statement characterized a past 'actual happening' … and *may* therefore be construed to characterize a statement of fact, not an opinion." ECF No. 146 at 24 (emphasis added).

- "This unqualified assertion that the financial statements provided on the S1 are unaudited cannot reasonably be construed as an opinion *at this juncture*. ECF No. 146 at 25 (emphasis added).

Further, the Commission's partial quotation of the Court's ruling related to the fourth challenged statement is especially disingenuous and misleading. In arguing that the Court decided that Defendants' statement regarding Fr. Emmanuel's calculation of Ligand's debt-to-tangible-equity ratio was a statement of fact, not opinion, the Commission quotes the Court's decision as follows: "the overarching problem [is] that Lemelson falsely described Ligand as

2

'insolvent' on the basis of his calculations." ECF No. 146 at 20.[1]  The Commission fails to mention, however, that this quote was taken from the section of the Court's opinion addressing *materiality*, not the First Amendment.  Indeed, in its First Amendment discussion with respect to this statement, the Court held that it should be resolved by the jury, stating, "this issue involves a fact dispute."  ECF No. 146 at 26.  In short, the Court's finding that Defendants failed to prove, as a matter of law, that the statement was immaterial is a far cry from a finding, as a matter of law, that the statement was not an opinion.

Although the Court's discussion of the third challenged statement (Defendants' assertion, based on Viking's S-1, which Defendants expressly sourced, that Viking did not intend to conduct preclinical studies or clinical trials) does not contain as clear language as it does with respect to the other three challenged statements, nothing in the opinion indicates that the Court intended to grant summary judgment to the Commission related to Defendants' First Amendment defenses.

In addition to its more general argument, the Commission also asserts that Defendants should be precluded from making any argument concerning the disclaimers in Defendants' reports—which, among other things, state that the reports contain statements of opinion, not fact.  The Commission's argument has no merit.  Based on a conspicuously incomplete quote and with the aid of an extremely creative use of ellipses, the Commission argues that Defendants should not be allowed to argue that the disclaimers in the report provide them any protection.  The Commission quotes the Court's summary judgment decision as follows: "Lemelson's statements

---

[1] To the extent this selected quote gives the incorrect impression that the Court has determined that the statement was false, the broader context of the decision makes clear that the Court acknowledged there was a factual dispute regarding the veracity of this statement.  *See* ECF No. 146 at 22-23 (discussing the existence of factual disputes regarding whether Defendants were "aware of the risk that [their] statements about Viking and Ligand's alleged insolvency could mislead investors"); ECF No. 146 at 26 (noting factual dispute regarding truthfulness of Defendants' statement regarding Ligand's insolvency when tangible equity removed).

regarding … the status of his reports as opinion commentary are not specific enough to immunize him…" ECF No. 161 at 4.  This partial quote is wildly misleading.  The full quote from the Court's opinion states:

- Lemelson's statements regarding his short position and the status of his reports as opinion commentary are not specific enough in light of the alleged misstatements of fact to immunize him against a finding of materiality as a matter of law.  ECF No. 146 at 19.

Again, the Court's holding that the disclaimers were inadequate as a matter of law to establish immateriality is not the equivalent of finding, as a matter of law, that the statements were facts. Indeed, there cannot be any serious dispute that cautionary language, like Defendants' disclaimers here, *is* relevant to a determination of whether a statement is a fact or opinion.  *See Hi-Tech Pharmaceuticals, Inc. v. Cohen*, 277 F. Supp. 3d 236, 244 (D. Mass. 2016) ("Whether a statement constitutes fact or opinion depends on the totality of the circumstances, including 'all the words used,' any '**cautionary terms used by the person publishing the statement**,' and 'the medium by which the statement is disseminated and the audience to which it is published'") (quoting *Cole v. Westinghouse Broadcasting Co.*, 386 Mass. 303, 309 (1982)) (emphasis added).

The Commission's best case is that the statements fall within the category of statements that "'could have been understood by the average reader in either sense,'" *i.e.* fact or opinion, and therefore "'the issue must be left to the jury's determination.'"  *Hi-Tech Pharmaceuticals, Inc.*, 277 F. Supp. 3d at 244 (quoting *Lyons v. New Mass Media, Inc.*, 390 Mass. 51, 59 (1983)).

II. **Because Defendants Provided the Entire Factual Basis for Three of the Challenged Statements, and did not Imply that They had Specific Knowledge of Facts not Available to the Reader, First Circuit Precedent Bars any Claims Based on Those Statements Under the First Amendment.**

As set forth above, contrary to the Commission's argument, the Court's summary judgment decision did not conclude, as a matter of law, that the four challenged statements deserve no First Amendment protection.  For the reasons set forth in the Court's decision,

4

whether the first challenged statement (based on an oral conversation Fr. Emmanuel had with Ligand's investor relations firm) deserves First Amendment protection involves a fact issue that should be decided by the jury.

The second, third, and fourth challenged statements, however, stand on different footing, and to the extent the Commission gets its wish, and the Court decides the First Amendment issue concerning these statements before trial, they should be dismissed. Well-settled and controlling First Circuit case law demonstrates that the First Amendment bars any claim arising from these statements, because Defendants provided the factual basis underlying the challenged statements and, most critically, did not lead readers of the reports to believe that Defendants had information about Ligand/Viking that was not available to others. *See, e.g., Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730 (1st Cir. 1992); *McKee v. Cosby*, 874 F.3d 54, 63-64 (1st Cir. 2017); *Piccone v. Bartels,* 785 F.3d 766, 771-72 (1st Cir. 2015); *Riley v. Harr*, 292 F.3d 282, 289-90 (1st Cir. 2002). *See also Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 360-61 (D. Mass. 2017).

As this Court recognized in its summary judgment decision, "[w]hen determining whether a statement is opinion or fact, 'the relevant question is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact.'" ECF No. 146 at 23 (quoting *Phantom Touring*, 953 F.2d at 727). "A statement, even if 'couch[ed] . . . as an opinion,' will give rise to liability if it 'implies the existence of underlying [false and] defamatory facts' as its basis; **conversely, a statement is 'immunize[d]' so long as the speaker discloses all of the facts undergirding it and none of them are both false and defamatory**." *McKee v. Cosby*, 874 F.3d at 61 (quoting *Piccone*, 785 F.3d at 771) (alterations and omissions in original) (emphasis added).

In *Phantom Touring*, the earliest of the multiple First Circuit decisions directly on point, the court started its analysis by analyzing the *nature* of the series of articles as a whole, not just the challenged statements in isolation. 953 F.2d at 729; *accord McKee*, 874 F.3d at 62 ("We focus first on the message of the [defamatory letter] as a whole, before considering individual statements"); *Piccone*, 785 F.3d at 772 ("This task *requires* an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and *any cautionary terms used by the person publishing the statement*") (emphasis added). Here, such an initial analysis clearly militates in favor of First Amendment protection. The reports contain express disclaimers at the beginning and the end, letting the reader know both that the contents reflect the *opinions* of Defendants and, of equal importance, that Defendants were *short* Ligand. While not dispositive in and of itself, such language plainly puts the reader on notice of Defendants' intent. *See Phantom Touring*, 953 F.2d at 729 ("The nonfactual nature of Kelly's articles is indicated at first glance by the format. Both appeared as a regularly run theater column, a type of article generally known to contain more opinionated writing than the typical news report").

Defendants' reports here are also chock full of hyperbole and colorful language, further telltale signs of the type of writing that is immunized by the First Amendment. *See, e.g.,* July 3, 2014 Report, ECF No. 127-15 at 9 ("The casual observer might even mistake what Ligand leadership has coined a 'creative transaction' as a common game of three-card Monte, played on the street corner—shills included"). *See Riley*, 292 F.3d at 297 ("The First Amendment protects the rhetorical hyperbole and imaginative expression that enlivens writers' prose.") (internal quotations omitted).

6

To the extent any doubt remains, such doubt is easily put to rest by Defendants having *repeatedly* **quoted Ligand personnel and others who disagreed with Defendants' views and expressly sourcing the basis for Defendants' position**. "Of greatest importance, however, is the breadth of Kelly's articles, which not only discussed all the facts underlying his views but also gave information form which readers might draw contrary conclusions." *Phantom Touring*, 953 F.2d at 730. The same holds true here. For example, with respect to the two challenged statements concerning Viking, in its report, Defendants quoted Ligand's CEO, John Higgins, concerning the *company's* perspective on its disputed business relationship with Viking as follows:

- A relationship such as this one with Viking gives Ligand the opportunity to entrust valuable internal programs to a dedicated team with the operational resources to take them to the next level.

- This is a creative transaction that establishes a bold portfolio of early- and mid-stage assets that have the potential to generate substantial news flows.

ECF No. 127-15 at 7. Moreover, in the same report, Defendants pointed out that other analysts disagreed with his commentary on Ligand. Defendants quoted another analyst as having referred to his initial report on Ligand as "silly" and "foolish." ECF No. 127-15 at 6.

Further, Defendants discussed—*and expressly sourced*—"the facts underlying [their] views." *Phantom Touring*, 953 F.2d at 730. The July 3 report makes clear that Fr. Emmanuel's *entire* understanding of Viking came from having read the company's recently publicly filed S-1 registration statement, a document Defendants cited no fewer than four times in their three-page discussion of that company.

Likewise, with respect to the fourth challenged statement concerning insolvency, Defendants expressly provided their definition of the term as it relates to Ligand and the underlying source from which it derived the numbers:

7

> On August 4, 2014, Ligand released their Q2 earnings report and financial statements in which the company boasted it was debt free. Prior to this August 4 release, ***the company's liabilities exceeded tangible assets, meaning the company was insolvent.*** With the August 4, 2014 earnings release and its updated financials, the company presented tangible equity of just $21,000 upon which rested an extraordinary market capitalization of approximately $1.1 billion.

ECF No. 127-23 at 2. Notably, in their first report, Defendants explained the *reason* behind their *opinion* that Ligand's intangible assets were not worth much.

> The balance sheet is ~66 percent intangibles. Once removed, the Company has just about minus $4 million in equity. This point is important since management boasted recently of 'doubling' shareholder equity. If there was any appreciable evidence that the Company's existing programs were likely to produce materially higher revenues or profits in the future, the intangible entry might have some value. But as it stands today, it is just padding the balance sheet to disguise just how precarious the Company's financial situation continues to be.

ECF No. 127-6 at 21.

Under these circumstances, the First Circuit has *repeatedly* held that statements like the ones the Commission challenges here, which were accompanied by the factual basis underlying them, are ***absolutely*** protected by the First Amendment. *Phantom Touring*, 953 F.2d at 729-31 (holding full disclosure of facts underlying author's judgment rendered statement that plaintiff was "marketing its production dishonestly—that it deliberately was confusing the public" not actionable because neither of the columns indicated that the author had more information about the marketing practices than what was reported in the articles); *Riley v. Harr*, 292 F.3d at 297-98 (statement that plaintiff was "the guy who killed your kids" not actionable where author disclosed the facts upon which statement was based); *McKee*, 874 F.3d at 63-64 (holding statement that plaintiff's rape allegations against comedian Bill Cosby were false was not actionable because the letter containing the statement was "based on facts accessible to everyone," and therefore "a reasonable reader would not understand [the author] to be suggesting that he was singularly capable of evaluating [plaintiff's] credibility based on undisclosed

evidence"); *Piccone*, 785 F.3d at 773-74 (holding statement that was "sufficiently factual to be proved true or false" was nonetheless not actionable, because "full disclosure of the non-defamatory facts" did not imply that "only one conclusion was possible").

## **CONCLUSION**

Because the Court did not rule, as a matter of law, that the four challenged statements are not protected by the First Amendment, Defendants respectfully request that this Court deny Plaintiff's motion *in limine* to exclude evidence or argument that the statements challenged in the complaint were opinions (ECF No. 161) and permit the jury to determine the issue. Should the Court agree with the Commission that it should make a ruling as a matter of law on the issue, well-settled First Circuit precedent requires the dismissal of the second, third, and fourth challenged statements.

Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated:  October 13, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 13, 2021.

                                            */s/ Douglas S. Brooks*
                                            Douglas S. Brooks