UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE IRRELEVANT EVIDENCE AND ARGUMENT (ECF No. 184)**

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP submit this opposition to Plaintiff, Securities and Exchange Commission's (the "Commission") motion *in limine* to exclude "irrelevant" evidence and argument (ECF No. 184).

The Commission's motion *in limine* to exclude "irrelevant" evidence and argument overlaps significantly with its motion *in limine* to exclude evidence and arguments about rejected selective enforcement defense (ECF No. 159). In the interest of efficiency, Defendants briefly address the overlapping categories of evidence at issue and incorporate by reference Defendants' arguments in response to ECF No. 159, and concentrate on the remaining categories of evidence at issue.

I.  **Categories of Evidence Overlapping with the Commission's Motion *in Limine* to Exclude Evidence and Arguments about Rejected Selective Enforcement Defense (ECF No. 159)**

As discussed in more detail in their opposition to ECF No. 159, Defendants take the positions described below on the following categories of evidence:

**Ligand Presentations to the Commission** – These presentations are critical to issues including materiality, Ligand witness bias, and this Court acknowledged that certain arguments regarding these presentations would be proper trial argument that "may win the point" but were premature for purposes of summary judgment. Therefore, these documents are highly relevant, despite the Commission's unsupported assertions to the contrary, and they should be admitted.

**Communications between Ligand and Commission Staff** – This category of evidence is highly probative of Ligand's bias, as it demonstrates the efforts Ligand made to convince the Commission to open an investigation and pursue an enforcement action. Evidence of witness bias is always relevant.

**Alleged Leaks to Press** – This category of evidence is related to the communications between Ligand and Commission staff and, as the Court commented during the summary judgment hearing, there is a strong inference that Ligand was responsible for the leak of the investigation to the media. This is directly relevant to Ligand's bias and should be admitted.

**Selective Enforcement** – This category entirely overlaps with the Commission's motion *in limine* filed at ECF No. 159. However, for purposes of clarity, while Defendants reserve the right to call Mr. Becker, they intend to merely designate his deposition testimony on the targeted topics of the Commission's allegations regarding the debt-to-tangible-equity ratio statement and the history of communications between Ligand and the Commission.

**Executive Compensation** – As stated in their response to ECF No. 159, Defendants note that evidence of financial bias has been consistently held to be relevant and excluding it has been

2

deemed error by the First Circuit. *See Crowe v. Bolduc*, 334 F.3d 124, 131-32 (1st Cir. 2003) (finding trial court committed error of law by excluding evidence of witnesses' contingent fee agreement with party as that was proper line of cross-examination that witness "might color his testimony due to financial incentives"); *Wheeler v. United States*, 351 F.2d 946, 947 (1st Cir. 1965) (finding it is "clear that inquiry into the possible financial stake of a witness in a particular outcome of a case in which the witness is testifying is a proper subject for cross-examination" and reversing conviction based on trial court's limited cross-examination on financial motive). The Commission attempts to exaggerate the importance and scope of this evidence by stating there are 70-80 exhibits on this matter and thus "it seems to be a big part of his defense." ECF No. 184 at 2. However, the number of exhibits is merely a function of how this data is filed publicly and Defendants plan to prepare a summary of this data pursuant to Fed. R. Evid. 1006. Defendants certainly will not be introducing each of these exhibits individually nor spending an inordinate amount of time on this topic.

**Whistleblower Complaints** – As stated in their response to ECF No. 159, Defendants will withdraw these documents as affirmative exhibits, but reserve the right to present them in rebuttal if the Commission opens the door to these topics at trial.

II.   **Categories of Evidence Not Previously Addressed in Overlapping Motions *in Limine***

With regard to the remaining categories of evidence,[1] Defendants state as follows:

---

[1] Defendants do not plan to affirmatively present evidence of drug pricing under the Orphan Drug Act or Ligand's association with Martin Shkreli. However, Defendants reserve the right to pursue this evidence if the Commission opens the door to these topics.

3

**Alleged Errors in the Complaint** – The errors in the Complaint and Amended Complaint are relevant to the communications between Ligand and the Commission. One of the allegations in the original Complaint was taken nearly verbatim from one of Ligand's presentations. That allegation was false and unsupported, requiring the Commission to file an Amended Complaint. This is relevant, and Defendants should be permitted to present this evidence to the jury.

In addition, the Commission is accusing Fr. Emmanuel of engaging in fraud and arguing that four statements Fr. Emmanuel made from his five reports and four interviews were intentionally false and misleading. Defendants should be allowed to show the jury that the same agency making these accusations against Defendants, made a litany of mistakes on their own, including quoting the non-public draft versions of Defendants' reports, making allegations of Ligand's ownership of Viking that were patently false, and making assertions about Ligand's intellectual property inconsistent with Ligand's own public filings. Defendants have a right to point out these errors to show the connection between the Commission's allegations and information received from Ligand, and as a compelling example that an alleged error or ambiguity about analyzing complicated financial statements and a broad array of facts about a large company does not necessarily equate with an intent to deceive.

Finally, while the Commission states, incredibly, that its Amended Complaint fixed the errors in the original complaint, that is simply not true. Substantially all of the errors were copied, despite Defendants pointing those errors out to the Commission after the original Complaint was filed and before the Amended Complaint was filed. Perhaps most troubling, the allegation that proceeds from the debt should have been included in the tangible equity calculation remains in the Amended Complaint (ECF No. 33 at ¶ 52), with the Commission

going so far as stating in a subsequently filed motion for protective order that, "[t]he Commission stands by this allegation…" ECF No. 41 at 5-6 n.2.

**Other Analyst Reports** – Defendants have identified as potential trial exhibits three analyst reports that questioned the value of Ligand before or during the time of the alleged false statements in this case. Defendants have not included the six additional negative reports that were published subsequent to October 2014. The three reports are relevant to Fr. Emmanuel's good-faith belief in his position. Additionally, Defendants reasonably anticipate that witnesses from Ligand are going to attempt to testify about the positive aspects of Ligand at the time and its financial condition in 2014. Additional reports criticizing the company are relevant to balance this testimony.

**Federal Reserve Report** – Likewise, the Federal Reserve Report included statements by then-Chair of the Federal Reserve, Janet Yellen, about the valuation of stocks being "substantially stretched." This evidence, like the analyst reports, is relevant to Fr. Emmanuel's good-faith belief in his position and to counter the anticipated testimony of Ligand witnesses about Ligand's value. Moreover, there are internal emails in which Ligand's own witnesses identify Ms. Yellen's comments as the potential reason for Ligand's stock price decline, which is directly relevant to the element of materiality. This is relevant, and Defendants should be permitted to present this evidence.

**Ligand's Counsel Monitoring Defendants' Public Statements about Ligand** – The Commission's characterization of the evidence Defendants seek to introduce is an improper effort to ameliorate the dishonest conduct of Ligand's counsel. Ligand was not simply "monitoring" public statements. *One of Ligand's attorneys misrepresented himself in writing as a potential private investor, using his personal email address and phone number instead of*

5

***his business email address and phone number, to gain access to a private Lemelson Capital Management investor call***.  There was no basis for Ligand's counsel to believe Fr. Emmanuel would be discussing Ligand during the private investor call, which he did not.  Instead, Ligand's counsel's actions clearly were an effort to continue to surveil and harass Fr. Emmanuel.  The fact that Ligand and its counsel would go to such lengths to surreptitiously listen to Defendants' private investor calls more than seven years after the challenged statements and more than three years after the Commission filed the Complaint is directly relevant to bias.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion *in limine* to exclude "irrelevant" evidence and argument (ECF No. 184), which is largely duplicative of the Commission's other motions *in limine* and in actuality is seeking to exclude relevant argument and evidence about the bias of Ligand witnesses and Defendants' good faith.

 

Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated:  October 13, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 13, 2021.

*/s/ Douglas S. Brooks*
Douglas S. Brooks