UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> GREGORY LEMELSON and LEMELSON CAPITAL ) <br> MANAGEMENT, LLC, ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> THE AMVONA FUND, LP, ) <br> ) <br> Relief Defendant ) <br> ) | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PROPOSED
JURY INSTRUCTION ON NEGLIGENCE**

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP submit the following supplemental authority in opposition to the Plaintiff, Securities and Exchange Commission's (the "Commission") proposed jury instruction on its Investment Advisers Act claim. ECF No. 168 at 20-21.

**The Commission Failed to Plead the Theory it Now Espouses**

"A fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995). Here, at the eleventh hour, the Commission has stated *for the first time* that its theory for the Investment Advisers Act ("IAA") claim is that if any of the four alleged misstatements was made

1

negligently, then it can serve as the basis for a violation of Section 206(4) of the IAA and Rule 206(4)-8. **This is the very definition of unfair surprise**.

Indeed, this is *not* how the claim was pled in the Amended Complaint. The Commission's IAA allegations were premised on the distribution of Defendants' analysis of Ligand to investors and prospective investors without "disclos[ing] that the profitability of their short-selling strategy depended upon Lemelson's ***fraudulent manipulation of Ligand stock through false statements***, rather than his ability to identify a company whose stock would decrease on its own based on its inherent lack of value." ECF No. 33 at ¶¶ 55-56 (emphasis added). The Commission alleged that this "omission also made other disclosures about Amvona's value-focused investing strategy materially false and misleading." ECF No. 33 at ¶ 56. ***In other words, as pled in the Amended Complaint, the Commission's IAA claim was premised entirely on the existence of liability for violations of Rule 10b-5 (i.e. there could be no 206(4) violation unless there was a Rule 10b-5 violation)***.

Notably, in both their Motion to Dismiss, ECF No. 11 at 19-20, and Motion for Summary Judgment, ECF No. 125 at 34, Defendants noted that the Commission's IAA claim was based on finding a Rule 10b-5 violation. ***The Commission did not disagree with that characterization in its response to either motion***. Indeed, in its opposition to summary judgment, the Commission seemingly affirmed it, stating "[t]he Commission easily makes this showing through emails from Lemelson to prospective investors attaching and highlighting the reports containing the misleading statements discussed above, and his touting of his results ***without disclosing that those results were, at least in part, the product of misleading factual statements designed to drive down the price of Ligand stock***." ECF No. 131 at 29.

2

The Commission should be bound by these allegations. Accordingly, if the jury finds that Defendants did not violate Rule 10b-5, Defendants simply cannot be liable for omitting to inform investors that they violated Rule 10b-5 as there is no duty to disclose something that was not true. *See In re Neurontin Marketing, Sales Practices and Products Liability Litigation*, 618 F. Supp. 2d 96, 109) (D. Mass. 2009) (Saris, J.) ("'[T]here can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose.'") (quoting *Royal Bus. Group, Inc. v. Realist, Inc.*, 933 D.2d 1056, 1064 (1st Cir. 1991)).

Alternatively, if the jury finds a Rule 10b-5 violation, then the Commission has failed to allege any conduct that could plausibly be committed negligently. It makes no sense that Defendants knowingly committed a fraud, while at the same time negligently failed to admit to committing that same fraud. Where the allegations could not possibly have been committed negligently, a negligence instruction is improper. *See Williams v. City of Boston*, 10-10131-PBS, 2012 WL 5829124, at *13 (D. Mass. Sept. 21, 2012) (Saris, J.) (determining that allegations of police officers concocting false reports and lying under oath were intentional acts and "not due to any negligence," thus municipality could not be liable under statute that only permitted liability for negligence); *Milcent v. City of Boston*, 2016 WL 845303, at *4 (D. Mass. Feb. 29, 2016) (dismissing claim requiring negligence and reasoning that despite allegations labeling conduct in complaint as "negligent," the allegations "simply have no force where the individual charges … eschew any suggestion of negligence and allege only intentional torts."); *Liu v. Striuli*, 36 F. Supp. 2d 452, 480 (D.R.I. 1999) (holding plaintiff "cannot maintain a cause of action based in negligence when the theory of her case and the entirety of the facts that she has marshaled in her support lead to the conclusion that if [plaintiff] is correct, [defendant] committed intentional acts").

## The Commission's Novel Theory is Nonsensical as the IAA Claim Requires any Alleged Misstatement be Material and Misleading to Investors and <u>Potential Investors of the Amvona Fund, Not Ligand</u>

Contrary to the Commission's recent statements in Court, the IAA claim cannot be construed as something akin to a "lesser included offense" (here, the lower negligence standard) to their 10b-5 claims based on the four challenged statements, because the IAA claim applies only *to investors in the Amvona Fund*, not Ligand investors.  The Final Rule 206(4)-8, as announced by the Commission itself, stated this limitation clearly and repeatedly.  "The rule prohibits advisers from (i) making false or misleading statements **to investors or prospective investors in hedge funds and other pooled investment vehicles they advise**, or (ii) otherwise defrauding **these investors**."  72 Fed. Reg. 44756, 44757 (Aug. 9, 2007) (emphasis added). Similarly, the Commission stated "[t]he rule we are adopting today applies to investment advisers **with respect to any 'pooled investment vehicle' they advise**."  72 Fed. Reg. 44756, 44758 (emphasis added).  "Rule 206(4)-8(a)(1) prohibits any investment adviser to a pooled investment vehicle from making an untrue statement of a material fact **to any investor or prospective investor in the pooled investment vehicle**, or omitting to state a material fact necessary in order to make the statements made **to any investor or prospective investor in the pooled investment vehicle**, in the light of the circumstances under which they were made, not misleading."  72 Fed. Reg. 44756, 44758-59 (emphasis added).

"The IAA requires that the plaintiff establish: (1) that the defendant is an investment adviser; (2) who used the mails or another instrumentality of interstate commerce;  (3) to make a misstatement or omission to a client; (4) that was material; and (5) the defendant acted negligently in so doing." *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 292–93 (E.D. Va. 2004). *See also,* 15 U.S.C. § 80b-6(4)-8; 17 C.F.R. § 275.206(4)-8.  The Final Rule concerning 206(4)-8 provides five examples the SEC intended the rule to prohibit: (1) "the experience and

credentials of the adviser (or its associated persons)"; (2) "the risks associated with an investment in the pool"; (3) "the performance of the pool or other funds advised by the adviser"; (4) "the valuation of the pool or investor accounts in it"; and (5) "practices the adviser follows in the operation of its advisory business such as how the adviser allocates investment opportunities." 72 Fed. Reg. 44756, 44759 (Aug. 9, 2007).  While not exhaustive, these examples nonetheless make clear that 206(4)-8 was intended to target misleading statements that fund managers make about the fund or the manager himself—and not to punish a fund manager's statements concerning a publicly traded stock.  Clearly, Rule 206(4)-8 was not designed to cover the alleged conduct at issue in this case.

Even if allowed to stand here, however, the Commission's claim fails as a matter of law based on the evidence.  Under the Commission's negligence theory, the Commission would need to prove that the four alleged misstatements were made negligently and that an investor or potential investor *in the Amvona Fund* would find the fact that Fr. Lemelson made an allegedly negligent statement concerning Ligand in one of his five reports (totaling over 55 pages) and four interviews, material to their decision to invest, not invest, or continue their investment *with the Amvona Fund*.  This would read all meaning out of the materiality requirement.

For the foregoing reasons, Defendants request that this Court not instruct on the Commission's unpled negligence theory.

If, however, the Court is going to provide an instruction, Defendants propose the below instruction that is aimed to emphasize that this claim must be evaluated from the perspective of an investor to the Amvona Fund.

**Proposed Jury Instruction on IAA Claim**

The SEC's second claim is asserted against Fr. Lemelson under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.

This claim applies to investors of the Amvona Fund, not Ligand.

The parties have agreed that Fr. Lemelson was an investment adviser.

In order to meet its burden of proving that Fr. Lemelson and Lemelson Capital Management violated Section 206(4) of the Investment Advisers Act and Rule 206(4)-8, the SEC must establish by a preponderance of the evidence that Fr. Lemelson:

(1) Made an untrue statement of a material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading;

(2) To an investor or prospective investor in the Amvona Fund.

An untrue statement of material fact is any false statement regarding something that would have been significant to a reasonable investor's investment decisions. Again, for this claim, it must relate to an investor in the Amvona Fund, not a Ligand investor. The same standard for determining materiality in the context of Rule 10b-5 (discussed earlier) applies to determining materiality for Investment Adviser Act claims. Material information is not any and all additional information that a particular investor or potential investor in the Amvona Fund might have liked to have had. It is not sufficient that a particular investor or potential investor in the Amvona Fund might have considered the misrepresentation or omission important, or something that he or she would have preferred to have known. Insignificant or trivial misstatements are not material. Stated another way, the mere fact that an investor or potential

investor in the Amvona Fund might find information interesting or desirable is not sufficient to make it material.

Rather, in considering whether an allegedly untrue statement was material, you must determine whether such statement would have significantly altered the total mix of information available to a reasonable investor or potential investor in the Amvona Fund. There is no bright line test for materiality. Whether or not an alleged untrue statement or misleading omission is material depends on all of the relevant circumstances existing at the time the statements were made.

If you find any misstatement was made by Fr. Lemelson that was material to an investor or potential investor in the Amvona Fund, then you must next determine whether it was done intentionally, recklessly, or negligently. I have defined intentional and reckless for you before. Negligence is defined as the failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court not provide a negligence instruction to the IAA claim as it does not fit the theory pled by the Commission or, in the alternative provide an instruction similar to the draft contained herein that emphasizes the materiality applies to investors of the Amvona Fund for the IAA claim and not investors in Ligand.

                                                             Respectfully Submitted,

                                                             REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated: November 2, 2021


## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on November 2, 2021.

                                                                 */s/ Douglas S. Brooks*

                                                                 Douglas S. Brooks