UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff <br><br> v. <br><br> GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC, <br><br> Defendants, <br><br> and <br><br> THE AMVONA FUND, LP, <br><br> Relief Defendant | Civil Action No. 1:18-cv-11926-PBS |

**DEFENDANTS' RESPONSE TO COMMISSION'S SUBMISSION (ECF No. 223)**

Defendants Father Emmanuel Lemelson (f/k/a Gregory Lemelson), Lemelson Capital Management LLC, and the Amvona Fund LP submit the following response to the Plaintiff, Securities and Exchange Commission's (the "Commission") filing regarding jury instructions and in support of the Commission's proposed verdict form.

**I.    Good Faith Instruction**

As the Court indicated it would be providing a good faith instruction, Defendants will just briefly provide the following citations to further support the appropriateness of such an instruction. "It is undisputed that good faith is a defense to scienter in actions for securities fraud." *Backman v. Polaroid Corp.,* 893 F.2d 1405, 1418 (1st Cir. 1990) (holding it was reversible error for trial court to fail to instruct jury on good faith defense for scienter in Rule 10b-5 action). *See also*, *Paraflon Invs., Ltd. v. Fullbridge, Inc.*, No. CV 16-12436-RGS, 2019

WL 3759522, at *9 (D. Mass. Aug. 9, 2019), *aff'd*, 960 F.3d 17 (1st Cir. 2020) ("Good faith, however, is a defense to scienter because "defendant[s] cannot intend to deceive if [they] acted in good faith"); *Hoffman v. Estabrook & Co.*, 587 F.2d 509, 513 (1st Cir. 1978) (stating it would be "manifestly incorrect" to rule that "good faith" was not a defense to an action for securities fraud).

> Further, good faith applies to the recklessness standard under Rule 10b-5 claims as well:
>
> The existence of a good-faith defense, however, is not necessarily implicit in any instruction as to reckless deception. It is possible for a defendant to be objectively reckless—to disregard a danger that would be obvious to the ordinary person—and still act in subjective good faith. Even in such instances, the legislative history of Section 10(b) supports the conclusion that subjective good faith is still a defense. As the Seventh Circuit stated in *Sundstrand*, "if a trial judge found, for example, that a defendant genuinely forgot to disclose information or that it never came to his mind, etc., this ... would defeat a finding of recklessness even though the proverbial 'reasonable man' would never have forgotten." *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d at 1045 n. 20. Because the concept of a subjective good faith defense cannot be said to be implicit in any jury instruction that merely defines recklessness, we hold that it was error for the trial judge not to have instructed the jury explicitly on the good-faith defense.

*Backman*, 893 F.2d at 1418. *See also, Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to be made liable [under 10b] for such practices unless he acted *other than in good faith*").

## II.     First Amendment Instruction

The Commission states that there is no authority for the instruction that "the First Amendment even protects false opinions when the bases for those opinions are disclosed." Defendants' Proposed Jury Instructions, ECF No. 176 at 41.  That is inaccurate.  This is supported by *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 731 n.13 (1st Cir. 1992), as cited in the proposed jury instructions.  Additional support for this proposition can be found in First Circuit precedent analyzing the First Amendment post-*Omnicare*.  *See McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) (quoting *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir.

2

2015)) ("A statement, even if 'couch[ed] . . . as an opinion,' will give rise to liability if it 'implies the existence of underlying [false and] defamatory facts' as its basis; ***conversely, a statement is 'immunize[d]' so long as the speaker discloses all of the facts undergirding it and none of them are both false and defamatory***."); *Piccone*, 785 F.3d at 773-74 (holding statement that was "sufficiently factual to be proved true or false" was nonetheless not actionable, because "full disclosure of the non-defamatory facts" did not imply that "only one conclusion was possible"); *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 362 (D. Mass. 2017) ("by providing, and even directly linking to, the relevant information on which [defendant] draws his conclusion, he made it clear that he was expressing his own interpretation of those facts and inviting his readers to come to their own conclusions").

  The Commission then argues, without citing to any legal authority and in direct contrast to the First Circuit case law cited above, that a citation to the basis of the statement, e.g. Viking's S-1, could be an implicit assertion that it was interpreted correctly or that it could subject Fr. Lemelson to liability for omitting something. But there is no requirement that the entire source document be replicated in full. Rather, referencing the source material is adequate to fall within the protection of free speech under the First Amendment. *See Phantom Touring*, 953 F.2d at 731 n.13; *Piccone*, 785 F.3d at 773-74; *Ayyadurai*, 270 F. Supp. 3d at 362

  The Commission then notes its opposition to Defendants' proposed jury instruction for a "belief sincerely held." Not because it is incorrect, but rather because it could be confusing. This is baseless and just leaving it up to jurors to connect the concept of scienter to the First Amendment analysis is far more likely to lead to confusion on the law by the jury.

  Finally, the Commission argues that the First Amendment was not mentioned in *Omnicare*, so no instruction on the First Amendment should be given here. However, there is

nothing in *Omnicare* that overruled the Supreme Court's holding in *Lowe v. SEC*, that the First Amendment protects statements analyzing securities. 472 U.S. 181, 210 n.58 (1985). Indeed, this argument comes dangerously close to the Commission arguing that the Constitution should not apply to its enforcement of securities laws. Therefore, Defendants assert that their proposed instructions regarding the First Amendment are proper and should be read to the jury.

### III.    Verdict Form

The Commission's argument about the verdict form is purely hypothetical about how in some cases there can be both false statements and a scheme. But, the Commission has failed, as it has failed since the beginning of this case, to explain what its scheme theory is beyond the four alleged misstatements in this case.

The Court specifically questioned the Commission about this during the hearing on Defendants' motion to dismiss.

> THE COURT:    But you are saying, even if I agree with [defense counsel] on all of these [four alleged misstatements], you still have a case?
>
> MR. DAY:    Not necessarily, your Honor. I think, ***if all of the misstatements went away, there's not a lot of other conduct that we've alleged in the complaint,*** but I just want to be clear that there are multiple theories in this case.

ECF No. 127-41 at 25:2-8 (emphasis added).

As Defendants argued in summary judgment and in its motion *in limine*, there is absolutely no precedent for scheme liability based on legal conduct (such as publishing financial analysis in which no misstatements have been alleged and requesting a website administrator to remove certain comments posted on its website in accordance with the third-party website's policies).

4

The Commission only cites *Lorenzo v. SEC*, which is inapposite to the present matter. In *Lorenzo*, the Supreme Court held that an individual who disseminated materials that he knew contained false statements with intent to defraud could still be liable for scheme liability under Rule 10b-5, despite not being the individual that "made" the statements. 139 S.Ct. 1094, 1100-03 (2019). Notably, the defendant in *Lorenzo*, was not challenging the finding of scienter, i.e. that he knew the communications he sent contained false information. *Id.* at 1099. Here, there is no similar illegal or fraudulent behavior beyond the four statements.

The only additional conduct that the Commission has even implied could be part of the scheme are (1) distribution of the reports; and (2) seeking to remove comments from Seeking Alpha. Neither distributing reports nor seeking to remove comments are wrongful actions, unless the reports contained false statements in violation of Rule 10b-5.

The Commission then notes that the jury verdict form in *SEC v. Johnston*, No. 1:16-cv-10607-NMG, was just one question. However, the allegations in the Amended Complaint demonstrate the distinctions between that case and the present case. *Johnston*, ECF No. 42 (attached hereto as Exhibit A). There, in addition to alleging false statements in public filings, the Commission alleged that the defendants engaged in a concerted corporate communications strategy to downplay the risk of further pre-approval trials, despite knowing that the FDA had recommended a second clinical trial. *Id.* Here, there is no allegations of further wrongful conduct beyond the four alleged misstatements. And to the extent the Commission has stated other "scheme" allegations, the conduct alleged would only be wrongful if one or more of the alleged misstatements was found to be knowingly false and material in violation of Rule 10b-5. This is in stark contrast to the *Johnston* allegations, in which the scheme was premised on

allegations of a corporate plan to omit material information, separate from the alleged misstatements in public filings.

For the foregoing reasons, we believe that the Court should break out the four alleged misstatements in this case and Defendants propose the following verdict form:

## **CLAIM ONE**

**Fraud in Connection with Purchase or Sale of Securities in Violation of
15 U.S.C. § 77q(a) and 17 C.F.R. § 240.10b-5**

Do you, the jury, find unanimously that the SEC has proven by a preponderance of the evidence that that Fr. Emmanuel Lemelson's statements below were (1) made with the intent to defraud or reckless disregard for the truth, (2) material, and (3) made in connection with the purchase or sale of securities?

**Statement (1):** June 19, 2014 Benzinga Radio Interview, "It's literally going to go away, I mean, I had discussions with [Ligand] management just yesterday – excuse me, their [Ligand's] IR [investor relations] firm.  And they basically agreed.  They said, 'Look, we understand Promacta's going away." **Exs. 2, 3**.

Not Liable _____                                                   Liable _____

**Statement (2):** July 3, 2014 Report, "In other words, Marcum was merely hired, but the company has not yet even consulted with the firm on any material issues.  The financial statements provided on the S1 accordingly are unaudited." **Ex. 4 at 9-10**.

Not Liable _____                                                   Liable _____

**Statement (3):**  July 3, 2014 Report, "Viking does not intend to conduct any preclinical studies or trials" **Ex. 4 at 7**.

Not Liable _____                                    Liable _____


**Statement (4):**[1]  That Fr. Lemelson's statements about Ligand's insolvency based on his decision not to consider intangible assets as demonstrated in the following examples:

(a) "Lemelson Capital Says Ligand Pharmaceuticals' (NASDAQ:LGND) $225M Debt Issuance Solidifies Company's Insolvency, Substantially Raises Specter of Bankruptcy" **Ex. 6 at 1.**

(b) "3. Tangible Equity: On August 4, 2014, Ligand released their Q2 earnings report and financial statements in which the company boasted that it was debt free. Prior to this August 4 release, the company's liabilities exceeded tangible assets, meaning the company was insolvent." **Ex. 6 at 2.**

(c) "4. Debt service expense and prospective dilution likely to increase exponentially: On August 11, the company announced that they would be taking on $225 million in new debt, vis–à–vis a new convertible debt offering. If the bond offering succeeds, the company's liabilities will again far exceed its assets, and the company will be technically insolvent once more." **Ex. 6 at 2.**

(d) "On August 18, Ligand filed a form 8-K with the Securities and Exchange Commission (SEC), revealing that the company had issued $245 million in new debt against the company's tangible equity of just $21,000, giving rise to a debt to tangible equity ratio of 11,667-to-1 (that is to say, $11,667 dollars in debt for every $1 dollar in tangible common shareholder equity)." **Ex. 7 at 3.**

(e) "There is no question that the cost of this preferential treatment of a few large Ligand shareholders at the expense of remaining investors places a burden on Ligand and its shareholders that is both unsustainable and further deepens the company's insolvency and likelihood of liquidation or reorganization under Chapter 7 or Chapter 11 of the bankruptcy code under which remaining Ligand common shareholders have only the protection of $21,000 in tangible equity to shield them from $245 million in debt." **Ex. 7 at 6.**

Not Liable _____                                    Liable _____



**IF YOU FIND NOT LIABLE TO ALL FOUR OF THE ABOVE STATEMENTS, THEN YOU MUST FIND FR. EMMANUEL LEMELSON NOT LIABLE FOR CLAIM TWO.**

---

[1] For the reasons previously stated in Court, Defendants object to the inclusion of five statements for this challenged statement, but submit this proposed jury verdict form based on the Court's ruling.

## CLAIM TWO

### Violation of Investment Advisers Act
### 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8

Do you, the jury, find unanimously that the SEC has proven by a preponderance of the evidence that that Lemelson Capital Management LLC (1) was an investment adviser; (2) made an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; (3) to an investor or prospective investor?

Not Liable  _____                                                Liable  _____


Respectfully Submitted,

REV. FR. EMMANUEL LEMELSON,
LEMELSON CAPITAL MANAGEMENT,
LLC, and THE AMVONA FUND, LP

By: */s/ Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
Brian J. Sullivan (BBO No. 676186)
Thomas M. Hoopes (BBO No. 239340)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel.: (617)-338-9300
dbrooks@lhblaw.com
bsullivan@lhblaw.com
thoopes@lhblaw.com

Dated:  November 2, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on November 2, 2021.

*/s/ Douglas S. Brooks*
Douglas S. Brooks