**EXHIBIT**

**F**

18-cv-11926-PBS

```
 1   SEC v. Lemelson
 2
 3            THIS IS A ROUGH DRAFT TRANSCRIPT.
 4
 5            THIS UNCERTIFIED ROUGH DRAFT TRANSCRIPT HAS NOT BEEN
 6   PROOFREAD OR CORRECTED. EDITING WILL BE COMPLETED IN THE
 7   PREPARATION OF THE CERTIFIED TRANSCRIPT, RESULTING IN
 8   DIFFERENCES IN PAGE AND LINE NUMBERS, PUNCTUATION,
 9   FORMATTING, SPELLINGS AND CHANGES OR CORRECTIONS, IF
10   NECESSARY.
11
12            THIS UNCERTIFIED ROUGH DRAFT TRANSCRIPT OR ANY
13   EXCERPTS THEREOF CANNOT BE QUOTED IN ANY PLEADING OR FOR ANY
14   OTHER PURPOSE AND MAY NOT BE FILED WITH ANY COURT OR OTHER
15   TRIBUNAL.
16
17            THIS DRAFT TRANSCRIPT IS SUPPLIED TO YOU ON THE
18   CONDITION THAT THE PARTY'S EXPERTS, CO-COUNSEL, AND STAFF MAY
19   HAVE LIMITED INTERNAL USE THEREOF AND, UPON RECEIPT OF THE
20   FINAL EDITED, CERTIFIED TRANSCRIPT, THIS DRAFT AND ANY COPIES
21   THEREOF SHALL BE DESTROYED.
22
23
24
25
```

```
 1  what are sometimes called half truth statements that are
 2  literally true but create a materially misleading impression.
 3          So now I'm going on to the third kind.  The third kind
 4  of fraudulent conduct is a fraudulent act, practice or course
 5  of business which operates or would operate as a fraud or a
 6  deceit upon any person.  The phrase has a similar meaning to a
 7  scheme to defraud that I previously mentioned.  However, "would
 8  operate" -- that word "would operate" -- means the act,
 9  practice or course of business has the capacity to defraud but
10  it is not necessary that anyone was actually defrauded.
11          There may be some overlap between the different kinds
12  of alleged fraudulent conduct that would make a defendant
13  liable under Section 10(b)-5, that rule I just read to you.
14  For example, misleading statements which form the basis for
15  liability in the second kind of fraudulent conduct may also
16  qualify as a scheme to defraud if the statements were made as
17  part of a broader fraudulent scheme, practice or course of
18  business.  You'll notice you are asked two separate questions.
19  One is allegations about a scheme.  One is the alleged material
20  misstatements or omissions.
21          Now I'm moving on to the second element, state of
22  mind.  The SEC must prove by a preponderance of the evidence
23  that Father Lemelson acted with the required state of mind.
24  The SEC must show an intent to deceive, manipulate, or defraud.
25  To meet this burden, the SEC must prove Father Lemelson had
```

1  actual knowledge of the false or misleading nature of the
2  statements, meaning that he had the conscience -- excuse me --
3  conscious intent to defraud.
4       The SEC can also prevail on this element if it proves
5  that Father Lemelson acted with a high degree of recklessness.
6  For reckless conduct to exist, there must be a highly
7  unreasonable omission or misrepresentation.  It is an extreme
8  departure from the standards of ordinary care and presents a
9  danger of misleading buyers or sellers which is either known to
10 the defendant or is so obvious that the defendant must have
11 been aware of it.  It is not enough for the SEC to show that
12 the defendant acted accidentally, mistakenly, or negligently.
13 The standard is not simple or even inexcusable negligence.  The
14 standard here is closer to a lesser form of intentional
15 conduct.
16      Father Lemelson's state of mind can be proven by
17 either direct evidence or circumstantial evidence.  Thus, you
18 may infer from defendant's state of mind, from the defendant's
19 acts and words given all the surrounding circumstances at the
20 time.
21      The third element in connection with the purchase or
22 sale of security.  Finally, to find the defendant liable on the
23 Exchange Act claims, 10(b)-5 claim, the SEC must prove by a
24 preponderance of the evidence that the deceptive conduct was in
25 connection with the purchase or sale of securities.  "In