```
                       UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS


   SECURITIES AND EXCHANGE COMMISSION,    )
                      Plaintiff,          )
                                          )
   vs.                                    )
                                          )
   GREGORY LEMELSON and LEMELSON          )   NO. 18CV11926-PBS
   CAPITAL MANAGEMENT, LLC,               )
                      Defendants,         )
   and                                    )
                                          )
   THE AMVONA FUND, L.P.,                 )
                      Relief Defendant.   )




                 BEFORE THE HONORABLE PATTI B. SARIS
                  UNITED STATES DISTRICT COURT JUDGE
                         JURY TRIAL - DAY 8




             John Joseph Moakley United States Courthouse
                          Courtroom No. 19
                          One Courthouse Way
                     Boston, Massachusetts 02210


                          November 4, 2021
                             9:00 a.m.



               Kathleen Mullen Silva, RPR, CRR
                         Lee Marzilli, CRR
                      Official Court Reporter
             John Joseph Moakley United States Courthouse
                   One Courthouse Way, Room 7209
                     Boston, Massachusetts 02210
                    E-mail: kathysilva@verizon.net

               Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:

 2
             United States Securities and Exchange Commission
 3           Alfred A. Day, Esq.
             Marc J. Jones, Esq.
 4           33 Arch Street, 23rd Floor
             Boston, Massachusetts 02110-1424
 5           617.573.4590
             for Plaintiff
 6

 7           Libby Hoopes, P.C.
             Douglas S. Brooks, Esq.
 8           Thomas M. Hoopes, Esq.
             Brian J. Sullivan, Esq.
 9           399 Boylston Street, Suite 200
             Boston, Massachusetts 02116
10           617.338.9911
             for Defendants Gregory Lemelson, Lemelson Capital
11           Management, LLC, The Amvona Fund, LP

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            MR. DAY:  Good morning, Your Honor.
 3            THE COURT:  Good morning.
 4            MR. HOOPES:  Good morning, Your Honor.
 5            THE CLERK:  One juror is running late.
 6            THE COURT:  Yes, one juror won't be here until 9:15.
 7   So that's why we're not so strapped.
 8            Where's the note?  Do you have it?
 9            THE CLERK:  I have it, Judge, yup.
10            THE COURT:  Thank you.
11            Do you have an agreed-upon answer?
12            MR. HOOPES:  Well, I think we agreed that it was
13   covered in the instructions already.  The only question was, do
14   you say that or do you -- I think the SEC wanted you to point
15   out the specific pages.  I think we would prefer you just tell
16   them that it's covered in the -- you're giving them the
17   instruction.  The question is answered in the instruction.
18            THE COURT:  Let me look at it this way, and then I'll
19   just tell them to come back if it's not answered.  Let me say
20   from the *McKee* case, which is the First Circuit case which my
21   law clerk just printed, it's not clear from the question
22   whether they're referring to Mr. Lemelson's report -- Father
23   Lemelson's report or whether they're referring to the S-1.
24            But in any event, either way, you will get the --
25   they're referring in the *McKee* case to the document as a
```

1 whole is the way it's phrased here, and I didn't go back
2 through to know exactly -- I think there they're referring to a
3 letter as a whole, which was the defamatory statement, rather
4 than -- but here it may be Lemelson's report as a whole or it
5 could be the S-1 as a whole.  I can't quite tell from this what
6 they're referring to.  But I'll have them go back, read the
7 instructions, and if it isn't answered, they can come back and
8 ask me again.  Does that seem fair enough?
9            MR. HOOPES:  Yes.
10           MR. DAY:  Yes, Your Honor.
11           THE COURT:  But I would answer probably as a whole.
12           MR. DAY:  As to pages, if Your Honor wants to point
13 them at specific pages, it's 18, 22 and 23.
14           MR. JONES:  You basically have that instruction
15 already, Your Honor, obviously in context.
16           THE COURT:  Well, it doesn't quite answer it.
17           MR. BROOKS:  I think the pages would then also include
18 when -- I don't have it -- when she instructed on *McKee*.
19           THE COURT:  The pages you just numbered are on
20 opinion, whereas I think this is more perhaps about half
21 truths.
22           MR. DAY:  I think that's 18, Your Honor.  It's at the
23 bottom of the page, the carryover paragraph.
24           THE COURT:  Oh, I see.
25           MR. DAY:  It talks about half truths and literally

1  true statements.
2          THE COURT:  So it may be a little off because my law
3  clerk caught a few typos, so it might not be --
4          Well, it doesn't really answer it, I mean, but why
5  don't we have them reread the instructions, and if they come
6  back again, I'm likely to say they should look at each document
7  as a whole.
8          Do you want me to just say that?
9          MR. HOOPES:  Why not?
10         MR. BROOKS:  Yeah, I think that makes sense.
11         MR. DAY:  Yes, Your Honor.
12         THE COURT:  Okay, I'll say that.
13         Okay.  Let's bring the jurors -- oh, we can't bring
14  them in.
15         I'll just say just consider each document as a whole.
16  We're not sure exactly which document you're referring to.  I
17  guess because it says "report," it may be the Lemelson report
18  but it's also quite possible it's the S-1.
19         MR. HOOPES:  It's awkward because they're saying
20  regarding 2B, I believe, right?
21         MR. JONES:  2C.
22         MR. HOOPES:  2C.
23         THE COURT:  That's the clinical trial one.  Actually,
24  I do want you to be here when I do this because I'll be partly
25  charging the jury, and then I'll let you go again.

1            MR. HOOPES:  Okay.
2     (A recess was taken.)
3     (Court and jury enter.)
4            THE COURT:  Good morning.
5            JURORS:  Good morning.
6            THE COURT:  Please don't be seated.
7            You asked me a question last night --
8            First, I should ask, did anyone see anything in the
9     press, do any research, talk to anyone?
10           I find the jury has complied.
11           You asked me a question last night.  Question 2C, can
12    we consider the context of the whole report or just the
13    statement in question?  And then you put a parentheses Exhibit
14    4, page 7.  You consider the document as a whole.
15           I will give you now a jury -- thank you, thank you,
16    Kathy -- a copy of the jury charge.  I strongly urge you to go
17    back to those sections to look at it.  It will make it really
18    clear what you need to look at, I hope, but we're here if you
19    have another question.  Thank you.
20           We have lunch again for you today.
21           THE CLERK:  And extra cookies.
22           THE COURT:  I should mention I tell the lawyers that
23    they're free to go out and enjoy themselves between 1:00 and
24    2:00, so I won't take any questions during that time period.
25    Okay?  Lunch should come around 1:00.  Okay.  Good.

```
 1                MR. JONES:  Thank you.
 2                MR. HOOPES:  Thank you.
 3                (Jury deliberating 9:28 a.m.)
 4                (Resumed, 2:40 p.m.)
 5                THE COURT:  So have you had a chance to see the
 6    question?
 7                MR. JONES: Yes.
 8                MR. BROOKS:  Yes, I have, your Honor.
 9                THE COURT:  I'm not a hundred percent clear on what it
10    means, and, in fairness, I think what they're saying is, is
11    just driving down the price of the stock enough to be a scheme?
12    And the answer is plainly "no."
13                MR. JONES:  The question, though, your Honor, is the
14    market manipulation part because certainly if you have the
15    intent to manipulate a market, I mean, manipulate is one of the
16    three parts of --
17                THE COURT:  I don't know.  I didn't instruct them on
18    that at all.  I don't know whether you can just -- of course
19    he's trying to drive it down because that's what he's shorting
20    it, and that's legal.  I mean, so if that's manipulation, I
21    don't know that.  It's if he does it with fraud that it's
22    wrong.
23                MR. JONES:  I mean, this seems to be the problem here,
24    is a conflation of the fraudulent conduct and the fraudulent
25    intent.  And the conduct, certainly manipulating and marketed,
```

1   the conduct that is 10b-5 (a) and (c) is designed to eliminate.
2   The backstop is the fraudulent intent, and if you're
3   manipulating the market in whatever way with fraudulent intent,
4   you violated 10b-5 (a) and (c).
5           MR. BROOKS:  Your Honor, we had proposed jury
6   instructions on this, and they were obviously rejected, but I
7   don't think the Commission -- the Commission -- it was
8   rejected, the Commission objected, but I don't think objected
9   on the facts, the idea being that it is not fraud, it is not
10  fraudulent to try to drive down the value of a stock.  That
11  seems to be what they're asking.
12          THE COURT:  Well, I think I'm going to say that.
13          MR. BROOKS:  Okay, great.
14          MR. JONES:  But, your Honor, to try to drive down the
15  value of a stock with fraudulent intent would be fraud.  If you
16  have fraudulent intent --
17          THE COURT:  You know, this would be a whole new charge
18  if you've had to have done -- you've had either -- you have to
19  have -- let's just go through this.  There are three kinds
20  here, right?  We went through this.
21          MR. JONES:  Yes, your Honor, but --
22          THE COURT:  Three kinds of fraudulent conduct.
23          MR. JONES:  If we just reinstruct them on the (A) and
24  (C) kinds of fraudulent conduct, you know, that it's a plan,
25  and reiterate to them that it must be done with fraudulent

1    conduct, and we don't do a new charge; we just reiterate the
2    parts of the charge that, as we covered this before, should
3    answer their question.
4         MR. BROOKS:  I think they need to be instructed on the
5    fact that simply trying to drive down the value of a stock in
6    and of itself is not fraud.
7         THE COURT:  Yes, absolutely.  Let's bring them in.
8         MR. JONES:  Your Honor, if you engage in activities to
9    drive the price of a stock down, with fraudulent intent, that
10   meets 10b-5 (a) and (c).
11        THE COURT:  You have to have --
12        MR. JONES:  You have to have a plan.
13        THE COURT:  Right, you have to "Devise, scheme --"
14        MR. JONES:  If you have a plan, you have the intent --
15        THE COURT:  "-- or artifice to defraud," you have to
16   have the intent to defraud.
17        MR. JONES:  Yes, your Honor, but the plan itself --
18        THE COURT:  But it can't just be -- you have to have
19   done something that's fraudulent or said something that's
20   fraudulent.
21        MR. JONES:  The fraudulent conduct under the statute,
22   as you've instructed them, is you have to have a plan or a
23   scheme or engage in a course of business with that intent.
24        THE COURT:  This is why I've always said this was an
25   underdeveloped piece of your case other than the misstatements,

```
 1    which are plainly part of your case.  So let me just bring them
 2    in.
 3             MR. JONES:  Thank you, your Honor.
 4             (Pause.)
 5             MR. JONES:  I'm sorry, your Honor.  I'm just concerned
 6    that their question is about two things, both driving down the
 7    price and market manipulation; and I'm concerned that we're
 8    going to suggest to them that market manipulation with the
 9    intent to defraud does not violate the statute, which it
10    clearly does.
11             (Pause.)
12             THE CLERK:  All rise for the jury.
13             (Jury enters the courtroom.)
14             THE COURT:  Hi there.  We just got your question.  I
15    know how hard you're working, so thank you.
16             So the first part of the question was, "In reference
17    to 10b-5 (a) and (c), is driving the stock price down or
18    'market manipulation' considered fraud or defrauding?"
19             As I've instructed you on the three different prongs
20    on 10(a), (b), and (c), just driving the stock price down,
21    without more, is not enough.  You have to have the fraudulent
22    intent.  So when you say, "Should we be considering a different
23    kind of fraud?" you have to have that specific intent to
24    defraud or that high degree of recklessness.
25             So I don't know if that answers your question.  So I
```

1   just urge you to go to Page 17 and talking about the three ways
2   in which the SEC can prove fraudulent conduct, and make sure
3   you're always thinking about that fraudulent intent, all right?
4   Thank you.  We stand in recess.
5           Once again I should say, we'll stay till 5:00 o'clock
6   unless you tell us you're just exhausted and can't stand it
7   anymore without more cookies.
8           (Laughter.)
9           THE COURT:  But otherwise we'll gather at 5:00, okay?
10          (Jury excused.)
11          (Adjourned, 2:47 p.m.)
12          (Resumed, 4:51 p.m.)
13          THE CLERK:  All rise for the jury.
14          (Jury enters the courtroom.)
15          THE COURT:  Good evening.  Once again, thank you for
16  working so hard.  I can't see the expressions on your faces,
17  but I will see you tomorrow morning at 9:00 o'clock.
18          I remind you not to talk about the case.  And while of
19  course you can go through the documents and do stuff, don't
20  start deliberating till everyone is there and I send you out.
21          Thank you.  See you tomorrow.  Bye-bye.
22          (Jury excused.)
23          THE COURT:  Let me say, if they say they're having
24  trouble and they're deadlocked, I'll read them some sort of
25  version of the *Allen* charge in the civil context.  I would

1   likely not make them come back Monday.
2           MR. JONES:  Your Honor, would you take a partial
3   verdict from them?
4           THE COURT:  I would.  I would take a partial verdict
5   if they've reached unanimity on a special verdict.  So I don't
6   know what else to say.
7           MR. BROOKS:  Thank you, your Honor.
8           (Adjourned, 4:52 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS    )


We certify that the foregoing is a correct transcript from the record of proceedings taken November 4, 2021 in the above-entitled matter to the best of my skill and ability.


/s/ Kathleen Mullen Silva                 1/7/22
Kathleen Mullen Silva, RPR, CRR           Date
Official Court Reporter

/s/ Lee Marzilli, CRR                     1/7/22
Lee Marzilli, CRR                         Date
Official Court Reporter