UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | |
| GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC, | Civil Action No. 1:18-cv-11926-PBS |
| Defendants, | |
| and | |
| THE AMVONA FUND, LP, | |
| Relief Defendant. | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR FINAL JUDGMENT

The jury found Defendants liable for securities fraud.  Not one instance, but three separate materially false and misleading statements made with scienter.  Defendants seek to minimize their fraud and maintain that virtually no sanctions are warranted, even though they violated the core antifraud provision of the federal securities laws.  Under this provision, fraudsters, including market manipulators like Defendants, are regularly enjoined and ordered to pay substantial penalties and full disgorgement.  Defendants also repeatedly claim that the jury "rejected the [Commission's] main claim."  Not so.  The jury found Defendants liable under the single Section 10(b) fraud count—*i.e.*, the Commission's main claim.  Defendants committed a fraud they themselves claimed led to a $500 million loss to investors, they are in a position to engage in fraud again, and they have taken no responsibility for their unlawful conduct.

## I.    The Court Should Impose an Injunction and a Significant Penalty

*Defendants' Conduct Was Egregious.*  Defendants' actions were egregious and merit an injunction and significant penalty.  Violations are considered egregious when they were "flagrant and deliberate [and not] merely technical in nature."  *SEC v. Chan*, 465 F. Supp. 3d 18, 35 (D. Mass. 2020) (cleaned up) (also considering personal profit as egregiousness factor).

Courts in this district routinely grant injunctions and monetary relief over the same objections Defendants assert here.  In *SEC v. Johnston*, for example, Judge Gorton enjoined the CFO of a public company who omitted material information about an FDA approval process from various public statements.  368 F. Supp. 3d 247, 255-56 (D. Mass. 2019).  The court found Johnston's conduct egregious and determined that he could re-offend through his continued work for a public company.  *Id.* at 252.  The court also rejected his arguments that he should not be enjoined because he had an otherwise unblemished 30-year career and that his conduct was reckless, not intentional.  The court ordered a permanent injunction, an officer and director bar, and a penalty of $120,000.

In *SEC v. Present*, a jury found that the defendant made reckless misstatements about an investment product.  Judge Sorokin found defendant's conduct egregious (despite there having been no investor losses), enjoined the defendant, and imposed a penalty of $1,575,000.  No. 14-cv-14692-LTS, 2018 WL 1701972, at *1 (D. Mass. Mar. 20, 2018).  Here too, the court rejected the argument that defendant had a "long, unblemished career" and that an injunction would be "punishment" for proceeding to trial.  *Id.* at *1 n.1 & 2.  *See also SEC v. Navellier & Assocs., Inc, et al.*, No. 17-cv-11633-DJC (D. Mass. Sept. 21, 2020) (ECF No. 361-1 (Am. Final J.)) (injunction and penalty of $2.5 million).

In arguing that their fraudulent conduct was not egregious, Defendants cite only a single,

outlying 2006 case from the Southern District of Texas.  Opp., p. 3 (citing *SEC v. Snyder*, No. H-03-04658, 2006 WL 6508273 (S.D. Tex. Aug. 22, 2006)).  The *Snyder* court did find the conduct was not egregious, but also found that the defendant had given sincere assurances against future violations and would not have opportunities for securities law violations in his new role as an assistant tax accountant.  This cherry-picked Texas case does not align with the facts here.

*Defendants' Conduct was Repetitive.*  Defendants argue that their conduct was not repetitive because they published many reports and made many statements that were *not* charged.  But the volume of other statements made by Defendants is irrelevant.  A defendant cannot avoid sanctions by saying:  "I only defrauded three people, and I've met thousands of people, so that's not so bad!"  This Court should reject the argument that Defendants' three violations are diluted by their making of other statements that were not charged.  *See SEC v. Eiten*, No. 11-12185-GAO, 2014 WL 4965102 at *2, (D. Mass. Sept. 30, 2014) (Defendant's "violations are repeated; he is charged with four").  The Court should also reject Defendants' attempts to call these three separate instances "isolated."  Each of Defendants' three misrepresentations were central to their efforts to profit from misrepresentations about Ligand.

*Defendants Acted Fraudulently and Without Good Faith.*  Defendants' assertion that the jury "did not find Fr. Lemelson acted intentionally" (Opp., p. 6) contradicts how the jury was instructed about recklessness:  "It is not enough for the SEC to show that the defendant acted accidentally, mistakenly, or negligently . . . The standard here is closer to a lesser form of intentional conduct."  Charge Tr., 20:11-15.  In fact, the Court added the "recklessness as intentional conduct" instruction *at defense counsel's* request.  Trial Tr., Day 6 (Nov. 2, 2021), 97:3-98:2.  Scienter is either a "conscious intent to defraud," or it is an intent to disregard the truth "known . . . or . . . so obvious that the defendant must have been aware of it."  Charge Tr.,

20:9-11.  The jury, as instructed, therefore must have found that Defendants acted with at least a "lesser form of *intentional* conduct."

Defendants also argue that they acted in good faith.  Yet the jury could not have found good faith and still have found the three securities fraud violations:  "A statement made with good faith belief in the accuracy does not amount to a fraudulent statement."  Charge Tr., 21:4-6.  Defendants' reinterpretation of the trial evidence merely rehashes their closing arguments.  None of the evidence Defendants cite establishes either good faith or recklessness over an intent to defraud.  The jury rejected their argument, finding that Lemelson did not act in good faith and that each statement was false, material, and made with scienter.

*No Assurances against Future Violations.*  "Where a defendant's occupation involves the sale of securities . . . a court may assume that the defendant is likely to commit future misconduct."  *Chan*, 465 F. Supp. 3d at 37 (quoting *Johnston*, 368 F. Supp. 3d at 253).  Defendants continue to run hedge funds as investment advisers, which gives them a chance to break the law again.

Nor has Lemelson given any assurances that he recognizes the seriousness and harm of his actions, or that he won't do it again.  His affidavit is silent on this; his brief repeatedly minimizes his conduct.  And he claims that he was absolved of fraud charges or found not liable on the "key allegations" of the Complaint.  *See Johnston*, 368 F. Supp. 3d at 253 (continued argument that defendant lacked scienter contributed to finding likelihood of recurrence).

*The Equities Weigh In Favor of an Injunction.*  Defendants center their equities-based arguments on the possibility of an industry bar in a follow-on Commission proceeding.  The industry bar is not actually a question before this Court.  By statute, the Commission determines whether it is in the public interest to bar a defendant who has been enjoined.  15 U.S.C. § 80b-

3(f).  The possibility of an industry bar—which would certainly be appropriate given the Defendants' conduct—should not influence whether the factors for an injunction are met.

Defendants say the possibility of a bar would harm investors in Defendants' new fund. This argument stands the remedial purpose of the securities laws on its head.  An industry bar protects investors—both advisory clients and the investing public—from those who commit fraud.  Advisers who commit fraud should not be advising clients.

## II.   Substantial Penalties Are Warranted.

Defendants argue that third-tier penalties are not justified and the Court should impose a second-tier penalty of less than $80,000[1] because they claim there was no evidence that Defendants' fraud created a risk of investor losses justifying a third-tier penalty.  First, no such evidence is required.  A "significant risk" of loss exists whenever a fraudulent statement "would have been important to any reasonable shareholder"; concrete evidence that investors traded (or were at "risk" of trading) in reliance on such statements is not required.  *SEC v. Monterosso*, 557 F. App'x 917, 929 (11th Cir. 2014); *see SEC v. SeeThruEquity, LLC*, No. 18-civ-10374, 2022 WL 171196, *2 (S.D.N.Y. Jan. 19, 2022) ("'dissemination of materially false information create[s] a significant risk of substantial loss to the investing public'") (quoting *SEC v. Universal Exp., Inc.*, 646 F. Supp. 2d 552, 568 (S.D.N.Y. 2009)).  The jury found each of Defendants' three fraudulent statements material—meaning each could have affected investment decisions.  There was therefore *at least* a risk of substantial investor losses.

Second, there *is* evidence that investors traded in reliance of Defendants' fraud:  A Commission expert, Dr. Erin Smith, conducted an event study and found statistically significant intraday declines in Ligand's stock price on both June 19 and July 3, 2014—the two days on

---

[1] The second-tier amount for an entity is $400,000.  *See* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

which Defendants made their fraudulent statements—and on July 7, when the Viking misstatements were republished.  [Ex. A (Smith Report) ¶¶ 25-27, 28-30 & Exs. 5, 6.]  Third-tier penalties are therefore appropriate.

As for second-tier penalties, Defendants' argument doesn't help them.  The Court can—and should—still impose a penalty equal to Defendants' gross pecuniary gain—exactly the same figure the Commission proposed in its opening brief, the calculation of which Defendants have not challenged.  15 U.S.C. § 78u(d)(3)(B)(ii).

Defendants next argue that there should be no penalty as to LCM.  But LCM is a distinct entity and an investment advisor.  A penalty against LCM, which is still operating and poses ongoing risk to investors, is appropriate for specific and general deterrence.

### III.   The Court Should Order Defendants to Disgorge their Ill-Gotten Gains.

When a securities trade has been tainted by fraudulent acts, disgorgement should be the profit from the trade.  *See SEC v. Chan*, 465 F. Supp. 3d 18, 41 (D. Mass. 2020) (deciding, post-*Liu,* proper disgorgement for insider trading is trade profit); *SEC v. Ahmed*, No. 15-cv-13042-ADB, 2021 WL 916266, at *4 (D. Mass. Mar. 10, 2021) (same).  "[T]he government's showing of . . .  actual profits on the tainted transactions at least presumptively satisfied the burden to show a reasonable approximation of ill-gotten gains."  *SEC v. Whittemore*, 659 F.3d 1, 7 (D.C. Cir. 2011) (cleaned up).  Here, the jury found that Defendants' violations were "in connection with the purchase and sale of a security."  In other words, Defendants' short sales of Ligand were tainted.

Like Lemelson, the defendants in *SEC v. Teo* argued that the Commission had not proved that the violations affected the stock price.  746 F.3d 90, 107-08 (3d Cir. 2014).  But the Third Circuit found that the Commission had met its burden to establish "a reasonable approximation

of the profits *tainted by the violation*." *Id.* at 107.  It was the defendant's burden to prove that profits from the tainted transaction were not ill-gotten.  *Id.* at 107-08 (raising potential intervening causes not sufficient).  The Circuit Court held:

> [I]n the context of an SEC civil enforcement action, whether the . . . profit resulted directly—from a causal perspective—from the wrongdoing or from the operation of dumb luck is not dispositive on the question of whether it is proper and fair to regard those profits as tainted by the wrongdoing.  The court must make this judgment in equity, giving consideration to the elimination of unjust enrichment and the deterrent impact this action might have in furthering future compliance with the Securities Exchange Act.

*Id.*  Defendants' profits are tainted by their violations and constitute unjust enrichment, even if there may have been other factors at play.

Defendants argue for a rule where violators can keep their illicit profits if a statistical event study cannot conclusively show the violations were the but-for cause of those profits.  In other words, whenever the effect of a violation cannot be statistically separated from other factors, Defendants argue the violator should get to keep the money.  That is neither good policy nor good law.  *Whittemore*, 659 F.3d at 7 ("separating legal from illegal profits exactly may at times be a near impossible task").  Defendants' arguments about stock volatility, float, and confounding events are irrelevant—the Commission need not prove that, for a tainted transaction, the violation was the but-for cause of the Defendants' profits.

DATED:  January 27, 2022

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

*/s/ Alfred A. Day*
Alfred A. Day (BBO #654436)
Marc J. Jones (BBO #645910)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
617-573-4537 (Day)
DayA@sec.gov

## **CERTIFICATE OF SERVICE**

I certify that on January 27, 2022, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing.

*/s/ Alfred A. Day*