```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
2

3      SECURITIES AND EXCHANGE            )
       COMMISSION,                        )
4                                         )
                  Plaintiff               )
5                                         ) CA No. 18-11926-PBS
            -VS-                          ) Pages 1 - 93
6                                         )
       GREGORY LEMELSON, et al,           )
7                                         )
                  Defendants              )
8

9

10                     FINAL PRETRIAL CONFERENCE

                 BEFORE THE HONORABLE PATTI B. SARIS
11                   UNITED STATES DISTRICT JUDGE

12

13

14

15
                                    United States District Court
16                                  1 Courthouse Way, Courtroom 19
                                    Boston, Massachusetts  02210
17                                  October 14, 2021, 10:07 a.m.

18

19

20

21

22
                            LEE A. MARZILLI
23                       OFFICIAL COURT REPORTER
                       United States District Court
24                     1 Courthouse Way, Room 7200
                            Boston, MA  02210
25                         leemarz@aol.com
```

|    |    |
|----|----|
| 1  | ahead again -- we didn't think it was going to be in play |
| 2  | because it's an expert thing and -- |
| 3  | THE COURT:  But it's not like you found out about it |
| 4  | this week, so I -- |
| 5  | MR. SULLIVAN:  That's correct, your Honor. |
| 6  | THE COURT:  All right, so, you know, I understand the |
| 7  | SEC not only has this whole team here, but also folks in D.C., |
| 8  | they have better staffing than you do and deal with these |
| 9  | intraday numbers probably more than you do.  That said, it's |
| 10 | part of their case, so if you knew about it, even through a |
| 11 | rebuttal, it's not unfair surprise.  So, anyway, okay.  So |
| 12 | that's going to be my touchstone, unfair surprise. |
| 13 | Motion in limine -- this is Docket No. 159 -- motion |
| 14 | in limine to exclude evidence and arguments about rejected |
| 15 | selective enforcement defense.  As I understand it, you agree |
| 16 | with that. |
| 17 | MR. HOOPES:  We don't agree to the motion.  We agree |
| 18 | nothing about selective enforcement, yes.  Everything else, in |
| 19 | other words, there's pieces of evidence that could go to one or |
| 20 | could go to the other, so -- |
| 21 | THE COURT:  Right, but let me just more generally say, |
| 22 | of course I ruled as a matter of law selective enforcement, |
| 23 | there wasn't an iota of information, as far as I was concerned, |
| 24 | about selective enforcement based on the SEC's part, and I'll |
| 25 | exclude evidence of bad faith on the SEC's part for selective |

```
 1   enforcement.
 2           I do not necessarily hold the same position that the
 3   SEC does with respect to Ligand's motive.  That's a different
 4   issue about the motive of Ligand, and I'm not dealing with that
 5   and ruling on this motion.  There should be no argument
 6   regarding exhibits that go only to the issue of selective
 7   enforcement.
 8           MR. HOOPES:  Understood, your Honor.
 9           THE COURT:  All right, so that's that.
10           MR. JONES:  Your Honor, may I ask a couple of
11   questions on that?  In terms of the Commission's 30(b)(6)
12   witness, your Honor granted the 30(b)(6) witness over our
13   motion for a protective order to allow the defense to learn the
14   facts about that selective enforcement.  That was the point of
15   the 30(b)(6) witness, and yet a lot of their testimony is being
16   proffered by the defendants -- by the defendant now -- on a
17   deposition transcript.  They say that --
18           THE COURT:  I have no idea what you're talking about.
19   Like what?
20           MR. JONES:  Like, what were the meetings all about?
21   You know, was Ligand's attorney somehow influencing the SEC?
22           THE COURT:  Right, and I will exclude that.  But what
23   I won't exclude is, I do think, going to the motive and the
24   bias of the Ligand witnesses, there are some questions that
25   have some overlap.  So it goes to the motive of a witness or
```

|   |   |
|---|---|
| 1 | the bias of a witness; and Ligand's president and CEO are some |
| 2 | of the people who are testifying, and they can ask about |
| 3 | certain things.  Like, you didn't think it was material enough |
| 4 | to put in the comments about Viking?  So I think that's fair |
| 5 | game, and that has some overlap if it was presented to the SEC. |
| 6 | So I will take it with that prism.  If it's only going to the |
| 7 | bad faith of the SEC, the alleged bad faith of the SEC somehow, |
| 8 | it's excluded, and hopefully that will exclude the 70 exhibits |
| 9 | on point.  The SEC claims there are close to 70 exhibits that |
| 10:30  10 | go to the issue of the bad faith of the SEC. |
| 11 | MR. HOOPES:  There's 70 exhibits that go to executive |
| 12 | compensation, your Honor.  The summary chart -- I mean, I don't |
| 13 | think there's any question that financial compensation is an |
| 14 | area for bias under the case law. |
| 15 | MR. JONES:  Your Honor, just in terms of the bias |
| 16 | under the case law, the cases that are cited by the defense are |
| 17 | when a witness has an interest in the outcome of the case. |
| 18 | That's not the case here.  The evidence that's being |
| 19 | proffered -- |
| 10:30  20 | THE COURT:  Can I just get to that when I get to that? |
| 21 | Right now I'm dealing with selective enforcement.  There will |
| 22 | be no argument or exhibits, the only relevance of which is |
| 23 | selective enforcement.  Some of it may come in with respect to |
| 24 | the bias or the state of Ligand. |
| 25 | MR. HOOPES:  If I may, your Honor, the mirror image of |

1    a category, of what witnesses they were going to put forward in
2    any of their --
3            THE COURT: They're normally disclosed during
4    discovery, during the depositions, both of them, right, as well
5    as in the documents? I won't allow them to put forward any
6    documents that weren't produced, so no documents that weren't
7    produced, no testimony, you know, like, that goes afield from
8    what was discussed during the depositions. I mean, what's the
9    gist of it? (Inaudible) and we were concerned?
10:49 10           MR. DAY: Very, very narrow testimony about their
11   reaction of the two investor witnesses' reaction to
12   Father Lemelson's report.
13           THE COURT: And what companies are they in?
14           MR. DAY: Cardinal Capital and 1492 Capital, two
15   institutional investors.
16           THE COURT: They asked about those companies?
17           MR. JONES: I believe we put them on our list of
18   (Inaudible), your Honor.
19           THE COURT: And what about -- I'm sorry, I've diverted
10:50 20   here. Why did you ask me to ask about GlaxoSmithKline?
21           MR. DAY: GlaxoSmithKline was the partner with Ligand
22   at the relevant time in 2014.
23           THE COURT: So if someone had stock in Glaxo, it would
24   exclude them?
25           MR. DAY: I mean, eventually, so in an abundance of

```
 1  caution, we thought it was worth asking about.
 2           THE COURT:  All right, anything else on this topic?
 3           MR. SULLIVAN:  Your Honor, if the testimony is going
 4  to be limited to what was discussed at the deposition, it's
 5  literally three lines.  The same question was asked of the four
 6  witnesses.  It was a general question of, you know -- in one
 7  context it was, you know, "Did you ever discuss with investors
 8  various elements of the report?" and it's like, "Yeah, I have a
 9  vague memory --"
10           THE COURT:  The investor can say what he said.
11           MR. SULLIVAN:  Excuse me, your Honor?
12           THE COURT:  The investor can say what he said.
13           MR. SULLIVAN:  It's just a lack of notice, your Honor.
14  There's literally eighteen --
15           THE COURT:  -- what they're going to say?
16           MR. DAY:  Yes, we can do that, your Honor.
17           THE COURT:  So it's not a surprise so you can cross,
18  okay?
19           MR. SULLIVAN:  Thank you, your Honor.
20           THE COURT:  I have an unopposed motion to permit
21  witnesses to appear virtually, and I think we can accomplish
22  that.  I'm not sure we can accomplish letting your team from
23  the SEC watch from Washington.  I'm not sure that that's
24  doable.  You may have to fly them up.  It's a lovely time of
25  year in Boston.  But, of course, we can Zoom them in if a
```

```
 1              THE COURT:  Try and work it out, but, in any event,
 2     those two PowerPoints come in.
 3              Drug pricing and Martin Shkreli are out, right?
 4              MR. HOOPES:  Yes.
 5              THE COURT:  The Congressman is out.  What's his name
 6     now?
 7              MR. HOOPES:  Duncan Hunter.  And so there's a letter
 8     from Duncan Hunter sent the day of roughly the second
 9     presentation to the SEC in Washington, and he basically makes
10     their case and then says, "I want to hear from you in two
11     weeks, SEC."  And there's testimony from John Higgins, who is
12     going to be here as the CEO, saying, "Ah, we got to Duncan
13     Hunter through members of the Board, and we discussed --" and I
14     can give you the exact language.
15              THE COURT:  I'm not saying you can't ask Higgins about
16     that, but you cannot ask -- we're not going to put in the
17     letter.  It's hearsay.
18              MR. JONES:  The thing, your Honor, the whole comment
19     is about, why did the SEC bring the case?  And they want to
20     suggest that there was some sort of improper pressure to have
21     the SEC bring the case, which we already agreed --
22              THE COURT:  We're not putting in the letter, but
23     Higgins' credibility is key here.
24              MR. JONES:  But what's the credibility?
25              THE COURT:  Is he the CEO?
```