```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MASSACHUSETTS


    SECURITIES AND EXCHANGE              )
    COMMISSION,                          )
                                         )
              Plaintiff                  )
                                         )    CA No. 18-11926-PBS
         -VS-                            )    Pages 1 - 46
                                         )
    GREGORY LEMELSON, et al,             )
                                         )
              Defendants                 )
```

**MOTION HEARING BY VIDEO**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

```
                              United States District Court
                              1 Courthouse Way
                              Boston, Massachusetts  02210
                              February 15, 2022, 2:36 p.m.
```

```
                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
               United States District Court
              1 Courthouse Way, Room 7200
                   Boston, MA  02210
                    leemarz@aol.com
```

```
 1   A P P E A R A N C E S:

 2         ALFRED A. DAY, ESQ. and MARC J. JONES, ESQ.,
     United States Securities and Exchange Commission,
 3   33 Arch Street, 23rd Floor, Boston, Massachusetts, 02110-1424,
     for the Plaintiff.
 4
           THOMAS M. HOOPES, ESQ., DOUGLAS S. BROOKS, ESQ.
 5   and BRIAN J. SULLIVAN, ESQ., Libby Hoopes Brooks, P.C.,
     399 Boylston Street Suite 200, Boston, Massachusetts, 02116,
 6   for the Defendants.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              MR. BROOKS:  Well, I don't think he was unabashed that
 2     he was going to crash the stock.
 3              THE COURT:  Didn't he brag about it?
 4              MR. BROOKS:  Your Honor, he talked about that as a
 5     result of -- since his reports came out, the price went down.
 6     There was never any argument that -- he never said, "Oh, it's
 7     because of these three statements."  Again, that would make
 8     sense if we were talking about a scheme to defraud.  The jury
 9     specifically found he did not engage in a scheme to defraud.
10     That needs to mean something.
11              And the First Circuit in *Sargent* talks about an
12     injunction can only issue upon proof of a reasonable likelihood
13     the defendant will engage in future securities laws violations.
14     Where is the proof of that?  It's been eight years, eight
15     years, and there's been no securities violations.
16              THE COURT:  Well, that does help mitigate against a
17     lifetime bar, but it's of some concern.  I saw him on the
18     stand.  I've seen his conduct over the course of this
19     litigation.  There's some concern that he doesn't get it.
20              MR. BROOKS:  Well, your Honor, I'll say this:  I mean,
21     again, we're talking about three discrete statements, and, you
22     know -- and if you balance all of the equities here -- so,
23     first of all, the egregiousness, okay, so that's one of the
24     factors to look at; and what the SEC is saying is, oh, because
25     it's a 10(b)(5) case, that puts it on the high end of
```

1  egregiousness.  That can't be the law because if it was, we
2  wouldn't need to look at the factors.  It would just be like,
3  oh, okay, so it was a 10(b)(5), so of course we're going to
4  issue an injunction.  That's not the law.  And if you look at
5  this case, in terms of 10(b)(5) cases, he was fully transparent
6  as to his identity, unlike all the other cases ever brought.
7  He disclosed his short position, unlike all the other cases
8  ever brought.  And, most importantly, he did not cover his
9  position when he made the three statements at issue.  And,
10 again, it's been eight years.
11       And if we look at the general equity concerns, another
12 factor for the Court, I mean, who's going to be harmed by his
13 injunction?  It's going to be his investors, his investors, all
14 of whom provided statements to your Honor.  These are very,
15 very sophisticated people.  He's not out there, you know, with
16 people who don't know what they're doing.  They understand.
17 They've been fully briefed.  He's got to be the most transparent
18 investment advisor in the history of the world.  He literally
19 tells his investors everything in realtime.  He told them all
20 about the SEC case.  They all had full knowledge of that when
21 they invested.  They all know about the jury verdict.  They all
22 want to continue investing with him.
23       And, again, the SEC took its shot and charged him
24 under the Advisors Act, which the SEC is now ignoring.  They
25 charged him with defrauding his investors, and the jury

1  rejected that claim, again, something else you won't see in
2  their papers or in their press release.
3          And, your Honor, you asked Mr. Jones the practical
4  impact of an injunction. And, I mean, I'd say it's sort of a
5  crystal ball but it's not because I've done enough digging. If
6  you issue an injunction, they will get a permanent bar, and he
7  will never be allowed to be an investment advisor again.
8  Frankly, that's almost certainly the case, even if the
9  administrative law judge rejected what the Commission is going
03:12 10  to ask for, which is not going to happen, but even if they
11  rejected it and said, "Okay, we'll just give him a five-year
12  bar," the Commission is never going to reinstate him. So this
13  is a death penalty case on facts that are so unprecedented that
14  not a single case cited by the SEC even comes close to it.
15         THE COURT: So you agree with Mr. Jones, but I'm
16  unlikely to give a lifetime bar, a lifetime injunction. It was
17  a short period of time and there are three statements. But the
18  one that really hit me was the Promacta comment. There's no
19  way that that polished PR guy said what he said that he said.
03:12 20  And he sort of never acknowledged, "Well, gee, maybe I took it
21  down wrong," or, "Gee, maybe I made a mistake." Nothing. It
22  was he -- I mean, he basically, that was a pretty serious
23  statement to say the company's major product was going to go
24  away. That's the one that really hit me because the one on
25  Vikings, I'm not sure that -- I mean, that wasn't one that

```
 1    Ligand even came to the SEC with that comment, but the Promacta
 2    one was big.
 3            MR. BROOKS:  So, your Honor, and I understand the jury
 4    found him liable for that --
 5            THE COURT:  Yes.
 6            MR. BROOKS:  -- but how does that translate into --
 7    and, again, he never repeated a thing of that.  After that, he
 8    wrote four reports on Ligand, wrote letters about Ligand.  He
 9    never once repeated that.  So this is not a case -- the SEC is
10    citing all these cases --
11            THE COURT:  But he didn't retract it.  He didn't say,
12    "Whoops, it's possible I misheard him," or, "Maybe I was wrong
13    in how I understood how he phrased something," nothing.
14            MR. BROOKS:  But how does that -- and I understand,
15    the jury found him liable -- how does that equate to issuing an
16    injunction eight years later that he can't violate the
17    securities laws?
18            THE COURT:  Eight years later because it took so long
19    to litigate.  I mean, you know, like, it was COVID, et cetera.
20    I mean, that's not totally fair.
21            MR. BROOKS:  Well, but that is a factor to look at.
22    In fact, all of the factors are tied up, as the First Circuit
23    made clear, on a reasonable likelihood of repeated -- of
24    another violations of the securities laws.  And because he made
25    a two-second statement in the middle of a radio interview
```

1    where, again, he never repeated that statement, I don't see any
2    way that that can serve as the basis to find that he's
3    reasonably likely to again violate the securities laws?  That's
4    what it's saying.  I don't see that, and I think --
5             THE COURT:  All right, I think we've got to keep
6    going, but you basically agree with Mr. Jones that even if I
7    just gave, let's say, a five-year injunction, it doesn't really
8    matter?
9             MR. BROOKS:  If you gave an injunction for two
10   seconds, he will be barred.  As a matter of fact, the SEC will
11   turn that around and get a lifetime bar against him, and all of
12   his investors --
13            THE COURT:  I hadn't understood that.
14            MR. BROOKS:  And all of his investors who want to
15   invest with him, who are doing so with eyes wide open, the fact
16   that he hasn't, again, done anything in the last eight years,
17   none of that will be taken into account.  And, frankly, your
18   Honor, respectfully, we don't think that's a just result in a
19   case like this, which, again, is completely unprecedented.  The
20   SEC has never ever, ever brought a case that even remotely --
21   we went through all the factors ad nauseam, I won't repeat them
22   there, but, frankly, I think they all, all of those factors
23   that are present in every other market manipulation case weigh
24   in favor of not having an injunction here.
25            THE COURT:  Okay.  So as I was doing with Mr. Jones, I

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 46 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 18-11926-PBS, Securities and Exchange Commission v. Gregory Lemelson, et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

Dated this 11th day of April, 2022.


/s/ Lee A. Marzilli
————————————————————
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER