## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>GREGORY LEMELSON and LEMELSON<br>CAPITAL MANAGEMENT, LLC,<br><br>        Defendants,<br><br>  and<br><br>THE AMVONA FUND, LP,<br><br>        Relief Defendant. | Civil Action No. 1:18-cv-11926-PBS |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY ENFORCEMENT PENDING MOTION FOR A NEW TRIAL AND/OR APPEAL AND FOR AN ORDER THAT THE "BAD ACTOR" CLAUSE OF <u>REGULATION D NOT APPLY TO THIS JUDGMENT</u>

There is no good reason to stay the Court's Final Judgment or to prevent the regulatory disqualification that should flow automatically from Defendants' securities law violations, but Defendants ask anyway. They believe that no consequences should flow from the jury's verdict that Lemelson committed securities fraud until an appeal is resolved. As the Court observed in its remedies order, "Lemelson has not learned his lesson." (ECF No. 273 at 10.) It is therefore particularly necessary and appropriate that this Court's injunction go into effect immediately.

Defendants fail to establish either a likelihood of success on the merits or irreparable harm, so no stay of this Court's Final Judgment is warranted. Defendants' motion should be denied.

I.      **The Court Should Not Stay Its Final Judgment**

Defendants have failed to make the strong showing required to warrant a stay pending

appellate review.[1]  Courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed
> on the merits; (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether the issuance of the stay will substantially injure other parties interested
> in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009).  The first two factors are the "most critical."  *Id.* at

434.  An applicant cannot just show some "negligible" chance of success.  *Id.*  Nor is a remote

possibility of irreparable harm sufficient to satisfy the second factor.  *Id.*  Defendants have not

made a strong showing of likelihood of success on the merits of on appeal or imminent

irreparable harm from the Final Judgment.

A.      **Defendants Cannot Establish a Likelihood of Success on the Merits**

Defendants offer nothing new to demonstrate a likelihood of success on the merits.  They

instead rehash the same arguments this Court has repeatedly rejected:  First, that Lemelson's

fraudulent statements were opinions as a matter of law and second, that the Commission was

required to prove investor reliance, in the form of an event study, to establish materiality.  In

effect, the Court has already concluded that Defendants' arguments are not likely to succeed and

no different result should obtain here.

1.      *Materiality*

Defendants claim they will succeed on appeal because they believe that the Commission

was required to introduce an event study to prove materiality.  This Court found no merit to that

---

[1] Defendants also request a stay pending this Court's ruling on their separate motion for a new trial.  Such a stay should be denied for the same reasons set forth in this opposition.

argument.  (ECF No. 146 at 13-20 (order denying Defendants' motion for summary judgment);
ECF No. 29 (order denying motion to dismiss in which defendants argued that statements were
not material and were protected opinions); ECF No. 230 (order denying Defendants' motion for
judgment as a matter of law.)  And that is because the case law is clear that no event study is
required.  "W]hether a public company's stock price moves up or down or stays the same . . .
does not establish the materiality of the statements made, though stock movement is a factor the
jury may consider relevant." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991);
*SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1265 (S.D. Fla. 2011) (same).

The materiality of a misstatement is a fact-intensive inquiry that is often resolved by the
jury, as it was here.  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996); *SEC v.
Johnston*, 310 F. Supp. 3d 265, 270 (D. Mass. 2018).  The jury was instructed on the materiality
standard and found Lemelson's fraudulent statements to be material.  (Ex. A (Jury Charge) at 18-
19.]  Under these circumstances, the First Circuit will review the jury's verdict under the highly
deferential "substantial evidence" standard.  *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 8
(1st Cir. 2018).  As this Court found on summary judgment, there is indeed substantial evidence
of materiality as to each of the three statements.  (ECF No. 146 at 13-20.)  The Commission
adduced plenty of evidence at trial to support the jury's verdict, including:

- Multiple instances in which Lemelson took credit for his reports and public
  statements sinking Ligand's stock price;

- Testimony from multiple witnesses that Lemelson's fraudulent statements
  concerned important aspects of Ligand's business;

- Testimony from Ligand witnesses and Ligand's investor relations representative
  that each received multiple inquiries from worried investors concerning
  Lemelson's reports; and

- Testimony from a Ligand investor, Robert Fields, that Lemelson's reports contained misstatements that were of great concern to his firm.

Plus, the jury was free to conclude under the objective "reasonable investor" standard that Lemelson's fraudulent statements were material on their face.  In short, there was ample basis for the jury's verdict and Defendants' likelihood of success on this issue is remote.

### 2.    *Opinion*

Defendants once again argues that Lemelson's fraudulent statements are not actionable because he was allegedly expressing his opinions.  As this Court held at summary judgment, each of the statements for which the jury found Defendants liable were, on their face, statements of existing fact concerning a "thing happened."  (ECF No. 146 at 23-26; *see* ECF No. 29 (order denying Defendants' motion to dismiss); ECF No. 230 (order denying Defendants' motion for judgment as a matter of law).)

At trial, the Court put the question to the jury.  The jury was instructed, consistent with the Supreme Court's decision in *Omnicare*, on how to determine whether a statement is an actionable assertion of fact or a protected expression of opinion.  (Ex. A (Jury Charge) 21-23.) *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* 575 U.S. 175, 190 (2015); *MAZ Partners LP v. Shear*, 218 F. Supp. 3d 132, 135-37 (D. Mass. 2016).  And, significantly, Defendants did not object to the *Omnicare* instruction, in effect conceding that the question was properly for the jury to decide.  (Ex. B (Rough Tr. Trial Day 6) at 105 ("we're good with that instruction").)  Applying the *Omnicare* standard, jury concluded that Lemelson's three fraudulent statements were actionable.  So Defendants once again face a deferential "substantial evidence" standard of review they are unlikely to overcome.

Defendants argue that Lemelson's statements about Viking were "protected opinions,"

rehashing their argument that investors could have discovered his falsehoods by hunting around in public documents.  (Br. at 5.)  It is not, and has never been, clear how this observation—which was argued to the jury—would convert a misstatement of fact into an opinion.  (ECF No. 146 at 26 ("Lemelson does not show how this context might have converted his characterizations of fact about Viking's reliance on auditors and its intent to conduct clinical trials into opinion evidence").)  *See SEC v. GenAudio, Inc.*, 2012 WL 1218190, at *12 (10th Cir. April 26, 2022) ("no matter how heartfelt their subjective beliefs [the speaker] cannot make material representations to shareholders in disregard or contravention of obvious facts, nor can they find absolution in the failures of others to disabuse them of their magical thinking regarding obvious facts") (citing *Omnicare*, 575 U.S. at 188) (other citations omitted).  Indeed, Lemelson's claims at the remedies hearing that he "always spoke the truth" belie his argument that he was merely expressing an opinion.  (Ex. C (Tr. Feb. 15, 2022 remedies hearing) at 45.)

Finally, Defendants argue that Lemelson's fraudulent Promacta statement, standing alone,[2] cannot support an injunction.  (Br. at 5-6.)  While they don't come right out and say it, it appears that Defendants contend the Court abused its discretion in issuing a time-limited injunction in the wake of a securities fraud verdict.  Nonsense.  The Court carefully balanced the factors relevant to imposing an injunction and concluded that a time-limited injunction was appropriate.  (ECF No. 273 at 5-10.)  The Court's exercise of discretion in imposing the injunction was plainly appropriate.  In his attempt to overturn this Court's injunction on appeal,

---

[2] Defendants appear to concede that any argument about the propriety of the injunction has legs only if the jury's verdict as to the Viking misstatements is overturned.  (Br. at 6 (Lemelson has a "reasonably strong argument that if the only upheld violation is the [Promacta statement] . . . an injunction is inappropriate").)  For all the reasons discussed above, this is a remote possibility.

Defendants face a deferential "abuse of discretion" standard[3] with a negligible likelihood of success. *A.W. Chesterton Co., Inc. v. Chesterton*, 128 F.3d 1, 5 (1st Cir. 1997).

**B.     Any Harm Defendants Face Is Not Irreparable**

Defendants must show that the claimed irreparable harm "will be likely" absent a stay. *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010).  A showing that an injury is speculative or merely "possible" fails to satisfy the second stay factor.  *Nken*, 556 U.S. at 434.  In arguing they face irreparable harm, Defendants focuses entirely on the possibility that he may be permanently barred from serving as an investment adviser in a separate Commission administrative proceeding.  Defendants already made this argument in opposition to the Commission's motion for entry of final judgment and it was the subject of extended discussion at the remedies hearing.  (ECF No. 260 at 8-11 (arguing that no injunction should enter because it may lead to an industry bar).)  The Court issued the five-year injunction with full knowledge of the potential consequences in a separate Commission administrative proceeding.

In any event, as part of the regulation of investment advisers, Congress expressly authorized the Commission to institute follow-on proceedings against investment advisers arising from an injunction.  *See* 15 U.S.C. § 80b-3(e)(4).  While those proceedings may result in Lemelson being barred from serving as an investment adviser, that is only one of a range of possible sanctions the Commission could impose.  15 U.S.C. § 80b-3(e) (authorizing Commission to "censure or place limitations on the activities of … or suspend … or bar" an enjoined investment adviser).  Plus, any sanction that might be imposed in those follow-on

---

[3] Defendants' cite the *Dibella* and *John Adams Trust* cases to argue that an injunction should not have issued in this case.  (Br. at 6.)  Defendants made the same argument in connection with his opposition to the Commission's motion for entry of final judgment (ECF No. 260 at 3), which the Court tacitly rejected.

proceedings is neither immediate nor preordained, and would only be imposed "after notice and opportunity for hearing" that the sanction was appropriate and in the public interest. *See* 15 U.S.C. § 80b-3(e). Defendants also would have the opportunity to seek judicial review of any final Commission order imposing any sanction. *See* 15 U.S.C. § 78y(a)(1).

A potential industry bar at some future date is not irreparable harm now. Moreover, Defendants have made no showing whatsoever on the likely result of the separate administrative proceeding or when it may be resolved. With no more than handwringing that the Commission will be considering whether to impose additional remedial measures in the public interest, Defendants have failed to establish imminent irreparable harm. Under these circumstances, no stay is warranted.

### C.      A Stay Is Not In the Public Interest

Defendants lastly argue that a stay would not injure the Commission and that a stay is in the public interest. Defendants says Lemelson hasn't violated the law before or after 2014 and that his investors would be harmed absent a stay. They think the Commission should "wait" until Defendants' forthcoming appeal is resolved before any remedies kick in. (Br. at 7-8.) What a defendant does when he in under significant scrutiny by the Commission during the investigation, litigation, and trial for securities law violations does not predict whether he will violate again when the scrutiny ends and no one is looking. The public interest also favors denying a stay. Defendants' investors, counterparties, and the markets should not face the risk Defendants will commit fraud again, nor should Defendants' current investors benefit from any future misconduct. In any event, these are, again, all arguments Defendants made, and the Court rejected, at the remedies phase. (ECF No. 260 at 6-7 (alleging no violations before or after 2014) and 9 (Spruce Peak Fund investors would allegedly be harmed).)

7

**D.      The Court Should Not Override the "Bad Actor" Provision of Regulation D**

Section 5 of the Securities Act of 1933 ("Securities Act") requires the registration of all securities offerings, subject to certain exemptions and safe harbors.  15 U.S.C. §§ 77e(a) and (c). Rule 506(b) provides a "safe harbor" for certain unregistered offerings and Rule 506(c) "exempts certain offers and sales of securities from the registration requirements found under Section 5 of the Securities Act where (i) issuers take reasonable care to ensure that investors are accredited; (ii) where the issuer is not an underwriter; and (iii) where the issuer files a Form D with the SEC."  17 C.F.R. § 230.506(b), (c).  The Spruce Peak Fund currently relies on both Rule 506(b) and (c) to conduct unregistered offerings.

Reflecting the importance of an automatic bar for "bad actors" to prevent unqualified issuers or their affiliates from using such exemptions, in Section 926 of the Dodd-Frank Act of 2010, Congress authorized the SEC to add an automatic disqualification provision to Rule 506. *Dodd-Frank Wall Street Reform and Consumer Protection Act*, Pub. L. No. 111-203, § 926, 124 Stat. 1376, 1851 (2010) (codified as amended in 15 U.S.C. § 77d (2012)).  The "Bad Actor" provisions—adopted as paragraphs (d) and (e) of Rule 506—prevent a securities offering from relying on the registration exemption in Rule 506(c) and the safe harbor in Rule 506(b) if the issuer or certain covered persons[4] have, among other things, at the time of the proposed sale certain court orders entered against them, including orders that "restrain[] or enjoin[] such person from engaging or continuing to engage in any conduct or practice" that involves the purchase or sale of securities. *See* 17 C.F.R. § 230.506(d)(1)(ii)(A)

---

[4] The covered persons who may trigger a disqualification for an issuer include its principals (directors, executive officers, managing members), significant owners (more than 20 percent beneficial ownership based on voting power), promoters involved in the offering, and persons compensated for soliciting investors.  *See* 17 C.F.R. § 230.506(d)(1).

As noted above, the Spruce Peak Fund currently relies on Rule 506 (b) and (c) to conduct unregistered offerings.  *See* 17 C.F.R. § 230.506(b) and (c).  Because Lemelson is a bad actor within the meaning of Regulation D as a result of this Court's injunction, the Spruce Peak Fund is disqualified from relying on Rule 506's safe harbor provisions.  This is not some unintended consequence of the jury's verdict, but a deliberate and well-established policy choice by Congress and the Commission to prevent funds from taking advantage of exceptions to registering offerings when they associate with persons enjoined from committing fraud.  When, as here, a defendant refuses to acknowledge the nature of his wrongdoing—claiming that "I'll never regret the things I did" and "I have no doubt about anything I did"—that policy choice is particularly sound.  (Ex. C (Tr. Feb. 15, 2022 remedies hearing) at 45.)

Defendants nevertheless asks this Court to exempt them from the foreseeable consequence of their actions, arguing that permitting the bad actor provision to take effect will prevent Defendants from raising further capital pending resolution of their planned appeal.[5]  This is the only consequence Defendants identify as a result of the bad actor provision, and their claim that it constitutes irreparable harm rings hollow.  A bad actor disqualification does not preclude the Spruce Peak Fund from conducting future securities offerings.  It could: (1) choose to register any future offering; (2) rely on another non-Regulation D exemption to conduct the offering; or (3) itself seek a waiver to still use a Regulation D exemption; or (4) not have Lemelson serve in a covered person role.  And, if Lemelson prevails on appeal—a process he says will take a year— his Spruce Peak Fund can once again rely on Rule 506 exemptions.

---

[5] Defendants' request is not for a "stay" per se.  Rule 506(d) springs into action automatically upon issuance of an injunction.  Rather, his request is more in the nature of seeking a waiver of the bad actor provision as applied to his fund.

With respect to waiver, Regulation D contains a provision for the Commission to waive bad actor disqualification if it determines that the disqualified party has shown "good cause" that it is not necessary under the circumstances that the exemptions be denied.  *See* 17 C.F.R. § 230.506(d)(2)(ii).  Since 2013, the Commission has administered a comprehensive process for an applicant to seek a waiver from disqualification under Rule 506(d)(2)(ii), including requiring the party seeking a waiver to submit a written application to the Commission's Division of Corporation Finance for the Division's consideration and analysis.  *See Statement on Waivers of Disqualification under Regulation A and Rules 505 and 506 of Regulation D* (Mar. 13, 2015) (available at https://www.sec.gov/divisions/corpfin/guidance/disqualification-waivers.shtml).  In assessing whether the "bad actor" has shown "good cause," the Division has identified a number of factors that the written waiver request must address.  *Id.*  These factors include who was directly responsible for the misconduct, whether the misconduct "involved the offer and sale of securities," "what remedial measures the party seeking the waiver has taken to address the misconduct," the "impact on the issuer and third parties" if the waiver is denied, and "how often the applicant has used the relevant exemption in the past, or how they plan to use the exemption in the future." *Id.*  Such an inquiry is based on a factual record to assess whether a waiver is appropriate and best protects public investors in the future.

Defendants offer no justification for why the Court should undo the consequence of its decision to issue an injunction or wade into the bad actor question when the Commission has a waiver process.  Indeed, they point to no instance in which a Court has overridden the Regulation D bad actor provision in the context of a fund associating with an investment adviser who committed fraud.  At least one court declined to do so, noting that the appropriate way for a defendant to proceed is to seek a waiver of the bad actor provision from the Commission.  (*See*

Ex. D (*SEC v. The Heartland Group Ventures, LLC, et al.*, No. 4:21-cv-01310-O (N.D. Tex.),

ECF No. 51).)  Undersigned counsel is unaware of any instance in which a district court has

overridden Rule 506's bad actor provision in an action brought by the Commission.  *Cf. United*

*States v. Third-Point Offshore Fund, Ltd.*, 2019 WL 7865152, at *1-*2 (D.D.C. Dec. 10, 2019)

(court approved no-admission *settlement* providing that Rule 506 bad actor provision not

triggered by allegation that fund violated Hart-Scott-Rodino Act).

   The Court should not override the Regulation D bad actor provision and Defendants'

motion should be denied.

**<u>CONCLUSION</u>**

   Defendants think no consequences should flow from the jury's finding that they

committed fraud while their planned longshot appeal is pending.  The jury's verdict, and the

remedies the Court imposed after careful consideration of an extensive record, should go into

effect now if they are to have any meaning.  Lemelson doesn't get it, as the Court observed, and

his motion should be denied.

Dated:  April 29, 2022     Respectfully submitted,

            SECURITIES AND EXCHANGE COMMISSION

            By its attorneys,

            */s/ Alfred A. Day*
            Marc J. Jones (BBO #645910)
            Alfred A. Day (BBO #654436)
            Securities and Exchange Commission
            Boston Regional Office
            33 Arch Street, 24th Floor
            Boston, MA  02110
            617-573-8947 (Jones)
            617-573-4537 (Day)
            JonesMarc@sec.gov
            DayA@sec.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on April 29, 2022, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case.

*/s/ Alfred A. Day*