UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GREGORY LEMELSON and LEMELSON CAPITAL MANAGEMENT, LLC,<br><br>Defendants,<br><br>and<br><br>THE AMVONA FUND, LP,<br><br>Relief Defendant | Civil Action No. 1:18-cv-11926-PBS<br><br>**Leave to File Granted on May 6, 2022** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO STAY PENDING MOTION FOR NEW TRIAL AND/OR APPEAL AND FOR ORDER THAT THE "BAD ACTOR" CLAUSE OF REGULATION D <u>NOT APPLY TO THIS JUDGMENT</u>**

The Commission's opposition conspicuously omits, ignores, and mischaracterizes Defendants' motion to stay arguments, highlighting that there are serious issues of law that are unclear, that Defendants will suffer irreparable harm absent a stay, and the lack of any injury to any other party or the public if a stay is granted. Based on all these factors, this Court should issue the requested stay.

**I.    Serious and Difficult Issues of Law in an Area that is Somewhat Unclear**

While reciting the four factors from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), the Commission's opposition notably fails to address the legal standard applicable for requests to stay before the district court, which is not to "persuade the court that it is likely to be reversed on appeal. Rather … the movant must only establish that the appeal raises serious and difficult

questions of law in an area where the law is somewhat unclear." *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998) (citing *Exxon Corp. v. Esso Worker's Union, Inc.*, 963 F. Supp. 58, 60 (D. Mass. 1997)). The Commission has no viable argument applicable to this standard, so it simply ignores it.

### A. The Lack of Stock Price Movement Related to the Three Statements

Consistent with the Commission's approach of ignoring the law, the Commission argues that because this Court rejected Defendants' argument concerning the lack of stock price movement in response to the allegedly fraudulent statements (Defendants' observe that, in fact, the stock price rose on the days in question), the argument is unlikely to succeed on appeal. ECF No. 284 at 3. Again, this is not the standard. As the caselaw demonstrates and common sense dictates, to enter a stay a district court does not need to rule that its decision likely was wrong (a standard no court is ever likely to find satisfied, otherwise it would take action itself), but only that there is a serious issue of law that is somewhat unclear and that could result in reversal on appeal. *Canterbury Liquors & Pantry*, 999 F. Supp. at 150. The Commission makes no effort to address this standard.

As noted in the Defendants' motion to stay, there is a circuit split regarding whether the Commission is required to prove (through expert testimony or otherwise) that the statements at issue caused the stock price of the publicly-traded company about whom they were made (here, Ligand) to drop for a finding of materiality under 10(b)(5). The Third Circuit has held that such proof is required (*see In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997); *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000); *SEC v. Berlacher*, No. 07-3800, 2010 WL 3566790, at *7 (E.D. Pa. Sept. 13, 2010)), while the Second Circuit has found that while "almost obligatory," event studies to prove materiality are not necessarily required in this

context (*see In Re Vivendi Universal, SA. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009)). The First Circuit has yet to opine on the issue.

Conspicuously absent from the Commission's opposition is any acknowledgement of the circuit split or the Third Circuit decisions that, if adopted by the First Circuit, would be fatal to the Commission's claims here. Instead, the Commission just cites Second Circuit law to argue that the case law is clear that no event study is required. ECF No. 284 at 3. The omission is glaring and shows that the Commission has no legitimate argument on this point.

The "evidence" cited by the Commission to support the verdict on materiality further highlights that Defendants' have at least a likelihood of success on appeal or, at a minimum, that the appeal raises serious issues. The Commission cites evidence that Fr. Lemelson took credit for his reports impacting Ligand's stock price, evidence that Fr. Lemelson's reports concerned important aspects of Ligand's business, and evidence that Ligand received inquiries from investors concerned about Fr. Lemelson's reports. ECF No. 284 at 3-4. Notably, none of this evidence is specifically tied to the three statements for which Fr. Lemelson was found liable. This threadbare "evidence" that the Commission lists, in contrast to objective evidence of major factors supporting a finding of *immateriality*—namely the stock prices moving up on the days of the statements and Ligand itself not identifying the three statements in its initial presentation to the Commission—at a minimum raises serious questions regarding the adequacy of the evidence presented. *See* ECF Nos. 240, 281. The Commission continues to ignore the jury's rejection of the scheme liability theory and argue that Fr. Lemelson should be punished for all of the statements in the report despite the vast majority of them not even being charged.

### B. The Statements were Opinions as a Matter of Law

The Commission argues that the statements were not opinions, because they were "statements of existing fact concerning a 'thing happened.'" ECF No. 284 at 4. However, under First Amendment law in this Circuit, statements are immunized as opinions if the underlying facts are disclosed. *See McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) ("A statement, even if 'couch[ed] . . . as an opinion,' will give rise to liability if it 'implies the existence of underlying [false and] defamatory facts' as its basis; ***conversely, a statement is 'immunize[d]' so long as the speaker discloses all of the facts undergirding it and none of them are both false and defamatory***.") (quoting *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015)) (alterations and omissions in original) (emphasis added). Particularly with regard to the Viking statements, there was no fact that Fr. Lemelson claimed to have that was not revealed, to the contrary, he cited Viking's S-1 as the source for his opinions. *See* Trial Ex. 4. Further, with regard to the statement that Viking did not intend to conduct preclinical studies, the evidence (specifically the testimony of Viking's CEO) showed that statement was literally true. ECF No. 281 at 9-10. The Commission argued it was nevertheless misleading because it omitted that third parties would conduct the preclinical studies. However, as a matter of law, omitting information that has already been publicly disclosed cannot be material. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (explaining that "total mix" includes information readily available in public domain or facts known or reasonably available to shareholders); *Whitehead v. Inotek Pharmaceuticals Corp.*, 2018 WL 4732774, at *6 (D. Mass. June 27, 2018) (alleged omissions of negative results in statements about progress of clinical studies "are not 'material' as required by Section 10(b) because the statistically significant results of the Phase II trials were disclosed in the publicly available SEC filings"); *In re Seagate Tech. II Sec. Litig.*, 1989 WL 222969, at *3

4

(N.D. Cal. May 3, 1989) ("However, at a threshold level, if the material containing the alleged omissions, actually discloses the facts plaintiffs claim are absent, there is obviously no omission. In a similar vein, if the information to be disclosed is already known, even if through another source, it cannot be considered material") (citation omitted).  Therefore, Defendants have raised, at a minimum, serious and difficult questions of law in areas where the law is somewhat unclear, weighing in favor of a stay.

> C. **The Commission Improperly Characterizes Defendants' Argument Regarding the Propriety of an Injunction if Only the Benzinga Statement Survives**

The Commission improperly argues that "[w]hile they don't come right out and say it, it appears that Defendants contend the court abused its discretion in issuing a time-limited injunction in the wake of a securities fraud verdict." ECF No. 284 at 5.  Defendants plainly did not advance such an argument.  Instead, after noting that the liability findings for the two Viking statements are tenuous at best, Defendants noted that if all that remains is the brief (slightly more than one second) Benzinga statement (which was not traded on by Fr. Lemelson, never repeated, and there was no evidence of impact on stock price, or concern by the parties involved [i.e. Ligand did not include it in their initial report to the Commission]), then an injunction would not be appropriate.  ECF No. 276 at 5-6.  Indeed, if an injunction were to issue for such an isolated statement, it would be difficult to imagine *any* situation where an injunction would not be granted, and the law is clear that injunctions are not appropriate in every case. *See SEC v. John Adams Trust Corp.*, 697 F. Supp. 573, 577 (D. Mass. 1988) ("Past violations of securities laws do not provide, *ipso facto*, a basis for issuance of an injunction, because they are not in and of themselves indicative of future misconduct").

**II.     Defendants Face Irreparable Harm and a Stay Would Not Harm Any Public Interest**

The Commission merely recites that sanctions, other than the lifetime bar it is seeking, are authorized to argue that there is no imminent irreparable harm.  ECF No. 284 at 7.  This argument wholly ignores the affidavit submitted by Fr. Lemelson and the obvious immediate impact to his investors and business.  ECF No. 277.

The Commission then summarily argues that the stay should not issue because "Defendants' investors, counterparties, and the markets should not face the risk Defendants will commit fraud again."  ECF No. 284 at 7.  However, Fr. Lemelson's investors submitted letters to this Court requesting the Court not grant an injunction at all and that they continue to want to Fr. Lemelson to serve as their investment manager.  ECF No. 261-1.  Conspicuously absent from the Commission's opposition is any response to the fact that the Commission had the authority to seek a preliminary injunction for seven years, but elected not to do so, yet now claims that a stay to allow the appeal and motion for new trial to be resolved before the injunction against Fr. Emmanuel goes into effect would harm the public.  The harm of the sanctions to Fr. Lemelson and his investors is obvious and significant.  There is no threat to the public; if there were, the Commission would have sought an injunction sooner.  Therefore, the stay should be granted.

**III.    The Bad Actor Clause Effectively Prevents Fr. Lemelson from Operating his Fund and the Unprecedented Nature of this Case Supports the Court Exercising its Discretion to Rule that the Bad Actor Clause Should Not Apply in this Case**

While the Commission takes the position in this litigation that there are plenty of options for Fr. Lemelson to continue his business even with the application of the bad actor provision, the Commission's objective data cited by Defendants makes it clear that over 99.9% of capital raised is through the Regulation D provision that the "bad actor" clause would preclude.  ECF No. 276 at 9.  So, the Commission's argument about there being other options is disingenuous.

Likewise, the Commission's blithe argument that the only consequence of the bad actor provision is that it will "prevent Defendants from raising further capital pending resolution of their planned appeal" (ECF No. 284 at 9) ignores the reality that raising capital is not only essential to the operation of a hedge fund, but that the "bad actor" provision would preclude Fr. Lemelson from raising capital for other entrepreneurial pursuits unrelated to investment management.  ECF No. 276 at 10.  To be clear, by opposing this stay the Commission wants to effectively prevent Fr. Emmanuel from raising capital in any manner and penalize Fr. Lemelson even if he ultimately prevails on appeal or at a new trial.  This makes no sense in light of the long period of time this case has been pending with no allegations of Fr. Lemelson violating securities laws and the Commission electing not to seek a preliminary injunction during that extended period of time.  The Commission's statement that Fr. Lemelson can go back to raising capital under Regulation D if he prevails on appeal (ECF No. 284 at 9) ignores the harm that will obviously be incurred in the meantime.  Indeed, the Commission *never* addresses the harm that will befall Fr. Lemelson and his investors if he is forced to arbitrarily liquidate positions in the midst of a historic market crash, with the NASDAQ for example down about 25% since the jury verdict.

Finally, the Commission argues that it is unaware of any instance in which the Court has overridden Rule 506's bad actor provision in an action brought by the Commission.  ECF No. 284 at 11.  This is a *non sequitur*; the Commission never disputes that ***under the terms of the statute itself***, the Court has the authority to rule that the bad actor provision should not apply.  17 C.F.R. § 230.506(d).  The bad actor provision should not be applied given the serious issues of law raised, the immediate harm to Fr. Lemelson and his investors, and the lack of any public harm, at least during the pendency of Defendants' motion for new trial and appeal.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' opening motion and memorandum in support thereof, Fr. Lemelson respectfully requests that the Court (1) stay the injunction pending determination of Defendants' forthcoming motion for new trial and/or appeal and (2) issue an order, pursuant to 17 C.F.R. § 230.506(d) that disqualification under Rule 506(d)(1) should not arise as a result of the judgment in this case.

                                            Respectfully Submitted,

                                            REV. FR. EMMANUEL LEMELSON,
                                            LEMELSON CAPITAL MANAGEMENT,
                                            LLC, and THE AMVONA FUND, LP

                                            By: */s/ Brian J. Sullivan*
                                            Douglas S. Brooks (BBO No. 636697)
                                            Brian J. Sullivan (BBO No. 676186)
                                            Thomas M. Hoopes (BBO No. 239340)
                                            LIBBY HOOPES BROOKS, P.C.
                                            399 Boylston Street
                                            Boston, MA 02116
                                            Tel.: (617)-338-9300
                                            dbrooks@lhblaw.com
                                            bsullivan@lhblaw.com
                                            thoopes@lhblaw.com

Dated: May 6, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on May 6, 2022.

                                            */s/ Brian J. Sullivan*
                                            Brian J. Sullivan