Case 1:18-cv-11926-PBS   Document 289-33   Filed 05/11/22

ROUGH DRAFT

PLAINTIFF'S
EXHIBIT
33
18-cv-11926-PBS

130

```
 1   Q.   And you were again at the second meeting, right?
 2   A.   Yes.
 3   Q.   There was another PowerPoint, correct?
 4   A.   Yes.
 5   Q.   A different lawyer with you, right?
 6   A.   Correct.
 7   Q.   And different people from the SEC, right?
 8   A.   Correct.
 9   Q.   And there was one more thing that you did, right, which is
10   you sought the assistance of a California congressman to write
11   the SEC, right?  Correct?
12   A.   Correct.
13   Q.   And that California congressman actually wrote a letter,
14   right, on your behalf, correct?
15   A.   Yes.
16        MR. JONES:  Your Honor, I think this line is not
17   consistent with your Honor's previous rules prior to court.
18        MR. HOOPES:  No, I'm staying far way from --
19        THE COURT:  What's the next question.
20   BY MR. JONES:
21   Q.   And that letter happened after extensive discussion with
22   the board about how we could get a government review of what we
23   saw as illegal stock manipulation, I know some board members
24   who reside in California that felt that, you know, to use
25   relationships government officials to help try to create those
```

```
 1   kinds of dialogues, that's what you said, right?
 2            MR. JONES:  Your Honor, I don't know what Mr. Hoopes
 3   is reading from.
 4            MR. HOOPES:  A deposition statement from this
 5   individual.
 6            THE COURT:  You need to tell him what page and line.
 7            MR. HOOPES:  Page 313, line 21 to 315, line 9.
 8            MR. JONES:  Thank you.
 9            THE COURT:  So what's the question?
10            MR. HOOPES:  That's what happened, right?  What I just
11   read.
12   A.   I got distracted by the -- was there a question?  I'm
13   sorry.
14   Q.   So let me boil it down really quick.
15            You and the board decided, right, to get the
16   assistance of a California congressman to write a letter on
17   behalf of Ligand to the SEC, right?
18   A.   Correct.
19   Q.   And you saw the letter?
20   A.
21            THE COURT:  The letter itself does --
22            MR. HOOPES:  It's not coming, all I have is one more
23   question.
24   BY MR. HOOPES:
25   Q.   You saw the letter.
```

(timestamps: 12:43 at lines 10 and 20)

```
 1    A.   At some point I believe I saw the letter, I'm not sure --
 2    Q.   The date of the letter?
 3              MR. JONES:  Your Honor, last question.
 4              THE COURT:  No, Mr. Jones, I said the letter itself is
 5    not admissible, it's hearsay.
 6              MR. HOOPES:  Yes, if I may, the date of the letter is
 7    the same day you went to the SEC in Washington, right?
 8    A.   I'm not aware of that.
 9    Q.   Okay.
10              Now, again, this is your second trip to the SEC, and
11    so instead of responding publicly yourself in very nice form in
12    San Diego to all these allegations, you continued paying
13    lawyers to lean on the SEC, right?
14    A.   We were confident that there was illegal stock
15    manipulation and we believed it was appropriate to discuss with
16    the enforcement division of the SEC to look into this matter.
17    Q.   What was the SEC --
18    A.   That there was a crime.
19    Q.   -- that you couldn't do on your in gazillion dollars in
20    markets cap?
21              MR. JONES:  Objection.
22              THE COURT:  Objection sustained.
23              MR. HOOPES:  I'm sorry.
24    BY MR. HOOPES:
25    Q.   You could have brought a private lawsuit, right?
```