**PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL: APPENDIX**

|   | **Defendants' Mischaracterization of the Record** | **What the Cited Material Actually Says** |
|---|---|---|
| 1. | "Ligand did not mention the Benzinga statement or either of the Viking statements in its initial presentation to the Commission, which was drafted by Ligand and its lawyers to persuade the Commission to bring an enforcement action against Fr. Lemelson."<br><br>Br. at 4, citing Sullivan Affidavit Ex. 4 (ECF No. 282-4). | The September 25, 2014 Ligand presentation contains 11 pages addressing Defendants' falsehoods about Promacta.<br><br>ECF No. 282-4 at 3, 40-50. |
| 2. | "[T]he Commission's sole investor witness notably did not testify that the two Viking statements were material to him."<br><br>Br. at 5, citing Sullivan Affidavit, Ex. 8 at 57-78 (ECF No. 282-8). | Ligand investor Robert Fields of Cardinal Capital testified that Defendants' thesis that the Viking transaction being a sham was material to him:<br><br>Q. Do you recall Father Lemelson making claims about a company called Viking Therapeutics?<br><br>A. I do.<br><br>Q. And what do you recall about those claims?<br><br>A. I believe in one of the reports it was referred to as a shell game.<br><br>Q. What else do you remember about Viking Therapeutics?<br><br>A. So Viking Therapeutics was a counterparty for a licensing agreement to Ligand where they carved out a number of programs, licensed them to Viking which intended to go to a public offering to advance the development of those projects. Those contracts were filed publicly, the economic arrangements between the two companies were filed publicly, |

**PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL:  APPENDIX**

|   |   |   |
|---|---|---|
|   |   | and ultimately Viking was given the go ahead begin developing those products.<br><br>Q. . . . What is your understanding of what it would mean if Viking were a shell?<br><br>A. That it would be devoid of any assets of any material value.<br><br>Q. If that had been true, would that have been important for you to know as an investor in Ligand?<br><br>A. Yes.<br><br>Q. Why?<br><br>A. The potential economic royalties that Ligand can receive from Viking numbers in the multiple billions of dollars. Now, that's well into the future, but it potentially extremely significant source of economic value for Ligand.<br><br>Ex. 22, Tr. Trial Day 6 (rough) at 64-65. |
| 3. | "The only investor that the Commission called to testify, Mr. Fields, actually testified that his company bought more Ligand stock shortly after the Benzinga interview." Br. at 7, citing Sullivan Affidavit, Ex. 8 at 75, ECF No. 282-8 | False.  Mr. Fields testified that he didn't remember whether Cardinal Capital bought more Ligand stock in June 2014.<br><br>Ex. 23, Tr. Trial Day 6 (rough) at 75. |

**PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL:  APPENDIX**

| | | |
|---|---|---|
| 4. | "This is consistent with the testimony of Viking's CEO that no one raised any concerns about the statements to him."<br><br>Br. at 7, citing Sullivan Affidavit, Ex. 3 at 201-203 (ECF No. 282-3). | Irrelevant.  Defendants' report was about Ligand's stock value and Ligand investors therefore raised the Viking statements to Ligand. |
| 5. | "His only testimony about Viking related to his alleged concern that Fr. Lemelson referred to it as a "shell company[.]"" Br. at 7, citing Sullivan Affidavit, Ex. 8 at 64-65 (ECF No. 282-8).ECF No. | *See* No. 2, above.  Defendants' Viking falsehoods were part and parcel of their "thesis" that the Ligand-Viking transaction was a sham.  Mr. Fields testified that the transaction being a sham would have been important information for him to know as a Ligand investor.  Defendants' efforts to divorce their Viking falsehoods from their context should be rejected. |
| 6. | "Matthew Foehr, Ligand's CFO, mentioned that Mr. Fields worked at Cardinal Capital. Mr. Foehr testified that he knew that Cardinal Capital was a Ligand investor, and that it made a submission to the Commission regarding Fr. Lemelson's reports, which Mr. Foehr did not see.  Mr. Foehr also testified that Cardinal Capital (not Mr. Fields individually) raised questions about Fr. Lemelson's commentary on Viking, but those questions were not related to the two Viking statements charged by the Commission."<br><br>Br. at 13, citing Sullivan Affidavit, Ex. 13 at 90:2-18, 92:1-12, 284:5-286:17 (ECF No. 282-13). | Defendants mischaracterize Mr. Foehr's deposition testimony.  Mr. Foehr testified that Cardinal Capital representatives were concerned about Defendants' false claim that Viking was "not progressing programs," which, contrary to Defendants' assertion, is directly related to their false statement that Viking would not conduct clinical trials to bring drugs to market.<br><br>(ECF No. 282-13 at 9-12.) |
| 7. | "[T]he stock prices on the days of the statements closed higher than at the end of the previous trading days."<br><br>Br. at 18, citing Sullivan Affidavit, Ex. 6 at 4 (ECF No. 282-6). | Irrelevant.  The Commission need not show that Ligand's stock price moved in response to Defendants' misstatements. |

**PLAINTIFF'S OPPOSITION TO MOTION FOR NEW TRIAL: APPENDIX**

| | | |
|---|---|---|
| 8. | "This stock price evidence becomes especially notable when compared with the significant decreases on days where others made statements during the relevant time period, including the comments of the Federal Reserve Board on July 15, 2014 (Sullivan Aff. Ex. 18) and reports published by Empire on July 22, 2014 and August 5, 2014 (Sullivan Aff. Ex. 19 & Sullivan Aff. Ex. 20)" Br. at 18, citing Sullivan Affidavit, Ex. 18, 19, 20 (ECF Nos. 282-18, 19, and 20). | Defendants' reliance on stock price decreases on the days of other events is disingenuous, given their position that an event study is required to show a correlation between a statement and stock price movement. They cannot have it both ways, *i.e.* that the Commission must provide an event study to prove materiality, but they don't to allegedly disprove materiality. Further, Defendants characterize the stock price decreases on these other days as "significant" when, for example, Ligand's stock price decreased less than one percent on August 5th.<br><br>ECF No. 282-6. |