```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                              )
SECURITIES AND EXCHANGE COMMISSION,)
                              )
              Plaintiff,      )
                              )         Civil Action
v.                            )         No. 18-11926-PBS
                              )
GREGORY LEMELSON and LEMELSON )
CAPITAL MANAGEMENT, LLC,      )
                              )
              Defendants,     )
                              )
     and                      )
                              )
THE AMVONA FUND, LP,          )
                              )
              Relief Defendant.)
_____)
```

### MEMORANDUM AND ORDER

August 4, 2022

Saris, D.J.

Defendants Gregory Lemelson ("Lemelson") and Lemelson Capital Management, LP ("LCM") move to stay the five-year injunction included within this Court's March 30, 2022 final judgment and to waive the Bad Actor Clause of Regulation D as to this judgment (Dkt. 274). For the reasons provided below, the motion is **DENIED**.

1

**DISCUSSION**

I. **Motion to Stay Injunction**

The Supreme Court instructs that courts considering issuing a stay should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first two factors are the most important. Nken, 556 U.S. at 434. "[M]ore than a mere 'possibility' of relief is required" for the first factor, and "simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." Id. at 434-35. As the party requesting the stay, the defendants bear the burden of showing that the court should exercise its discretion to allow a stay. Id. at 433-34.

A. **Likelihood of Success**

"When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal." Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 150 (D. Mass. 1998). Instead, "with regard to the first prong of the Hilton test, the movant must only establish that the appeal

2

raises serious and difficult questions of law in an area where the law is somewhat unclear." Id.

Defendants argue that there are at least two serious and difficult questions of law in an area of the law that is somewhat unclear. The Court will first address Lemelson's opinion argument. The defendants contend that Lemelson "has a reasonable likelihood of success in establishing that the two statements concerning Viking were protected opinions," and once those statements are set aside, "Fr. Lemelson will have a reasonable likelihood of arguing on appeal that the Benzinga statement, standing alone, cannot support the injunction." Dkt. 276 at 5. This Court has considered the opinion argument on more than one occasion. See Dkt. 146 at 24-26 (order denying summary judgment); Dkt. 204 (allowing defense to put forward argument that the statements constituted protected opinions at trial). The jury was instructed on the standard for differentiating a fact from an opinion laid out in Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 190 (2015) and found Lemelson liable for three of the statements. As the Court expressed at summary judgment, "a jury could reasonably conclude that it is a misleading half truth" to say "Viking does not intend to conduct any preclinical studies or trials" when it was industry practice to hire a third party to

conduct those studies and trials. Dkt. 146 at 25-26. The jury so concluded. Likewise, Lemelson's report stating that "[t]he financial statements provided on the S1 are accordingly unaudited" could not reasonably be construed as an opinion as a matter of law, and the jury was not persuaded. Dkt. 146 at 24-25.

Lemelson's argument requires two steps to reach likelihood: that these statements were opinions and thus should be knocked out, and then that the Benzinga interview statement alone would not be enough to justify an injunction. Since Lemelson is unlikely to succeed at step one—that these statements were opinion—he also cannot show more than a "possibility" of success in arguing that the issuance of a five-year injunction was therefore erroneous. Nken, 556 U.S. at 434. Lemelson has not shown that the decision to issue a five-year injunction raised serious or difficult questions of law in an unclear area of law.

Second, Lemelson contends that there is a circuit split as to "whether, for a finding of materiality under 10(b)(5), the Commission is required to prove (through expert testimony or otherwise) that the statements at issue caused the stock price of the publicly-traded company about whom they were made (here, Ligand Pharmaceuticals) to drop." Dkt. 276 at 4. The First Circuit has not yet addressed the issue. At summary judgment,

4

this Court agreed with the Second Circuit's conclusion that stock price is relevant to materiality, but an absence of change in stock price is not dispositive. See Dkt. 146 at 17 (citing United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991), cert. denied, 502 U.S. 813 (1991) ("[W]hether a public company's stock price moves up or down or stays the same . . . does not establish the materiality of the statements made, though stock movement is a factor the jury may consider relevant.")).

Lemelson contends that the Third Circuit and Second Circuit are squarely opposed on this issue. The Third Circuit follows the efficient market hypothesis, where "information important to reasonable investors (in effect, the market) is immediately incorporated into stock prices." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997); see also Oran v. Stafford, 226 F.3d 275, 282 (3d Cir. 2000) ("[W]hen a stock is traded in an efficient market, the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock."). Lemelson argues that these precedents show the Third Circuit requires that the Commission prove the stock price dropped. More recently, however, the Third Circuit wrote that while stock price evidence "is widely used as evidence if the market is efficient," "this is not the only method of

proving materiality." United States v. Schiff, 602 F.3d 152, 171 (3d Cir. 2010). The Court explained:

> While stock drop evidence is generally accepted, other evidentiary methods could be effective before a jury as well, particularly if additional factors unrelated to the charged fraud muddy the stock drop evidence. For example, the actionable statements pertinent to this appeal occurred in analyst calls with Wall Street investment bankers. The Government has other fact witnesses for materiality, including Wall Street analysts and Bristol employees. Presumably, those witnesses would testify that a pharmaceutical company's sales and the level of wholesaler inventory are material to their investment decisions and forecasts, and were so in this case. Moreover, analyst and company reports discussing inventory levels are themselves probative of this issue.

Schiff, 602 F.3d at 172 n.26 (internal citation omitted). Other negative reports were published around the same time as Lemelson's reports, and the stock was volatile both before and after the misstatement events. The SEC put on evidence of materiality at trial through testimony of multiple Ligand witnesses that investors were worried about the impact of the reports and from an investor who said that the reports containing misstatements were of great concern to his firm. Thus, the SEC's evidence of materiality would satisfy both the Second and Third Circuit, and a stay is unwarranted.

The defendants have failed to demonstrate a likelihood of success on appeal, the first prerequisite under Hilton. Because consideration of the remaining three factors does not tip the scales in favor of a stay, the stay is denied.

**II.  Bad Actor Clause**

The defendants additionally seek an order that disqualification under Rule 506(d)(1) should not arise as a result of the judgment in this case. While the Court has the authority to grant this relief, see 17 C.F.R. § 230.506(d), I decline to do so for the same reasons given in my earlier opinion ordering the injunction.

## ORDER

The motion to stay the injunction pending appeal and waive the Bad Actor disqualification (Dkt. 275) is **DENIED**. However, the Court grants a temporary stay of 30 days to allow Lemelson to seek relief from the First Circuit.

SO ORDERED.

/s/ PATTI B. SARIS

Hon. Patti B. Saris

United States District Judge