```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
SECURITIES AND EXCHANGE             )
COMMISSION,                         )
                                    )
              Plaintiff,            )
                                    )
v.                                  )
                                    )
GREGORY LEMELSON and LEMELSON       )
CAPITAL MANAGEMENT, LLC,            )   Civil Action
                                    )   No. 18-11926
              Defendants,           )
                                    )
     and                            )
                                    )
THE AMVONA FUND, LP,                )
                                    )
              Relief Defendant.     )
_____)
```

## MEMORANDUM AND ORDER

July 23, 2024

Saris, D.J.

## INTRODUCTION

In this long-running, hard-fought, bitter litigation over an alleged "short-and-distort" scheme, Defendants Father Emmanuel Lemelson and Lemelson Capital Management (collectively "Lemelson") have moved for attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) & (d)(1)(D). They claim to have incurred fees and costs of $1,789,051.64 defending against an enforcement action brought by the Securities and Exchange Commission. The SEC opposes the motion

1

on multiple grounds. Among other things, it argues that Lemelson was not a prevailing party, that the SEC's allegations were substantially justified, that attorney's fees are unwarranted because it did not make an unreasonable demand, and that Defendants' actions were willful. Initially, the SEC challenged Lemelson's financial eligibility under the EAJA as set forth by 28 U.S.C. § 2412(d)(2)(B), but it appears to have abandoned that challenge in light of supplemental information provided by Defendants regarding their net worth. See Dkt. 314. After a review of the record, Defendants' motion for attorney's fees and costs (Dkt. 305) is **DENIED**.

## BACKGROUND

In its amended complaint, the SEC asserted two claims against Defendants: one claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, and one claim under Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder. See Dkt. 33 at 18-20. Under the Section 10(b) claim, the SEC alleged that Defendants made four material misstatements concerning a public company called Ligand Pharmaceuticals ("Ligand"). Defendants' allegedly misleading statements included: (1) a statement that a Ligand representative agreed that one of Ligand's most profitable drugs was "going away"; (2) a statement that Ligand's business partner had not consulted its auditor on any material issues and

had financial statements that were unaudited; (3) a statement that Ligand's partner did not intend to conduct preclinical studies or clinical trials; and (4) a statement that Ligand was insolvent and at substantial risk of bankruptcy. Id. at 11-17. The SEC also alleged that Defendants' actions constituted a scheme to defraud by driving down the price of Ligand's stock in order to profit from Defendants' short position. Under the Investment Advisers Act claim, the SEC alleged that Defendants also defrauded their own investors. The SEC alleged that Defendants had made "approximately $1.3 million in illegal profits." Id. at 4. At the end of its amended complaint, the SEC requested disgorgement of "ill-gotten gains," civil monetary penalties, and a permanent injunction against Defendants.

Following a seven-day jury trial, the jury found that Defendants made the first three misstatements, did not make the fourth regarding Ligand's insolvency, was not engaged in a scheme to defraud, and did not violate the Investment Advisers Act. At the remedy stage of the litigation, the SEC sought a $656,500 civil penalty against Father Lemelson, a $775,000 civil penalty against Lemelson Capital Management, $656,500 in joint-and-several disgorgement against both Defendants, prejudgment interest of $208,624, and an order permanently enjoining Defendants from future violations of Section 10(b). After hearing, the Court imposed a civil penalty of $160,000, issued a five-year injunction,

and ordered no disgorgement. See S.E.C. v. Lemelson, 596 F. Supp. 3d 227, 230 (D. Mass. 2022). The First Circuit affirmed on appeal. See S.E.C. v. Lemelson, 57 F.4th 17, 20 (1st Cir. 2023), cert. denied sub nom., Lemelson v. S.E.C., 144 S. Ct. 486 (2023).

## DISCUSSION

### I. Prevailing Party & Substantial Justification

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." See 28 U.S.C. § 2412(d)(1)(A). The threshold question is whether Lemelson is a "prevailing party" under the statute. There is no prevailing party unless there has been a "material alteration of the legal relationship of the parties." Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989). Where the government brings multiple claims against a party, the party can be deemed a "prevailing party" even if the government prevails on some its claims. See, e.g., Am. Wrecking Corp. v. Sec'y of Lab., 364 F.3d 321, 325 (D.C. Cir. 2004) (per curiam) (acknowledging that party qualified as prevailing party where two out of three citations against party were vacated and "willful" designation was removed from third citation); S.E.C. v. Berlacher, No. 07-3800, 2012 WL 512201, at *2 n.4 (E.D. Pa. Feb. 15, 2012) (finding

4

defendant qualified as prevailing party even though the court found he had engaged in two instances of securities fraud).

Here, the jury split the baby, and both sides prevailed on significant claims brought by the SEC. The SEC proclaims it is the victor because it proved that Defendants committed fraud under the Section 10(b) claim: it prevailed on allegations that Defendants made three misleading statements. However, the SEC lost on the scheme allegation and the allegation that Defendants made a misleading statement about Ligand's insolvency. The SEC also lost on its claim that Lemelson defrauded its own investors under the Investment Advisers Act. The SEC's loss on these claims affected the remedy the Court imposed. See, e.g., Lemelson, 596 F. Supp. 3d at 238 (recognizing "the jury's lack of a finding of scheme liability" in ordering no disgorgement). The Court concludes that Defendants have proven they qualify as a "prevailing party" under the EAJA on at least some of the SEC's claims. See Davis v. Nicholson, 475 F.3d 1360, 1363 (Fed. Cir. 2007) ("A party prevails in a civil action if he receives at least some relief on the merits of his claim.") (cleaned up) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 603–04 (2001)).

The burden now shifts to the SEC to prove that its position was "substantially justified by a preponderance of the evidence." United States v. Yoffe, 775 F.2d 447, 450 (1st Cir. 1985). The

5

government's position is substantially justified where it has a "reasonable basis in both law and fact." Pierce v. Underwood, 487 U.S. 552, 564 (1988); see also Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010) ("To be substantially justified, it is not necessary for the Government's position to be justified to a high degree; rather, the Government meets this standard if its position is justified in substance or in the main." (cleaned up) (quoting Pierce, 487 U.S. at 565)). Here, as the Court ruled in its opinions on Defendants' motion to dismiss and motion for summary judgment, the SEC had a reasonable basis for bringing both the Section 10(b) claim and the Investment Advisers Act claim. See S.E.C. v. Lemelson, 355 F. Supp. 3d 107, 109 (D. Mass. 2019) (denying motion to dismiss Section 10(b) claim based on plausible allegation that three of four statements were misleading); S.E.C. v. Lemelson, 532 F. Supp. 3d 30, 39-45 (D. Mass. 2021) (denying summary judgment on Section 10(b) claim and Investment Advisers Act claim). Therefore, the Court concludes that the SEC's overall position against Defendants was substantially justified. See Pierce, 487 U.S. at 569 (noting that a "string of successes" can be indicative that a position is substantially justified).

## II. The SEC's Demand

Alternatively, Defendants argue that they are independently entitled to attorney's fees and costs because the SEC's sanction demands were unreasonably excessive throughout the litigation.

6

Under the EAJA, a litigant is entitled to "fees and other expenses related to defending against [an] excessive demand" if "the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case." See 28 U.S.C. § 2412(d)(1)(D). As the party seeking fees, Defendants bear the burden of proving "(i) that the government's demand was substantially in excess of the award obtained by the judgment and (ii) that the government's demand was unreasonable compared to that judgment." United States ex rel. Wall v. Circle C Constr., LLC, 868 F.3d 466, 469-70 (6th Cir. 2017). The EAJA defines "demand" as "the express demand of the United States which led to the adversary adjudication," but excludes "a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount." See 28 U.S.C. § 2412(d)(2)(I).

The SEC states that it never made a pre-filing demand "which led to the adversary adjudication," which Defendants do not contest. Instead, Defendants point to the SEC's initial request in its amended complaint for $1.3 million in "ill-gotten gains," which Defendants argue is excessive in comparison to the Court's final judgment ordering a $160,000 civil fine and no disgorgement. The question, then, is whether the $1.3 million figure constitutes an "express demand" under the EAJA or, as the SEC contends, is simply

7

an undisputed factual allegation. On page 4 of the amended complaint, the SEC alleges that Defendants "generat[ed] approximately $1.3 million in illegal profits." See Dkt. 33 at 4. At the end of the complaint, on page 21, the SEC requested the Court order Defendants "disgorge the proceeds [of] their ill-gotten gains." Id. at 21. Combining both statements, the inference is that at the onset of the litigation, the SEC sought $1.3 million in disgorgement from Defendants. See Dkt. 312 at 19 (SEC conceding that it sought disgorgement "based on the undisputed $1.3 million profit figure" in its amended complaint). However, even if such a request constituted an "express demand," the statute excludes a "recitation of the maximum statutory penalty . . . in the complaint" from the statutory definition of "demand." See 28 U.S.C. § 2412(d)(2)(I). Under 15 U.S.C. § 78u(d)(5), the SEC is authorized to seek equitable relief, which the Supreme Court has held to include "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims." Liu v. S.E.C., 591 U.S. 71, 75 (2020). The $1.3 million figure represents the maximum amount of disgorgement the SEC was permitted to seek, and its inclusion in the complaint is therefore not considered a "demand" under the EAJA. Moreover, the Court finds that the SEC's request for $1.3 million in disgorgement was reasonable in light of the scope of the initial claims it brought. See Circle C Constr., 868 F.3d at 470 (holding that both the "substantially

8

justified" inquiry and the "unreasonable demand" inquiry turned on whether the government's position was "justified to a degree that could satisfy a reasonable person").

Defendants also point to the SEC's post-verdict sanctions demand of $2,296,624 as evidence that its "demand remained beyond excessive" throughout the litigation. Dkt. 306 at 18. Although the Court acknowledges the large disparity between the SEC's post-verdict demand and the final judgment obtained by the government, a post-verdict demand is not an "express demand of the United States which led to the adversary adjudication" at the onset of the case. 28 U.S.C. § 2412(d)(2)(I); see United States v. One 1997 Toyota Land Cruiser, 248 F.3d 899, 905 (9th Cir. 2001) (holding that the "EAJA defines 'demand' as a static concept and not one that metamorphoses" since "the statute functions to deter the United States from using excessive initial demands to pressure private parties into settlements").

## ORDER

For the reasons stated above, Defendants' motion for attorney's fees and costs (Dkt. 305) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge