# United States Court of Appeals
## For the First Circuit

No. 24-1754

U.S. SECURITIES AND EXCHANGE COMMISSION,

Plaintiff, Appellee,

v.

GREGORY LEMELSON, a/k/a REV. FR. EMMANUEL LEMELSON;
LEMELSON CAPITAL MANAGEMENT, LLC,

Defendants, Appellants,

THE AMVONA FUND,

Relief Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Rikelman, Lynch, and Howard, Circuit Judges.

Russell G. Ryan, with whom Andreia Trifoi, John J. Vecchione, New Civil Liberties Alliance, Douglas S. Brooks, and Libby Hoopes Brooks & Mulvey, P.C. were on brief, for appellants.

Paul G. Álvarez, Senior Appellate Counsel, with whom Jeffrey B. Finnell, Acting General Counsel, Elizabeth McFadden, Deputy General Counsel, Melinda Hardy, Assistant General Counsel, and Timothy N. McGarey, Special Trial Counsel, Securities and Exchange Commission, were on brief, for appellee.

Theodore M. Cooperstein, with whom Theodore Cooperstein PLLC

was on brief, for Southern Policy Law Institute, amicus curiae.

J. Marc Wheat, with whom Advancing American Freedom, Inc. was on brief, for Advancing American Freedom, Inc.; American Encore, Americans for Limited Government; Catholics Count; Eagle Forum; Eagle Forum of Georgia; Family Institute of Connecticut Action; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; JCCWatch.org, Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Men and Women for a Representative Democracy in America, Inc.; New Jersey Family Policy Center; Melissa Ortiz, Principal & Founder, Capability Consulting; Project 21 Black Leadership Network; Pro-Life Wisconsin; Pamela S. Roberts, Immediate Past President - Kentucky Federation of Republican Women; Rick Santorum; Setting Things Right; 60 Plus Association; Stand for Georgia Values Action; Tea Party Express; Tea Party Patriots Action, Inc.; The American Association of Senior Citizens; Women for Democracy in America, Inc.; Yankee Institute; Young Conservatives of Texas; Young America's Foundation; amici curiae.

May 27, 2025

**LYNCH**, **Circuit Judge**.  This appeal arises out of a Securities and Exchange Commission (SEC) enforcement action against Gregory Lemelson, also known as Rev. Fr. Emmanuel Lemelson, and Lemelson Capital Management, LLC (together, "Lemelson").  In a prior decision, we affirmed the jury's liability findings as to three asserted violations.  See SEC v. Lemelson, 57 F.4th 17, 20 (1st Cir. 2023).  Here, Lemelson appeals from the district court's denial of his motion for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(D), arising out of the SEC's claims, some of which were unsuccessful although others were successful.  See SEC v. Lemelson, 742 F. Supp. 3d 73, 78 (D. Mass. 2024).  For the reasons that follow, we vacate the denial of fees and costs and remand for further proceedings consistent with this opinion.

## I.

The underlying facts as to the enforcement action are recited in our earlier opinion.  See Lemelson, 57 F.4th at 20-23.  We focus here on the facts most relevant to this appeal.

In 2018, the SEC brought this civil action alleging that Lemelson made untrue statements of material fact in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 C.F.R. § 240.10b-5), that he did so as part of a fraudulent scheme, and that he violated Section 206(4) of the Advisers Act and Rule 206(4)-8 (17 C.F.R. § 275.206(4)-8).  The SEC alleged

that Lemelson's challenged activities "generat[ed] approximately $1.3 million in illegal profits."  The complaint requested as relief that Lemelson (1) "disgorge the proceeds [of] their ill-gotten gains, plus prejudgment interest"; (2) be "[p]ermanently restrain[ed]and enjoin[ed] " from violating certain securities laws; and (3) "pay appropriate civil monetary penalties."  Lemelson moved to dismiss the complaint, and the district court granted his motion with respect to one of the challenged statements (which the court referred to as the "tangible equity" statement).  The SEC filed an amended complaint with additional allegations regarding the "tangible equity" statement on March 21, 2019, and the jury ultimately rejected the claim.  The jury also rejected the SEC's scheme liability and Advisers Act claims but found for the SEC on the three remaining statements.  The key language as to the relief sought remained the same in the amended complaint.

On March 18, 2020, the district court held Lemelson in contempt after Lemelson violated a protective order by leaking confidential materials to a journalist.  Through his counsel, Lemelson also "threatened a priest, who had provided allegedly false information about Lemelson's credentials as a priest to the [SEC], with litigation."  See SEC v. Lemelson, 596 F. Supp. 3d 227, 232 (D. Mass. 2022).

After the jury verdict against him, Lemelson filed a renewed motion for judgment as a matter of law, which the district

court denied.  On December 22, 2021, the SEC moved for entry of final judgment, seeking a permanent injunction against both Lemelson individually and Lemelson Capital Management, a $656,500 civil penalty against Lemelson individually, a $775,000 civil penalty against Lemelson Capital Management, $656,500 in disgorgement, and $208,624 in prejudgment interest.

On March 30, 2022, the district court entered final judgment, issuing an injunction against both Lemelson individually and Lemelson Capital Management, but only for five years, and imposing a $160,000 civil penalty against Lemelson individually, not the $656,500 sought.  See Lemelson, 596 F. Supp. 3d at 230. The district court did not impose a civil penalty on Lemelson Capital Management.  Id.  In deciding to issue the five-year injunction against Lemelson, the district court stated that

> Lemelson continues to unabashedly defend his actions.  Lemelson does not recognize the wrongfulness of his conduct or acknowledge when he was clearly wrong (like the statements [for which the jury found him liable]).  His pugilistic approach to the litigation (e.g., the tweets and the leaked documents) indicates he has not learned his lesson.

Id. at 233.

Lemelson appealed, and this court affirmed.  See Lemelson, 57 F.4th at 20.  This court denied rehearing en banc. Order Den. Reh'g En Banc, SEC v. Lemelson, No. 22-1630 (1st Cir.

Mar. 6, 2023). The Supreme Court denied Lemelson's petition for certiorari. Lemelson v. SEC, 144 S. Ct. 486 (2023).

Lemelson next moved for an award of costs and fees totaling $1,789,051.64 under the EAJA, arguing that both the SEC's complaints and post-trial motion for entry of final judgment made "demand[s]" that were "substantially in excess" of the final judgment under Section 2412(d)(1)(D).[1] His motion raised a number of arguments: (1) the complaints' request for disgorgement constituted a "demand," (2) the SEC's request for $2,296,624 in post-verdict briefing constituted a demand, (3) the SEC's requests for permanent injunctions in both the complaints and its post-verdict briefing constituted demands, and (4) these demands were in excess of the judgment and were unreasonable when compared to the final judgment.

In response, the SEC raised a number of alternate defenses based on the text of the statute. The SEC disputed Lemelson's interpretation of the term "demand," arguing that (1)

---

[1] Lemelson also argued that he was a "prevailing party" and that the SEC's position was not "substantially justified" under Section 2412(d)(1)(A). The district court concluded that Lemelson was a prevailing party as to "at least some" of the SEC's claims but that the SEC's position was substantially justified. See Lemelson, 742 F. Supp. 3d at 76-77. For purposes of this appeal, the SEC has not contested Lemelson's "prevailing party" status as to certain claims. Lemelson disavows any appeal of the district court's holdings as to Section 2412(d)(1)(A), stating that "this appeal challenges only the district court's rulings with respect to the excessive demands provision of EAJA."

the request for disgorgement in the complaint was merely a factual allegation and not a demand, (2) the SEC's post-verdict briefing was not a demand because it did not "le[a]d to the adversary adjudication," and (3) the requested relief in the SEC's complaint falls under the statute's safe harbor for "a recitation of the maximum statutory penalty in (i) the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount," 28 U.S.C. § 2412(d)(2)(I). Regardless of the proper interpretation of the term "demand," the SEC presented more global arguments, which would avoid those textual interpretation issues, that the statute nonetheless required denial of his motion because: (1) Lemelson (a) committed a "willful violation of the law" and (b) acted in bad faith; (2) that "special circumstances rendered an award unjust"; and (3) the SEC's proposed remedies were not excessive because they were authorized by statute and were reasonable. The district court chose to address only some of those defenses.

In reply, Lemelson argued that the safe harbor does not exclude all demands made in a complaint, and that the fact that the SEC's alleged demands were authorized by statute did not make them reasonable. Lemelson also argued that Lemelson did not commit a "willful violation of the law" because the jury's scienter finding could have been based on either willfulness or recklessness.

The district court denied the motion on July 23, 2024. The district court concluded that even if the complaints' request for disgorgement amounted to an "express demand" under the meaning of the statute, it fell within the statute's safe harbor for a "recitation of the maximum statutory penalty . . . in the complaint." See Lemelson, 742 F. Supp. 3d at 78 (quoting 28 U.S.C. § 2412(d)(2)(I)). The district court also held that the complaints' request for disgorgement "was reasonable" but did so "in light of the scope of the initial claims [the SEC] brought." Id. As to the SEC's post-verdict request for $2,296,624, the district court cited United States v. One 1997 Toyota Land Cruiser, 248 F.3d 899, 905 (9th Cir. 2001), and held that a post-verdict demand was not an "express demand of the United States which led to the adversary adjudication." Lemelson, 742 F. Supp. 3d at 78. The district court did not reach the SEC's more global defenses of whether "the party ha[d] committed a willful violation of law or otherwise acted in bad faith, or special circumstances ma[d]e an award unjust," 28 U.S.C. § 2412(d)(1)(D). Although it interpreted certain statutory phrases, it did not address others.

## II.

We review the district court's interpretation of statutory language de novo, see Nowd v. Rubin, 76 F.3d 25, 26 n.1 (1st Cir. 1996), and its assessment of reasonableness under the

EAJA for abuse of discretion, see Michel v. Mayorkas, 68 F.4th 74, 78 (1st Cir. 2023).

The EAJA is a limited waiver of sovereign immunity. Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009). The purpose of the EAJA, enacted in 1980, is "to eliminate the barriers that prohibit small business and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." Scarborough v. Principi, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1005, at 9 (1979)).

Congress amended the EAJA in 1996, adding, inter alia, a provision allowing parties who defended against civil actions brought by the United States to collect attorneys' fees and costs under certain limited circumstances where the United States has made an "excessive demand":

> If, in a civil action brought by the United States . . . the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. Fees and expenses awarded under this subparagraph shall be paid only as a consequence of appropriations provided in advance.

28 U.S.C. § 2412(d)(1)(D); see also Pub. L. No. 104-121, Title II, § 232, 110 Stat. 863 (1996).  The Act further sets forth that the term "demand" means:

> the express demand of the United States which led to the adversary adjudication, but shall not include a recitation of the maximum statutory penalty in (i) the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount.

28 U.S.C. § 2412(d)(2)(I).  We refer to the "shall not" clause as the safe harbor provision.

"When interpreting a statute, we begin with the text." Lackey v. Stinnie, 604 U.S. __, 145 S.Ct. 659, 666 (2025); see also Bondi v. VanDerStok, 604 U.S. __, 145 S.Ct. 857, 875 (2025) ("[A] statute's text and context are critical . . . "); City and Cnty. of San Francisco v. EPA, 604 U.S. __, 145 S.Ct. 704, 717 (2025) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting Utility Air Regul. Grp. v. EPA, 573 U.S. 302, 320 (2014))).  Policy considerations, even those presenting "serious concerns," "cannot overcome the statutory text and structure." Cunningham v. Cornell Univ., 604 U.S. __, 145 S.Ct. 1010, 1031 (2025).

The plain language of the EAJA makes clear that there are two comparators when evaluating reasonableness: the "demand" and the "the judgment finally obtained by the United States."  28

U.S.C. § 2412(d)(1)(D).  The district court incorrectly compared the alleged demand to "the scope of the initial claims [the SEC] brought."  Because the district court erred in its interpretation of the relevant final comparator to which the term "express demand" must be compared, we must remand.[2]  We do not reach other issues.  See Lionbridge Tech., LLC v. Valley Forge Ins. Co., 53 F.4th 711, 725-26 (1st Cir. 2022).

Should the SEC prevail on its more global defenses, other issues, such as the interpretation of certain terms, would become moot.  We explain briefly, without resolving them, some of the questions of statutory interpretation.  For example, the parties dispute whether the SEC's post-verdict briefing qualifies as a "demand" under Section 2412(d)(2)(I), offering diverging interpretations of the statute's phrase that a demand must have "led to the adversary adjudication."  See 28 U.S.C. § 2412(d)(2)(I).  Lemelson argues that this phrase merely requires that the demand be made prior to the final judgment, whereas the SEC's position is that the phrase limits "demands" to those made at the onset of the case, although we also observe that the statute's safe harbor language refers to demands made "elsewhere" than a complaint.  Moreover, Section 2412(d)(1)(D) uses the terms

---

[2] Although the district court must compare the demand to the final judgment on remand, it may still consider the scope of the initial claims as part of the "facts and circumstances of the case."  See 28 U.S.C. § 2412(d)(1)(D).

"civil action" and "adversary adjudication," and the statute elsewhere defines the term "final judgment," but "judgment" is not an "adjudication," see 28 U.S.C. § 2412(d)(2)(G). In addition, throughout, the statute refers to "the" demand, a single term. See id. § 2412(d)(1)(D), (2)(I). Lemelson also raises interpretive issues of whether the SEC's requests for injunctive relief are demands and whether the SEC's request for disgorgement constitutes an express demand. Further, there are interpretive issues as to Section 2412(d)(2)(I)'s safe harbor, including a determination of what the phrase "when accompanied . . . " modifies. Id. The parties have pointed us to, and we have found, no controlling authority and very limited persuasive authority on any of these issues. See One 1997 Toyota Land Cruiser, 248 F.3d at 905; Am. Wrecking Corp. v. Sec. of Lab., 364 F.3d 321, 327-28 (D.C. Cir. 2004); In re Clarence Z. Wurts, SEC Release No. 194, 76 SEC Docket No. 492, 2001 WL 1343997, at *3-6 (ALJ Oct. 31, 2001); SEC v. Berlacher, No. 07-3800, 2012 WL 512201, at *6 (E.D. Pa. Feb. 15, 2012). Although the district court determined that the government's post-verdict motion was too late to constitute "the demand" under the EAJA, it did not consider all of these related questions of statutory interpretation.

We may decline to reach "important" questions of statutory interpretation when "significant questions of fact or law have been insufficiently considered by the parties or the trial

- 12 -

court," and the issues "have the potential of allowing a court to avoid, or at least to frame more precisely," the inquiry.[3] Antilles Cement Corp. v. Acevedo Vila, 408 F.3d 41, 51 (1st Cir. 2005); see also United States v. Costa, 890 F.2d 480, 483 (1st Cir. 1989) ("[W]e are averse to considering on appeal a fact-specific matter that is best considered in the first instance by a trial court.").

On remand, the district court may choose to consider first whether Lemelson "has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust," 28 U.S.C. § 2412(d)(1)(D). If the textual interpretation issues are addressed, the court should consider,

---

[3] Avoidance principles typically come into play when we consider constitutional issues. See, e.g., ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013) ("[F]ederal courts are not to reach constitutional issues where alternative grounds for resolution are available."). However, even in non-constitutional contexts, we can elect not to decide potentially dispositive issues that the district court did not reach and remand for the district court to resolve them in the first instance. See González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011). We also observe that avoidance of unnecessary statutory interpretation of the EAJA bears some similarities to the reasons for constitutional avoidance. The EAJA is a waiver of federal sovereign immunity, see Michel, 68 F.4th at 78, and federal sovereign immunity stems from common law traditions of immunity in England, which informed the framers of the Constitution. See Alden v. Maine, 527 U.S. 706, 715 (1999) ("The generation that designed and adopted our federal system considered immunity from private suits central to sovereign dignity. When the Constitution was ratified, it was well established in English law that the Crown could not be sued without consent in its own courts."); Kern-Limerick v. Scurlock, 347 U.S. 110, 122 (1954) ("The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the [federal] Government or its official agencies to state taxation . . . .").

inter alia, (1) whether the statute's definition of "demand" includes a timing requirement, in light of the use of the term "adversary adjudication" in the EAJA; (2) whether the statute encompasses injunctive relief; (3) and the meaning of Section 2412(d)(2)(I)'s safe harbor.  And if in doing so the district court finds the SEC made an excessive demand, the court should evaluate the reasonableness of that demand in comparison to the final judgment obtained.

We **vacate** the district court's denial of Lemelson's motion and **remand** for further proceedings consistent with this opinion.  No costs are awarded.